UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LYMAN-CUTLER, LLC | ) | Chapter 11 |
| Debtor | ) | Case No. 15-13881 FJB |
| | ) | |

| | | |
|---|---|---|
| LYMAN-CUTLER, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Case No._____ |
| v. | ) | |
| | ) | |
| VADIM KAGAN, TATIANA KAGAN, | ) | |
| KAGAN DEVELOPMENT KDC, CORP. and | ) | |
| PROEXCAVATION CORP. | ) | |
| | ) | |
| Defendants. | ) | |

**ADVERSARY COMPLAINT**

Plaintiff Lyman-Cutler, LLC ("Plaintiff" or the "Company") brings this Complaint to recover property of the estate and as counterclaims by the Debtor against parties who have filed claims against the estate, the Defendants Vadim Kagan, Tatiana Kagan, Kagan Development KDC, Corp., and ProExcavation Corp (together, the "Defendants") and states as follows:

**INTRODUCTION**

1.  Plaintiff brings this action to recover damages against the Defendants and as counterclaims to the proofs of claim filed by the Defendants. This action is in the nature of breach of contract, breach of fiduciary duty, fraud and related claims arising out of the willful and intentional misconduct of husband and wife Vadim and Tatiana Kagan and entities with

whom they are affiliated or control.  The Defendants have acted together in a self-dealing conspiracy to defraud the Plaintiff by knowingly and intentionally inflating purported construction charges and executing knowingly unauthorized and fraudulent contracts, including a purported contract between Plaintiff and KDC and a listing agreement for two homes owned by the Plaintiff, which is a joint venture among Alex Filippov and Nickolay Lipetsker and Defendant Vadim Kagan.  The Kagans have caused KDC to file a wholly false and fraudulent mechanic's lien against the Plaintiff's properties in a bad faith effort to force the Plaintiff to pay their fraudulent construction charges, which actions ultimately forced the Debtor to file for chapter 11 relief in this Court and to ultimately sell its only assets – two large single family homes – at a significant discount.  Plaintiff brings this actions to recover damages resulting from these actions of the Defendants.

## PARTIES

2.     Plaintiff Lyman-Cutler LLC is a Massachusetts limited liability formed in November 2012 with a principal place of business in Belmont, Massachusetts.  Plaintiff filed for relief under Chapter 11 of the United States Bankruptcy Code on October 7, 2015.  That case was converted to Chapter 7 on or about December 7, 2015.

3.     Defendant Vadim Kagan is an individual residing at 239 Nahanton St., Newton, Massachusetts 02459.  Mr. Kagan filed proof of claim # 6 on May 3, 2016 in an undetermined amount.

4.     Defendant Tatiana Kagan is an individual residing at 239 Nahanton St., Newton, Massachusetts 02459.  Mrs. Kagan filed proof of claim # 5 on May 3, 2016 in an undetermined amount.

.

5. Defendant Kagan Development KDC, Corp. ("KDC") is a Massachusetts corporation with a principal place of business at 239 Nahanton St., Newton, Massachusetts 02459. On December 18, 2015 KDC filed proof of claim #1 in the amount of $2,095,985.23.

6. Defendant ProExcavation is a Massachusetts corporation with a principal place of business at 239 Nahanton St., Newton, Massachusetts 02459. ProExcavation filed proof of claim # 7 on May 3, 2016 in an undetermined amount.

## JURISDICTION AND VENUE

7. Jurisdiction of this Court is premised upon 28 U.S.C. §1334(b) and 28 U.S.C. §157(a) and (b).

8. This matter is a core proceeding pursuant to 28 USC §§157(b)(2)(A)(C) and (E). Venue is properly in the Bankruptcy Court for the District of Massachusetts.

## FACTUAL BACKGROUND

9. In October 2012, Mr. Lipetsker and Mr. Kagan approached Mr. Filippov and asked him to invest in a real estate development project they planned for a property in Brookline, Massachusetts (the "Project").

10. In general terms, the Project involved the purchase of land in Brookline, Massachusetts to subdivide into two parcels and then construct on each separate parcel a high-end single family home.

11. Mr. Lipetsker and Mr. Filippov were investors in the Project and Mr. Kagan was to serve as the general contractor for the Project.

12. On or about October 25, 2012, as an inducement to Mr. Filippov and Mr. Lipetsker to invest in the Project, Mr. Kagan presented to Mr. Filippov and Mr. Lipetsker a

detailed budget and forecast of estimated returns on an investment in the Project (the "Kagan Presentation").

13. Mr. Filippov and Mr. Lipetsker were told through the Kagan Presentation that the homes would be built on a fixed cost for each home, with a $75,000 contingency for cost overruns. During the construction, Kagan requested that such contingency be increased by another $100,000 for each home, but never deviated from his promise of a fixed cost.

14. In November 2012, Mr. Kagan, Mr. Filippov and Mr. Lipetsker formed the Plaintiff, Lyman-Cutler LLC, to carry out the Project.

15. Mr. Filippov and Mr. Lipetsker, as representatives of the Plaintiff, reasonably relied upon the Kagan Presentation in making their decision to invest in and undertake the Project. Mr. Filippov invested $2 million and Mr. Lipetsker invested $250,000.

16. The Lyman Cutler Operating Agreement expressly names Mr. Filippov as the managing member and expressly enumerates his rights and authority as managing member, including the exclusive authority to control the sale of the two new homes and the retention of any real estate brokers to sell them.

17. Mr. Kagan's budget for the Project required $1.3 million for the construction of each home. The budget forecasted the need for an additional $200,000 for the "carrying costs" for the properties until such time as they could be sold, for a total budget for the construction, carrying cost and sale of each new home of $1.5 million.

18. When it came time to borrow the additional funds necessary for the Project, Mr. Kagan persuaded Mr. Filippov that they should borrow an additional $100,000 for each new home for unexpected costs over and above the budget. Mr. Filippov agreed.

19. Accordingly, the Plaintiff borrowed $1.6 million for the construction and carrying costs of each new home. The Plaintiff also borrowed an additional $1.6 million to finance the balance of the purchase price for the land for the Project. In the aggregate, the Plaintiff borrowed $4.8 million.

20. At no time since October 25, 2012 did Mr. Kagan ever provide to the Plaintiff or Mr. Filippov or Mr. Lipetsker an updated budget or forecast for the costs of the Project. At no time during the construction of the homes did Mr. Kagan ever tell the Plaintiff or Mr. Filippov or Mr. Lipetsker that there were any cost overruns on either of the new homes. As recently as April 2015, a full six (6) months after construction was completed, Mr. Kagan expressly told the Debtor, through Mr. Filippov, that the construction and carrying costs for the two new homes were within budget.

21. Throughout the life of the Project, Mr. Kagan had check-writing authority on the Plaintiff's bank account and drew funds from the account at will. The Debtor, through Mr. Filippov, monitored the withdrawal of funds from the account and tried to keep the books for the Project, but Mr. Kagan failed and refused to provide any invoices, receipts or other documentation for his withdrawals from the account.

22. During construction, Mr. Kagan drew down essentially all of the $3.2 million borrowed by the Plaintiff to finance the construction and carrying costs. The lion's share of this sum was paid to KDC, ProExcavation and to subcontractors hired by KDC to perform the construction of the Lyman-Cutler properties.

23. Under the express terms of the LLC Agreement, Mr. Kagan was responsible for completing construction of the two new homes no later than March 30, 2014 in accordance with plans and drawings approved by Mr. Filippov.

24. Mr. Kagan failed to complete the construction of the two new homes on or before March 30, 2014. On the contrary, construction was not complete until October 2014.

25. The Project plan was to sell the two new homes by no later than November 2014 for projected selling prices of $4,900,000 each.

26. Mr. Kagan's wife, Defendant Tatiana Kagan, is a real estate agent affiliated with Century 21. Mrs. Kagan is also an officer and director of KDC.

27. At Mr. Kagan's request, Mr. Filippov and Mr. Lipetsker agreed that the Plaintiff would list the new homes for sale with Mrs. Kagan. The Plaintiff Agreement, however, provided that the obligation to use Mrs. Kagan expired on December 31, 2014 and that only Mr. Filippov as managing member had the authority to retain real estate brokers for the sale of the new homes.

28. Without consulting Mr. Filippov or Mr. Lipetsker, the Kagans set the selling price for each home at $5,499,000, or nearly $600,000 higher than the budgeted selling price for each home.

29. Upon information and belief, based upon a statement by another real estate broker in the Brookline area, in or about March 2015, a potential buyer made a bona fide offer of $4.5 million to buy the new home located at 88 Cutler Road, which Mrs. Kagan failed to present to Mr. Filippov to consider.

30. Upon information and belief, Mrs. Kagan rejected the offer and countered at $5 million, all without informing Mr. Filippov that an offer had been received. She thereby breached her duty to the Plaintiff as a real estate agent.

31. By late April 2015, with the homes still unsold, and Mrs. Kagan doing little or nothing to market them actively, Mr. Kagan called Mr. Filippov and asked him to sign a new listing agreement with his wife to continue to try to sell the two new homes. Unhappy that the

homes remained unsold months beyond the Project's planned completion date, Mr. Filippov refused and stated his intention to seek other assistance.

32. Without any authority whatsoever, and with actual knowledge that Mr. Filippov had the sole authority to retain real estate brokers and that he had refused to sign the listing agreement with Mrs. Kagan, Mr. Kagan executed a purported listing agreement with Century 21 shortly after Mr. Filippov refused to sign the agreement.

33. Upon information and belief, based upon the fact that the Kagans are married and business partners, Mrs. Kagan also knew or should have known that her husband did not have authority to sign the listing agreement and that Mr. Filippov had refused to sign it.

34. Shortly after signing the unauthorized listing agreement, on May 7, 2015, Mr. Kagan, through counsel, wrote to Mr. Filippov making fabricated claims that Mr. Filippov had set the listing price for the two new homes and had refused to reduce the price. To the contrary, the Kagans set the selling price without ever consulting the Debtor, Mr. Filippov or Mr. Lipetsker (and indeed responded to an offer in March 2015 without ever informing Mr. Filippov or Mr. Lipetsker).

35. In addition, Mr. Kagan claimed for the first time that he had cost overruns on the Project adding up to over $1 million and announced that he would no longer meet his obligation to pay for the carrying costs on the Project as required by Article 8.1 of the LLC Operating Agreement.

36. Upon information and belief, the Kagans knew that their demands in the May Letter would engender a dispute with the Plaintiff, or Mr. Filippov and Mr. Lipetsker and they knowingly and intentionally entered into the fraudulent, unauthorized listing agreement shortly before sending the letter knowing full well that Mr. Filippov had refused to sign it.

37. After the Plaintiff sued the Defendants in state court, the Defendants produced for the very first time another listing agreement, purportedly signed on August 12, 2014 by Vadim Kagan granting an exclusive listing to Century 21 and his wife, Tatiana, for a term of approximately 18 months, extending through March 1, 2016.

38. Kagan knew or should have known at the time that he executed this listing agreement that he had authority to retain his wife, Tatiana, as the exclusive agent to sell the properties only through December 31, 2014.  Mrs. Kagan also knew or should have known that her husband had no authority to sign a listing agreement extending beyond December 31, 2014.

39. Prior to the service of this document upon counsel for the Plaintiff in connection with the hearing on the motion for preliminary injunction on June 11, 2015, neither Mr. Filippov nor Mr. Lipetsker had ever seen or been informed about the terms of the purported August 2014 listing agreement.

40. Upon information and belief, eighteen months is three times as long as the industry standard for an exclusive listing agreement.

41. Two weeks after the hearing on the motion for injunctive relief in the state court action, and before the Defendants answered the original state court complaint in this matter, on or about June 22, 2015, Kagan caused his company, KDC, to file a mechanic's lien against the Plaintiff's properties, asserting a lien in the amount of $2,095,985.23 (the "Mechanics Lien") -- nearly triple the amount he had asserted in unreimbursed construction costs as of May 7, 2015 when he claimed that the unreimbursed construction costs amounted to $758,025.56.

42. In addition to falsely asserting that the unreimbursed construction costs tripled in a six-week period some eight months after construction was completed in October 2014, the Mechanic's Lien purports to arise out of a contract between the Plaintiff and KDC dated June 24,

2013. As of the date of this Amended Complaint, neither Mr. Filippov nor Mr. Lipetsker has ever seen the purported June 2013 contract. The first time they were ever informed about it was in when it was cited in the Mechanic's Lien.

43. Since commencing the state court action, Plaintiff has interviewed several witnesses who are former investors in Kagan projects and who have reported that they experienced the same type of fraudulent conduct by Mr. Kagan in connection with their projects as the Plaintiffs are experiencing. Specifically, multiple witnesses report that Kagan presented them with a budget at the outset of the project, assured them that everything was within budget until after construction was complete and shortly before the homes sold, and then announced extensive cost overruns and either filed a lien or threatened to file a lien unless they agreed to the payment of these last minute purported cost overruns.

44. In addition, since commencing this action, Plaintiffs have interviewed KDC's former bookkeeper, who reports that Kagan uses ProExcavation as a vehicle to double-bill expenses to his projects, mixes expenses for projects on his American Express card and pockets himself funds received for return of unused materials, does not keep accurate records of his subcontracting costs, receives cash kickbacks from some of his subcontractors, and intentionally inflates excavation charges.

45. Upon information and belief based upon the facts recited above, the Mechanic's Lien and the cost overruns asserted by Kagan through KDC and ProExcavation are false and fraudulent. The line was placed well beyond the 90 day limitation period. The Mechanic's Lien forced the Plaintiff to seek relief in this Court and the Plaintiff's properties were sold by the Chapter 7 Trustee at below market value.

46. Upon information and belief based upon the facts recited above, Kagan, KDC and ProExcavation use the tactics described above to extort money from the Plaintiff. The Plaintiff mislead the Plaintiff into believing that the project was within budget, planning all along to inflate the construction costs and wrongfully force the Plaintiff to accept those costs through falsified claims for construction and carrying costs and untimely fraudulent mechanic's liens. They have done exactly that to the Plaintiff in this case.

47. The Plaintiff asserts these claims both a counter-claims to the proofs of claim filed by each of the Defendants and to affirmatively recovery damages against the Defendants.

## COUNT I

### BREACH OF CONTRACT against VADIM KAGAN

48. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

49. The LLC Agreement is a binding agreement among the parties, which states their rights, obligations and authority to act on behalf of the LLC.

50. Mr. Kagan has breached the LLC Agreement in multiple ways, including, without limitation by:

   a. Failing to complete construction of the new homes on time;

   b. Signing listing agreements with his wife, Tatiana Kagan, that he knew he lacked authority to sign;

   c. Signing a contract with KDC without ever submitting it to the other members for review and approval;

   d. Asserting claims against the Plaintiff for unauthorized, untimely and unsubstantiated cost overruns;

    e. Double billing the Plaintiff and otherwise falsifying claims for construction costs; and

    f. Refusing to honor his obligation to pay the monthly carrying costs when the new homes did not sell within 23 months of the date of acquisition.

51. As a result of Mr. Kagan's breach of the LLC Agreement, the Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT II

### BREACH OF FIDUCIARY DUTY against VADIM KAGAN

52. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

53. At all relevant times, Mr. Kagan has owed a fiduciary duty to the Plaintiff.

54. Mr. Kagan has breached his fiduciary duty to the Plaintiff by the conduct described in this Complaint.

55. As a result of Mr. Kagan's breaches of his fiduciary duty to them, Plaintiff has suffered damages for which Mr. Kagan is liable in an amount to be determined at trial.

## COUNT III

### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY against TATIANA KAGAN, KDC and PROEXCAVATION

56. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

57. Tatiana Kagan, KDC and ProExcavation knowingly and intentionally aided and abetted Mr. Kagan's breach of his fiduciary duty to the Plaintiffs.

58. As a result of aiding and abetting Mr. Kagan's breach of fiduciary duty, Plaintiffs have suffered damages for which Tatiana Kagan, KDC and ProExcavation are liable in an amount to be determined at trial.

## COUNT IV

**FRAUD against ALL DEFENDANTS**

59. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

60. Mr. Kagan knowingly and intentionally executed a listing agreement with his wife in August 2014, with actual or constructive knowledge that he had no authority to execute an 18-month listing agreement.

61. Mr. Kagan knowingly and intentionally executed a listing agreement with his wife, Tatiana Kagan that he knew Mr. Filippov had refused to sign, shortly before disavowing his obligation to pay the carrying costs for the Project and asserting substantial unauthorized, untimely and undocumented claims against the Plaintiff for cost overruns.

62. After signing the listing agreement with actual knowledge that it was unauthorized, Mr. Kagan has falsely stated that Mr. Filippov authorized him to sign the listing agreement.

63. Upon information and belief, Tatiana Kagan knew that her husband did not have authority to sign either of the listing agreements with her and her knowledge is attributable to Century 21 Commonwealth.

64. Mr. Kagan has used KDC and ProExcavation to assert false and fraudulent charges for construction costs against the Plaintiff and has caused KDC to file a false and fraudulent mechanics lien against the Plaintiff's properties.

65. As a result of this fraudulent conduct by the Kagans, the Plaintiff has suffered and may suffer further damages for which the Kagans should be held liable in an amount to be determined at trial.

**COUNT V**

**CONSPIRACY against ALL DEFENDANTS**

66. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

67. Through the conduct described herein, the Defendants have conspired to defraud the Plaintiff.

68. As a result of their unlawful conduct in furtherance of their conspiracy, each co-conspirator is jointly and severally liable to the Plaintiff for damages in an amount to be determined at trial.

## COUNT VI

### VIOLATION OF M.G.L. ch. 93A by the COMPANY against TATIANA KAGAN, KDC and PROEXCAVATION

69. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

70. By asserting two knowingly unauthorized and fraudulent listing agreements against the Plaintiff, Vadim Kagan and Tatiana Kagan violated M.G.L. ch. 93A.

71. By asserting knowingly fraudulent charges against the Plaintiff, ProExcavation violated M.G.L. ch. 93A.

72. By filing a fraudulent Mechanics Lien against the Properties, KDC has violated M.G.L. ch. 93A.

73. For their violations of M.G.L. ch. 93A, Defendants Vadim Kagan, Tatiana Kagan, KDC and ProExcavation are liable to the Plaintiff in an amount to be determined at trial, together with multiple damages and attorneys' fees.

WHEREFORE, Plaintiffs ask that the Court:

A. Enter judgment in the Plaintiff's favor and against all Defendants in an amount sufficient to compensate Plaintiff fully, plus interest and costs;

D. Award the Plaintiff triple damages and attorneys' fees against Vadim Kagan, Tatiana Kagan, KDC and ProExcavation;

E. Issue a declaratory judgment voiding the claims filed by each of the Defendants; and

F. Grant Plaintiff such other and further relief as is just or appropriate.

        Respectfully Submitted,

        Lyman-Cutler, LLC
        By Its attorneys,
        The Tamposi Law Group, P.C.

Dated: July 5, 2016        /s/ Peter N. Tamposi
        Peter N. Tamposi (BBO #639497)
        The Tamposi Law Group, P.C.
        159 Main Street
        Nashua, NH 03060
        (603) 204-5513
        (603) 204-5515 (fax)