# EXHIBIT D

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS

SUPERIOR COURT DEPT.
C.A. No.

| | |
|---|---|
| LYMAN-CUTLER, LLC, | ) |
| Plaintiff, | ) |
| v. | ) |
| VADIM KAGAN, TATIANA KAGAN, and CENTURY 21 COMMONWEALTH | ) |
| Defendants. | ) |

## VERIFIED COMPLAINT

Plaintiff Lyman-Cutler, LLC brings this Complaint against Defendants Vadim Kagan,

Tatiana Kagan, and Century 21 Commonwealth ("the Kagan Defendants") and states as follows:

### INTRODUCTION

1.      Plaintiff brings this action for immediate injunctive relief and to recover damages for

breach of contract, breach of fiduciary duty and related claims, arising out of the willful and

intentional misconduct of husband and wife Vadim and Tatiana Kagan, acting together in a self-

dealing conspiracy to execute a knowingly unauthorized and fraudulent listing agreement for two

homes owned by Plaintiff Lyman-Cutler LLC, a joint venture among Plaintiff's affiants Alex

Filippov and Nickolay Lipetsker and Defendant Vadim Kagan.

### PARTIES

2.      Plaintiff Lyman-Cutler LLC ("LCLLC" or the "Company") is a Massachusetts

limited liability formed in November 2012 with a principal place of business in Belmont,

Massachusetts.

3. Defendant Vadim Kagan is an individual residing in Newton, Massachusetts.

4. Defendant Tatiana Kagan is an individual residing in Newton, Massachusetts.

5. Century 21 Commonwealth is a Delaware limited liability company with an office in Brookline, Massachusetts.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the Defendants pursuant to G.L. c. 223A, § 2, because the Defendants reside or maintain their principal place of business in Massachusetts.

7. Venue is proper in this court pursuant to G.L. c. 223, § 1, because the Plaintiff's principal place of business is in Middlesex County.

## FACTUAL BACKGROUND

8. In October 2012, Mr. Lipetsker and Mr. Kagan approached Mr. Filippov and asked him to invest in a real estate development project they planned for a property in Brookline, Massachusetts (the "Project").

9. In general terms, the Project involved the purchase of land in Brookline, Massachusetts to subdivide into two parcels and then construct on each separate parcel a high-end single family home.

10. Mr. Lipetsker and Mr. Filippov were investors in the Project and Mr. Kagan, through his company, Kagan Development, was to serve as the general contractor for the Project.

11. On or about October 25, 2012, as an inducement to Mr. Filippov and Mr. Lipetsker invest in the Project, Mr. Kagan presented to Mr. Filippov and Mr. Lipetsker a detailed budget and forecast of estimated returns on an investment in the Project (the "Kagan Presentation"). A true copy of the presentation is attached to this Complaint as **Exhibit 1**.

12.     Mr. Filippov and Mr. Lipetsker reasonably relied upon the Kagan Presentation in making their decision to invest in the Project. Mr. Filippov invested $2 million and Mr. Lipetsker invested $250,000.

13.     In November 2012, Mr. Kagan, Mr. Filippov and Mr. Lipetsker formed a Massachusetts limited liability company, Plaintiff Lyman-Cutler LLC. A true copy of the LLC Operating Agreement is attached to this Complaint as **Exhibit 2**.

14.     In return for their respective investments, Mr. Fillipov received an 80% interest in LCLLC, and Mr. Kagan and Mr. Lipetsker each received 10%.

15.     The LCLLC Operating Agreement expressly names Mr. Filippov as the managing member, and expressly enumerates his rights and authority as managing partner, including the exclusive authority to control the sale of the two new homes and the retention of any real estate brokers to sell them.

16.     Mr. Kagan's budget for the Project required $1.3 million for the construction of each home, which the parties understood would be paid to Kagan Development. The budget forecast the need for an additional $200,000 for the "carrying costs" for the properties until such time as they could be sold, for a total budget for the construction, carrying and sale of each new home of $1.5 million.

17.     When it came time to borrow the additional funds necessary for the Project, Mr. Kagan persuaded Mr. Filippov that they should borrow an additional $100,000 for each new home for unexpected costs over and above the budget. Mr. Filippov agreed.

18.     Accordingly, LCLLC borrowed $1.6 million for the construction and carrying costs of each new home. The LLC also borrowed an additional $1.6 million to finance the balance of the purchase price for the land for the Project. In the aggregate, the LLC has

3

borrowed $4.8 million of which $3.2 million has been expended by Vadim Kagan, purportedly to finance construction and carrying costs for the Project. True copies of the two mortgages are attached hereto as **Exhibits 3 and 4.**

19.     At no time since October 25, 2012 did Mr. Kagan ever provide to Mr. Filippov or Mr. Lipetsker an updated budget or forecast for the costs of the Project. At no time during the construction of the homes did Mr. Kagan ever tell Mr. Filippov or Mr. Lipetsker that there were any cost overruns on either of the new homes. As recently as April 2015, Mr. Kagan expressly told Mr. Filippov that the construction and carrying costs for the two new homes were within budget.

20.     Throughout the life of the Project, Mr. Kagan had check-writing authority on the LCLLC bank account and drew funds from the account at will. Mr. Filippov monitored the withdrawal of funds from the account and tried to keep the books for the Project, but Mr. Kagan failed and refused to provide any invoices, receipts or other documentation for his withdrawals from the account. As of the date of this Complaint, Mr. Kagan has drawn down essentially all of the $3.2 million borrowed by LCLLC purportedly to finance construction and carrying costs, but has provided almost no documentation to support his expenditures.

21.     Under the express terms of the LLC Agreement, Mr. Kagan was responsible for completing construction of the two new homes no later than March 30, 2014 in accordance with plans and drawings approved by Mr. Filippov.

22.     Mr. Kagan failed to complete the construction of the two new homes on or before March 30, 2014. On the contrary, construction was not complete until October 2014.

23.     The address of one of the new homes is 55 Lyman Road, Brookline, Massachusetts.

4

24.     The address of the second of the new homes is 88 Cutler Lane, Chestnut Hill, Massachusetts.

25.     The Project plan was to sell the two new homes by no later than November 2014 for projected selling prices of $4,900,000 each.

26.     Mr. Kagan's wife, Defendant Tatiana Kagan, is a real estate agent affiliated with Defendant Century 21. Mrs. Kagan is also an officer and director of Kagan Development.

27.     At Mr. Kagan's request, Mr. Filippov and Mr. Lipetsker agreed that LCLLC would list the new homes for sale with Mrs. Kagan. The LCLLC Agreement, however, provided that the obligation to use Mrs. Kagan expired on December 31, 2014 and that only Mr. Filippov as managing member had the authority to retain real estate brokers for the sale of the new homes.

28.     Without consulting Mr. Filippov or Mr. Lipetsker, the Kagans set the selling price for each home at $5,499,000, or nearly $600,000 higher than the budgeted selling price for each home. As of the date of this Complaint, neither home has been sold.

29.     Upon information and belief, based upon a statement by another real estate broker in the Brookline area, in or about March 2015, a potential buyer made a bona fide offer of $4.5 million to buy the new home located at 88 Cutler Road, which Mrs. Kagan failed to present to Mr. Filippov to consider.

30.     Upon information and belief, Mrs. Kagan rejected the offer and countered at $5 million, all without informing Mr. Filippov that an offer had been received. She thereby breached her duty to the Company as a real estate agent. The buyer has since purchased another home.

31.     By late April 2015, with the homes still unsold, Mr. Kagan called Mr. Filippov and asked him to sign a new listing agreement with his wife to continue to try to sell the two new

homes. Unhappy that the homes remained unsold months beyond the Project's planned completion date, Mr. Fillipov refused and stated his intention to seek other assistance.

32.     Without any authority whatsoever, and with actual knowledge that Mr. Filippov had the sole authority to retain real estate brokers and that he had refused to sign the listing agreement with Mrs. Kagan, Mr. Kagan executed a purported listing agreement with Century 21 shortly after Mr. Filippov refused to sign the agreement. A true copy of the unauthorized listing agreement is attached hereto as **Exhibit 5.**

33.     Upon information and belief, based upon the fact that the Kagans are married and business partners, Mrs. Kagan also knew or should have known that her husband did not have authority to sign the listing agreement and that Mr. Filippov had refused to sign it.

34.     Because Mrs. Kagan is an agent of Century 21 Commonwealth, Mrs. Kagan's knowledge is attributable to Century 21 Commonwealth.

35.     After signing the unauthorized listing agreement, Mr. Kagan forwarded a copy to Mr. Filippov purporting to have signed it as they agreed. This statement is false. Mr. Filippov never agreed that Mr. Kagan could sign the listing agreement; he expressly refused to sign it himself.

36.     Shortly after that, on May 7, 2015 Mr. Kagan, through counsel, wrote to Mr. Filippov making fabricated claims that Mr. Filippov had set the listing price for the two new homes and had refused to reduce the price. To the contrary, the Kagans set the selling price without ever consulting Mr. Filippov or Mr. Lipetsker (and indeed responded to an offer in March 2015 without ever informing Mr. Filippov or Mr. Lipetsker). A true copy of the letter from Mr. Kagan's attorney is attached to this Complaint as **Exhibit 6** (the "May Letter").

37.     In addition, Mr. Kagan claimed for the first time that he had cost overruns on the Project adding up to over $1 million and announced that he would no longer meet his obligation to pay for the carrying costs on the Project as required by Article 8.1 of the LCLLC Agreement.

38.     Upon information and belief, the Kagans knew that their demands in the May Letter would engender a dispute with the Company and the other members, Mr. Fillipov and Mr. Lipetsker, and they knowingly and intentionally entered into the fraudulent, unauthorized listing agreement shortly before sending the letter knowing full well that Mr. Filippov had refused to sign it.

## COUNT I

### BREACH OF CONTRACT by the COMPANY against VADIM KAGAN

39.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

40.     The LLC Agreement is a binding agreement, which states the Parties' rights, obligations and authority to act on behalf of the LLC.

41.     Mr. Kagan has breached the LLC Agreement in multiple ways, including, without limitation by:

      a.   Failing to complete construction of the new homes on time;

      b.   Signing a listing agreement with his wife, Tatiana Kagan, that he knew he lacked authority to sign;

      c.   Shortly thereafter asserting substantial claims against the Company for unauthorized, untimely and unsubstantiated cost overruns; and

      d.   Refusing to honor his obligation to pay the monthly carrying costs when the new homes did not sell within 23 months of the date of acquisition.

42.     As a result of Mr. Kagan's breach of the LLC Agreement, the Company has suffered

damages in an amount to be determined at trial.

## COUNT II

**BREACH OF FIDUCIARY DUTY by the COMPANY against VADIM KAGAN**

43.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

44.     At all relevant times, Mr. Kagan has owed a fiduciary duty to the Company.

45.     Mr. Kagan has breached his fiduciary duty to the Company by the conduct described in

this Complaint.

46.     As a result of Mr. Kagan's breaches of his fiduciary duty to them, Plaintiff has suffered

damages for which Mr. Kagan is liable in an amount to be determined at trial.

## COUNT III

**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY by the COMPANY against
TATIANA KAGAN and CENTURY 21 COMMONWEALTH**

47.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

48.     Tatiana Kagan and Century 21 Commonwealth knowingly and intentionally aided and

abetted Mr. Kagan's breach of his fiduciary duty to the Company.

49.     As a result of aiding and abetting Mr. Kagan's breach of fiduciary duty, Plaintiff has

suffered damages for which Tatiana Kagan and Century 21 Commonwealth are liable in an amount to

be determined at trial.

## COUNT IV

**FRAUD by the COMPANY against CENTURY 21 COMMONWEALTH, VADIM
KAGAN and TATIANA KAGAN**

50.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

51.     Mr. Kagan knowingly and intentionally executed a listing agreement with his wife, Tatiana Kagan, that he knew Mr. Filippov had refused to sign, shortly before disavowing his obligation to pay the carrying costs for the Project and asserting substantial unauthorized, untimely and undocumented claims against the Company for cost overruns.

52.     After signing the listing agreement with actual knowledge that it was unauthorized, Mr. Kagan has falsely stated that Mr. Fillipov authorized him to sign the listing agreement.

53.     Upon information and belief, Tatiana Kagan knows that her husband did not have authority to sign the listing agreement with her and her knowledge is attributable to Century 21 Commonwealth.

54.     As a result of this fraudulent conduct by the Kagans, the Company has suffered and may suffer further damages for which the Kagans should be held liable in an amount to be determined at trial.

## COUNT V

### CONSPIRACY against VADIM KAGAN, TATIANA KAGAN, and CENTURY 21 COMMONWEALTH

55.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

56.     Through the conduct described herein, Vadim Kagan, Tatiana Kagan and Century 21 Commonwealth have conspired to execute a knowingly fraudulent and unauthorized listing agreement.

57.     As a result of their unlawful conduct in furtherance of their conspiracy, each co-conspirator is jointly and severally liable to the Company for damages in an amount to be determined at trial.

## COUNT VI

### VIOLATION OF M.G.L. ch. 93A by the COMPANY against TATIANA KAGAN and CENTURY 21 COMMONWEALTH

58.    Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

59.    By asserting a knowingly unauthorized and fraudulent listing agreement against the Company, Tatiana Kagan and Century 21 Commonwealth have violated M.G.L. ch. 93A.

60.    By asserting knowingly fraudulent charges against the Company, Kagan Development has violated M.G.L. ch. 93A.

61.    For their violations of M.G.L. ch. 93A, Defendants Tatiana Kagan, Kagan Development and Century 21 Commonwealth are liable to the Company in an amount to be determined at trial, together with multiple damages and attorneys' fees.

## COUNT VII

### DECLARATORY JUDGMENT

62.    Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

63.    The parties have a bona fide dispute about their rights and obligations under the listing agreement, which constitutes a cloud on the title of the Properties, and which the Court can resolve by declaring the rights and duties thereunder.

64.    The Court should declare that:

a.    Vadim Kagan had no authority to execute the listing agreement and that the listing agreement is invalid;

b.    Vadim Kagan is liable for the carrying costs he is currently refusing to pay; and

c.    Article VIII of the LCLLC Agreement    allows the Company to reduce Vadim Kagan's share of the profits as a result of his wrongful conduct.

10

## COUNT VIII

**PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF by the COMPANY against
TATIANA KAGAN and CENTURY 21 COMMONWEALTH**

65.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

66.     Despite having had the opportunity to sell the two new homes since October 2014,
Tatiana Kagan and Century 21 Commonwealth have failed to do so.  In that time, they have failed to
honor their obligation to present a bona fide offer to the managing member (and only party authorized
to sell the two new homes), and have engaged in a conspiracy with Vadim Kagan to execute a
fraudulent, unauthorized listing agreement.

67.     Despite repeated demand, Century 21 Commonwealth has refused to remove its listings
for the two new homes from the multiple listing service, refused to acknowledge the invalidity of the
listing agreement and has blocked the Company from retaining new brokers in whom it has confidence
to sell the two new homes.

68.     The Company has interviewed and has two other brokers lined up to take over selling
the two homes, but cannot do so because Century 21 Commonwealth refuses to remove its listings
from the multiple listing service.

69.     The Company does not trust Mrs. Kagan or Century 21 Commonwealth and does not
believe they are suited to selling these properties.

70.     The selling season is passing rapidly and the Company will suffer potentially
irreparable harm if it cannot list the two new homes promptly with brokers of its choosing.

71.     The Court should order Century 21 to remove its listings for the two new homes from
the multiple listing service and cease and desist from any actions to block the retention of new brokers
and sale of the two new homes.

11

**WHEREFORE**, Lyman-Cutler LLC asks that the Court:

A. Enter preliminary and permanent injunctive relief ordering Defendants Century 21 Commonwealth and Tatiana Kagan to remove their listing of the Properties from the Multiple Listing Service and cease and desist from any actions of any kind whatsoever to prevent LCLLC from listing the Properties for sale with other brokers;

B. Enter judgment in the Plaintiff's favor and against all Defendants in an amount sufficient to compensate Lyman Plaintiffs fully, plus interest and costs;

C. Award the Plaintiff triple damages and attorneys' fees against Century 21 Commonwealth and Tatiana Kagan; and

D. Grant them such other and further relief as is just or appropriate.


**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**


LYMAN-CUTLER, LLC,

By its attorneys,

Sean T. Carnathan (BBO # 636889)
scarnathan@ocmlaw.net
Joseph Calandrelli (BBO # 666128)
jcalandrelli@ocmlaw.net
O'Connor Carnathan and Mack LLC
1 Van De Graaff Drive, Suite 104
Burlington, MA 01803
Telephone: 781.359.9000
Facsimile: 781.359.90001

Dated: June 5, 2015

<u>Verification</u>

I, Alex Filippov, under the pains and penalties of perjury state that I am the managing member of the plaintiff, Lyman-Cutler LLC, that I am authorized to sign this verification on behalf of the company, and that the foregoing factual statements are true and accurate to the best of my knowledge.

_____
Alex Filippov

4837-5048-9380, v. 1

13

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 1581CV03977

|  |  |
|---|---|
| LYMAN-CUTLER, LLC, ALEX FILIPPOV, and NICKOLAY LIPETSKER,<br><br>          Plaintiffs,<br><br>   v.<br><br>VADIM KAGAN, TATIANA KAGAN, CENTURY 21 COMMONWEALTH, KAGAN DEVELOPMENT KDC, CORP. and PROEXCAVATION CORP.<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## FIRST AMENDED COMPLAINT

Plaintiffs Lyman-Cutler, LLC, Alex Filippov, and Nickolay Lipetsker (together "Plaintiffs") bring this Complaint against Defendants Vadim Kagan, Tatiana Kagan, Kagan Development KDC, Corp., ProExcavation Corp., and Century 21 Commonwealth (together, "the Kagan Defendants") and state as follows:

## INTRODUCTION

1.     Plaintiffs bring this action for injunctive relief and to recover damages for breach of contract, breach of fiduciary duty, fraud and related claims, arising out of the willful and intentional misconduct of husband and wife Vadim and Tatiana Kagan and entities they control or are affiliated with.  The Kagan Defendants have acted together in a self-dealing conspiracy to defraud the Plaintiffs by knowingly and intentionally inflating purported construction charges and executing knowingly unauthorized and fraudulent contracts, including a purported contract

between Plaintiff Lyman-Cutler, LLC and KDC and a listing agreement for two homes owned by the Plaintiff Lyman-Cutler LLC, which is a joint venture among Alex Filippov and Nickolay Lipetsker and Defendant Vadim Kagan. Most recently, the Kagans have caused KDC to file a wholly false and fraudulent mechanics lien against the Plaintiffs' properties in a bad faith effort to force the Plaintiffs to pay their fraudulent construction charges.

## PARTIES

2.      Plaintiff Lyman-Cutler LLC ("LCLLC" or the "Company") is a Massachusetts limited liability formed in November 2012 with a principal place of business in Belmont, Massachusetts.

3.      Plaintiff Alex Filippov is an individual residing in Belmont, Massachusetts.

4.      Plaintiff Nickolay Lipetsker is an individual residing in Newton, Massachusetts.

5.      Defendant Vadim Kagan is an individual residing in Newton, Massachusetts.

6.      Defendant Tatiana Kagan is an individual residing in Newton, Massachusetts.

7.      Defendant Century 21 Commonwealth ("Century 21") is a Delaware limited liability company with an office in Brookline, Massachusetts.

8.      Defendant Kagan Development KDC, Corp. ("KDC") is a Massachusetts corporation with a principal place of business in Newton, Massachusetts.

9.      Defendant ProExcavation is a Massachusetts corporation with a principal place of business in Newton, Massachusetts.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over the Defendants pursuant to G.L. c. 223A, § 2, because the Defendants reside or maintain their principal place of business in Massachusetts.

11.    Venue is proper in this court pursuant to G.L. c. 223, § 1, because the Plaintiffs
and Defendants other than Century 21 reside or have a principal place of business in Middlesex
County.

## FACTUAL BACKGROUND

12.    In October 2012, Mr. Lipetsker and Mr. Kagan approached Mr. Filippov and
asked him to invest in a real estate development project they planned for a property in Brookline,
Massachusetts (the "Project").

13.    In general terms, the Project involved the purchase of land in Brookline,
Massachusetts to subdivide into two parcels and then construct on each separate parcel a high-
end single family home.

14.    Mr. Lipetsker and Mr. Filippov were investors in the Project and Mr. Kagan was
to serve as the general contractor for the Project.

15.    On or about October 25, 2012, as an inducement to Mr. Filippov and Mr.
Lipetsker invest in the Project, Mr. Kagan presented to Mr. Filippov and Mr. Lipetsker a detailed
budget and forecast of estimated returns on an investment in the Project (the "Kagan
Presentation"). A true copy of the presentation is attached to this Complaint as **Exhibit 1**.

16.    Mr. Filippov and Mr. Lipetsker reasonably relied upon the Kagan Presentation in
making their decision to invest in the Project. Mr. Filippov invested $2 million and Mr.
Lipetsker invested $250,000.

17.    In November 2012, Mr. Kagan, Mr. Filippov and Mr. Lipetsker formed a
Massachusetts limited liability company, Plaintiff Lyman-Cutler LLC. A true copy of the LLC
Operating Agreement is attached to this Complaint as **Exhibit 2**.

18.     In return for their respective investments, Mr. Filippov received an 80% interest in the Company, and Mr. Kagan and Mr. Lipetsker each received 10%.

19.     The LCLLC Operating Agreement expressly names Mr. Filippov as the managing member, and expressly enumerates his rights and authority as managing member, including the exclusive authority to control the sale of the two new homes and the retention of any real estate brokers to sell them.

20.     Mr. Kagan's budget for the Project required $1.3 million for the construction of each home. The budget forecast the need for an additional $200,000 for the "carrying costs" for the properties until such time as they could be sold, for a total budget for the construction, carrying and sale of each new home of $1.5 million.

21.     When it came time to borrow the additional funds necessary for the Project, Mr. Kagan persuaded Mr. Filippov that they should borrow an additional $100,000 for each new home for unexpected costs over and above the budget. Mr. Filippov agreed.

22.     Accordingly, LCLLC borrowed $1.6 million for the construction and carrying costs of each new home. LCLLC also borrowed an additional $1.6 million to finance the balance of the purchase price for the land for the Project. In the aggregate, the Company has borrowed $4.8 million. True copies of the two mortgages are attached hereto as **Exhibits 3 and 4**.

23.     At no time since October 25, 2012 did Mr. Kagan ever provide to Mr. Filippov or Mr. Lipetsker an updated budget or forecast for the costs of the Project. At no time during the construction of the homes did Mr. Kagan ever tell Mr. Filippov or Mr. Lipetsker that there were any cost overruns on either of the new homes. As recently as April 2015, Mr. Kagan expressly told Mr. Filippov that the construction and carrying costs for the two new homes were within budget.

24.     Throughout the life of the Project, Mr. Kagan had check-writing authority on the LCLLC bank account and drew funds from the account at will. Mr. Filippov monitored the withdrawal of funds from the account and tried to keep the books for the Project, but Mr. Kagan failed and refused to provide any invoices, receipts or other documentation for his withdrawals from the account. To this day, Mr. Kagan has failed to provide any invoices, receipts or other documentation of his purported construction costs.

25.     As of the date of the original Complaint, Mr. Kagan had drawn down essentially all of the $3.2 million borrowed by LCLLC to finance the construction and carrying costs. The lion's share of this sum was paid to KDC, ProExcavation and to subcontractors hired by KDC to perform the construction of the Lyman-Cutler properties.

26.     Under the express terms of the LLC Agreement, Mr. Kagan was responsible for completing construction of the two new homes no later than March 30, 2014 in accordance with plans and drawings approved by Mr. Filippov.

27.     Mr. Kagan failed to complete the construction of the two new homes on or before March 30, 2014. On the contrary, construction was not complete until October 2014.

28.     The Project plan was to sell the two new homes by no later than November 2014 for projected selling prices of $4,900,000 each.

29.     Mr. Kagan's wife, Defendant Tatiana Kagan, is a real estate agent affiliated with Defendant Century 21. Mrs. Kagan is also an officer and director of KDC.

30.     At Mr. Kagan's request, Mr. Filippov and Mr. Lipetsker agreed that LCLLC would list the new homes for sale with Mrs. Kagan. The LCLLC Agreement, however, provided that the obligation to use Mrs. Kagan expired on December 31, 2014 and that only Mr. Filippov as managing member had the authority to retain real estate brokers for the sale of the new homes.

31.     Without consulting Mr. Filippov or Mr. Lipetsker, the Kagans set the selling price for each home at $5,499,000, or nearly $600,000 higher than the budgeted selling price for each home. As of the date of this Complaint, neither home has been sold.

32.     Upon information and belief, based upon a statement by another real estate broker in the Brookline area, in or about March 2015, a potential buyer made a bona fide offer of $4.5 million to buy the new home located at 88 Cutler Road, which Mrs. Kagan failed to present to Mr. Filippov to consider.

33.     Upon information and belief, Mrs. Kagan rejected the offer and countered at $5 million, all without informing Mr. Filippov that an offer had been received. She thereby breached her duty to the Company as a real estate agent. The buyer has since purchased another home.

34.     By late April 2015, with the homes still unsold, and Mrs. Kagan doing little or nothing to market them actively, Mr. Kagan called Mr. Filippov and asked him to sign a new listing agreement with his wife to continue to try to sell the two new homes. Unhappy that the homes remained unsold months beyond the Project's planned completion date, Mr. Filippov refused and stated his intention to seek other assistance.

35.     Without any authority whatsoever, and with actual knowledge that Mr. Filippov had the sole authority to retain real estate brokers and that he had refused to sign the listing agreement with Mrs. Kagan, Mr. Kagan executed a purported listing agreement with Century 21 shortly after Mr. Filippov refused to sign the agreement. A true copy of the unauthorized listing agreement is attached hereto as **Exhibit 5**.

36.     Upon information and belief, based upon the fact that the Kagans are married and business partners, Mrs. Kagan also knew or should have known that her husband did not have authority to sign the listing agreement and that Mr. Filippov had refused to sign it.

37.     Because Mrs. Kagan is an agent of Century 21, Mrs. Kagan's knowledge is attributable to Century 21.

38.     Shortly after signing the unauthorized listing agreement, on May 7, 2015 Mr. Kagan, through counsel, wrote to Mr. Filippov making fabricated claims that Mr. Filippov had set the listing price for the two new homes and had refused to reduce the price.  To the contrary, the Kagans set the selling price without ever consulting Mr. Filippov or Mr. Lipetsker (and indeed responded to an offer in March 2015 without ever informing Mr. Filippov or Mr. Lipetsker).  A true copy of the letter from Mr. Kagan's attorney is attached to this Complaint as **Exhibit 6** (the "May Letter").

39.     In addition, Mr. Kagan claimed for the first time that he had cost overruns on the Project adding up to over $1 million and announced that he would no longer meet his obligation to pay for the carrying costs on the Project as required by Article 8.1 of the LCLLC Agreement.

40.     Upon information and belief, the Kagans knew that their demands in the May Letter would engender a dispute with Mr. Filippov and Mr. Lipetsker and they knowingly and intentionally entered into the fraudulent, unauthorized listing agreement shortly before sending the letter knowing full well that Mr. Filippov had refused to sign it.

41.     After the filing of the original Complaint in this action and in connection with prior proceedings in which LCLLC sought injunctive relief, the Defendants produced for the very first time another listing agreement, purportedly signed on August 12, 2014 by Vadim Kagan granting an exclusive listing to Century 21 and his wife, Tatiana, for a term of

approximately 18 months, extending through March 1, 2016. A true copy of this purported listing agreement is attached hereto as **Exhibit 7**.

42.      Kagan knew or should have known at the time that he executed this listing agreement that he had authority to retain his wife, Tatiana, as the exclusive agent to sell the properties only through December 31, 2014. Mrs. Kagan also knew or should have known that her husband had no authority to sign a listing agreement extending beyond December 31, 2014.

43.      Prior to the service of this document upon counsel for LCLLC in connection with the hearing on the motion for preliminary injunction on June 11, 2015, neither Mr. Filippov nor Mr. Lipetsker had ever seen or been informed about the purported August 2014 listing agreement.

44.      Upon information and belief, eighteen months is three times as long as the industry standard for an exclusive listing agreement.

45.      Two weeks after the hearing on the motion for injunctive relief and before the Defendants answered the original Complaint in this matter, on or about June 22, 2015, Kagan caused his company, KDC, to file a mechanics lien against the Company's properties, asserting a lien in the amount of $2,095,985.23 (the "Mechanics Lien") -- nearly triple the amount he had asserted in unreimbursed construction costs as of May 7, 2015 when he claimed that the unreimbursed construction costs amounted to $758,025.56. See **Exhibit 6** hereto. A true copy of the Mechanics Lien is attached hereto as **Exhibit 8**.

46.      In addition to falsely asserting that the unreimbursed construction costs tripled in a six-week period some eight months after construction was completed in October 2014, the Mechanics Lien purports to arise out of a contract between the Company and KDC dated June 24, 2013. As of the date of this Amended Complaint, neither Mr. Filippov nor Mr. Lipetsker has

ever seen the purported June 2013 contract. The first time they were ever informed about it was in when it was cited in the Mechanics Lien.

47.      Since receiving the Mechanics Lien, Mr. Filippov and Mr. Lipetsker have requested a copy of the purported June 2013 contract, but no copy has been provided. To the extent this contract exists, it is an undisclosed, self-dealing contract signed by Mr. Kagan in favor of his own company, KDC.

48.      Since commencing this action, Plaintiff has interviewed several witnesses who are former investors in Kagan projects and who have reported that they experienced the same type of fraudulent conduct by Mr. Kagan in connection with their projects as the Plaintiffs are experiencing. Specifically, multiple witnesses report that Kagan presented them with a budget at the outset of the project, assured them that everything was within budget until long after construction was complete and shortly before the homes sold, and then announced extensive cost overruns and either filed a lien or threatened to file a lien unless they agreed to the payment of these last minute purported cost overruns.

49.      In addition, since commencing this action, Plaintiffs have interviewed KDC's former bookkeeper, who reports that Kagan uses ProExcavation as a vehicle to double-bill expenses to his projects, mixes expenses for projects on his American Express card and pockets himself funds received for return of unused materials, does not keep accurate records of his subcontracting costs, receives cash kickbacks from some of his subcontractors, and intentionally inflates excavation charges.

50.      Upon information and belief based upon the facts recited above, the Mechanics Lien and the cost overruns asserted by Kagan through KDC and ProExcavation are false and fraudulent.

51.     Upon information and belief based upon the facts recited above, Kagan, KDC and ProExcavation use the extortionate tactics described herein intentionally and plan to do so throughout each project.  They intentionally mislead investors into investing in the project and mislead them into believing that the project is within budget, planning all along to inflate the construction costs and wrongfully force them to accept those costs through falsified claims for construction and carrying costs and untimely and fraudulent mechanics liens.  They have done exactly that to the Plaintiffs in this case.

52.     Construction on both of the properties was completed in October 2014, making the filing of the Mechanics Lien by KDC untimely.  Upon information and belief based upon the facts recited above, to the extent that any work was done by KDC on the properties within the statutory period to support a Mechanics Lien, such work was done in bad faith to support the assertion of this fraudulent Mechanics Lien.

53.     Recent inspection of the properties also revealed shoddy and defective construction, causing property damage and requiring significant expense to correct.  The properties have never been properly prepared or staged for sale.  The failure to build the properties in a workmanlike manner and to act professionally in connection with the sale of the properties is all directly attributable to the professional negligence of the Defendants.

## COUNT I

### BREACH OF CONTRACT by the COMPANY against VADIM KAGAN

54.     Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

55.     The LLC Agreement is a binding agreement among the parties, which states their rights, obligations and authority to act on behalf of the LLC.

56.     Mr. Kagan has breached the LLC Agreement in multiple ways, including, without limitation by:

    a.  Failing to complete construction of the new homes on time;

    b.  Signing listing agreements with his wife, Tatiana Kagan, that he knew he lacked authority to sign;

    c.  Signing a contract with KDC without ever submitting it to the other members for review and approval;

    d.  Asserting claims against the Company for unauthorized, untimely and unsubstantiated cost overruns;

    e.  Double billing the Plaintiff and otherwise falsifying claims for construction costs; and

    f.  Refusing to honor his obligation to pay the monthly carrying costs when the new homes did not sell within 23 months of the date of acquisition.

57.     As a result of Mr. Kagan's breach of the LLC Agreement, the Company has suffered damages in an amount to be determined at trial.

## COUNT II

### BREACH OF FIDUCIARY DUTY by the PLAINTIFFS against VADIM KAGAN

58.     Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

59.     At all relevant times, Mr. Kagan has owed a fiduciary duty to each of the Plaintiffs.

60.     Mr. Kagan has breached his fiduciary duty to each of the Plaintiffs by the conduct described in this Complaint.

61.    As a result of Mr. Kagan's breaches of his fiduciary duty to them, Plaintiffs have
suffered damages for which Mr. Kagan is liable in an amount to be determined at trial.

## COUNT III

### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY by the PLAINTIFFS against TATIANA KAGAN, CENTURY 21 COMMONWEALTH, KDC and PROEXCAVATION

62.    Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

63.    Tatiana Kagan, Century 21 Commonwealth, KDC and ProExcavation knowingly
and intentionally aided and abetted Mr. Kagan's breach of his fiduciary duty to the Plaintiffs.

64.    As a result of aiding and abetting Mr. Kagan's breach of fiduciary duty, Plaintiffs
have suffered damages for which Tatiana Kagan, Century 21 Commonwealth, KDC and
ProExcavation are liable in an amount to be determined at trial.

## COUNT IV

### FRAUD by the COMPANY against ALL DEFENDANTS

65.    Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

66.    Mr. Kagan knowingly and intentionally executed a listing agreement with his wife
in August 2014, with actual or constructive knowledge that he had no authority to execute an 18-
month listing agreement.

67.    Mr. Kagan knowingly and intentionally executed a listing agreement with his
wife, Tatiana Kagan, that he knew Mr. Filippov had refused to sign, shortly before disavowing
his obligation to pay the carrying costs for the Project and asserting substantial unauthorized,
untimely and undocumented claims against the Company for cost overruns.

68.    After signing the listing agreement with actual knowledge that it was unauthorized, Mr. Kagan has falsely stated that Mr. Filippov authorized him to sign the listing agreement.

69.    Upon information and belief, Tatiana Kagan knows that her husband did not have authority to sign either of the listing agreements with her and her knowledge is attributable to Century 21 Commonwealth.

70.    Mr. Kagan has used KDC and ProExcavation to assert false and fraudulent charges for construction costs against the Company and has caused KDC to file a false and fraudulent mechanics lien against the Company's properties.

71.    As a result of this fraudulent conduct by the Kagans, the Company has suffered and may suffer further damages for which the Kagans should be held liable in an amount to be determined at trial.

## COUNT V

### CONSPIRACY against ALL DEFENDANTS

72.    Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

73.    Through the conduct described herein, the Defendants have conspired to defraud the Company.

74.    As a result of their unlawful conduct in furtherance of their conspiracy, each co-conspirator is jointly and severally liable to the Plaintiffs for damages in an amount to be determined at trial.

## COUNT VI

### VIOLATION OF M.G.L. ch. 93A by the COMPANY against TATIANA KAGAN, CENTURY 21 COMMONWEALTH, KDC and PROEXCAVATION

75.    Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

76.     By asserting two knowingly unauthorized and fraudulent listing agreements against the Company, Tatiana Kagan and Century 21 Commonwealth have violated M.G.L. ch. 93A.

77.     By asserting knowingly fraudulent charges against the Company, KDC and ProExcavation have violated M.G.L. ch. 93A.

78.     By filing a fraudulent Mechanics Lien against the Properties, KDC has violated M.G.L. ch. 93A.

79.     For their violations of M.G.L. ch. 93A, Defendants Tatiana Kagan, Century 21 Commonwealth, KDC and ProExcavation are liable to the Company in an amount to be determined at trial, together with multiple damages and attorneys' fees.

## COUNT VII

## DECLARATORY JUDGMENT

80.     Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

81.     The parties have a bona fide dispute about their rights and obligations under the listing agreement, which constitutes a cloud on the title of the Properties, and which the Court can resolve by declaring the rights and duties thereunder.

82.     The Court should declare that:

      a.     Vadim Kagan had no authority to execute the listing agreements and that the listing agreements are invalid;

      b.     Vadim Kagan had no authority to execute any contract with KDC without submitting that contract to the other members of the LLC for review and approval;

c.     Vadim Kagan is responsible for all carrying costs with regard to

the properties; and

d.     Article VIII of the LCLLC Agreement allows the Company to

reduce Vadim Kagan's share of the profits as a result of his

wrongful conduct, including by charging the attorneys' fees and

costs incurred in connection with this litigation against his share of

the Company profits (if any).

## COUNT VIII

**PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF by the COMPANY against
TATIANA KAGAN and CENTURY 21 COMMONWEALTH**

82.     Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

83.     Despite having had the opportunity to sell the two new homes since October

2014, Tatiana Kagan and Century 21 Commonwealth have failed to do so. In that time, they

have failed to honor their obligation to present a bona fide offer to the managing member (and

only party authorized to sell the two new homes), and have engaged in a conspiracy with Vadim

Kagan to execute a fraudulent, unauthorized listing agreement.

84.     Despite repeated demand, Century 21 Commonwealth has refused to remove its

listings for the two new homes from the multiple listing service, refused to acknowledge the

invalidity of the listing agreement and has blocked the Company from retaining new brokers in

whom it has confidence to sell the two new homes.

85.     The selling season is passing rapidly and the Company will suffer potentially

irreparable harm if it cannot list the two new homes promptly with brokers of its choosing.

Century 21 has not provided competent professional real estate brokerage services and has

breached its duty to present offers to the property owner.

86.     The Court should order Century 21 to remove its listings for the two new homes from the multiple listing service and cease and desist from any actions to block the retention of new brokers and sale of the two new homes.

87.     The Court should further declare in equity that Century 21 is entitled to no commission based on the unauthorized listing agreements.

## COUNT IX

### PROFESSIONAL NEGLIGENCE by the COMPANY against TATIANA KAGAN AND CENTURY 21

88.     Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

89.     Tatiana Kagan and Century 21 have failed to perform their duties in accordance with reasonable standards of professional care and loyalty.

90.     As a result of their failure to meet professional standards of conduct, the Properties remain unsold and the Company has suffered increased carrying costs for which Tatiana Kagan and Century 21 are properly held liable.

## COUNT X

### BREACH OF CONTRACT by the COMPANY against KDC

91.     Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

92.     LCLLC entered into a contract with Defendant KDC that required, among other things, that KDC perform its work in a good and workmanlike manner.

93.     KDC breached its contract by failing to complete its work in a good and workmanlike manner.

94.     As a result of KDC's failure to complete construction in a good and workmanlike manner, LCLLC has suffered and is suffering damages in connection with remedying the shoddy construction for which KDC is properly held liable.

## COUNT XI

### NEGLIGENCE by the COMPANY against KDC

95.  Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

96.  KDC owed a duty to LCLLC to perform its work in a good and workmanlike manner and in accordance with industry standards.

97.  KDC breached its duty by performing substandard and deficient work.

98.  KDC's breach has caused LCLLC damages in the form of property damage and remedial costs, among other things.

WHEREFORE, Plaintiffs ask that the Court:

A.  Enter preliminary and permanent injunctive relief ordering Defendants Century 21 Commonwealth and Tatiana Kagan to remove their listing of the Properties from the Multiple Listing Service and cease and desist from any actions of any kind whatsoever to prevent LCLLC from listing the Properties for sale with other brokers;

B.  Declare the false and fraudulent Mechanics Lien void;

C.  Enter judgment in the Plaintiff's favor and against all Defendants in an amount sufficient to compensate Plaintiffs fully, plus interest and costs;

D.  Award the Plaintiff triple damages and attorneys' fees against Century 21 Commonwealth, Tatiana Kagan, KDC and ProExcavation;

E.  Issue a declaratory judgment declaring the rights and obligations of the parties; and

F.  Grant them such other and further relief as is just or appropriate.

PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

LYMAN CUTLER, LLC, ALEX FILIPPOV and
NICKOLAY LIPETSKER

By their attorneys,

_____
Sean T. Carnathan (BBO # 636889)
scarnathan@ocmlaw.net
Joseph Calandrelli (BBO #666128)
jcalandrelli@ocmlaw.net
O'Connor Carnathan and Mack LLC
1 Van De Graaff Drive, Suite 104
Burlington, MA 01803
Telephone: 781.359.9000
Facsimile: 781.359.90001

Dated: July 10, 2015

4812-5784-0421, v. 1