UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

| | |
|---|---|
| In re:<br><br>LYMAN-CUTLER, LLC,<br><br>    Debtor. | Chapter 7<br>Case No. 15-13881-FJB |
| LYMAN-CUTLER, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>VADIM KAGAN, TATIANA KAGAN,<br>KAGAN DEVELOPMENT KDC, CORP.<br>and PROEXCAVATION CORP.<br><br>    Defendants. | Adv. Case No. 16-01120-FJB |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
ADVERSARY COMPLAINT AND SPECIAL MOTION TO DISMISS BASED
ON THE MASSACHUSETTS ANTI-SLAPP STATUTE**

Defendants[1] hereby submit this brief Reply Memorandum in response to the Plaintiff's Opposition to Defendants' Motion to Dismiss filed by Lyman-Cutler, LLC (the "Debtor") (the "Debtor's Opposition") [Docket No. 22].[2]

---

[1] Any capitalized terms herein shall have the same meaning as set forth in Defendants' Memorandum in Support of its Motion ("Defendants' Memorandum") [Docket No. 14].

[2] Under the Scheduling and Pretrial Order [Docket No. 8], any opposition to the Defendants' Motion to Dismiss was due on September 9, 2016. The Defendants, the Debtor and the Proposed Intervenors, Alex Filippov and Nickolay Lipetsker, filed a joint motion to extend this deadline to September 16, 2016 [Docket No. 19]. The motion was granted by the Court [Docket No. 20]. The Proposed Intervenors are not signatories to the Debtor's Opposition. The Defendants understand that they participated in its preparation and assume that they have joined in its filing.

{S0847110.4}

**ARGUMENT**

**1. THE DEBTOR RELIES UPON FALSE AVERMENTS**

Recognizing the deficiencies in the Complaint, the Debtor's Opposition improperly relies upon facts outside of the Complaint, most of which are clearly false.[3] For example, the Debtor claims that "Tatiana [Ms. Kagan] is now asserting claims against the LLC for presumably more commissions." (Opp. at 13).  The Debtor then doubles down and asserts "(Tatiana, the Court should note, is still pursuing her personal claim for a commission against the estate.)". (Opp. at 14). In fact, Ms. Kagan has not asserted a claim for a commission against the estate. The sole claim she has asserted is for indemnity [*Claim No. 5*] under the terms of the Operating Agreement, and this has been made clear to the Debtor in prior pleadings. [See Case No. 15-13881, Docket No. 126]. Indeed, the Debtor's objection to Ms. Kagan's claim (filed on July 21, 2016, Docket No. 141) addresses only the indemnification claim and says nothing about any claim for a commission.

As to ProExcavation, the Debtor states "ProExcavation also fraudulently overbilled the LLC," yet another false assertion. (Opp. at 10).  ProExcavation was a subcontractor to KDC. It never billed the Debtor anything. It billed KDC. The Debtor purposely misconstrues the facts in its shotgun approach of naming anyone or anything that has any relationship whatsoever with Kagan.

---

[3] The Debtor accuses the Defendants of doing the same, although the Defendants' reliance upon documents such as the Operating Agreement which are not in dispute is entirely proper on a Motion to Dismiss. See Marram v. Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996); Wong v. Resolve Tech., Civil Action No. 10-11642-DJC, 2011 WL 3157198, at *1 n.1 (D. Mass. July 25, 2011); Young v. Lepone, 305 F.3d 1, 11 (1st Cir. 2002) (allowing consideration of documents submitted by defendant on motion to dismiss where the complaint contained references to" the documents and "the factual allegations of [the] complaint revolve around" the documents).

## 2. THE DEBTOR HAS NOT PLED FRAUD WITH PARTICULARITY

Essentially conceding that the Complaint does not meet the particularity requirements of Rule 9(b), the Debtor improperly relies upon affidavits filed in the earlier state court action. (Opp. at 1-2). That, however, is not the standard. Either the complaint complies with Rule 9(b) or it does not. If there are facts which are necessary to comply with Rule 9(b), they should be stated in the pleading. Otherwise, defendants would be left to guess at what extrinsic filings may be there to fill in the missing blanks.

The Debtor also claims that because the state court's dismissal of the fraud claims for failure to comply with Rule 9(b) was "without prejudice," it is meaningless. (Opp. at 1-2). Presumably, had it had the facts to properly support its fraud claim, the Debtor could have filed an amended complaint in the state court to overcome the Rule 9(b) dismissal. The mere fact that the Debtor did not amend their complaint to flesh out it's assertion of fraud when given the opportunity, demonstrates that it has no supporting facts.

Now, the Debtor has elected to put the same defective complaint before this Court, despite having had discovery in the state court, over a year to conduct an investigation, and already received a judicial analysis determining that the pleading was deficient. Ironically, the Debtor accuses the Defendants of seeking "multiple bites of the same apple." (Opp. at 2). In fact, it is the Debtor that has filed an identical fraud claim which had already been dismissed in the state court. Rather than complying with its obligations under Rule 9(b), the Debtor continues with its conclusory and generalized allegations in the hope that it can generate a claim while needlessly running up attorneys' fees and intent on causing litigation costs for the Defendants.

Relying on United States Funding, Inc. v. Bank Boston Corp., 28 Mass. App. Ct. 404 (1990), the Debtor claims that other torts which rely solely on the fraud, do not have to satisfy

{S0847110.4}    3

the requirements of Rule 9(b) and argues that Defendants' argument to the contrary is "border[ing] on frivolous." (Opp. at 9, n. 3). United States Funding does not support the Debtor's proposition. In United States Funding, the state appeals court reviewed five discrete basis asserted as grounds to strike a complaint and determined that they were all borderline frivolous. As to Rule 9(b) in relation to the Chapter 93A claim plead, the court noted that Chapter 93A encompasses behavior that goes beyond fraud and therefore was outside of the scope of Rule 9(b). However, the United States Funding court was not faced with a claim where the fraud was the sole basis for the Chapter 93A claim nor was it faced with the application of Rule 9(b) to any of the other fraud based torts alleged in this case. Moreover, the federal court disagrees with the Debtor's reading of the application of Rule 9(b). See Zak Law Offices, P.C. v. Reed, No. CIV.A. 10-10333-LTS, 2010 WL 2802068, at *4 (D. Mass. July 13, 2010) ("Reed's claim, albeit brought pursuant to M.G.L. c. 93A, is a claim for fraud, and as such it must satisfy the heightened pleading standards applicable to such claims under Fed. R. Civ. P. 9(b).").[4]

### 3. **THE DEBTOR IS ENGAGED IN A FISHING EXPEDITION**

In response to the Defendants' observation that the Debtor has not identified a single fraudulent billing charge as required to fulfill its obligation to plead with particularity, instead of identifying any of those allegedly false claims, the Debtor demurs and now claims that "this is precisely what discovery is for." (Opp. at 9). The Debtor filed its initial state court action on June 5, 2015 and therefore has had well over a year to find support for its claims. The reason it has failed to do so is because there are no facts to support the allegation of a fraudulent scheme.

The Debtor makes no effort whatsoever to disguise that it has no evidence of any overbilling but rather is engaged in a fishing expedition. The suggestion that its unnamed

---

[4] Zak Law Offices, P.C. is cited in the Defendants' Memorandum (pp. 22- 23). Ignoring this case law and the Defendants' Memorandum, the Debtor asserts that the Defendants cited to no authority for this proposition.

{S0847110.4}                                          4

forensic accountant cannot complete an audit because the Defendants are refusing to produce their QuickBooks is not only factually false but nonsensical. (Id. at Footnote 4). The sole source of income for the Debtor was the construction loans. The Debtor has had unrestricted access to the Bank's documents since the inception of the project, Debtor also has custody of the QuickBooks database from the time that Kagan and KDC were involved, it has received bank statements together with all cancelled checks, and has been provided with four binders containing the actual back-up for each Project expenditure. Thus, Debtor has the primary evidence of all expenditures, certainly enough for any forensic accountant. Additional QuickBook summaries would add nothing to the analysis and, presumably, any competent auditor would prefer to rely on the actual source materials instead of a secondary record such as QuickBooks.

While the use of discovery is appropriate in litigation, the Debtor argues that the prospect of discovery is enough to defeat a motion to dismiss and lends support to its fraud claims. However, courts in the First Circuit have found otherwise, ruling that discovery should not be the basis upon which a fraud claim is permitted to proceed. See Defendants' Memorandum at pp. 14-15, citing Wayne Inv., Inc. v. Gulf Oil Corp., 739 F.2d 11, 14 (1st Cir. 1984) (Rule 9(b) was not satisfied when support for allegation consisted of "speculations from industry analysts" and allowing the allegations of fraud to stand would be tantamount to "issu[ing] a license for a 'fishing expedition' in uncharted waters."); Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996) (one purpose of Rule 9(b) is to "prevent the filing of suits that simply hope to uncover relevant information during discovery").

**4. THE DEBTOR FAILS TO IDENTIFY FACTS NECESSARY TO SUPPORT ITS CLAIMS**

In response to the Defendants' assertion that each of them is entitled to know exactly what each of them did with the requisite particularity required, the Debtor falls back on its mantra that "the claims of fraud are asserted against all of them and each Defendant's participation in the fraud is identified with particularity." (Opp. at 9). Just saying that it is so, does not make it true. This Court need only look at the pleading to see that it is replete with conclusory allegations and a complete lack of specificity. Merely suggesting that a conspiracy to defraud is tantamount to proof of fraud is a circular argument without factual basis. Instead, the Debtor needs to establish the nature of the fraud itself and then demonstrate with sufficient facts, what each individual Defendant did in support of the overarching fraud.

Indeed, the Debtor has yet to provide any support of an indicia of fraud – because no such facts exist. It does not provide a factual basis to challenge the gross costs of the Project, much less suggest what, if any, charges were possibly fraudulent. Further, the Debtor has not provided any support for its allegation of collusion amongst the Defendants other than to suggest that they knew each other or shared (in some cases) principality.

**5. THE DEBTOR STILL FAILS TO DEMONSTRATE RELIANCE ON THE ALLEGEDLY FRAUDULENT ACTS**

Unable to articulate how it relied upon the unspecified fraudulent acts allegedly committed by the Defendants, an essential element of the tort of misrepresentation, the Debtor is attempting to rewrite well settled law and hundreds of years of jurisprudence, and wholly disregard the cases cited in Defendants' Memorandum, to claim that reliance is no longer an element of the tort of fraud. By making this intellectual slight of hand, the Debtor seeks to invent a new tort of "actual fraud" which is somehow different from common law fraud. (Opp.

at 11). To support this incorrect argument it argues "[o]therwise, a fraudulent conveyance could never amount to fraud." (Id.) In fact, without reliance, a fraudulent conveyance cannot meet the definition of common law fraud which is why a claim for fraudulent conveyance is statutory and reliance is omitted as an element of the statutory claim. See Mass. Gen Laws c. 109A, §§5 and 6 (setting forth elements of statutory claim which does not include reliance). Notwithstanding, there is no claim for a fraudulent conveyance in this proceeding and this entire thread of argument should be disregarded.

The cases relied upon by Debtor are inapposite. Not only do they deal with fraudulent conveyances, but cases (from Illinois and Texas) dealing with criminal fraud are simply cited for inflammatory purposes, and provide no support for this new theory of the law of misrepresentation.[5] In contrast, the Defendants have cited multiple cases, from this jurisdiction, which establish that reliance is an essential element of the tort of misrepresentation. See Defendants' Memorandum at p. 16. The failure to establish any reliance on the allegedly fraudulent acts (and any resulting loss on account of that reliance), as noted in the Defendants' Memorandum, mandates dismissal of the fraud and fraud related counts.[6]

6. **THE CLAIM AGAINST KDC VIOLATES THE ANTI-SLAPP STATUTE**

Without citing to any case law or providing any analysis whatsoever, the Debtor states that a mechanics lien "is not a petitioning activity" under the anti-SLAPP statute. (Opp. at 15). The attempt to analogize filing a mechanics lien to nothing more than completing a drivers' license application is meritless. If the mechanics lien is so devoid of significance, why is it that

---

[5] Criminal fraud is not a subject of the complaint and is not properly before this Court. The suggestion of criminal conduct is a transparent means to bolster the paucity of facts presented by the Debtor in support of its claim for the civil tort of fraud.

[6] As noted in the Defendants' Memorandum (pp. 11-12), the elements of a fraud claim consist of (i) a material misrepresentation knowing such to be false, (ii) reliance on that misrepresentation, and (iii) a resulting loss based upon that reliance. In this matter, the Debtor has not established any of the three elements that would allow a fraud claim to survive the Motion to Dismiss.

{S0847110.4}    7

Debtor repeatedly alleges that the filing of the mechanics lien "forced" the Debtor into bankruptcy? (Opp. at 9). The Debtor then argues that even if recording a mechanics lien is a petitioning activity, the anti-SLAPP statute does not cover activity that is "devoid of reasonable factual support or arguable basis in law." (Opp. at 15-16). While the parties may dispute the amount of the lien, to conclude that it is "**devoid** of reasonable factual support or arguable basis in law" (emphasis added) simply ignores the facts. It is undisputed that KDC provided construction services under a written contract and has the right to secure its payment. See M.G.L. c. 245, §2 (allowing a contractor with a written contract to lien). Thus, KDC has an arguable basis in law and has provided reasonable factual support, notwithstanding Debtor's refusal to accept it.

The Debtor next seeks to avoid dismissal under the anti-SLAPP statute because the mechanics lien is not the "sole" basis of the fraud. (Opp. at 16). As argued above, there are multiple independent acts of fraud which the Debtor has chosen to aggregate and plead as a single count notwithstanding that they have little or no overlap and despite the challenge that even the Debtor cannot provide any asserted "facts" to support any of the fraud claims. The Debtor cannot simply rely on its deficient pleading style to avoid its statutory obligations. Similarly, the Debtor has failed to refute the Defendants' arguments contending that the May 2015 letter was subject to the litigation privilege and therefore cannot be actionable as a matter of law. See Defendants' Memorandum at 18-19.

7. **THE CHAPTER 93A CLAIM FAILS**

Count VI, the Chapter 93A claim, is asserted against all defendants, including Kagan. The complaint expressly alleges that "Vadim Kagan … violated M.G.L. c. 93A". (Comp., ¶70). It also alleges "For their violations of M.G.L. ch. 93A, defendants Vadim Kagan … [is] liable to

{S0847110.4}    8

the plaintiff in an amount to be determined at trial, plus multiple damages and attorneys' fees." (Comp., ¶73). As a wholly intra-corporate dispute, Kagan argued that this was outside the purview of Chapter 93A. Instead of conceding this point, the Debtor simply drops a footnote to say "There is a stray allegatios [sic] against Kagan in the body of the count." (Opp. at 18, n. 8). This half-hearted concession does not change the pleading. Thus, the Debtor has failed to refute the Defendants' arguments regarding its claim under Mass. Gen. Laws. c. 93A, and it should be dismissed.

## CONCLUSION

Based upon the foregoing and the reasons set forth in Defendants' Memorandum, the Defendants respectfully request that Debtor's Complaint be dismissed.

>
> VADIM KAGAN, TATIANA KAGAN,
> KAGAN DEVELOPMENT KDC, CORP. and
> PROEXCAVATION CORP.
>
> By their attorneys,
>
> /s/ Christopher M. Candon, Esq.
> Christopher M. Candon (BBO# 650855)
> John H. Perten (BBO# 548728)
> SHEEHAN PHINNEY BASS & GREEN, P.A.
> 255 State Street, Fifth Floor
> Boston, MA 02109
> (617) 897-5600
> ccandon@sheehan.com
> jperten@sheehan.com

Dated:  September 23, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of September, 2016, a copy of the foregoing was served upon the parties listed below via ECF and/or first class mail, postage prepaid.

| | |
|---|---|
| Sean T. Carnathan<br>Joseph P. Calandrelli<br>O'Connor, Carnathan and Mack, LLC<br>8 New England Executive Park<br>Suite 310<br>Burlington, MA 01803 | Eric K. Bradford<br>Office of the United States Trustee<br>5 Post Office Square<br>10th Floor, Suite 1000<br>Boston, MA 02109-3934 |
| Peter N. Tamposi<br>The Tamposi Law Group, P.C.<br>159 Main St.<br>Nashua, NH 03060 | David B. Madoff<br>Madoff & Khoury LLP<br>124 Washington Street - Suite 202<br>Foxborough, MA 02035 |

        /s/ Christopher M. Candon
        Christopher M. Candon