UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>LYMAN-CUTLER, LLC,<br><br>　　　Debtor. | Chapter 7<br>No. 15-13881-FJB |
| LYMAN-CUTLER, LLC,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>VADIM KAGAN, TATIANA KAGAN,<br>KAGAN DEVELOPMENT KDC, CORP.<br>and PROEXCAVATION CORP.<br><br>　　　Defendants. | Adv. Proc. No. 16-01120 |

**MOTION TO QUASH SUBPOENA DUCES TECUM
SERVED ON AMERICAN EXPRESS CORPORATION**

Now come Vadim Kagan ("Kagan"), Tatiana Kagan ("Tatiana"), ProExcavation Corp. ("ProExcavation") and Kagan Development KDC, Corp. ("KDC") (collectively, Kagan, Tatiana, ProExcavation and Kagan shall be referred to herein as the "Kagan Parties") and move, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, made applicable to these proceedings by Rule 7026 of the Federal Rules of Bankruptcy Procedure, to quash and/or limit the subpoena duces tecum served on American Express Corporation ("AMEX"). A copy of the subpoena is annexed hereto as Exhibit 1. The subpoena seeks to pry into personal spending habits of the individual defendants and seeks documentation relating to at least twenty other construction projects in which the corporate defendants were involved, none of which have anything to do

{S1075105.2}

with the instant dispute. This ranges far afield of any legitimate discovery need and is grossly disproportionate to legitimate needs in this dispute. Moreover, the subpoena does not clearly describe the documents requested in a manner to ensure that only pertinent documentation is produced by AMEX. This subpoena represents a gross overreaching of the rules regarding discovery.

AMEX has already advised the parties that it will take at least sixty days to locate the requested documents. In addition to the extensive time AMEX requires, this subpoena will also mandate the expenditure of extensive resources in terms of time and personnel for the Kagan Parties if, all of a sudden, all twenty unrelated projects which were ongoing during the pertinent time are somehow dragged into this dispute. Given the complete lack of any facts to support the allegations that have been asserted in this action, and that pertinent information has already been provided in other forms, this subpoena is pure harassment and represents an impermissible fishing expedition. Additionally, the time ranges of documents requested are not narrowly tailored to the time frame of this project.

Finally, until this Court rules on the pending motions to dismiss, discovery should be stayed as depending on what the Court rules, the scope of discovery may be significantly narrowed. Moreover, as the motions to dismiss are still pending, the Kagan Parties have not yet responded to the complaint. When they do, they anticipate filing a counterclaim. Allowing discovery, even before the issues in dispute are joined is inefficient and improper. The Kagan Parties also provide herein an alternative less onerous suggestion if the Plaintiffs are somehow successful in persuading this Court that their need to investigate so far afield is appropriate.

In further support of this motion, the Kagan Parties state as follows:

LEGAL STANDARDS

This is a fraud case which carries with it heightened pleadings standards. Fed. R. Civ. P. 9(b). As set forth in their currently pending motions to dismiss the complaint, the plaintiffs have not met that heightened pleading standard. Moreover, to the extent that some of the allegations in the complaint mirror the objections to the Kagan Parties' proofs of claim, the plaintiffs bear the burden of meeting "the initial **burden of producing substantial evidence**" to overcome the presumption of validity to which a properly executed proof of claim is otherwise entitled. Juniper Dev. Group v. Kahn (In re Hemingway Transp. Inc.), 993 F.2d 915, 925 (1st Cir. 1993) (Emphasis added). They have not done so. As discussed in more detail below, the documents requested in the Gordon subpoena is another patent fishing expedition embarked upon for the purposes of pure harassment and seeing if plaintiffs can discover any facts to support their unsubstantiated allegations of fraud. That is a gross abuse of the discovery process, and is universally prohibited. Universal Commun. Sys. v. Lycos, Inc., 478 F.3d 413, 426 (1st Cir. 2007) ("[P]laintiffs should not be permitted to conduct fishing expeditions in hopes of discovering claims that they do not know they have."), citing McCloskey v. Mueller, 446 F.3d 262, 271 (1st Cir. 2006) ("The purpose of pretrial discovery is not to allow a plaintiff to rummage about in search of a hitherto unexplicated cause of action.") (internal citations omitted); Wayne Inv., Inc. v. Gulf Oil Corp., 739 F.2d 11, 14 (1st Cir. 1984) (Rule 9(b) was not satisfied when support for allegation consisted of "speculations from industry analysts" and allowing the allegations of fraud to stand would be tantamount to "issu[ing] a license for a 'fishing expedition' in uncharted waters."); Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996) (one purpose of Rule 9(b) is to "prevent the filing of suits that simply hope to uncover relevant information during discovery"); Shaulis v. Nordstrom Inc., 120 F. Supp. 3d. 40, 45 (D.

Mass. 2015) (one of the purposes of Rule 9(b) is "to preclude the use of a groundless fraud claim as a pretext to using discovery as a fishing expedition"), citing, In re Lupron Mktg. & Sales Practices Litig., 295 F. Supp. 2d 148, 170 (D. Mass. 2003) (quoting New England Data Services, Inc. v. Becher, 829 F.2d 286, 288 (1st Cir. 1987)); see also McGinty v. Beranger Volkswagen, Inc., 633 F.2d 226, 228-29 (1st Cir. 1980).

FACTS

The amended complaint sets forth a tale based on unsupported suspicion and innuendo. The fiction developed by Plaintiffs is as follows:

- In October, 2012, Kagan, individually, fraudulently induced Lipetsker and Filippov to invest in the project based on assurances that the cost of construction would not exceed $1.6 million, including carrying costs. Thereafter, Kagan, who was responsible for constructing the homes, spent down the entirety of the construction loans to complete the project. See Amended Complaint, A.P. Docket No. 52 ("Comp."), ¶¶11- 24.

- The homes were completed in October, 2014. (Id., ¶26). In May 2015, after completion of the homes, Kagan alleged for the first time that there were significant cost overruns. (Id., ¶¶36-38). Filippov and Lipetsker did not believe that the cost overruns were real, and immediately filed suit in state court alleging fraud. (Id., ¶26).

- The allegations of fraud are largely based on several hearsay statements by unnamed witnesses who plaintiffs claim to have interviewed who "are former investors in [other] Kagan projects." These witnesses allegedly claim that they experienced similar conduct in their own projects with Kagan. (Id., ¶45). Significantly, none of these witnesses are said to have any knowledge regarding the Lyman-Cutler project at issue in this lawsuit; none of them brought an action against Kagan based on the alleged conduct; and none of them is identified.

- Plaintiffs also claim to have interviewed KDC's former bookkeeper who allegedly reported that Kagan falsifies project books and records. (Id., ¶46). Again, and significantly, the former bookkeeper does not claim that this alleged conduct occurred on this particular project.[1]

Based upon these generalized hearsay reports, Plaintiffs conclude "[u]pon information and belief, based on the facts recited above," that the cost overruns claimed by KDC are false.

---

[1] In fact, the former bookkeeper worked for KDC for less than eight months until Kagan fired her for embezzlement. There is ongoing litigation against her.

{S1075105.2}                                    4

Additionally, plaintiffs make the factual allegation that the billing of KDC and ProExcavation are "rife with double billing, false and inflated charges." (Id., ¶49). However, when asked in interrogatories for specific examples of this improper billing, Plaintiffs were unable to identify a single improper charge. Instead, they purported to incorporate by reference an expert report, that does not yet exist, which they claim will identify the improper charges. See, e.g., Main Case, Docket No. 60, p. 41, Answer No. 2, p. 45, Answer No. 11, p. 49, Answer No. 2. While presumably an expert can provide an opinion, it does not take an expert to identify facts. There is also no privilege preventing the disclosure of facts provided to an expert, whether or not an expert ultimately relies upon them when [and if] forming an opinion. See Planalto v. Ohio Cas. Ins. Co., 256 F.R.D. 16, 21 (D. Me. 2009) (facts supplied to an expert are not privileged); see also Marine Petroleum Co. v. Champlin Petroleum Co., 206 U.S. App. D.C. 31, 641 F.2d 984, 990 (D.C. Cir. 1980) (parties are entitled to discover underlying information relied upon by experts per Fed. R. Civ. P. 26(b)(4)(A)). Either Plaintiffs have facts, which should be immediately disclosed, or they have nothing. Trial by ambush, or even discovery by ambush, is not the proper standard. By their own inability to identify a single improper charge, the only permissible conclusion is that this lawsuit is predicated on nothing other than a suspicion arising from Plaintiffs' belief that the project could not possibly have cost what the Kagan Parties claim, the hearsay accusations of investors on other Kagan projects and a generalized statement by a former bookkeeper none of which are tied, in any manner, to the instant project.

## DISCOVERY PROVIDED TO DATE

Proof of Claim Back-up

In support of its proof of claim, KDC provided four binders, containing more than three hundred pages of documents, indexed and organized by subcontractor name. These binders

include copies of invoices, with back-up, to support KDC's claim for outstanding cost reimbursement. The back-up includes, as appropriate, a Quickbooks report for each vendor, the identity of any check utilized for payment (if paid by check), and/or the credit card receipts/statements (if paid by credit card) showing payment. Attached hereto as Exhibit 2 is a copy of the indices provided with the binders with exemplars of the type of back-up which corresponds to each subcontractor. Plaintiffs have articulated nothing that indicates that this back-up is insufficient.

<u>Bank Statements and Approved Disbursements from Rockland Trust Company</u>

The project was funded through a construction loan from the Rockland Trust Company ("RTC") which closed In June, 2013. Before approving any disbursement, the bank sent an inspector out to confirm that the work for which payment was sought had, in fact, been completed. Through a Keeper of Records subpoena issued to RTC, plaintiffs have copies of all RTC records which include bank statements and cancelled checks.

<u>Monthly Bank Statements</u>

The RTC loan disbursements were deposited into the Lyman-Cutler account from which project costs were paid. The address on the bank statements is Filippov's address. Monthly, he received copies of all statements and corresponding checks. These were produced a second time through the RTC production. The construction loan proceeds can be tracked through these documents.

<u>Depositions</u>

In the state court litigation, plaintiffs took the deposition of several KDC subcontractors who attested to the work performed on the project and amounts billed.

Interrogatories and Document Requests

The parties have exchanged "paper discovery." As set forth in the motions to dismiss and as discussed above, despite all the documentation already provided, much of it over two years ago, Plaintiffs have been unable (or unwilling) to identify a single improper payment, claiming that this is the subject of an expert report which will, at some point, be produced (though the non-existent report is incorporated by reference). The incorporation by reference of a non-existent report is a creative sleight of hand. Double billing or improper charges are not dependent on expert opinion. They are facts. Either plaintiffs have this information or they do not.

## ARGUMENT

I. THE DOCUMENTS REQUESTED FROM AMERICAN EXPRESS ARE PART OF PLAINTIFFS' PATENT FISHING EXPEDITION, IMPERMISSIBLY INTRUDES INTO PRIVATE FINANCIAL AREAS OF THE INDIVIDUAL DEFENDANTS AND INTO AT LEAST 20 OTHER KAGAN PROJECTS THAT HAVE NOTHING TO DO WITH THIS DISPUTE.

As set forth above, the instant discovery requests are part of a patent fishing expedition which is revealed through a close review of what is being requested. Given the complete lack of any supporting facts (as opposed to mere allegations based on hearsay statements of others), and the refusal by Plaintiffs to provide any meaningful discovery to the Kagan Parties, the subpoena should be quashed.

## AMEX SUBPOENA

The Kagan Parties do not object to the production of information of AMEX charges related to the project at issue, notwithstanding that this is wholly duplicative of documentation already produced. They do object, however, to the improper attempt to pry into the private financial dealings of the individual defendants and projects which are not at issue in this dispute.

As evidenced by the fact that Plaintiffs have already contacted Kagan investors on other projects, these requests are simply aimed at harassment and a means to further intrude into Kagan's personal life and unrelated business ventures. The Kagan Parties have no doubt that Plaintiffs will use the information they "discover" to further interfere with their relationships with vendors and others, as the Plaintiffs already did through their interviewing of investors on other Kagan projects. Moreover, insofar as the AMEX statements will simply list a date, vendor name and amount, there is absolutely no legitimate reason for requesting this information. The statements will provide no information that will enable plaintiffs to test the individual purchases for the Lyman-Cutler project. Each of the requests in the AMEX subpoena is discussed below:

## REQUESTS

**Request No. 1 – All account statements for the Account from the date it was created to the present.**

The "Account" is defined in the subpoena as "American Express account kept in the name of 'Vadim Kagan Cutler' with account number ending in 91100." The Kagan Parties have no objection to the production of this account.

**Request No. 2 – All account statements for any other American Express account concerning the Project, from the date it was created to the present.**

As noted above, the Kagan Parties have no objection to production of dedicated Lyman-Cutler accounts. The problem, however, is that AMEX cannot possible determine which accounts "concern the Project" as opposed to other projects, which will inevitably result in Plaintiffs receiving irrelevant confidential information on other projects.

{S1075105.2}                                                      8

**Request No. 3 – All account statements for any [sic] the American Express account held in the name of Vadim Kagan, KDC, or ProExcavation with an account ending in 1134, from the date of December 1, 2012 through June 30, 2015.**

As set forth in the Kagan Parties' do not object to the production of AMEX accounts for this project. The attempt to look at other accounts is improper.

**Request No. 4 – All account statements for any other American Express account held in the name of Vadim Kagan from the date of December 1, 2012 through June 30, 2015.**

This request is patent overreaching as it seeks the AMEX statements from Kagan's personal account. There is no allegation, or evidence, that he used his personal AMEX card for project purposes. This is fishing at its grossest level. The restaurants Kagan frequents, the gas stations he uses, the travel he takes, are irrelevant to this dispute and not a proper scope of discovery into an allegation of improper project charges. What Kagan chooses to spend his personal money on is none of the Plaintiffs' business. There is absolutely no basis to permit this unfettered intrusion into Kagan's personal life.

As with each of the requests, this request is also overly broad in terms of time. It seeks information six months prior to any construction and eight months after Plaintiffs claim the project was completed. Even if the request were otherwise proper (it is not), the time range for the requested documentation is far beyond anything reasonable.

**Request No. 5 – All account statements for any other American Express account held in the name of Tatiana Kagan, from the date of December 1, 2012 through June 30, 2015.**

Tatiana Kagan, through Century 21, was the real estate agent for the project properties. (Comp., ¶¶ 28, 39). She did not earn any commission on the sales of the underlying properties and did not submit a proof of claim for any project monies (other than her request for indemnification under the Operating Agreement). She had no involvement with the day-to-day

{S1075105.2}                                       9

construction of the homes, and there is no allegation to the contrary. There is no allegation of any malfeasance on her part in connection with the preparation of project billings.

Tatiana's sole alleged transgressions relate to her role as a real estate agent. The amended complaint alleges that she failed to properly market the properties and was part of a conspiracy to extend the listing agreements for a longer period than permissible. (Id., ¶¶39-42). That hardly puts her personal AMEX accounts at issue in this lawsuit.

As to the alleged irregularities in project billings, nowhere is it alleged that she was affirmatively engaged in the project construction or billing. She has been named as part of Plaintiffs' shotgun approach to litigation solely because she is married to Kagan and because she is an officer of KDC and ProExcavation, though she had no day to day project responsibilities. As argued in the pending motions to dismiss, Rule 9(b) requires pleading specific acts of fraudulent conduct by each defendant. There is not a single allegation of affirmative malfeasance by Tatiana other than with respect to the listing agreements. These allegations, however, do not justify this impermissible inquiry into her personal life and spending habits. As such, Request No. 5 should be quashed.

**Request No. 6 – All account statements for any other American Express account held in the name of KDC, from the date of December 1, 2012 through June 30, 2015.**

KDC's practice is to dedicate a separate AMEX card for each of its projects. Gersh Aff., ¶2. During the period of the Lyman-Cutler project, KDC worked on approximately twenty other projects and thus the subpoena seeks information about charges and accounts that have nothing to do with this case. Being able to see vendor names and charges, with no description as to what was bought or why provides virtually no information which could possibly be useful in this litigation. As such, it is apparent that this request is nothing more than interposed for harassment.

There is also a question of proportionality with this request. Neither KDC or ProExcavation are large companies. If KDC's spending on twenty other projects is about to be placed under the microscope as part of this patent fishing expedition, it would take 100s of hours for KDC to locate its documents and refresh its memory. Functionally, as calculated by Plaintiffs, this would force KDC to spend thousands of dollars in personnel expenses and legal charges. Given the lack of any evidence whatsoever that the other twenty KDC projects have anything to do with this dispute, bringing those KDC projects into this dispute would be unfair to KDC and constitute an unprecedented intrusion into its business decisions.

**Request No. 7 – All account statements for any other American Express account held in the name of ProExcavation, from the date of December 1, 2012 through June 30, 2015.**

ProExcavation is a subcontractor for KDC, and does not have a direct contract with the Debtor; nor has it claimed any additional monies on this project.[2] The request is not limited to expenses incurred by ProExcavation on this project, and is for a period far in excess of any reasonable time range. Plaintiffs have been unable or unwilling to identify any specific issues with ProExcavation other than their unsubstantiated claim that the billing is far in excess of what is permissible; the facts in support thereof which are to be disclosed in some expert report at some future date. This is yet another patent example of fishing.

**Request No. 8 – To the extent not produced in any of the foregoing requests, all documents concerning any other American Express account of Vadim Kagan, Tatiana Kagan, KDC, or ProExcavation between December 1, 2012 and June 30, 2015, including but not limited to account applications.**

This request goes even further afield than the prior ones. Now Plaintiffs are looking for all "documents" (an undefined term) including "account applications." What possible need for account applications could Plaintiffs have, and how would that inform, in any manner, to expenditures on this project? As noted above, the personal finances of Tatiana Kagan and

---

[2] It has submitted a claim for indemnity. See Proof of Claim No. 7.

{S1075105.2}                                          11

Vadim Kagan are irrelevant to this dispute, as are expenses that KDC and ProExcavation incurred on other projects. This request should be quashed.

## II. DISCOVERY SHOULD BE STAYED PENDING A DECISION ON THE PENDING MOTIONS TO DISMISS.

Currently pending are motions to dismiss the complaint. Those motions are scheduled for hearing on January 9, 2018. Depending on the Court's decision, the result may vitiate entirely or markedly limit the scope of the issues in dispute. This, in turn, would likely impact the scope of permissible discovery. While the Kagan Parties concede that the pendency of the motions to dismiss does not automatically stay discovery, normal convention and economy dictates that it is appropriate to postpone discovery until the parties know exactly what the issues remain. As a matter of judicial and litigant economy, the Kagan Parties ask that all discovery be halted until the Court issues its decision.

## III. SUGGESTION FOR ALTERNATIVE, LESS COSTLY, MEANS TO NARROW DISCOVERY.

This dispute, in essence, calls into question whether KDC (and others) fraudulently overcharged for building the two subject properties. As the houses are now built, an expert may determine the expected actual construction costs for these homes. Such an expert – mutually acceptable to the parties and supervised by this Court – may be employed to render a construction cost estimate based upon the plans, permits, and as-built homes. He/she should be able to determine whether the construction costs claimed by KDC fall within the expected range of cost, or grossly exceed the expected range. Should the estimate show a cost deviation beyond the industry standard, it should be apparent from where the deviation derived and would enable the parties where to focus their discovery on that area. If the deviation was within the industry standard, or lower, it would also show the court that any error in a particular invoice, to the

extent one exists, is immaterial.  Finally, if the expert determines that the costs charges were appropriate, the focus of the discovery could shift from whether the costs were proper, to the remaining issue of whether Kagan fraudulently induced Plaintiffs into joining with him in this venture and whether Debtor should be responsible for any overage.  The cost for this expert opinion is expected to be under $8,000.00 and should take under two weeks.  This alternative would likely cost less than 1/10th the cost of the "scorched earth" discovery on which Plaintiffs have embarked, and likewise less expensive than the necessary follow on forensic examination of any such discovery as requested.

Once the expert report has been produced, the Parties would be free to request more focused discovery, guided by the findings of that report.  Defendants believe that the court should consider the appointment of a Special Master to determine the future discovery efforts.  This would preserve judicial resources and expedite resolution of discovery disputes.

## CONCLUSION

Especially in a fraud case, this Court must guard against patent fishing.  That is exactly what is occurring here.  Plaintiffs already have extensive back-up, yet still cannot identify a single improper expense, preferring to fish further in the hope that something will reveal itself.  That is an abuse of the discovery process.  Based upon the foregoing, the subpoena issued to AMEX should be quashed.

Dated:  December 21, 2017

Respectfully submitted,

VADIM KAGAN,
TATIANA KAGAN,
KAGAN DEVELOPMENT KDC, CORP. and
PROEXCAVATION CORP.,

By their Attorneys,

/s/ John H. Perten
Christopher M. Candon, BBO# 650855
John H. Perten, BBO# 548728
SHEEHAN PHINNEY BASS & GREEN, PA
255 State Street, 5th Floor
Boston, MA  02109
Tel:  617-897-5600
Fax: 617-439-9363
E-mail: jperten@sheehan.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of December, 2017, a copy of the foregoing was served upon the parties listed below via ECF and/or first class mail, postage prepaid.

Eric K. Bradford
Office of the US Trustee
J.W. McCormack Post Office & Courthouse
5 Post Office Sq., 10th Fl., Suite 1000
Boston, MA 02109

Joseph P. Calandrelli
O'Connor Carnathan and Mack LLC
1 Van De Graaff Drive
Suite 104
Burlington, MA 01772

Sean T. Carnathan
O'Connor, Carnathan and Mack, LLC
1 Van De Graaff Drive
Suite 104
Burlington, MA 01772

Stephen G. DeLisle
Rubin and Rudman LLP
50 Rowes Wharf
3rd Floor
Boston, MA 02110

David B. Madoff
Madoff & Khoury LLP
124 Washington Street - Suite 202
Foxborough, MA 02035

Amy M. McCallen
Rubin and Rudman LLP
50 Rowes Wharf
Boston, MA 02110

Steffani Pelton Nicholson
Madoff & Khoury LLP
124 Washington Street
Foxborough, MA 02035

David C. Phalen
Hackett Feinberg P.C.
155 Federal Street, 9th Floor
Boston, MA 02110

Sarah A Smegal
Hackett Feinberg P.C.
155 Federal Street
9th Floor
Boston, MA 02110

Peter N. Tamposi
The Tamposi Law Group
159 Main Street
Nashua, NH 03060

/s/ John H. Perten
John H. Perten

{S1075105.2}                              15