UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

*In re:*

LYMAN-CUTLER, LLC,
Debtor

Chapter 7
Case No. 15-13881 FJB

LYMAN-CUTLER, LLC, ALEX FILIPPOV, and NICKOLAY LIPETSKER,

Plaintiffs,

v.

VADIM KAGAN, TATIANA KAGAN, KAGAN DEVELOPMENT KDC, CORP. and PROEXCAVATION CORP.

Defendants.

Adv. Case No. 1:16-ap-01120

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND ANSWERS TO INTERROGATORIES BY DEFENDANTS KAGAN DEVELOPMENT KDC CORP. and PROEXCAVATION CORP.**

Pursuant to Fed. R. Civ. P. 26 and 37, and Bankr. Rule 7037, Plaintiffs respectfully move for an order compelling Defendants Kagan Development KDC, Corp. ("KDC") and ProExcavation Corp. ("ProEx") (together, the "Defendants") to produce documents and answer interrogatories. KDC previously produced documents in response to the document requests served upon it in the state court litigation but has declined in this proceeding to produce entire categories of important documents. ProEx has produced nothing at all. Both entities refuse to

provide fundamental documents and information plainly encompassed by the discovery afforded under the federal rules.[1]

Specifically, Plaintiffs ask the Court to compel:

(1) KDC and ProEx to produce their federal tax returns for the years 2012 through 2015, which are the years during which the Lyman Cutler LLC Project was active;

(2) KDC and ProEx to produce their company books and records, including complete bank statements and copies of all cancelled checks, payroll records and their Quickbooks data files in native format, for the same time period;

(3) KDC and ProEx to identify the other projects they worked on during the same time period;

(4) KDC to produce all invoices for and documentation of the construction costs for the other projects on which it worked during the same time period;

(5) KDC to produce all canceled checks and all other records to support the $1,250.442.83 in "reimbursements" to KDC included in the proof of claim;

(6) ProEx to produce complete documentation to support the $911,620.32 included as part of the KDC proof of claim; and

[1] Plaintiffs have made every effort to obtain this discovery without motion practice. Attached as Exhibits are: Exhibit 1— Plaintiffs' First Request for Production of Documents to KDC; Exhibit 2 – Plaintiffs' First Set of Interrogatories to KDC; Exhibit 3 -- Plaintiffs' First Request for Production of Documents to ProEx; Exhibit 4 -- Plaintiffs' First Set of Interrogatories to ProEx; Exhibit 5 — Responses to Plaintiffs' First Request for Production of Documents to KDC; Exhibit 6 – Responses to Plaintiffs' First Set of Interrogatories to KDC; Exhibit 7 – Responses to Plaintiffs' First Request for Production of Documents to ProEx; Exhibit 8 – Responses to Plaintiffs' First Set of Interrogatories to ProEx; Exhibit 9 – Letter from Sean T. Carnathan to John Perten, November 15, 2017. The parties also conferred before (by telephone) and after (by telephone call and email response) the December 11, 2017 informal discovery conference with the Court.

(7) ProEx to identify its subcontractors, vendors and clients during the relevant time period;

(8) Kagan to produce all documents provided to the bank in order to effectuate draw downs on the construction loans, including all lien waivers from subcontractors; and

(9) Defendants to produce copies or records of all inspections performed at the Properties and their results.

In addition, the Defendants have objected to two subpoenas served by the Plaintiffs: (1) on American Express ("AmEx"); and (2) on the accountant for the Defendants (the "Accountant"). Plaintiffs agreed to defer the obligation of AmEx and the Accountant to respond until after the Court addresses the dispute between the Parties regarding the scope of discovery. Plaintiffs ask the Court to order AmEx and the Defendants' accountant to produce all responsive documents to the subpoenas served on them.[2]

Plaintiffs made every effort to resolve this dispute without bringing a motion and Defendants have failed to move in any way from their original refusal to produce documents. Plaintiffs ask that the Court order KDC, ProEx, AmEx and the Accountant to produce all responsive documents and award them their fees and costs incurred in connection with bringing this motion. Fed. R. Civ. P. 37(a)(5).

[2] True copies of the AmEx Subpoena and Accountant Subpoena are attached hereto as Exhibits 10 and 11. The Accountant has asserted through counsel that he "is going to need 60 days from [December 20, 2017] to comply with the subpoena." Plaintiffs ask that the Court order him to comply within 14 days of the date of the Court's order.

## FACTS

Plaintiffs will not belabor the facts, with which the Court is familiar. A more expansive recitation is found in the Amended Complaint and Omnibus Opposition to the Defendants' Motions to Dismiss, incorporated herein by reference. In very brief, Plaintiffs allege that Vadim Kagan used his two companies, KDC and ProEx, which are wholly owned by himself and his wife, to double and falsely bill Lyman-Cutler, LLC, the Company he formed with Plaintiffs Nikolay Lipetsker and Alex Filippov.

Discovery to date has, however, revealed some important points that emphasize the propriety and importance of the discovery at issue here. Kagan calculates the **$2,095,985.23** claimed due by KDC (before its alleged claim to indemnification) by tallying up all the amounts he allegedly spent and unpaid bills allegedly incurred and deducting the $3.2 million borrowed from Rockland Bank and wholly expended by Kagan during the Project. This roughly $5.3 million total includes:

According to the proof of claim documents submitted by KDC, it incurred **$1,334,969.76** of alleged "reimbursements" due to it, of which $627,267.08 has already been paid and $707,702.68 is allegedly due and owing. See Spreadsheets attached hereto as Exhibit 12 (Plaintiffs' work product, tallying reimbursements and accounts payable based on KDC's submission).[3] Of this total sum, Plaintiffs have been able to match documentation to confirm only approximately $520,000, leaving over $800,000 in undocumented "reimbursements" to KDC. To make matters worse, going through the Lyman-Cutler bank statements, there are

[3] These spreadsheets represent a good faith effort to make sense of what has been provided to date only and are not intended as definitive. Plaintiffs reserve the right to update and revise their calculations and draw conclusions only when all the evidence has been adduced and analyzed.

**$1,250.442.83** in checks to KDC. True copies of checks from the Lyman-Cutler account to KDC are attached hereto as Exhibit 12A. These very large and self-dealing numbers cannot be reconciled or verified based on the documentation KDC has submitted with its proof of claim. Plaintiffs must have KDC's books and records and bank statements to have any hope of finding the truth about KDC's claims.

**$625,221.52** that KDC asserts it is owed as a general contractor fee and for overhead under a contract Kagan signed with himself, which Filippov and Lipetsker never saw and which contradicts the terms of the LLC Operating Agreement. Amended Complaint ¶ 66.

**$911,620.32** of alleged charges by ProEx, of which $449,820.32 has already been paid and $461,800.00 is allegedly due and owing. ProEx has not produced a single page in discovery and has, accordingly, not documented any of the $911,620.32 in charges it asserts. A true copy of the ProEx vendor reports (produced by Kagan) as attached hereto as Exhibit 13.

**$1,181,755.56** of American Express charges, which are included in the KDC reimbursements. A true copy of the Defendants' AmEx summary is attached hereto as Exhibit 14. The statements submitted include statements from 2 different accounts.[4] Of the approximately $520,000 that Plaintiffs can document from the KDC reimbursement demands, $156,733.40 consists of AmEx charges that have already been reimbursed. There remain hundreds of thousands of dollars that the Plaintiffs cannot map together based on the production to date.

In addition, former Kagan bookkeeper, Kristina Brusenkova, has testified that Kagan routinely bought materials and arbitrarily assigned costs to different projects. Brusenkova Aff. ¶

4 One small but notably fishy discrepancy is approximately $7,000 in plumbing fixtures allegedly purchased for the Properties after the certificates of occupancy issued. See Exhibit 14.

12. Another way Kagan lined his own pockets at the expense of his investors was to buy materials, charge them to a Project, and then return them and keep the refunded money for himself. Brusenkova Aff. ¶ 12. The only way to see if he did this to the Plaintiffs, and if so, how much of the alleged overrun went into Kagan's pockets, is to examine all the AmEx bills during the life of the Project.

In the answers to interrogatories, ProEx confirms that Kagan is its sole employee. In her affidavit, Brusenkova also confirms that ProEx works solely through subcontractors and that Kagan routinely inflates its charges and uses it as a vehicle for double billing. Brusenkova Aff. ¶¶ 7-8. In light of these facts, requiring ProEx to document the basis for its charges is plainly appropriate.

## ARGUMENT

As the Court knows, the scope of discovery is broad. Fed. R. Civ. P. 26. The information and materials sought here go directly to the core issues in the case – testing the basis for and validity of hundreds of thousands of dollars Kagan alleges is due and owing to him through his wholly owned companies. The evidence already adduced strongly supports the inference that Kagan has inflated charges and double billed the Company. His refusal to comply with commonplace discovery requests tends to confirm this inference. KDC and ProEx should be ordered to comply.

### I. All of the Materials Sought are Directly Relevant and Reasonably Calculated to Lead to the Discovery of Admissible Evidence.

Together, KDC, ProEx and Kagan's American Express charges account for nearly **$2.9 million** of the alleged $5.3 million in aggregate construction and carrying costs. Approximately $2.0 million of this sum is either based on the self-dealing construction contract or has never been documented. Allegedly both entities have outlaid significant sums to vendors and

subcontractors and have been carrying these debts on their books for years. Some vendors were paid contemporaneously and directly from the LLC Account, but purportedly still carry balances due. Attached, e.g., is the vendor report for Unicon Electric as Exhibit 15 (adding significant balance in April 2015, more than a year after the last prior entry and months after completion of construction). If any of that is true, it should be well documented in their books and records, and one would think they would be willing, even eager to produce such documentation. Their obstinate refusal speaks volumes.

The Defendants repeatedly object that the documents sought are irrelevant and intended to harass the Defendants. But nothing could be farther from the truth. Most of the records requested, such as tax returns, bank statements and the QuickBooks files, can be easily copied and turned over in a matter of minutes. Furthermore, these requests are aimed squarely at the largest components of the alleged construction costs, which generated the alleged nearly $2.1 million overrun, the mechanic's lien and the proof of claim that KDC asserts in this very proceeding. See Affidavit of Michael S. Goldman, December 20, 2017, filed herewith. Specifically:

(1) **The KDC and ProEx tax returns:** The tax returns are relevant and necessary to test whether the asserted charges are real (and to what extent they are not). If they are, then one would expect to see the expenses incurred reflected on the tax returns.

(2) **The KDC and ProEx books, records and bank statements**: The books and records are fundamental documents to determine if the alleged charges are real (and to what extent they are not). Both companies have hundreds of thousands of dollars of undocumented demands for reimbursement (KDC) or bills for services (ProEx), which should be supported by entries in the books and records and cancelled checks.

(3) **The identification and documentation of other KDC and ProEx projects they worked on during the same time period**. Brusenkova specifically testified that Kagan would bill costs for one project to another project. Brusenkova Aff. ¶ 12. The documents he has produced already reflect addresses for several of his other projects. See Exhibit 16 hereto. The undocumented ProEx charges may also be meaningfully compared to its charges on other projects, particularly if there are any done for anyone other than Kagan (which Plaintiffs doubt).

(4) **KDC canceled checks and all other records to support the $1,334,969.76 in "reimbursements" to KDC included in the proof of claim**. Plaintiffs genuinely cannot conceive of a legitimate objection to this request. KDC seeks over $1.3 million in "reimbursements" much of which remains undocumented and which figure is belied by the Lyman-Cutler bank statements.

(5) **ProEx to produce complete documentation to support the $911,620.32 included as part of the KDC proof of claim**. Similarly, Plaintiffs cannot conceive of a legitimate objection here. ProEx has produced nothing to date.

(6) **The identity of ProEx's subcontractors, vendors and clients during the relevant time period**. ProEx has one employee, Vadim Kagan, has submitted over $911,000 in bills, and has produced no documents.

(7) **The AmEx Subpoena**. Kagan's Amex charges are nearly $1.2 million and constitute a huge component of the KDC proof of claim. His bookkeeper testified he uses his Amex account to cheat his investors by returning materials and keeping the refunds. Plaintiffs are entitled to review his statements.

(8) **The Accountant Subpoena**. At best, if we assume for the moment that Kagan is honest (a difficult assumption to swallow), his recordkeeping is appalling. Getting records from his accountant may be the only reliable source of company books and records. Furthermore, the accountant should have a reconciliation between the books and records, the bank statements, and the tax returns that can help to resolve many of the questions that have arisen as a result of the documentation that has been produced so far.

As set forth in the accompanying affidavit of forensic account, Michael Goldman, these records and information are necessary to reconcile and verify the Defendants' claims.

## II. Any Purported Confidentiality Concerns Can Be Addressed in a Confidentiality Stipulation.

The Defendants have interposed confidentiality objections, but neither Filippov (a telecom entrepreneur) nor Lipetsker (a dentist) is in the construction business. In any event, the Plaintiffs would willingly sign a reasonable confidentiality stipulation to allay any legitimate concerns. The Plaintiffs' forensic accountant will also sign a confidentiality and non-disclosure agreement.

**CONCLUSION**

For the foregoing reasons, the Court should compel production of documents and answers to interrogatories by Defendants KDC and ProEx and order compliance with the subpoenas to the Accountant and AmEx within 14 days of the Court's order, and award the Plaintiffs their expenses and fees incurred in connection with this Motion. Fed. R. Civ. P. 37(a)(5).

LYMAN-CUTLER, LLC,
By its attorney,

*_/s/ Peter Tamposi_*
Peter N. Tamposi, BBO No. 639497
The Tamposi Law Group, P.C.
159 Main Street
Nashua, NH 03060
T: (603) 204-5513

ALEX FILIPPOV and
NICKOLAY LIPETSKER,
By their attorneys,

*_/s/ Sean T. Carnathan_*
Sean T. Carnathan, BBO No. 636889
scarnathan@ocmlaw.net
Joseph P. Calandrelli, BBO No. 666128
jcalandrelli@ocmlaw.net
O'Connor, Carnathan and Mack, LLC
1 Van de Graaff Dr. Suite 104
Burlington, MA 01803
T: 781-359-9000

Dated: December 21, 2017

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on December 21, 2017.

*_/s/ Sean T. Carnathan_*

4816-6287-6761, v. 1