# EXHIBIT 9



**O'Connor Carnathan and Mack LLC**

Landmark One
1 Van De Graaff Drive
Suite 104
Burlington, MA 01803

Tel: 781.359.9000
Fax: 781.359.9001

www.ocmlaw.net

Sean T. Carnathan
Direct Line:  781.359.9002
scarnathan@ocmlaw.net

November 15, 2017

*By First Class Mail and E-mail*

John H. Perten, Esq.
Christopher M. Candon
Sheehan Phinney Bass + Green
255 State Street
Boston, MA 02109

Re:   Lyman Cutler, LLC et al. v. Vadim Kagan, et al.
      Chapter 7 No. 15-13881-FJB, A.P. No. 16-1120

Dear John:

I write to request a prompt conference to discuss your clients' recent discovery responses. The specific categories I want to discuss are as follows:

Information Relating to Other Construction Projects

We requested information from Kagan Development KDC Corp. ("KDC"), ProExcavation Corp. ("ProEx") and Vadim Kagan ("Kagan") concerning other construction projects on which Kagan and his companies were working during the same timeframe that the two projects at issue in this case were proceeding.  The information requested includes:

- the identity of all other projects (KDC Interrogatory No. 3; ProEx Interrogatory No. 3; Kagan Interrogatory No. 3);
- the identity of all subcontractors or vendors on each project (KDC Interrogatory No. 4; Kagan Interrogatory No. 4);
- costs incurred on these projects (KDC Request Nos. 3, 7, and 10; KDC Interrogatory No. 5; ProEx Request Nos. 8-10; ProEx Interrogatory No. 4; Kagan Request No. 4, 8, and 10; Kagan Interrogatory No. 5)
- the company federal tax returns for the years at issue (KDC Request No. 8; ProEx Request No. 12);
- the construction documents for each project (KDC Request No. 12; Kagan Request No. 12); and

John H. Perten, Esq.
Christopher M. Candon
November 15, 2017
Page 2

- communications with Attorney Maiden and Rockland Bank on those projects (KDC Request Nos. 14 and 15; Kagan Request Nos. 14 and 15).

Your clients have refused to produce this information claiming that the information is irrelevant because "information relating to time period well before and well after the work on subject project are not a proper subject for discovery." They also claimed that it was "private and confidential," and, therefore, would not be produced. *See e.g, KDC Response to Doc Request No. 3.*

These objections are without merit. Contrary to your assertion, the information about the other construction projects we sought were not "well before and well after" the work on this project occurred. "Other Construction Projects" was specifically defined in the discovery requests to include only the projects on which your clients worked between December 1, 2012 and June 2015. The 77 Lyman property was purchased by Lyman-Cutler, LLC December 2012. This dispute arose in May 2015 when Mr. Kagan first announced his purported cost overruns. Your clients have claimed – repeatedly – that work was still occurring at the Project up until June 2015. Thus, the time frame is narrowly tailored to include only those projects that were underway during the same exact time period that is at issue in this case.

The relevance objection is particularly meritless. Our clients have specifically alleged, and already have substantial evidence, that Kagan used KDC and ProExcavation to double bill and other falsely inflate the charges to the Project. The evidence already supports the inference that Kagan billed materials to the Project but used those materials on other contemporaneous projects. In addition, discovery concerning Kagan's (and his companies') costs and billing on other contemporaneous projects is directly relevant to evaluating Kagan's charges to the Lyman Cutler Project. Any purported confidentiality concerns can be addressed by a confidentiality agreement.

Native QuickBooks Files

Your clients refused to produce the native, electronic versions of their QuickBooks files dating back to November 1, 2012, contending that the request "grossly overreaches" and is not permitted under Fed. R. Civ. P. 34(b)(2)(E)(iii). Neither contention is accurate. For the reasons set forth above, we are entitled to the QuickBooks reports relating to the Other Construction Projects. We are further entitled to the underlying native database contained in the QuickBooks system for this project and the Other Construction Projects the purpose of determining when the information shown on the reports was input and/or modified. This is information that cannot be ascertained from the reports and is highly relevant to whether your clients' books are accurate or were created merely for purposes of prosecuting their claims. Further, this is not the "same" electronically stored information that was previously produced.

We also note that ProEx's refusal to produce even the QuickBooks reports for this project is not justified. ProEx is one of Kagan's alter egos and is singlehandedly responsible for alleged charges in the aggregate of $911,620.32, with regard to which virtually no documentation was

John H. Perten, Esq.
Christopher M. Candon
November 15, 2017
Page 3

provided at an time. It cannot be genuinely disputed that we are entitled to see the QuickBooks records that ProEx maintained for this project.

American Express statements for Kagan, KDC and ProEx

Your clients' limitation of the production to American Express statements that they deem to "pertain" to the Project is unacceptable. We have sworn testimony from Kagan's former bookkeeper that he used his American Express accounts to double bill his clients. In order to evaluate this allegation properly, our clients are entitled to all of the American Express statements during the time period at issue.

KDC and ProExcavation Books and Records

We requested both KDC and ProEx's complete books and records from November 1, 2012 to date. Given the nature of the allegations against Kagan and his companies and the existing support for those allegations, which includes sworn testimony from his former bookkeeper and a posse of other cheated investors, these requests are fully justified and our clients are entitled to this discovery to evaluate Kagan's double billing and use of his wholly owned and controlled companies to engage in this fraudulent self dealing.

ProEx's Employees, Subcontractors, and Clients

The identity of ProEx's employees, subcontractors, and clients from January 1, 2012 is also directly relevant to the issues in this case (ProEx Request Nos. 4-7). ProEx purportedly billed KDC $911,620.32 in the aggregate for the work it allegedly performed on these projects. The figure appears absurdly high on its face, includes double billing and is well in excess of any industry-recognized rate for the type of work involved in this project. ProExcavation has never produced any support for its charges against the Project.

Our clients are plainly entitled to discovery into the validity of any purported basis for these charges. Having admitted that Vadim Kagan was the sole ProEx employee during the Project (ProEx ATI No. 10), ProEx cannot possible contend that Mr. Kagan's personal efforts were worth over $900,000. It is therefore obligated to provide full and complete information concerning who did what to support these alleged charges. We are entitled to know the identity of ProEx's vendors and subcontractors. In addition, ProEx's contemporaneous projects and charges to other clients for whom ProEx may have worked, and the contracts that ProEx entered into with KDC or any other Kagan-controlled company (ProEx Request No. 13), are manifestly discoverable in order to analyze the extent to which any of the costs allegedly incurred by ProEx on this project were reasonable and the extent to which they are directly tied into the costs incurred by ProEx on Other Construction Projects. For example, if ProEx performed work only for KDC, employed only Kagan, and did not hire any subcontractors, any costs it claims to have incurred could be viewed as highly suspect. If, on the other hand, ProEx charged the same amount it charged KDC for arms-length transactions with other clients and contractors, this

John H. Perten, Esq.
Christopher M. Candon
November 15, 2017
Page 4

could be suggestive of ProEx's market price. The fact that ProEx wants to shield this information furthers our belief that ProEx worked only for KDC, employed only Kagan, and charged whatever it believed it could get away with on any given project without regard to the propriety of the charges.

***

      We are continuing to evaluate your clients' discovery responses and reserve the right to request additional information on other categories to which your clients objected and refused to produce relevant information. In the meantime, please let me know some dates and times you are available to discuss the deficiencies noted above.

Very truly yours,

Sean T. Carnathan

cc:    Peter Tamposi, Esq.

4834-3079-4580, v. 1