UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| *In re:* ) | |
| ) | |
| LYMAN-CUTLER, LLC, ) | Chapter 7 |
|        Debtor ) | Case No. 15-13881 FJB |
| ) | |
| ) | |
| LYMAN-CUTLER, LLC, ALEX FILIPPOV, ) | |
| and NICKOLAY LIPETSKER, ) | |
| ) | |
|        Plaintiffs, ) | |
| ) | Adv. Case No. 1:16-ap-01120 |
|     v. ) | |
| ) | |
| VADIM KAGAN, TATIANA KAGAN, ) | |
| KAGAN DEVELOPMENT KDC, CORP. and ) | |
| PROEXCAVATION CORP. ) | |
| ) | |
|        Defendants. ) | |

**AFFIDAVIT OF MICHAEL GOLDMAN IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND ANSWERS TO INTERROGATORIES BY DEFENDANTS KAGAN DEVELOPMENT KDC CORP. AND PROEXCAVATION CORP. AND SUBPOENA RESPONSES**

I, Michael Goldman, under oath, state as follows:

1.  I am over 18 years of age and competent to testify to the matters addressed in this affidavit. I make these statements based upon my own personal knowledge, information and belief. Where I make statements of belief, I believe these statements to be true.

2.  I am a Certified Public Accountant, a Certified Valuation Analyst, and a Certified Fraud Examiner. I also am certified in Financial Forensics.

3.  I am a Senior Managing Director of KCP Advisory Group, LLC ("KCP"), a provider of financial advisory, corporate restructuring, litigation support, forensic analysis, and

1

business performance improvement services since 2009.  I am also the manager and only member of Michael Goldman & Associates, LLC, an accounting firm providing consulting services related to insolvency, forensic accounting, business valuation, damages, litigation support, business systems, and tax preparation since 1996.  I was retained on this matter through KCP.

4. I have a Bachelor of Arts degree from Rice University in Houston, Texas, with majors in Economics and Managerial Studies.  I also have a Masters of Management degree from the J.L. Kellogg Graduate School of Management at Northwestern University in Evanston, Illinois, with concentrations in Accounting and Finance.

5. I was on the faculty at the Lake Forest Graduate School of Management from 1998 to 2013, where I taught a course in Entrepreneurship that dealt with all aspects of starting and managing a new business.  I also designed and taught courses in Financial Management and Control in the Lake Forest Corporate Education division of the school, including a week-long course in internal controls for senior management of a Fortune 500 company.

6. From 2008 through the end of 2014, I was a member of the Editorial Board of The Value Examiner, a professional journal for the consulting disciplines that is published by the National Association of Valuation Analysts.  In January 2012, I began a two-year term as Chairman of the Editorial Board.  In 2016, I rejoined the Editorial Board.

7. In the past 10 years I have authored the following publications:  I have written articles that have been published in peer-reviewed professional journals such as The Value Examiner, Illinois Family Law Report, American Journal of Family Law, and The Corporate Counselor.  I have written chapters in the following peer-reviewed published professional books: The Association of Certified Fraud Examiner's Fraud Casebook - Lessons from the Bad Side of Business, Walters Kluwer's Valuing Professional Practices and Licenses, the American

Bankruptcy Institute's <u>Commercial Fraud Manual</u>, and West's <u>Strategic Alternatives for Distressed Businesses</u>.  A complete list of my publications is in my *curriculum vitae* which is attached as **Appendix A**.

8. I have direct experience both consulting to and investigating construction companies and contractors of similar size, scope, and nature as Mr. Kagan and KDC.

9. I have been qualified as an expert witness in federal and state courts in Illinois, Indiana, New Hampshire, and Wisconsin.  Attached is a list of all cases in which, during the previous 4 years I have testified as an expert witness at trial or by deposition.  I have provided expert opinions in more than 25 cases addressing fraud, business practices, solvency, valuation, forensic analysis, and fraudulent conveyances.

10. I have served as a court-appointed examiner, and have worked as a forensic accountant for bankruptcy trustees, secured lenders, unsecured creditors, company owners, and the management teams of companies.  I have performed forensic accounting in relation to shareholder disputes, fraudulent conveyances, marital dissolutions, commercial damages disputes, bank frauds, embezzlement, skimming, and personal damage cases. I served as an expert witness in a whistle-blower government corruption case.   In all I have been retained as a forensic accountant or to provide valuations in more than 50 such matters.

11. My compensation in this matter is on an hourly basis and is not dependent on my conclusions or the outcome of the litigation.  I was provided with a retainer prior to undertaking any work in this matter.

12. Plaintiffs Lyman-Cutler, LLC, Alex Filippov and Nickolay Lipetsker have retained me to review documents provided by Vadim Kagan and KDC and to opine on the

veracity of the accounting information provided by them. I have also been asked to opine whether the claims made by Mr. Kagan and his companies are accurate and should be honored.

13. I have reviewed the documentation produced to date by Kagan and KDC. Based upon my experience and training and my review of these documents, the accounting information and related back-up produced so far is incomplete and insufficient to prove the validity of the claims made by Mr. Kagan and KDC. Furthermore, the documentation that was provided raises a number of questions that I believe need to be resolved in order to move this case forward:

    a. There are serious questions as to how many of the invoices presented relate to the Lyman-Cutler Project, and whether there was commingling between projects that Mr. Kagan was working on concurrently with the Lyman-Cutler Project.

    b. There are serious questions as to the authenticity of many of the vendor invoices provided.

    c. Some invoices or proposals that were paid as invoices appear to have been used twice.

    d. There are serious questions as to the completeness and accuracy of the records provided.

14. The materials provided to date do not adequately support to a reasonable degree of accounting certainty the claims the Defendants have asserted against Lyman-Cutler LLC. To the contrary, the documentation produced to date contains inconsistencies, incompleteness, and potential indicia of fraud. Further information needs to be provided to substantiate or clarify the claims being made and address the questions that these documents raise.

15. In order to properly resolve the issues raised in this matter and allow me to reach conclusions to a reasonable degree of accounting certainty, the following documents should be provided. Note that these documents routinely and necessarily exist in businesses very similar in size, scope, and competency to KDC and ProExcavation. Making copies of these documents or files should be easy to do and require a very small amount of time and other resources to accomplish. The documents being requested include:

    a. The QuickBooks data files, in electronic format, and supporting documentation for all of the projects Mr. Kagan was involved in during the period during which the Lyman-Cutler Project was being built. These are necessary to determine that costs and purchases were allocated properly. They are also necessary to assist in the reconciliation of costs to the budget in a detailed and proper manner. The files for ProEx are also needed as significant billings originated from that company. Copying these files should only take minutes and can be done on one flash drive.

    b. The complete set of bank statements and copies of cancelled checks for all expenses from all companies claimed by Mr. Kagan. Much of the evidence provided, such as accounting ledger sheets and invoice copies, is not sufficient evidence of payment to validate a claim. These records should already exist and be easily obtainable.

    c. Copies of all documents provided to the Bank for each draw-down on the construction loans. As draw-down requests typically have

5

        signed and notarized lien waivers and other contemporaneous documentation of expenses paid or incurred, these will be helpful in better understanding the binder of documents provided by Mr. Kagan. As they have already been prepared for the bank, providing them should be minimal burden.

d.    Copies of all inspections and sign-offs by city officials. The dates on invoices are sometimes sporadic and in contradiction of our understanding of when work was completed. Copies of the inspection reports may shed further light on why numerous expenses allegedly have been incurred after the Project appears to have been completed. Competent construction companies maintain copies of these records.

e.    Copies of all invoices for the entirety of the Lyman Cutler projects. Much of what was provided are proposals, estimates, or quotes. Actual invoices, along with copies of the checks that paid them and the QuickBooks data file to show how each expense was accounted for will allow these costs to be properly understood in the context of the budget and of what is still owed, if anything, on these projects. These records most likely exist because they are required to be kept in order to comply with tax regulations. Mr. Kagan already attempted to provide this data in his previous document production but his efforts were not complete.

  f.  Copies of all contracts with subcontractors. Competent construction companies maintain copies of these records.

  g.  Copies of all licenses, bonds, etc. provided by subcontractors. These are typically maintained by the general contractor and should be readily available.

  h.  Complete copies of all American Express and other credit card bills used to purchase materials for the Lyman Cutler projects and other projects being concurrently worked on by the Kagan entities. These will be compared to the QuickBooks data file to assist in ensuring proper cost allocation. It has also been alleged that materials were returned but not credited back to the projects, and complete statements will allow us to confirm or reject that allegation.

  i.  Copies of all payroll records for the relevant time periods to substantiate internal costs incurred that should be payable to one of the Kagan entities, particularly ProExcavation Corp. All taxpaying businesses are required to have these records. The time and effort required to copy and produce quarterly and annual payroll tax returns and filings is minimal.

  j.  Copies of federal income tax returns for each of the Kagan entities for each year in question. As these are signed under penalty of perjury, they would help to validate the accounting data in the QuickBooks files. Again, these are documents that are required to

        be kept and the time and effort to copy and produce these is minimal.

    k.    The files of the Defendants' accountant, Jason Gordon. The accountant should have a reconciliation between the books and records, the bank statements, and the tax returns that can help to resolve many of the questions that have arisen as a result of the documentation that has been produced so far.

16.    In sum, the documentation the Defendants have produced to date is inadequate to allow a reasonable accountant to conclude that their claims are valid. In fact, the documents produced so far are often contradictory and raise more questions than they answer. The documentation contains many red flags to indicate that the claims made by Mr. Kagan and KDC are not valid. I seek additional documentation and information in order to reach conclusions on these important issues to a reasonable degree of accounting certainty.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on December 21, 2017.

_____
Michael Goldman

<u>Certificate of Service</u>

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on December 21, 2017.

    <u>/s/ Sean T. Carnathan</u>

4843-0594-7481, v. 1