UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

———————————————————————— )
*In re:*                                                          )
                                                                      )
LYMAN-CUTLER, LLC,                            )               Chapter 7
                  Debtor                                  )               Case No. 15-13881 FJB
————————————————————————)

———————————————————————— )
                                                                      )
LYMAN-CUTLER, LLC, ALEX FILIPPOV,    )
and NICKOLAY LIPETSKER,                  )
                                                                      )
                  Plaintiffs,                              )
                                                                      )               Adv. Case No. 1:16-ap-01120
      v.                                                        )
                                                                      )
VADIM KAGAN, TATIANA KAGAN,          )
KAGAN DEVELOPMENT KDC, CORP. and  )
PROEXCAVATION CORP.                        )
                                                                      )
                  Defendants.                            )
————————————————————————)

**PLAINTIFFS' OPPOSITION TO MOTION TO QUASH SUBPOENA DUCES TECUM
SERVED ON JASON GORDON, S. GORDON CORPORATION**

Defendants Vadim Kagan, Tatiana Kagan, Kagan Development KDC, Corp. ("KDC")

and ProExcavation Corp. ("ProEx") (collectively, the "Defendants") are once again attempting to

erect a wall around relevant documents that will shield considerable light on the billing issues

that lie at the center of this dispute.  On November 17, 2017, Plaintiffs Lyman-Cutler, LLC (the

"LLC"), Alex Filippov, and Nickolay Lipetsker (collectively, the "Plaintiffs") subpoenaed

certain documents from KDC and ProEx's accountant, Jason Gordon ("Gordon").  Not only did

Gordon never object to the subpoena, but his counsel expressly represented that Gordon would

be "happy to produce whatever he has."  More than a month after the subpoena was served, the

*Defendants* (not Gordon) now seek to quash the subpoena arguing that the burden on *Gordon* is too onerous.

The Defendants lack standing to object based on the burden that could be imposed on a third party, particularly where that third party has waived his right to object and has already confirmed his willingness to comply. Even if they did have standing, the Defendants have utterly failed to meet their burden to prove that producing financial records for two companies maintained by Gordon over a limited year and a half time period is so onerous that the subpoena should be quashed. As set forth in more detail below, the subpoena seeks documents that are relevant to the billing issues in this case, some of which are already the subject of Plaintiffs' pending motion to compel, and which are narrowly tailored to cover only the time period during which the project engaged in by these parties was ongoing. The Defendants' oft-repeated and tired mantra that Plaintiffs are embarked on a "fishing expedition" could not be farther from the truth. The Court should deny the Defendants' motion to quash, deny their self-serving request to stay further discovery, and should deny their misguided effort to suggest an "alternative" discovery approach that will do nothing but assist the Defendants with hiding information they do not want to disclose.

## ARGUMENT

## I.    Gordon, the Party From Whom The Documents Are Sought, Waived His Right to Object to the Scope of the Subpoena.

The Defendants' motion is premised largely on the claim that Gordon would be unduly burdened if he had to comply with the subpoena. As an initial matter, a party cannot object to a subpoena served on another because of the alleged burden the other party may incur. It is the party that has been subpoenaed that has standing to assert this objection. Gordon, however,

waived his right to object to the scope of documents sought or the burden he may incur by failing to timely object.

A party that objects to a subpoena *duces tecum* must serve its written objection within 14 days of the subpoena's service or before the date for compliance specified therein, whichever is earlier. *Fed. R. Civ. P. 45(d)(2)(B)*.[1] A failure to do so results in a waiver of any objection. *In re Buchanan Ingersoll, P.C.*, 202 Fed. Appx. 454, 456-457 (Fed. Cir. 2006) (affirming allowance of motion to compel based on subpoenaed party's failure to object to document subpoena within 14 days); *Burroughs Corp. v. Dataware Sources, Inc.*, 1987 U.S. Dist. LEXIS 10334, *2 (D. Mass. 1987) ("When objections are not filed within the time provided by the Rule, the objections are waived"); *Santiago v. Lafferty*, 2015 U.S. Dist. LEXIS 19793, *9-10 (D. Mass. 2015) ("A nonparty's failure to timely make objections to a Rule 45 subpoena *duces tecum* generally requires the court to find that any objections have been waived.")

Gordon was first served with the subpoena in hand on November 17, 2017. *Affidavit of Joseph Calandrelli ("Calandrelli Aff.")*, ¶ 2, and its attached Exhibit A. Eighteen days later, on December 5, 2017, Gordon's attorney contacted Plaintiffs' counsel and expressly informed him that Gordon would be "happy to produce whatever he has." *Id.*, ¶ 3. An additional 16 days after that, the Defendants filed their motion based largely on the claim that the subpoena is too "onerous" and compliance therewith would "negatively impact" Gordon's ability to run his business.

These objections, based solely on the burden that *Gordon* would allegedly incur to comply, were required to be served on Plaintiffs no later than December 1, 2017. Gordon did not

---

[1] Rule 45 applies to this subpoena by operation of Federal Rule of Bankruptcy Procedure 9016.

do so.  In fact, he did not raise any objection at all.  Instead, four days after the deadline for

serving objections passed, Gordon's counsel expressly represented to Plaintiffs' counsel that

Gordon would be "happy" to comply.  The Defendants' motion, filed more than a month after

Gordon was served, is nothing more than a veiled attempt to belatedly resurrect for Gordon an

objection that he had waived by his failure to timely object.[2]

Even if Gordon had not waived this objection, the Defendants have not met their burden

to prove that the subpoena is oppressive.  *United States v. Tivian Lab, Inc.*, 589 F.2d 49, 55 (1st

Cir. 1978) ("The burden of proving that the request is oppressive is on the party objecting to the

agency's request"); *In re Youk-See*, 450 B.R. 312, 319-320 (Bankr. D. Mass. 2011) ("the

ultimate burden of persuasion on a motion to quash a subpoena duces tecum as oppressive rests

on the movant.")  According to Gordon's Affidavit, he was not even hired by KDC and ProEx

until late 2013 or early 2014, and was retained solely for the purpose of preparing the

companies' year-end tax returns.  Even if it did take the 24 hours estimated by Gordon to comply

(which is hard to conceive), Gordon has already stated that he would do so over the course of 60

days.  Searching for and producing documents related to this limited scope cannot possibly be so

oppressive as to warrant a denial of the subpoena.[3]  The Defendants' motion should be denied.

---

[2]     Defendants' counsel called Plaintiffs' counsel upon receipt of the subpoena indicating
that they believed the scope to be too broad and asking that compliance therewith be suspended
until the Court rules upon the Defendants' motion to dismiss.  At no time did they object on the
basis of burden.

[3]     There are a number of other statements made by Defendants in their moving papers that
are not supported by Gordon's Affidavit, including their assertion that this time year is
"extremely busy" for an accountant (W-2s have not even been issued yet) and that the request
would mandate Gordon review every email over a three year period (he was not even hired until
late 2013 or early 2014 and the request is limited to June 2015).

## II.      **The Subpoena Seeks Information That is Relevant to the Issues In This Case.**

Before focusing on the individual requests, the Defendants make three broad assertions

allegedly supporting why Plaintiffs should be precluded from obtaining documents from Gordon:

(i) the subpoena seeks information from "potentially dozens" of entities; (ii) the subpoena is not

limited to the time frame relevant to the LLC's project; and (iii) the subpoena is not limited to

just the information relating to the LLC's project.  The first two of these assertions are patently

false.  The third is the subject of Plaintiffs' motion to compel which is currently pending.

The Defendants are fully aware that the subpoena does not seek documents from "dozens

of potentially responsive entities." *Defendants' Motion to Quash*, p. 7.  Each one of the thirteen

categories of documents requested seeks documents that Gordon would have prepared for KDC

or ProEx *only*.  Even where the subpoena sought documents for the "Other Construction

Projects," this phrase was defined specifically to be limited to other projects on which KDC or

ProEx worked, not any other entity in which Kagan may have an interest.  The Defendants'

reliance on a standard definition of a corporate entity to include its officers or agents is

erroneous.  The subpoena seeks only information relating to KDC or ProEx.[4]

The subpoena also is limited to the time period relevant to the project in dispute –

December 2012 through June 2015.  The LLC purchased the property in December 2012.

Though the Defendants claim in their papers that construction of the homes did not start "until

after June 2013," it is clear that Defendants started the construction process immediately

following the purchase, including by hiring and paying a surveyor on December 23, 2012.

---

[4]      Had there been genuine confusion about the scope of these definitions, Gordon or the
Defendants could simply have asked Plaintiffs' counsel to confirm the intended scope.  That is
why the Court requires parties to confer before filing a discovery-related motion.  Neither
Gordon nor the Defendants ever raised the definition of KDC or ProEx as a source of concern in
any pre-motion conference.

*Calandrelli Aff.*, ¶ 4, and its attached Exhibit C.  The demolition permit itself was issued on May

2, 2013, well before the Defendants now claim they started construction.  Even if the Court were

to credit the Defendants' bare assertions, it is undeniable that the Defendants incurred some costs

for this project before June 2013 in preparation for the in ground construction to begin.  Limiting

the relevant time period to the month that the actual in ground construction began is likely to

artificially eliminate some of these relevant costs.

As for the end date, Defendants' statement that the scope of the subpoena should be

limited to work performed before KDC completed its work in October 2014 is antithetical to its

own claim.  Included in KDC's $2 million proof of claim is money for tiling, flooring, and other

work allegedly incurred as late as May and July 2015.  *Calandrelli Aff.*, ¶ 5.  Indeed, if KDC

finished its work in October 2014 (as Plaintiffs believe to be true), then the mechanics' lien it

filed in June 2015 was knowingly false.  *See G.L. c. 254, § 8* (requiring a statement of account to

be filed within 120 days of the contractor last performing work).  If KDC was in fact performing

work on the project through May 2015 as its proof of claim suggests, then there is no defensible

basis for Defendants' assertion that the time period included in these requests exceeds the

relevant time period.  The December 2012 – June 2015 time period is narrowly tailored to

uncover evidence that is reasonably related to the issues involved in this matter.

The request for documents relating to "Other Construction Projects" – those on which

KDC and ProEx worked during the same time period involved in this dispute – is the subject of

Plaintiffs' Motion to Compel, which is incorporated herein by reference.  As set forth more fully

in their motion, the documents from the other construction projects are necessary to further

investigate some indicia of fraud that appear in the accounting records maintained by Kagan on

this project, including what appear to be costs incurred on other projects charged to the LLC's

project, charges claimed due to KDC that cannot be reconciled with what has been produced to

date, and sworn testimony from a former KDC employee that Kagan arbitrarily assigned costs

among various projects, to name a few.  These documents are relevant for the reasons set forth in

the Plaintiffs' Motion to Compel, and Defendants' motion should be denied.

### *Individual Requests*

Documents Concerning the Project – Request Nos. 1 and 2

The Defendants do not appear to have an objection to these requests, other than to claim

that it will take Gordon "extensive time" to review three years' worth of emails with Kagan to

determine which relate to this project.  However, as noted above, if Gordon was not hired until

late 2013 or early 2014 and the only work he performed was year-end tax preparation services,

the burden to conduct this search is minimal.  This is particularly true where Gordon claims that

the only written communications he is aware of are "transmittal" documents.

Documents Concerning Other Construction Projects – Request Nos. 3 and 4

These documents are relevant for the reasons set forth above and in Plaintiffs' Motion to

Compel.

Tax Returns, Work Papers, and Supporting Material – Request Nos. 5, 6, and 12

Contrary to the Defendants' assertions, the Plaintiffs have demonstrated a need for KDC

and ProEx's tax returns and the material that support those tax returns, such as Gordon's working

papers and KDC/ProEx's payroll records, W-2s, and 1099s.  As detailed in Plaintiffs' Motion to

Compel, there are significant discrepancies between what KDC claims as the so-called costs of

construction and what the documentation it has produced to date shows, such as over $800,000

in undocumented "reimbursements" to KDC, $911,620.32 incurred by ProEx without a single

piece of documentary support, and hundreds of thousands of dollars supposedly incurred on

KDC's American Express account.  The Plaintiffs are entitled to see what financial information

the Defendants have reported to their federal government to see if it matches or sheds further

light on what they have reported as reimbursable costs on this project.

KDC and ProEx's Financial Statements – Request No. 7

In large part, this case revolves around the project's true costs, including what KDC was

paid (or, as KDC claims, should have been paid) and what it paid its subcontractors and vendors.

The companies' financial statements will help reveal what KDC or ProEx were charging on the

project while it was underway (i.e., what its accounts payables or receivables were) rather than

what these companies claimed to be the costs months after construction was completed.  This

information can be matched together with the information relating to the Other Construction

Projects to determine what the true costs of this project were.

Remaining Financial Records – Request Nos. 9, 10, 11, and 13

To the extent that Gordon is in possession of any remaining financial records for KDC or

ProEx during the relevant time period, they should be produced.  For the reasons set forth above,

it is important to compare what was being reported as costs to the accountant while the project

was underway to the costs the Defendants reported to the Plaintiffs for the first time in June

2015.

**III.     The Defendants Have Already Availed Themselves of Substantial Discovery While
          Their Motion to Dismiss Is Pending.  Their Request to Stay Discovery is Purely Self-
          Serving.**

The Defendants' request to stay discovery should be seen for what it really is – a naked

attempt to "have their cake and eat it too."  Since the Court first conducted a hearing on the

Defendants' first motion to dismiss, the Defendants issued twelve sets of paper discovery on the

Plaintiffs (each of the four defendants served separate written document requests and

interrogatories to each of the three plaintiffs), demanded that Plaintiffs' supplement their previous discovery responses, issued and received documents from Rockland Bank, and have requested discovery conferences with the Court to discuss certain disputes. Meanwhile, they have refused to produce a single page of documents in response to Plaintiffs' written discovery requests and now claim that any further discovery should be stayed until the Court rules on the motion to dismiss. The Defendants cannot have it both ways. They cannot on one hand avail themselves of the discovery procedures while their motion to dismiss is pending and, on the other, claim that party resources should be conserved by staying discovery until the motion is ruled upon.

Even if the Defendants had not served their own discovery, the case must proceed. The bankruptcy was originally filed in October 2015. The adversary proceeding was originally filed in July 2016. The discovery sought by the Plaintiffs is relevant to both the adversary proceeding and the contested matters (the latter not being subject to the motion to dismiss). There is no good reason to stay discovery.

**IV.    Conducting Discovery Based On What an Estimated Cost of Construction Would Be Will Not Reveal The Information Relevant to Plaintiffs' Claims.**

The Defendants' so-called suggestion to focus discovery only on those costs which may appear excessive to an expert is nothing more than a masked attempt to shield the Plaintiffs from information they do not want to disclose. Contrary to the Defendants' implied assertions, this dispute involving the amount claimed due to KDC does not turn on whether the Defendants' supposed costs are within industry norms. Instead, it turns on whether KDC actually incurred the costs it says it did and, even if it did, whether those costs were *bona fide* costs fairly charged by subcontractors free from any trumped up invoices, kickbacks, or any other sort of unlawful

arrangement.  Whether the costs claimed due were within industry standards will not reveal this information.

The Defendants' litigation conduct belies their purported concerns for reducing the cost of this litigation.  At every step of the way, the Defendants have done everything in their power to <u>increase</u> the cost of this litigation.  They have filed two motions to dismiss the adversary proceeding (the last round resulting in over 80 pages of briefing), moved to dismiss several of the claims and/or claims objections, issued twelve sets of written discovery requests, forced Plaintiffs to file a motion to compel, and repeatedly raised and briefed issues that the Court had previously resolved.  Now, a year and a half after the adversary proceeding was first commenced, the Defendants have disclosed for the first time that they anticipate filing a counterclaim in the adversary proceeding.  If the Defendants were truly concerned about costs, they would just answer the complaint, allow the discovery process to proceed, and move on to a conclusive evidentiary hearing.  Its refusal to do so speaks volumes about their concern over disclosing the information the Plaintiffs are seeking to obtain.  The Court should deny the Defendants' request.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Court should deny the Defendants' Motion to Quash and order that Gordon comply with the subpoena within 14 days of the Court's Order.

LYMAN-CUTLER, LLC,                          ALEX FILIPPOV and
By its attorney,                           NICKOLAY LIPETSKER,
                                           By their attorneys,


/s/ Peter Tamposi                          /s/ Sean T. Carnathan
Peter N. Tamposi, BBO No. 639497           Sean T. Carnathan, BBO No. 636889
The Tamposi Law Group, P.C.                scarnathan@ocmlaw.net
159 Main Street                            Joseph P. Calandrelli, BBO No. 666128
Nashua, NH 03060                           jcalandrelli@ocmlaw.net
T: (603) 204-5513                          O'Connor, Carnathan and Mack, LLC
                                           1 Van de Graaff Dr. Suite 104
                                           Burlington, MA 01803
                                           T:  781-359-9000

Dated:  January 4, 2018



<u>Certificate of Service</u>

        I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing and
paper copies will be sent to those indicated as non-registered participants on January 4, 2018.


                        /s/ Sean T. Carnathan