UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| *In re:* | |
| LYMAN-CUTLER, LLC, | Chapter 7 |
| Debtor | Case No. 15-13881 FJB |
| | |
| LYMAN-CUTLER, LLC, ALEX FILIPPOV, and NICKOLAY LIPETSKER, | |
| Plaintiffs, | |
| v. | Adv. Case No. 1:16-ap-01120 |
| VADIM KAGAN, TATIANA KAGAN, KAGAN DEVELOPMENT KDC, CORP. and PROEXCAVATION CORP. | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO MOTION TO QUASH SUBPOENA DUCES TECUM
SERVED ON AMERICAN EXPRESS CORPORATION**

Defendants Vadim Kagan, Tatiana Kagan, Kagan Development KDC, Corp. ("KDC") and ProExcavation Corp. ("ProEx") (collectively, the "Defendants") ask the Court to deny the Plaintiffs access to American Express account statement that will shed considerable light on the billing issues that lie at the center of this dispute. KDC's Proof of Claim includes **$1,181,755.56** of American Express charges. See Plaintiff's Motion to Compel [A.P. Doc. 75], Exhibit 14. KDC's former bookkeeper has testified under oath that Kagan uses his American Express accounts to defraud his investors. Brusenkova Aff. ¶ 12. Plaintiffs are clearly entitled to review all of his American Express Statements for the relevant time period to test the veracity of the Defendants' submissions.

1

**ARGUMENT**

I. **The Subpoena Seeks Information That is Relevant to the Issues In This Case.**

The Defendants' motion is premised largely on the claim that Plaintiffs should not be entitled to review the costs incurred by the Defendants on the "Other Construction Projects" – those on which KDC and ProEx worked during the same time period involved in this dispute. That information is the subject of Plaintiffs' Motion to Compel [A.P. Doc. 75], which is incorporated herein by reference. As set forth more fully in the Motion to Compel and the supporting affidavit of Michael Goldman [A.P. Doc. 76], the documents from the other construction projects are necessary to further investigate the indicia of fraud that appear in the accounting records maintained by Kagan on this project, including: (1) what appear to be costs incurred on other projects charged to the LLC's project; (2) charges claimed due to KDC that cannot be reconciled with what has been produced to date; and (3) sworn testimony from a former KDC employee that Kagan arbitrarily assigned costs among various projects.

The subpoena is specifically limited to the time period relevant to the project in dispute – December 2012 through June 2015. The LLC purchased the property in December 2012. Though the Defendants have attempted to claim that construction of the homes did not start "until after June 2013," it is clear that Defendants started the construction process immediately following the purchase, including by hiring and paying a surveyor on December 23, 2012. *See Affidavit of Joseph Calandrelli ("Calandrelli Aff.")*, ¶ 4, and its attached Exhibit C, filed in support of Plaintiffs' opposition to the Motion to Quash subpoena served on Jason Gordon. The demolition permit itself was issued on May 2, 2013, well before the Defendants now claim they started construction. Even if the Court were to credit the Defendants' bare assertions, it is undeniable that the Defendants incurred some costs for this project before June 2013 in

2

preparation for the in ground construction to begin. Limiting the relevant time period to the month that the actual in ground construction began may eliminate important data of relevant costs.

As for the end date, Defendants' statement that the scope of the subpoena far exceeds the actual construction work is antithetical to its own claim. Included in KDC's $2 million proof of claim is money for tiling, flooring, and other work allegedly incurred as late as May and July 2015. *Calandrelli Aff.*, ¶ 5. Indeed, if KDC finished its work in October 2014 (as Plaintiffs believe to be true), then the mechanics' lien it filed in June 2015 was knowingly false. *See G.L. c. 254, § 8* (requiring a statement of account to be filed within 120 days of the contractor last performing work). If KDC was in fact performing work on the project through May 2015 as its proof of claim suggests, then there is no defensible basis for Defendants' assertion that the time period included in these requests exceeds the relevant time period. The December 2012 – June 2015 time period is tailored to uncover evidence that is reasonably related to the issues involved in this matter.

Contrary to Defendants' argument, having even just a vendor name and charge will assist in shedding light on the financial issues in dispute. These charges can be cross-referenced against the QuickBook entries to determine the material or services purchased, can be compared to the costs charged on this project to determine if the costs on this project were within normal ranges, and, perhaps most importantly, confirm whether there were any charges incurred for other projects that were actually billed against this project. For example, if the financial records for another project that was ongoing at the same time as this one does not reveal a charge for lumber and an excessive amount of lumber was ordered and charged against this project, a fact finder could easily infer that this project was being overcharged. These documents are relevant

for the reasons set forth in the Plaintiffs' Motion to Compel, and Defendants' motion should be denied.[1]

*Individual Requests*

<u>Documents Concerning the Project</u> – Request Nos. 1 and 2

The Defendants do not have an objection to these requests, other than to speculate that Amex may not be easily able to determine which accounts concern the Project. Amex has not objected on these (or any) grounds. In any event, this objection is irrelevant since Plaintiffs have also asked for account statements for all Other Construction Projects. Amex will not be required to determine which accounts are for this Project or any other project.

<u>Documents For An Account Ending in 1134</u> – Request No. 3

To be clear, Plaintiffs are asking for the documents ending in this account number regardless if the account is officially held by Kagan, KDC, or ProEx. It does not appear that the Defendants object to these documents.

<u>Accounts Held In the Name of Vadim Kagan</u> – Request Nos. 4 and 8

There is no truth to the Defendants' assertions that these documents are for the purpose of prying into Kagan's personal spending habits. Plaintiffs have requested these documents in an effort to ensure that it has all of the financial records relating to any expenditures that Kagan may have made on this Project or any of the Other Construction Projects. The Plaintiffs do not know

---

[1] Though the Defendants do not expressly argue that the subpoena should be quashed because of any burden it might impose on Amex, they imply as much by stating that the subpoena is too "extensive" because "Amex has already advised the parties that it will take at least sixty days to locate the requested documents." *Defendants' Memorandum*, p. 2. The actual reason it may take Amex up to sixty days to comply has nothing to do with the breadth of the subpoena. According to Amex, the request for increased response time is due to the "high volume of subpoena requests" it has on file and appears to be automatically generated. A true and accurate copy of the letter from Amex is attached as **Exhibit A**. The Defendants have mischaracterized this letter in their papers.

4

what Kagan may have "titled" his other accounts.  What it does know is that it titled the account supposedly dedicated to this project as "Vadim Kagan Cutler."  If he used his personal name to open an account for this Project, it is likely that he also used his personal name when opening up accounts for Other Construction Projects.  Any concerns regarding Kagan's personal expenditures can be addressed by a reasonable confidentiality agreement.

<u>Accounts Held In the Name of Tatiana Kagan</u> – Request Nos. 5 and 8

Tatiana is not a mere bystander to the construction process.  She is a part owner and an officer of both KDC and ProEx.  Just like Kagan opened up an account in his own personal name to conduct KDC business, it would not be unlikely if an account were opened up in Tatiana's name for the same purpose.  Again, any concerns regarding Tatiana's personal expenditures can be addressed by a reasonable confidentiality agreement.

<u>Accounts Held In the Name of KDC or ProEx</u> – Request Nos. 6 - 8

These documents will reflect costs for the "Other Construction Projects."  They should be produced for the reasons stated above and in Plaintiffs' Motion to Compel.

**II.    The Defendants Have Already Availed Themselves of Substantial Discovery While Their Motion to Dismiss Is Pending.  Their Request to Stay Discovery is Purely Self-Serving.**

The Defendants' request to stay discovery should be seen for what it really is – a naked attempt to "have their cake and eat it too."  Since the Court first conducted a hearing on the Defendants' first motion to dismiss, the Defendants issued twelve sets of paper discovery on the Plaintiffs (each of the four defendants served separate written document requests and interrogatories to each of the three plaintiffs), demanded that Plaintiffs' supplement their previous discovery responses, issued and received documents from Rockland Bank, and have requested discovery conferences with the Court to discuss certain disputes.  Meanwhile, they

have refused to produce a single page of documents in response to Plaintiffs' written discovery requests and now claim that any further discovery should be stayed until the Court rules on the motion to dismiss. The Defendants cannot have it both ways. They cannot on one hand avail themselves of the discovery procedures while their motion to dismiss is pending and, on the other, claim that party resources should be conserved by staying discovery until the motion is ruled upon.

Even if the Defendants had not served their own discovery, the case must proceed. The bankruptcy was originally filed in October 2015. The adversary proceeding was originally filed in July 2016. The discovery sought by the Plaintiffs is relevant to both the adversary proceeding and the contested matters (the latter not being subject to the motion to dismiss). There is no good reason to stay discovery.

**III.     Conducting Discovery Based On What an Estimated Cost of Construction Would Be Will Not Reveal The Information Relevant to Plaintiffs' Claims.**

The Defendants' so-called suggestion to focus discovery only on those costs which may appear excessive to an expert is nothing more than a masked attempt to shield the Plaintiffs from information they do not want to disclose. Contrary to the Defendants' implied assertions, this dispute involving the amount claimed due to KDC does not turn on whether the Defendants' supposed costs are within industry norms. Instead, it turns on whether KDC actually incurred the costs it says it did and, even if it did, whether those costs were *bona fide* costs fairly charged by subcontractors free from any trumped up invoices, kickbacks, or any other sort of unlawful arrangement. Whether the costs claimed due were within industry standards will not reveal this information.

The Defendants' litigation conduct belies their purported concerns for reducing the cost of this litigation. At every step of the way, the Defendants have done everything in their power

6

to <u>increase</u> the cost of this litigation.  They have filed two motions to dismiss the adversary proceeding (the last round resulting in over 80 pages of briefing), moved to dismiss several of the claims and/or claims objections, issued twelve sets of written discovery requests, forced Plaintiffs to file a motion to compel, and repeatedly raised and briefed issues that the Court had previously resolved.  Now, a year and a half after the adversary proceeding was first commenced, the Defendants have disclosed for the first time that they anticipate filing a counterclaim in the adversary proceeding.  If the Defendants were truly concerned about costs, they would just answer the complaint, allow the discovery process to proceed, and move on to a conclusive evidentiary hearing.  Its refusal to do so speaks volumes about their concern over disclosing the information the Plaintiffs are seeking to obtain.  The Court should deny the Defendants' request.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the Defendants' Motion to Quash and order that Amex comply with the subpoena within 14 days of the Court's Order.

| | |
|---|---|
| LYMAN-CUTLER, LLC, <br> By its attorney, | ALEX FILIPPOV and <br> NICKOLAY LIPETSKER, <br> By their attorneys, |
| */s/ Peter Tamposi* <br> Peter N. Tamposi, BBO No. 639497 <br> The Tamposi Law Group, P.C. <br> 159 Main Street <br> Nashua, NH 03060 <br> T: (603) 204-5513 | */s/ Sean T. Carnathan* <br> Sean T. Carnathan, BBO No. 636889 <br> *scarnathan@ocmlaw.net* <br> Joseph P. Calandrelli, BBO No. 666128 <br> *jcalandrelli@ocmlaw.net* <br> O'Connor, Carnathan and Mack, LLC <br> 1 Van de Graaff Dr. Suite 104 <br> Burlington, MA 01803 <br> T:  781-359-9000 |
| Dated:  January 4, 2018 | |

<u>Certificate of Service</u>

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on January 4, 2018.

                                               <u>*/s/ Sean T. Carnathan*</u>

4848-4515-7465, v. 1