UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>LYMAN-CUTLER, LLC,<br><br>　　　　Debtor. | Chapter 7<br>No. 15-13881-FJB |
| LYMAN-CUTLER, LLC,<br>ALEX FILIPPOV and NICKOLAY<br>LIPETSKER,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>VADIM KAGAN, TATIANA KAGAN,<br>KAGAN DEVELOPMENT KDC, CORP.<br>and PROEXCAVATION CORP.<br><br>　　　　Defendants. | Adv. Proc. No. 16-01120 |

**OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION
OF DOCUMENTS AND ANSWERS TO INTERROGATORIES**

Defendants Kagan Development KDC, Corp. ("KDC") and ProExcavation ("ProExcavation") oppose plaintiffs' motion to compel production of documents and answers to interrogatories.

INTRODUCTION

After receiving over a thousand pages of backup documentation, plaintiffs bring this motion to compel seeking extraordinarily broad categories of documents that are wholly irrelevant to this action. Their requests overreach under the applicable rules and in light of the fact that—after nearly three years of litigation in state and federal courts and the benefit of

discovery in the state court—they still cannot articulate cogent theories for their fraud claims. Pending before the Court are defendants' motion to dismiss in which they argue, <u>inter alia</u>, that Plaintiffs should not be allowed to fish for information when they are unable to allege facts to satisfy Fed. R. Civ. P. 9(b). By their motion to compel, plaintiffs admit that they are speculating about their fraud claim and other claims and ask the Court to do exactly what they are not allowed to do under the rules: fish for information so they can cobble together allegations to survive a Rule 9(b) challenge and/or a motion for summary judgment. Far from supporting their position, the motion to compel confirms that plaintiffs have <u>no</u> facts, intentionally ignore the facts that do exist, and are jumping to conclusions that are simply unsupported. The fact that plaintiffs have chosen the most onerous and intrusive means to "discover" facts instead of looking at what has been already provided and asking the simple questions by less onerous means, speaks volumes as to plaintiffs' true motivations.

<u>FACTS</u>

The underlying allegations are well known to this Court and are set forth in the defendants' pending motions to dismiss [A.P. Document Nos. 53-61] and the motions to quash the subpoena issued to American Express Company and Jason Gordon, CPA, which are incorporated herein by reference. [A.P. Document Nos. 73-74]. A review of the unauthenticated exhibits annexed to plaintiffs' motion and conclusions supposedly supported thereby, reveal the lengths that plaintiffs will go to mislead this Court, which includes providing incomplete exhibits where the full documentation provided would belie their positions. As discussed below, even plaintiffs' supposed expert, Michael Goldman, admits that he can draw <u>no</u> conclusions from the documents he reviewed and, as to plaintiffs' insistence that they have clear evidence of fraud, the best he can say is that his review of documents (which he does not identify) indicates that there

might be "**potential**" [not actual] indicia of fraud. Goldman Aff., ¶14.[1] This is hardly enough to warrant the expansive discovery which plaintiffs seek. In actual fact, Mr. Goldman's failure to have any conclusions as to the existence of fraud further supports defendants' pending motions to dismiss based, in part, on Rule 9(b) of the Federal Rules of Civil Procedure. It seems that despite having had over two years to investigate, and despite their repeated insistence, both in open court and written court filings, that they have clear evidence of fraud, even plaintiffs' own expert cannot draw those conclusions.

ARGUMENT

1. THE EXHIBITS ANNEXED TO THE MOTION DO NOT
SUPPORT THE REQUEST FOR EXPANSIVE DISCOVERY

In support of their motions, plaintiffs affix several exhibits which supposedly justify their claimed need for expansive discovery not just into the Lyman-Cutler project, but into the twenty other projects on which KDC and ProExcavation worked during the period in which the Debtor's project was ongoing. A review of the exhibits, however, reveals just the opposite. They do not support the allegations. In fact, they confirm that this case is nothing more than smoke, mirrors and unsupported allegations.

a) Exhibits 12 and 12A

Exhibit 12 is an unauthenticated spreadsheet created by plaintiffs' counsel, together with his apparent personal conclusion that he has not been able to match documentation to the spreadsheet he has created. (Motion at 4).[2] The creation of this spreadsheet, however, which appears to list of every check written on the Debtor's account, confirms that plaintiffs already have copies of every check written on the Debtor's account despite their repeated protestation

---

[1] Defendants do not concede that Mr. Goldman even qualifies as an expert. See Argument 4, *infra.*
[2] Plaintiffs' counsel identifies this spreadsheet as "work product" and "reserve the right to update and revise their calculations and draw conclusions…" (Motion at p. 4, n.3).

3

that they have nothing. The fact that plaintiffs claim that they do not believe these payments represent legitimate construction charges, without more, shows that they do not understand the construction process nor the cost of constructing homes of the type involved in this dispute. Most importantly, their simple lack of belief does not provide free rein for expansive and overly intrusive discovery.

Exhibit 12A, which presumably is to be read in conjunction with Exhibit 12, purports to list checks made payable to KDC, again belying plaintiffs' claim that they have no documentation. Plaintiffs claim that these checks supposedly constitute evidence of "self-dealing." (Motion at 5). Even a cursory review of the interplay between these two exhibits demonstrates serious flaws in this unsubstantiated conclusion.

For context, Rockland Trust Company issued construction loans for this project. The proceeds of these loans were deposited into the Debtor's operating account. Some construction payments were made directly by the Debtor, and others were fronted by KDC, for which it was reimbursed from the Debtor's account. Gersh Aff., ¶4. The binders provided to plaintiffs in support of KDC's proof of claim, which plaintiffs have obviously ignored, provided the back-up for the monies expended.

This process is reflected in the very exhibits plaintiffs have provided. For example, the first entry on Exhibit 12A, Check No. 1060 in the amount of $37,894.34, is equal to the sum of the first six entries of Exhibit 12. Thus, far from suggesting self-dealing, it confirms that the payment was reimbursement of documented expenses. Continuing, the second entry of Exhibit 12A, Check No. 1061 in the amount of $29,200, is equal to the sum of the next two entries on Exhibit 12. Where is the self-dealing? If plaintiffs cannot back into the other numbers, that does not indicate self-dealing. Rather, it shows a misunderstanding of the books and an unwillingness

4

to review them carefully. To be clear, not all the reimbursements line up this neatly, but in the aggregate, they confirm not only the process but the lack of any fraud.

b) <u>Exhibit 13</u>

According to plaintiffs, the amounts charged by ProExcavation for excavation services are excessive and clearly evidence self-dealing and over charging. In fact, in their response to interrogatories, they suggest that, although they do not know what ProExcavation did, anything in excess of $135,000 for foundation work is impermissible. <u>See</u> Filippov's Answers to ProExcavation's Interrogatories, Answer No. 2 ("I am not specifically aware of the work that ProExcavation purportedly performed on the project."); Filippov's Answers to ProExcavation's Interrogatories, Answer No. 5 (claiming any charge beyond $135,000 by ProExcavation is improper); Lyman-Cutler, LLC's Answers to ProExcavation's Interrogatories, Answer No. 4 (admitting that it is unaware of the amount of money that was charged by ProExcavation); Lyman-Cutler, LLC's Answers to ProExcavation's Interrogatories, Answer No. 5 (claiming any charge beyond $135,000 by ProExcavation is improper). These interrogatory responses are annexed hereto as Exhibits 1 and 2, respectively.

Exhibit 13, according to plaintiffs, are the QuickBook summary reports of payments to ProExcavation. These summary reports were part of the binders provided to plaintiffs in support of KDC's proof of claim over two years ago. Plaintiffs then make the statement that "ProEx has not produced a single page in discovery…" (Motion at 5). In fact, ProExcavation provided copies of its proposals, describing the work it would do and itemizing its charges. When preparing Exhibit 13, however, **plaintiffs removed the actual ProExcavation proposal which supports the payments to it which were annexed to the QuickBooks summary**. The

5

QuickBooks summary, with the back-up that was attached thereto but removed by plaintiffs, is attached hereto as **Exhibit 3**.

The back-up provides a detailed description of what was done by ProExcavation and the amounts charged for each task. Even a cursory review reveals that ProExcavation did much more than just foundation work, and it is all itemized. The tasks included, without limitation, the demolition of the existing home, removal of the existing pool, clearing of the site, digging of the new basements, blasting of ledge, and pouring of foundations, substantial masonry work, in addition to other services provided. The plaintiffs have had this supporting documentation for over two years. Rather than focus on the description of tasks, the amounts attributable to those tasks, the check numbers, and copies of checks paid to ProExcavation, the plaintiffs falsely claim through unsubstantiated conclusions that anything above $135,000 paid to ProExcavation were excessive. Had they examined the budget that they claim they agreed upon with the supporting documents provided, the plaintiffs likely would have discovered that the amounts charged by ProExcavation are actually less than what would have been charged on the open market.

c) <u>Exhibit 14</u>

Exhibit 14 appears to be an American Express statement of charges to the dedicated Lyman-Cutler credit card. Insofar as plaintiffs already have this American Express statement, it is odd that plaintiffs have subpoenaed American Express for the same statement. A motion to quash that subpoena is pending. [A.P. Documents 73-74]. Despite 12 pages of itemized charges totaling almost $1.2 million, the only thing plaintiffs can offer, in a footnote, is that there appears to be a "fishy discrepancy" in the "approximate" amount of $7,000 in plumbing fixtures purchased one week "after the certificates of occupancy issued." (Motion at 5, n. 4). Of course, plaintiffs make no effort to identify the specific "approximately" $7,000 entry, forcing

6

defendants to cull through the entire exhibit to make an educated guess as to what entry they rely upon.

According to Exhibit 14, on October 9, 2014, there was a charge to Ferguson Enterprises, a plumbing supply company, not in the "approximate" amount of $7,000, but in the actual amount of $7,000. Plaintiffs assume this is the single charge that plaintiffs are questioning. The back up for that charge is included in the binders supporting KDC's proof of claim which, again, has been ignored. The Certificates of Occupancy ("CO") issued one week earlier, on October 2, 2014. Anyone familiar with construction knows that even after issuance of a CO, there are often finishing touches that need to be added. See Gersh Aff., ¶3. The fact that one week post-CO, there is a $7,000 charge is not "fishy" but typical. Most noteworthy is that despite their review of $1.2 million in American Express charges, this $7,000 "discrepancy" is the only thing plaintiffs can come up to support their repeated allegations of fraud. This too speaks volumes.

d) Exhibit 15

Exhibit 15 purports to be an exemplar of the QuickBooks entry for Unicon Electric. (Motion at 7). Plaintiffs draw nefarious conclusions by the entry of an amount payable months after completion of the homes. Again, plaintiffs ignore the back-up contained in the binders supporting KDC's proof of claim. That documentation shows that Unicon Electric charged $65,000 for all the electrical work in each home. Regardless of the entry date into QuickBooks, the QuickBooks report tracks this amount exactly. Are plaintiffs really suggesting that the total electrical subcontractor bill for wiring homes of this size would only be $35,000? Even a layperson should know that $35,000 does not get one the complete wiring of a new luxury home. Plaintiffs' position is borderline ridiculous or, at a minimum, a jump to a conclusion that could

be easily dispelled by a simple deposition of Unicon Electric rather than a demand for all sorts of other documents.

e) <u>Exhibit 16</u>

Exhibit 16, according to plaintiffs, reflect invoices that demonstrate that Debtor is being charged for work or materials provided to other ongoing projects which, presumably, supports their request to demand documentation regarding the financial dealings on each of the twenty other projects on which KDC worked during the duration of the Debtor's project. Plaintiffs fail to explain how the exemplar invoices which comprise Exhibit 16 support this supposed need.

The most curious thing about Exhibit 16 is that the documents plaintiffs attach demonstrate, clearly, that charges for Metrostone were credited back to the Debtor. If defendants were really intent on defrauding plaintiffs, why would they credit back anything? The first invoice in Exhibit 16, for 25 tons of stone, shows that this billing is a split between the Debtor's project and another project. Obviously, ProExcavation could get a better price by buying high volumes of stone, so it bought 25 tons, and then split the cost between two projects. Far from being fraudulent, this shows fiscal responsibility and an attempt to keep costs down. If ProExcavation was intent on defrauding plaintiffs, why would it submit an invoice that calls attention to the split? Plaintiffs' conclusion that this clearly demonstrates fraud is without merit.

Even more confusing is the unidentified aged account receivable report, presumably from a vendor that KDC uses, which is the last page of Exhibit 16. The fact that this report indicates that KDC bought products from that unidentified vendor for other ongoing projects too shows nothing. KDC, like any contractor, uses the same suppliers on multiple projects. The product that was earmarked for the Lyman-Cutler project, is clearly identified. Unless plaintiffs have any evidence that product listed as being purchased for other projects was charged to Debtor's

8

project, this vendor aged report shows absolutely nothing. Defendants do not even understand why it is annexed to plaintiffs' motion. Once again, defendants are asked to guess as to the import of the motion exhibits insofar as no analysis whatsoever has been provided as to how they support the need for expansive discovery.

2. PLAINTIFFS HAVE FAILED TO IDENTIFY A SINGLE INTERROGATORY OR DOCUMENT RESPONSE WHICH IS DEFICIENT.

In keeping with their broad brush approach, plaintiffs fail to identify a single interrogatory response which is deficient. Though styling the motion as a motion to compel answers to interrogatories, and attaching copies of the interrogatories as exhibits, plaintiffs leave it to defendants and this Court to guess as to which, if any, of the interrogatory responses are deficient. There is virtually no argument advanced as to the interrogatory responses. Further, plaintiffs do not address any of the specific objections asserted in the interrogatory responses. For this reason alone, the motion should be denied. See Fed. R. Civ. P. 7(b)(1)(B)(requiring motion to set forth grounds "with particularity"); Fed. R. Civ. P. 37(a)(3)(B)(iii) (permitting motion to compel an answer to "an interrogatory."). Noteworthy is that plaintiffs have not requested that a single interrogatory response be supplemented.

Similarly, as to the document responses, though the motion claims that documents have not been produced, plaintiffs do not identify the specific document response that they deem deficient, nor do they address any of the objections asserted. Rather, they start from the presumption that they are entitled to the documents, a presumption that is not accurate, and ask for a ruling that certain documents be provided without pointing the Court or the defendants to the specific requests which would call for those documents. It is not up to the Court or defendants to guess which document request would cover those items requested and which

9

objections plaintiffs' believe are improper and should be overruled. For this reason alone, the motion should be denied.

3. PLAINTIFFS HAVE FAILED TO ESTABLISH THAT THE FAR RANGING DISCOVERY SOUGHT, ESPECIALLY AS TO OTHER PROJECTS, IS RELEVANT OR NEEDED.

To the extent not already produced, defendants have agreed to produce all non-confidential documents directly related to the project at issue in this litigation. Plaintiffs, however, want more. They seek unfettered access to records of KDC and ProExcavation relating to twenty other projects, as well as confidential payroll records and tax returns. This represents gross overreaching. It is well established that when moving to compel, a movant "must make a prima facie showing that his claim of need and relevance is not frivolous." Cusumano v. Microsoft Corp., 162 F.3d 708, 716 (1st Cir. 1998) (internal quotations omitted). See also Rivera v. Dhl Glob. Forwarding, 272 F.R.D. 50, 54 (D.P.R. 2011) ("The party seeking production of documents containing confidential information must make a showing that its 'claim of need and relevance is not frivolous.'"), quoting, In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig., 249 F.R.D. 8, 12 (D. Mass. 2008), quoting, Cusumano, 162 F.3d at 716).

In the instant case, plaintiffs have failed to specify in their motion to compel how the information requested, especially as to the other twenty KDC projects and confidential information they seek, would be relevant to the issues involved in this lawsuit, i.e. were the charges for this single project proper or not, or are needed to prosecute their case. As the party seeking an order compelling discovery responses over the opponent's objection, the plaintiffs bear the initial burden of showing that the discovery requested is relevant. Cont'l W. Ins. Co. v. Opechee Constr. Corp., 2016 DNH 432016, U.S. Dist. LEXIS 25872, *3-4 citing, Caouette v.

10

OfficeMax, Inc., 352 F. Supp. 2d 134, 136 (D.N.H. 2005). As demonstrated above, plaintiffs' sole argument is that they "think" there might be something "fishy," though they cannot point to a single hard fact supporting their suspicion. This is not enough to bear their burden of establishing the need for the far ranging discovery that they seek. Accordingly, the motion should be denied.

4. THE AFFIDAVIT OF MICHAEL GOLDMAN SHOULD BE DISREGARDED AND/OR STRICKEN. AT A MINIMUM, DEFENDANTS SHOULD BE PERMITTED TO DEPOSE MR. GOLDMAN GIVEN THAT HE PURPORTS TO PROVIDE EXPERT OPINIONS IN SUPPORT OF THIS MOTION.

In their response to interrogatories, plaintiffs claim that they have made no decision as to experts and have no expert report. However, in support of their motion, they then produce an affidavit with a purported expert opinion. The opinion, however, appears to be nothing more than speculation, clearly drafted to fit plaintiffs' unsupported and repeated allegations, as opposed to being an independent analysis. Mr. Goldman's affidavit does not say there is fraud or even that there is an indicia of fraud. What he does say is that he cannot draw any conclusions and there may be indicia of fraud, but even as to that he is not sure. This hardly supports plaintiffs' position that they need expansive and intrusive discovery. It does, however, support defendants' position that plaintiffs are merely fishing.

Mr. Goldman provides no factual basis for his conclusions, leaving them as unsubstantiated supposition and not in compliance with the disclosure rules for experts. See Fed. R. Civ. P. 26(a)(2)(requiring any testifying expert to provide written report which includes the facts or data considered by the witness in forming his opinion). He does not identify the documents he reviewed and does not provide a single example of any document which gives rise to the "questions" that he purports to raise. As to his claim that there may be double billing, how is it that he could not identify a single charge which raises that specter? As to his claim that

there may be invoices that are not authentic, how is it that he does not provide any specifics for that assertion either? The affidavit is nothing but self-serving speculation and, accordingly, it should be disregarded and stricken.

Given that plaintiffs claimed that they did not have any expert opinions, yet then purport to offer up an expert affidavit, if this Court is going to consider any portion of the affidavit, before ruling on the instant motion defendants should be permitted to depose Mr. Goldman in order to fully explore the basis for his supposed opinions. See Fed. R. Civ. P. 26(b)(4)(A) (permitting deposition of expert who may be presented at trial). Litigation and motion practice are not supposed to be trial by ambush, but this is exactly the tack upon which plaintiffs have embarked upon. This court should not countenance this conduct.

5. ALLOWANCE OF THE MOTION WOULD SIGNIFICANTLY PREJUDICE DEFENDANTS.

As set forth in defendants' pending motions to quash the subpoenas issued to American Express and Jason Gordon, CPA, the requested documents go far beyond any reasonable need for discovery. Further, as set forth in the previously filed Affidavit of Daniel Gersh (A.P. Document Nos. 73-74), there were twenty other projects on which KDC and ProExcavation worked during the time frame of Debtor's project. Allowing plaintiffs unfettered access into these twenty other projects, especially given the complete lack of any evidence of the fraud that has been alleged, would represent a gross abuse of the discovery process.

Notwithstanding Mr. Goldman's self-serving speculation as to how simple it would be for defendants to produce all the documents requested, it is not that simple. As conceded by plaintiffs, ProExcavation has a single employee. KDC is similarly sized. To locate, organize and copy every invoice from each of the twenty other projects would be a monumental task which neither KDC nor ProExcavation have the resources to accommodate. This would involve

countless hours of time and expense, and materially interfere with KDC's and ProExcavation's ability to perform their daily duties for other currently ongoing projects. See Gersh Aff., ¶4. This amount of time is in addition to the dozens of hours already expended by Mr. Gersh organizing the backup documentation that was already produced and which plaintiffs now are apparently ignoring. KDC and ProExcavation are not the large sophisticated companies which Mr. Goldman apparently believes them to be, nor does he have any basis whatsoever to opine how easy it should be for them to respond. If this Court orders additional documents to be produced, which defendants believe would be improper, such production should be conditioned upon an order that plaintiffs pay for all personnel and copying costs incurred by defendants, together with establishment of a reasonable time frame for defendants to comply, so as to minimize the impact such compliance would have on defendants' ability to service their current clients.

The overbreadth of the requests is monumental. Neither Mr. Goldman nor plaintiffs provide any cogent explanation as to how ProExcavation's and KDC's tax returns would shed any light on the discrete expenses for the Debtor's project. Tax returns contain gross numbers only. Moreover, tax returns are presumptively private. A party requesting federal tax returns must demonstrate a heightened standard to compel a taxpayer to disclose the returns. See Town Taxi, Inc. v. Police Commissioner of Boston, 377 Mass. 576, 586-88 (1979). Specifically, a requesting party must show both: (1) the tax returns are specifically relevant to the issues in the case; and (2) the requesting party cannot obtain the relevant information from any other source. See SEC v. Cymaticolor Corp., 106 F.R.D. 545, 547 (S.D.N.Y. 1985). Here, Plaintiffs cannot establish either of these elements. In addition, state tax returns are privileged as a matter of law. See Finance Commission of Boston v. Commissioner of Revenue, 383 Mass. 63, 71, (1981)

13

(state tax returns in Massachusetts are privileged as a matter of statute under G.L. c. 62C, § 21). Also, "[t]he privilege cannot be circumvented by simply demanding the information from the taxpayer." Cadrin v. Trans Spec Truck Serv., Inc., 2003 Mass. Super. LEXIS 413 *, 17 Mass. L. Rep. 121 (Mass. Super. Ct. Nov. 26, 2003), citing, James Millar Co. v. Commonwealth, 251 Mass. 457, 464 (1925).

As to "books, records and bank statements" belonging to KDC and ProExcavation, this request provides no specificity whatsoever as to what plaintiffs need. It is simply a broad catch-all for unfettered access into those companies' business dealings. To the extent these have not already been produced, KDC has no objection to producing cancelled checks relating to this project only as well as AMEX statements showing charges for this project only. KDC is also willing to produce documents relative to charges and disbursements on the Debtor project, to the extent not already produced, but it objects to producing information on the other twenty unrelated projects on which it worked during the pertinent time frame.

As noted above, contrary to plaintiffs' insistence, ProExcavation has already produced the accepted proposal for its work. Accepting plaintiffs' numbers as true for purposes of this motion, the mere fact that ProExcavation charged $911,620.32, should raise no eyebrows absent some showing that this amount is exorbitant for the work that was performed. Plaintiffs rely on nothing but a raw number to support their claims that this number is too high and is evidence of malfeasance.

Plaintiffs have already represented to this Court that they have no intent to depose each of the other subcontractors who worked on this project. As none has asserted a claim here, it is hard to understand why plaintiff can possibly need the identity of each of ProExcavation's sub-subcontractors. Similarly, why it needs to see payroll records remains a mystery.

14

6. THERE ARE LESS ONEROUS MEANS OF PROVIDING THE REQUESTED
   INFORMATION IF PLAINTIFFS ESTABLISH THAT IT IS TRULY NEEDED.

Defendants have produced binders with QuickBook summaries, proof of payment, and back-up invoices. If plaintiffs have questions about the accounting, a simple deposition as to those records should easily dispel those areas which plaintiffs believe are concerning. The fact that plaintiffs do not want to ask these questions from the source, is indicative of their desire to needlessly run up fees. Before expansive discovery is permitted, given the Court's stated preference to limit discovery proportionately, plaintiffs should be required to exhaust less onerous and expensive means. Moreover, until this Court rules on the pending motions to dismiss, it is premature to order any additional discovery, particularly when many, if not all, of the discovery issues may become moot.

7. A CONFIDENTIALITY AGREEMENT DOES NOT
   ADEQUATELY ADDRESS DEFENDANTS' CONCERNS.

Plaintiffs' offer of a confidentiality agreement does not address the defendants' legitimate concerns. Even if defendants are willing to keep things confidential, that is not a basis to allow discovery of information to which plaintiffs are not otherwise entitled. Moreover, it is a fact that plaintiffs have already contacted investors on other projects to see if they can scare up "dirt" about Kagan. A confidentiality agreement will not prevent plaintiffs, or their agents, from contacting defendants' contractors or employees, or partners on other projects, and interfering with defendants' advantageous relationships.

8. THERE IS NO BASIS FOR AN AWARD OF ATTORNEYS' FEES TO
   PLAINTIFFS, THOUGH SUCH FEES SHOULD BE AWARDED TO THE
   DEFENDANTS GIVEN THE NATURE OF THE INSTANT MOTION.

Although no making no argument in the body of the motion, in their prayer for relief, plaintiffs seek an award of fees pursuant to Rule 37(a)(5). The rule actually provides that if the

"opposing party's non-disclosure, response, or objection was substantially justified" or "other circumstances make an award of expenses unjust," fees should <u>not</u> awarded. Fed. R. Civ. P. 37(a)(5)(A)(ii) and (iii). Clearly, regardless of the outcome of this motion, defendants' position is "substantially justified" and the circumstances clearly militate against an award of fees. The Rules also provide that if the motion is denied, then the party opposing may be awarded attorneys' fees. <u>Id.</u> at Rule 37 (a)(5)(B). Moreover, if the motion is allowed in part and denied in part, the Court has the ability to apportion any award of fees. <u>Id.</u> at Rule 37(a)(5)(C). If any fees are to be awarded, they should be asserted against plaintiffs for failing to move in good faith and to properly support their motion.

## CONCLUSION

Based upon the foregoing, defendants respectfully request that plaintiffs' motion to compel be denied.

Dated:  January 4, 2018 Respectfully submitted,

KAGAN DEVELOPMENT KDC, CORP. and
PROEXCAVATION CORP.,

By their Attorneys,

/s/ John H. Perten
Christopher M. Candon, BBO# 650855
John H. Perten, BBO# 548728
SHEEHAN PHINNEY BASS & GREEN, PA
255 State Street, 5th Floor
Boston, MA  02109
Tel:  617-897-5600
Fax: 617-439-9363
E-mail: jperten@sheehan.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of January, 2018, a copy of the foregoing was served upon the parties listed below via ECF and/or first class mail, postage prepaid.

Eric K. Bradford
Office of the US Trustee
J.W. McCormack Post Office & Courthouse
5 Post Office Sq., 10th Fl, Suite 1000
Boston, MA 02109

Sean T. Carnathan
O'Connor, Carnathan and Mack, LLC
1 Van De Graaff Drive
Suite 104
Burlington, MA 01772

David B. Madoff
Madoff & Khoury LLP
124 Washington Street - Suite 202
Foxborough, MA 02035

Steffani Pelton Nicholson
Madoff & Khoury LLP
124 Washington Street
Foxborough, MA 02035

Sarah A Smegal
Hackett Feinberg P.C.
155 Federal Street
9th Floor
Boston, MA 02110

Joseph P. Calandrelli
O'Connor Carnathan and Mack LLC
1 Van De Graaff Drive
Suite 104
Burlington, MA 01772

Stephen G. DeLisle
Rubin and Rudman LLP
50 Rowes Wharf
3rd Floor
Boston, MA 02110

Amy M. McCallen
Rubin and Rudman LLP
50 Rowes Wharf
Boston, MA 02110

David C. Phalen
Hackett Feinberg P.C.
155 Federal Street, 9th Floor
Boston, MA 02110

Peter N. Tamposi
The Tamposi Law Group
159 Main Street
Nashua, NH 03060

/s/ John H. Perten
John H. Perten