UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| *In re:*<br><br>LYMAN-CUTLER, LLC,<br>    Debtor,<br><br>―――――――――――――――――――<br><br>LYMAN-CUTLER, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>VADIM KAGAN, TATIANA KAGAN,<br>KAGAN DEVELOPMENT KDC CORP.,<br>and PROEXCAVACTION CORP.,<br><br>    Defendants. | Chapter 7<br>No. 15-13881-FJB<br><br><br>A.P. No. 16-1120 |

### ALEX FILIPPOV'S ANSWERS TO PROEXCAVATION CORP.'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26 and 33, made applicable to this proceeding through Federal Rules of Bankruptcy Procedure 7026 and 7033, and this Court's Pre-Trial Order, Alex Filippov ("Filippov") responds to ProExcavation Corp.'s ("ProExcavation") First Set of Interrogatories. Filippov's responses are based upon information currently known. Discovery is ongoing. He reserves the right to amend, modify, or supplement each of the responses set forth below.

### GENERAL OBJECTIONS

Filippov objects to the extent ProExcavation's First Set of Interrogatories purport to require Filippov to respond on his own behalf as well as "alleged managing member" of Lyman-Cutler, LLC (the "LLC"). ProExcavation, and each of the other parties named above, has served separate discovery requests on the LLC. Purporting to require Filippov to respond to these interrogatories on behalf of the

1

LLC as well as on his own individual behalf is unduly burdensome, needlessly duplicative, and in violation of the Court's Pre-Trial Order. Filippov will respond to these interrogatories on his own behalf only.

Filippov further objects to the extent the "Instructions" section of ProExcavation's First Set of Interrogatories purport to impose on Filippov any obligation that exceeds those required by the Rules of Civil Procedure. Filippov will respond in accordance with any obligations imposed by the Rules.

## ANSWERS

### Interrogatory No. 1

Please set forth, with complete detail, each and every communication between Filippov and ProExcavation regarding the Project.

### Answer No. 1

Filippov objects to this interrogatory. There were countless communications regarding the Project between Filippov and ProExcavation's President, Vadim Kagan ("Kagan"). To require Filippov to identify each of them here is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, particularly as it relates to communications between the two parties that are not related to any topic that is at issue in this case. Subject to and without waiving any of the foregoing objections, Filippov states the following: Though I had countless communications with ProExcavation's President, Vadim Kagan, regarding the Project, I am unaware if any of these conversations were with Kagan on ProExcavation's behalf.

### Interrogatory No. 2

Please set forth the full scope of services provided by ProExcavation on the Project.

### Answer No. 2

Filippov objects to this interrogatory to the extent it seeks information that is in the hands of third parties; namely, Kagan Development KDC Corp. ("KDC") and ProExcavation. Subject to and without waiving any of his foregoing objections, Filippov states the following: The LLC never entered into a written contract with ProExcavation for the Project. Instead, the LLC entered into a written contract with Classic Homes Development & Construction, LLC to serve as the general contractor for the Project. I have learned, however, that Kagan actually had the general contractor work performed by KDC, another company he owned and controlled, and that it was KDC that supposedly retained ProExcavation to perform certain site and excavation work on the Project. I am not specifically aware of the work that ProExcavation purportedly performed on the Project.

**Interrogatory No. 3**

Please itemize all monies paid to ProExcavation for labor and material provided for the Project.

**Answer No. 3**

Filippov objects to this interrogatory to the extent it seeks information about payments received by ProExcavation from any person or entity other than the LLC. Filippov further objects that this interrogatory seeks information uniquely in the control of Kagan, KDC and ProExcavation. Subject to and without waiving his foregoing objections, Filippov states the following: I lack personal knowledge of the specific amounts and detailed itemization of all monies paid to ProExcavation, or for what purpose it was paid, since it was Kagan who controlled the payment of the money to his own company, KDC, who then purportedly paid ProExcavation. Notwithstanding the above, my review of the LLC's financial records indicate that the LLC paid ProExcavation at least $455,000.

**Interrogatory No. 4**

If you contend that the monies charged by ProExcavation for labor and material provided for the Project were excessive or somehow improper, please set forth, in complete detail, all facts upon which you base that contention.

**Answer No. 4**

I am unaware of what ProExcavation may or may not have "charged" KDC because ProExcavation has never provided an invoice, bill, or other form of request for payment reflecting what it charged for the labor or materials purportedly provided for the Project. Nonetheless, I am aware that the LLC paid ProExcavation at least $455,000, and that ProExcavation claims an entitlement to nearly $455,000 more. This total figure is grossly in excess of what a fair market charge would be for the type of site work that was involved in the Project. Discovery is ongoing and a detailed analysis of these charges is still being prepared by an expert(s), subject to completion of fact discovery. An expert report will be produced in due course during this litigation, which report is incorporated by reference herein.

**Interrogatory No. 5**

Please set forth what you believe is the fair and reasonable value for the labor and material provided by ProExcavation for the Project, and the complete factual basis for that belief.

**Answer No. 5**

Filippov objects to this interrogatory. Filippov's subjective belief regarding the "fair and reasonable value" for labor or material provided by ProExcavation for the Project is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence as ProExcavation's alleged entitlement to any money from the LLC is not dependent on what is "fair and reasonable." Subject to and without waiving his foregoing objections, Filippov states the following: I believe that the amounts originally budgeted by Kagan for the foundation work - $135,000 for each home – represents what I

consider to be fair and reasonable for the foundation services purportedly rendered by ProExcavation. An expert report will be produced in due course in this litigation and is incorporated herein by reference.

### Interrogatory No. 6

Please identify any and all communications which you had with anyone regarding the value of labor and materials provided for the Project by ProExcavation.

### Answer No. 6

Filippov objects to this interrogatory because it seeks communications between Filippov and his counsel that are protected by the attorney-client privilege and/or the work-product doctrine. Filippov further objects because it seeks communications between Filippov or his counsel and any experts consulted or retained for purposes of this litigation. Any such communications are protected from disclosure by the work-product doctrine and Fed. R. Civ. P. 26(b)(4). Subject to and without waiving his foregoing objections, Filippov states the following: I have not had any non-privileged or non-protected communications with anybody concerning the value of the labor and materials provided by ProExcavation for the Project.

### Interrogatory No. 7

If you contend that any expenses charged by ProExcavation are "double charges" as alleged in paragraph 44 of the Adversary Proceeding Complaint, please identify each such charge and the factual basis for that contention.

### Answer No. 7

Kagan agreed, on behalf of whatever company he was intending to the work, to construct the Project at a fixed cost of $1.3 million per home, plus soft carrying costs. This included a budget of $135,000 to perform the foundation work on each home. Based on my understanding at the time, and I do still continue to believe, that this represented the fair value and true arms' length cost for the type of work that I believe ProExcavation to have performed on the Project. Though I am unaware of what ProExcavation may or may not have "charged" KDC because ProExcavation has never provided an invoice, bill, or other form of request for payment reflecting what it charged for the labor or materials purportedly provided for the Project, I am aware that the LLC paid ProExcavation at least $455,000 for the work it purportedly provided, and that ProExcavation is claiming an entitlement to nearly $455,000 more. It is my belief that all of the payments received and charged by ProExcavation above the amount originally budgeted by Kagan were the result of fraud and were fabricated by Kagan, KDC and ProExcavation. I am not aware of any site condition existing at the Project that should have increased this budgeted cost, nor am I aware of any contemporaneous time record or payment request that would have accurately captured or supported ProExavation's charges beyond this figure. The fact that Kagan also controlled the payment of the cost from KDC to his other company, ProExcavation, and made several large, unsupported payments, further causes me to believe that these payments were fraudulent. Discovery is ongoing and an expert report on this topic is also expected in the due course of this litigation and incorporated herein by reference.

### Interrogatory No. 8

Please itemize all damages which you seek to recover from ProExcavation, including in your response any pertinent calculations and the factual basis for those damages.

### Answer No. 8

Filippov objects to this interrogatory as premature. Discovery and expert analysis is ongoing. In general terms, Filippov asserts that the purported charges above the original budget are fabricated and fraudulent and not authorized or properly payable even if not intentionally false and fraudulent. Damages include the amounts paid above the budgeted amounts and also the losses incurred as a result of being forced into a distressed sale of the LLC's properties, encumbered by a false and fraudulent mechanic's lien and resulting bankruptcy. The precise amount of the damages will depend upon the determinations of the experts, which will be produced in due course in this litigation and are incorporated herein by reference.

### Interrogatory No. 9

If you contend that ProExcavation conspired with Kagan, KDC and Tatiana, or any one of them, to defraud the Debtor, please identify all facts upon which you base that contention.

### Answer No. 9

ProExcavation reached an agreement with KDC and Kagan whereby ProExcavation agreed to perform certain excavation and site work on the Project and knowingly and intentionally submit fabricated, falsely inflated requests for payment from KDC for the purpose of then permitting KDC and Kagan to use these purported expenses to demand additional money from the LLC and, indirectly, from me. ProExcavation furthered this conspiracy by performing the work, submitting charges which it knew to be falsely inflated, demanding that sum be repaid to it by KDC, and subsequently filing a proof of claim in the LLC's bankruptcy.

Kagan and Tatiana are corporate officers of KDC and have actual knowledge of the false, inflated charges by ProExcavation and false demands for payment by KDC based upon those false, inflated charges. They directly conspired to cause KDC and ProExcavation to orchestrate this fraudulent billing scheme.

### Interrogatory No. 10

For each and every person who you expect to call as an expert witness at trial, please state: (a) the identity of each expert by giving his/her name, address, specialty, and professional education and experience; (b) the subject matter on which each expert is expected to testify; (c) the substance of the facts and opinions to which each such expert is expected to testify; and (d) a summary of the grounds for each such opinion.

**Answer No. 10**

Filippov objects to subparagraphs (b) through (d) of this interrogatory to the extent any expert witness identified is required to provide a written report under Fed. R. Civ. P. 26(b)(2)(B) as the requested information in those subparagraphs is duplicative of the information required to be identified in the written report. Filippov further objects because this interrogatory is premature as the Court has set an expert disclosure deadline of December 31, 2017. The identity of any expert Filippov intends to call as a witness at trial will be made in accordance with the Court's ordered deadline.

**Interrogatory No. 11**

If you contend that ProExcavation acted with "gross negligence" as that term is utilized in Section 10.2 of the Operating Agreement, please set forth all facts upon which you rely for that contention.

**Answer No. 11**

Filippov objects to this interrogatory because it is overly broad, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Section 10.2 of the LLC's Operating Agreement provides for certain indemnification obligations to the LLC's members. ProExcavation is not a member of the LLC and was never authorized to take any action on the LLC's behalf, and therefore is not entitled to any indemnification from the LLC. Subject to and without waiving any of the foregoing objections, even if ProExcavation was somehow entitled to assert a claim for indemnification against the LLC, the gross negligence detailed in the Adversary Proceeding Complaint and Answer No. 9, above, would preclude ProExcavation from being indemnified. In addition, to the extent that the Defendants did not intentionally defraud Filippov, Lipetsker and the LLC, incurring purported charges of approximately $900,000 for site work budgeted for $270,000 without prior consultation with and approval by Filippov and Lipetsker is grossly negligent.

**Interrogatory No. 12**

If you contend that ProExcavation acted with "willful misconduct" as that term is utilized in Section 10.2 of the Operating Agreement, please set forth all facts upon which you rely for that contention.

**Answer No. 12**

Filippov objects to this interrogatory because it is overly broad, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Section 10.2 of the LLC's Operating Agreement provides for certain indemnification obligations to the LLC's members. ProExcavation is not a member of the LLC and was never authorized to take any action on the LLC's behalf, and therefore is not entitled to any indemnification from the LLC. Subject to and without waiving any of the foregoing objections, even if ProExcavation was somehow entitled to assert a claim for indemnification against the LLC, the willful misconduct detailed in the Adversary Proceeding Complaint and in Answer No. 9, above, would preclude ProExcavation from being indemnified.

### Interrogatory No. 13

If you contend that ProExcavation did not act in "good faith" as that term is utilized in Section 10.2 of the Operating Agreement, please set forth all facts upon which you rely for that contention.

### Answer No. 13

Filippov objects to this interrogatory because it is overly broad, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Section 10.2 of the LLC's Operating Agreement provides for certain indemnification obligations to the LLC's members. ProExcavation is not a member of the LLC and was never authorized to take any action on the LLC's behalf, and was not and therefore is not entitled to any indemnification from the LLC. Subject to and without waiving any of the foregoing objections, even if ProExcavation was somehow entitled to assert a claim for indemnification against the LLC, the bad faith detailed in the Adversary Proceeding Complaint and in Answer No. 9, above, would preclude ProExcavation from being indemnified.

Verification

I, Alex Filippov, state under the pains and penalties of perjury that the foregoing answers are true and accurate to the best of my knowledge, information, and belief.

_____
Alex Filippov

*As to objections:*

*/s/ Sean T. Carnathan*
Sean T. Carnathan, BBO No. 636889
*scarnathan@ocmlaw.net*
Joseph P. Calandrelli, BBO No. 666128
*jcalandrelli@ocmlaw.net*
**O'Connor, Carnathan and Mack LLC**
Landmark One, Suite 104
1 Van de Graaff Dr.
Burlington, Massachusetts 01803
T: (781) 359-9000

Dated: October 2, 2017

Certificate of Service

I, Sean T. Carnathan, certify that a copy of the foregoing document was served by electronic and first-class mail, postage prepaid, to Defendants' counsel on October 2, 2017.

*/s/ Sean T. Carnathan*
Sean T. Carnathan