UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re:<br><br>LYMAN-CUTLER, LLC,<br><br>　　　　Debtor. | ) ) ) ) ) ) ) | Chapter 7<br>No. 15-13881-FJB |
| LYMAN-CUTLER, LLC,<br>ALEX FILIPPOV and<br>NICKOLAY LIPETSKER,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>VADIM KAGAN, TATIANA KAGAN,<br>KAGAN DEVELOPMENT KDC, CORP.<br>and PROEXCAVATION CORP.<br><br>　　　　Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Adv. Proc. No. 16-01120 |

**DEFENDANTS' REPLY TO PLAINTIFFS' OMNIBUS OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS AMENDED ADVERSARY COMPLAINT**

　　　　Defendants Vadim Kagan ("Kagan"), Tatiana Kagan, Kagan Development KDC, Corp. ("KDC") and ProExcavation ("ProExcavation") submit the following Reply to Plaintiffs' Omnibus Opposition to Defendants' Motions to Dismiss Amended Adversary Complaint.[1]

---

[1] Plaintiffs complain that each Defendant filed a separate motion to dismiss, but this criticism is emblematic of Plaintiffs' attempt to lump Defendants together to artificially buttress claims that are defective individually. Each Defendant stands in his/her/its own position and Plaintiffs must carry their burden against each. When one pauses to examine the allegations and lack of proof with respect to each Defendant individually, it becomes clear that the Amended Complaint must be dismissed.

{S1080785.1}

# I.
## The Time for Plaintiffs to Specify Their Claims Has Passed

Despite the fact that the parties have exchanged thousands of pages of documents in discovery both in the prior state court litigation and in the instant proceedings and several depositions of subcontractors were conducted in the prior action, Plaintiffs remain unable to identify with any specificity the allegedly fraudulent transactions. The fact that so much discovery has been completed—much of which completed over two years ago—and Plaintiffs have had access to thousands of pages of documents (with over a thousand pages coming from Defendants) should color the Court's application of the specificity standard of Rule 9(b). These are not plaintiffs who have just filed a complaint without the benefit of any discovery. Plaintiffs had the chance to specify the fraudulent transactions in their answers to interrogatories and did not; Plaintiffs were obligated to specify the fraudulent transactions in their Amended Complaint but they did not; Plaintiffs have had their purported expert, Michael Goldman, review the documents and he too could not identify a single improper transaction. Without direct allegations from Plaintiffs, Defendants are significantly prejudiced as they are unable to conduct targeted discovery or mount a meaningful defense. Plaintiffs' stated desire to wait until the close of discovery to produce a purported expert report identifying its claims for the first time is fundamentally unfair. Plaintiffs have had sufficient opportunities to specify the time, place, and content of the fraudulent conduct they allege. Having wasted those opportunities, the Court should exercise its authority as gatekeeper to excise claims that clearly have no basis.

Plaintiffs repeat the mantra that the Debtor was "double-billed" with the hopes that mere repetition will make it somehow come true. They do not identify a single instance in which KDC billed Debtor for materials and/or labor and another contractor also billed for the same materials and/or labor. Plaintiffs' inability to do so, particularly given all of the discovery to

date, does not compare well to other cases in which plaintiffs have alleged double-billing. For example, in Gov't Emples. Ins. Co. v. Barron Chiropractic & Rehab., P.C., Civil Action No. 1:16-cv-10642-ADB, 2017 U.S. Dist. LEXIS 130278, at *25-27 (D. Mass. Aug. 16, 2017), GEICO attached to its complaint an example of an allegedly fraudulent claim, showing the claim number, insured initials, claimant initials, date of loss, the amount the defendant billed, and the amount that GEICO paid for each of the claims at issue. GEICO also identified in its complaint twelve additional examples. Armed with these examples, the Court found that GEICO provided sufficient notice to the defendants regarding the allegations of systematic fraud. Without a similar level of detail from these Plaintiffs, Plaintiffs thwart the aims of Rule 9(b) "which are to give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits that simply hope to uncover relevant information during discovery." Id. (citing U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 226 (1st Cir. 2004) and quoting Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996)).

The use of examples to support claims of widespread fraud is common, but these Plaintiffs cannot muster even one. See, e.g., D'Agostino v. ev3, Inc., 845 F.3d 1, 10 (1st Cir. 2016) ("[A] relator [satisfies Rule 9(b)] . . . by alleging with particularity examples of actual false claims submitted to the government." (emphasis added)); First Choice Armor & Equip., Inc. v. Toyobo Am., Inc., 717 F. Supp. 2d 156, 161 (D. Mass. 2010) (holding Rule 9(b) requirements met where plaintiff "allege[d] at least 25 examples of intentional misrepresentations or fraudulent omissions"). Under similar circumstances, courts have granted motions to dismiss and the same result is warranted here. See Pension Tr. Fund v. McMorgan & Co., 2007 U.S. Dist. LEXIS 8946, at *39-40 (E.D. Cal. Jan. 23, 2007) (dismissing a claim for

{S1080785.1}    3

alleged double billing where the plaintiff did not provide sufficient specificity).  The burden on Plaintiffs is not a high one and despite being in possession of significant discovery, they remain unable to provide even examples of fraudulent transactions.[2]  The Amended Complaint should be dismissed to the extent it is based on alleged fraudulent or double-billing.

## II.
## Claims of Fraud Cannot Be Based on Estimates and Projections

Plaintiffs' vague and conclusory allegations fail as a matter of law because they are based on statements that are not actionable.  Plaintiffs Filippov and Lipetsker allege that Kagan fraudulently induced them into investing in the project in October 2012 when Kagan allegedly estimated and projected the project's finances.  The October 25, 2012 presentation previously provided to this Court is titled "Estimated Financials and Risk Analysis."  [A.P. Docket No. 14-1].  Courts have held repeatedly that forward-looking statements of estimates are not fraudulent.  Maffei v. Roman Catholic Archbishop, 449 Mass. 235, 252 (2007) (An action for deceit will not lie for statements that are merely a matter of opinion, estimate, or judgment.); Forbes v. Janisch, No. 07-P-1784, 2009 Mass. App. Unpub. LEXIS 126, at *3 (App. Ct. Mar. 19, 2009) ("Promissory statements are not representations of fact. Thus, Janisch's statement that he 'was going to get [the plaintiff] worker's comp' could not support the plaintiff's claim of fraud."); Redlich v. Lanell, 20 Mass. L. Rep. 688 (2006) ("A claim for fraud must be based on statements of fact as opposed to statements of opinion, estimate, expectation, belief or judgment." (citing Powell v. Rasmussen, 355 Mass. 117, 118, 243 N.E.2d 167 (1969)).  Assuming, *arguendo*, that Kagan made the representations which Plaintiffs allege he did, Kagan simply could not know

---

[2] Even Plaintiffs' purported smoking gun, the Affidavit of Kristina Brusenkova, falls woefully short of anything meaningful.  Ms. Brusenkova, who was a bookkeeper for all of eight months until she was terminated for embezzlement, fails to identify a single transaction relevant to this dispute that resulted in the Debtor paying twice.  Rather, she makes unspecific allegations regarding projects other than this one.  Even if the allegations regarding other projects were true (and they are not), they are irrelevant to this dispute about Plaintiffs' investment in this project.  One would think that an ex parte interview by Plaintiffs and their counsel would have yielded more, but the absence of specific allegations despite access to this former insider speaks volumes.

{S1080785.1}    4

with any certainty the prices the homes ultimately would fetch two years later, for example, and any assertion that the estimate is fraudulent is legally deficient. Plaintiffs Filippov and Lipetsker are not entitled to relief simply because they claim the October 2012 estimate did not work out exactly as planned.

Plaintiffs do not allege, and certainly cannot prove, that Kagan knew in October 2012 that his estimates were false. This omission is fatal to the Amended Complaint. Rather, Plaintiffs want the Court to infer that Kagan had fraudulent intent in October 2012 because the projects ultimately cost more to complete, but such an inference is impermissible as a matter of law. 485 Lafayette St. Acquisition, LLC v. Glover Estates, LLC, Nos. 120462, SUCV2010-02350-BLS1, 2012 Mass. Super. LEXIS 207, at *34 (May 14, 2012) ("Any intention not to carry out the promise, not otherwise shown by any evidence, cannot be inferred merely from the nonperformance of the promise. This alone dooms the plaintiffs' claims.") (citing Galotti v. United States Trust Co., 335 Mass. 496, 501 (1957)).

Much of Plaintiffs claims and, as far as Defendants can divine, their damage theory, are based on a comparison to this October 2012 estimate. Plaintiffs appear to contend that the Debtor[3] should be awarded the difference between the actual net profit garnered from the sale of the homes and the net profit projected on the October 2012 estimate. As the estimate was neither a guarantee nor a commitment that the homes would be built or sold for the amounts stated therein, Plaintiffs claims fail as a matter of law. For these reasons, Plaintiffs' claims dependent upon a comparison to the October 2012 estimate, should be dismissed.

---

[3] Compounding the problems with Plaintiffs' Amended Complaint is the obfuscation of derivative claims belonging to the Debtor with direct claims asserted by Plaintiffs Filippov and Lipetsker. Many of the counts are stated in terms of claims made by the collective term "Plaintiffs" but this is imprecise. All counts, except for Count VI alleging a violation of c. 93A on behalf of the Debtor, conflate distinct claims belonging to the company with direct claims of the members. See Zacharakis v. Melo, 558 B.R. 521 (D. Mass. 2016) (describing the difference between derivative and direct claims).

## III.
## Plaintiffs Fail to Allege Viable Damage Theories

In many instances, Plaintiffs allege harms that are not logically connected to the facts they allege, so they fail to allege a claim for which relief could be granted. For example, Plaintiffs assert claims relating to the listing agreement signed with Century 21, the real estate firm where Tatiana Kagan worked, a contract they allege was "fraudulent" even though the Operating Agreement expressly contemplates such a contract. Regardless of whether the contract was the product of fraud or not, Plaintiffs would have paid a commission to a real estate broker, even if they did not want to pay one to the firm that employed Mrs. Kagan. So, the question is not whether the Debtor paid a commission; the question is whether that commission was higher than the commission it would have paid to another broker. Of course, the fact that Plaintiffs allege that the homes should have sold for higher sales prices only would have increased the commission the Debtor would have paid to that broker, because the commission is typically stated as a percentage of the sale price. Moreover, Plaintiffs approved the payment of a commission to Century 21 in this bankruptcy proceeding and therefore have waived any claim that the commission paid is improper. See Main Case Docket No. 45. Putting aside the irrationality of alleging that a broker that gets paid only if/when the homes are sold would have intentionally priced the homes so high that they would not sell, Plaintiffs' claims against Tatiana Kagan should be dismissed.

A similar problem plagues Count VII, which asserts a claim for breach of contract against KDC, the general contractor on the project. Plaintiffs appear to allege that these two multi-million dollar homes would have been constructed without paying a general contractor, an inherently and objectively unreasonable assertion. So, the question is not whether KDC invoiced the Debtor for general contracting services and direct outlays for material and labor to construct

the homes.[4] The only logical question is whether KDC charged substantially more than what another general contractor would have charged.[5] Rather, Plaintiffs point to § 5.2 of the Operating Agreement, which invokes § 8.1 which they claim describes Kagan's return on investment in the enterprise, as opposed to what would be paid to the general contractor. Logic dictates that Kagan's return on investment, which arguably was based on the net profit garnered from the sale of the homes, would decrease if the cost to construct the homes were inflated. Whereas Plaintiffs' damage theories are premised on the Debtor not paying any general contracting costs, the damage claims are illogical and the claims should be dismissed for failing to state a claim for which relief could be granted. See Cappetta v. Lippman, 913 F. Supp. 302 (S.D.N.Y. 1996) (illogical to hold defendants liable for certain types of damages alleged); Walsh Sec. Inc. v. Cristo Prop. Manamgement, Ltd., No. 97-3496 (DRD), 2012 U.S. Dist. LEXIS 172950, at *6 (D.N.J. Nov. 28, 2012) ("[I]t would be illogical to allow WSI to pursue a theory of damages for which it has no supporting claim."); Summerville v. Lipsig, 270 A.D.2d 213, 704 N.Y.S.2d 598 (App. Div. 2000) (affirming dismissal of a claim for punitive damages that was illogical).

## CONCLUSION

Based upon the foregoing and the Motions to Dismiss, Defendants respectfully request that the Court dismiss Plaintiffs' Amended Complaint.

---

[4] The fact that KDC was largely a pass-through for paying subcontractors, buying material, and renting equipment is completely lost on Plaintiffs. KDC did not pocket every dollar it received but rather paid for labor and materials that resulted in two homes that sold for millions of dollars, the product of which is ready for disbursement. In support of its proof of claim, KDC provided Plaintiffs with binders which provide back-up for all the monies it expended.

[5] As KDC's mechanic's lien makes clear, the Debtor has not in fact paid in full for the services KDC provided on the project.

{S1080785.1}    7

Dated: January 5, 2018

Respectfully submitted,

VADIM KAGAN,
TATIANA KAGAN,
KAGAN DEVELOPMENT KDC, CORP. and
PROEXCAVATION CORP.,

By their Attorneys,

/s/ John H. Perten
Christopher M. Candon, BBO# 650855
John H. Perten, BBO# 548728
SHEEHAN PHINNEY BASS & GREEN, PA
255 State Street, 5th Floor
Boston, MA  02109
Tel:  617-897-5600
Fax: 617-439-9363
E-mail: jperten@sheehan.com

# **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of January, 2018, a copy of the foregoing was served upon the parties listed below via ECF and/or first class mail, postage prepaid.

Eric K. Bradford
Office of the US Trustee
J.W. McCormack Post Office & Courthouse
5 Post Office Sq., 10th Fl, Suite 1000
Boston, MA 02109

Sean T. Carnathan
O'Connor, Carnathan and Mack, LLC
1 Van De Graaff Drive
Suite 104
Burlington, MA 01772

David B. Madoff
Madoff & Khoury LLP
124 Washington Street - Suite 202
Foxborough, MA 02035

Steffani Pelton Nicholson
Madoff & Khoury LLP
124 Washington Street
Foxborough, MA 02035

Sarah A Smegal
Hackett Feinberg P.C.
155 Federal Street
9th Floor
Boston, MA 02110

Joseph P. Calandrelli
O'Connor Carnathan and Mack LLC
1 Van De Graaff Drive
Suite 104
Burlington, MA 01772

Stephen G. DeLisle
Rubin and Rudman LLP
50 Rowes Wharf
3rd Floor
Boston, MA 02110

Amy M. McCallen
Rubin and Rudman LLP
50 Rowes Wharf
Boston, MA 02110

David C. Phalen
Hackett Feinberg P.C.
155 Federal Street, 9th Floor
Boston, MA 02110

Peter N. Tamposi
The Tamposi Law Group
159 Main Street
Nashua, NH 03060

/s/ John H. Perten
John H. Perten

{S1080785.1}   9