# EXHIBIT A

# OPERATING AGREEMENT
# OF
# LYMAN-CUTLER, LLC

1. THIS OPERATING AGREEMENT is entered into as of the 14 day of November, 2012 by and between Vadim Kagan, Nickolay Lipetsker and Alex Filippov.

WHEREAS, Mr. Kagan, Mr. Lipetsker and Mr. Filippov wish to form a limited liability company known as LYMAN-CUTLER, LLC (the "Company") pursuant to the Massachusetts Limited Liability Company Act (as amended, the "Act") by filing a Certificate of Organization of the Company with the Massachusetts Secretary of State's Office and by entering into this Agreement;

NOW, THEREFORE, in consideration of the mutual agreements, promises and conditions contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Mr. Kagan, Mr. Lipetsker and Mr. Filippov as acknowledge and agree as follows:

## ARTICLE 1 - DEFINITIONS

1.1 <u>Definitions.</u>     Capitalized terms used in this Agreement and not otherwise defined shall have the meanings assigned to them below:

(a) "Agreement" means this operating Agreement, as amended, modified, supplemented or restated from time to time.

(b) "Certificate of Formation" means the Certificate of Formation of the Company and any and all amendments thereto and restatements thereof filed on behalf of the Company with the Commonwealth Secretary of State's Office pursuant to the Act.

(c) "Member" means a member of the Company identified on Schedule A attached hereto, as the same may be amended from time to time.

(d) "Percentage Interest" shall refer to the percentage ownership interest of each Member in the Company. The Percentage Interests of the Members are set forth on Schedule A attached hereto and incorporated herein for all purposes by this reference.

1

(e) "Date of Acquisition" shall refer to deed recording date for Lyman Road Brookline property into the Company.

## ARTICLE II - THE COMPANY

2.1 <u>Formation.</u>

(a) The Members hereby agree to form the Company as a limited liability company under and pursuant to the provisions of the Act and agree that the rights, duties and liabilities of the Members shall be as provided in the Act, except as otherwise provided herein. Upon the execution of this Agreement, Mr. Kagan, Mr. Lipetsker and Mr. Filippov shall be Members of the Company.

(b) The name and mailing address of each Member and the amount contributed to the capital of the Company shall be listed on Schedule A.

2.2 <u>Name; Principal Place of Business.</u> The name of the Company shall be LYMAN-CUTLER, LLC. The principal office of the Company shall be located at 130 Trapelo Road, Belmont, Massachusetts, or at such other place as the Members may from time to time determine.

2.3 <u>Term.</u> The term of the Company shall commence on the date of the filing of the Certificate of Organization in the Commonwealth of Massachusetts Secretary of State's Office and shall continue until November 30, 2015 unless dissolved before such date in accordance with the provisions of this Agreement.

2.4 <u>Registered Agent and Office.</u> The company's registered agent and office in Massachusetts shall be as set forth in the Certificate of Organization of the Company filed with Commonwealth of Massachusetts Secretary of State's Office, as the same may from time to time be amended.

2.5 <u>Fiscal Year.</u> The Company's fiscal year (the "Fiscal Year") shall be the calendar year.

2.6 <u>Taxation as Partnership.</u> The Company shall be treated as a partnership for U.S. federal income tax purposes.

2

## ARTICLE III - PURPOSE AND POWERS OF THE COMPANY

<u>Nature of Business.</u> The general character of the business of the LLC is to own (directly or through a nominee), invest in, develop, improve, operate, manage, lease and/or sell real estate in Commonwealth of Massachusetts. To engage in any activities directly or indirectly related or incidental thereto including, but without limitation, everything necessary, suitable, convenient, or proper for the accomplishment of any of the foregoing activities, or the attainment of any one or more of the purposes, enumerated or incidental to the powers named, or which shall at any time appear conducive to or expedient for the production of benefit to the corporation, either as the holders of or interested in any property, or otherwise, with all the powers now or hereafter conferred by law, and for all lawful purposes.

3.1 <u>Powers of the Company.</u> The Company shall have the power and authority to take any and all actions necessary, appropriate, proper, advisable, convenient or incidental to or for the furtherance of the purpose set forth in Article 3., including, but not limited to the powers permitted under the Act.

## ARTICLE 1V - CAPITAL CONTRIBUTIONS AND ACCOUNTS

4.1 <u>Capital Contributions.</u> Each Member has transferred and contributed to the capital of the Company the capital amounts (the "Capital Contributions") as set forth on Schedule A. Furthermore, Purchase Money Loan and Construction Loan shall be taken from Rockland Trust Company to pay for construction and carrying costs until the issuance of Certificates of Occupancy (hereinafter "CO") but in no event for more then twenty three (23) months from the date of acquisition.

4.2 <u>Carrying Costs.</u> Carrying costs shall be defined to include but not limited to mortgage payments, taxes and insurance for the subject property 77 Lyman Road, Brookline, Massachusetts. In the event that a CO for each lot is not issued within twenty three (23) months from the date of acquisition, then Mr. Kagan will be responsible for all carrying costs until such time as CO's are issued.



3

4.3 **Capital Accounts: Assets.** An individual capital account (each a "Capital Account") shall be established and maintained for each Member in accordance with applicable regulations under the Internal Revenue Code of 1986 as from time to time amended (the "Code"). A Member shall not be entitled to interest on his or her Capital Contribution or Capital Account, or to withdraw any part of his or her Capital Contribution or Capital Account. No Member shall have any right in or to any asset or property of the Company, but shall only have a right to the distributions as and when provided for in Sections 8.2 and 9.2 hereof.

4.4 **Maintenance of Capital Accounts.** To the extent consistent with such regulations, there shall be credited to each Member's Capital Account the amount of any contribution of capital and carrying costs made by such Member to the Company, and such Member's share of the net profits of the Company and there shall be charged against each Member's Capital Account the amount of all distributions to such Member, and such member's share of the net losses of the Company.

## ARTICLE V - MEMBERS

5.1 **Powers of Members.** The Members shall have the power to exercise any and all rights or powers granted to the Members pursuant to the express terms of this Agreement.

5.2 Duties of Members. It shall be Mr. Kagan's duty and obligation to construct two (2) homes at the location currently known as 77 Lyman Road, in Brookline, Massachusetts in accordance with the plans, including drawings, supplied by Mr. Kagan and approved by Managing Member. The construction shall be substantially completed no later than March 30, 2014. It is specifically understood by all Members that Mr. Kagan's compensation for this duty is outlined in Section 8.1 below.

5.3 **Admission of Members.** No person shall be admitted as a Member of the Company after the date of formation of the Company without the written consent or approval of the Members owning at least eighty (80%) of the

UK
af N.L.

4

Percentage Interests in the Company at the time of such admission, regardless of whether such person has previously acquired any rights in any existing Member's interest in the Company by assignment, sale or otherwise. A Member's execution of a counterpart of this Agreement, or such other instrument as the Members may require, shall evidence his or her admission.

5.4 Transfer of Company Interest. No Member may transfer, sell, assign, pledge, mortgage, or dispose of or grant a security interest in his or her interest in the Company (each, a "Transfer") without the prior written consent of the Members owning at least eighty (80%) of the Percentage Interests in the Company at the time of such Transfer. Any purported Transfer in contravention of this Section 5.3 shall be null and void and the Member attempting such Transfer shall cease to be a Member of the Company shall be forfeited and reallocated to the remaining Members in accordance with their respective Percentage Interests.

5.5 Rights of Assignee. The purchaser or other transferee of a Member's interest in the Company shall have only the right to receive the distributions and allocations of profits or losses to which the Member would have been entitled under this Agreement with respect to the transferred interest and shall not have or enjoy any right to participate in the management of the Company or to receive any financial information or reports relating to the Company or any other rights of a Member unless and until the purchaser or transferee is admitted as a Member pursuant to Section 5.2.

5.6 Partition. Each Member waives any and all rights that he or she may have to maintain an action for partition of the Company's property.

### ARTICLE VI - MANAGEMENT

6.1 Management, duties, and Restrictions.

(a) General Management. The management and control of the operations of the Company and the maintenance, development, sales and leasing of the property of the Company shall rest with the Managing Members.

VK
A.F. N.L.

5

(b) <u>Powers of Managing Member.</u> Subject to such limitations as may be imposed pursuant to the terms of this Agreement, the Act or by operation of law, the Members are and shall be authorized and empowered to carry out and implement the purposes of the Company. In that connection, the powers of the Managing Member shall include, but not be limited to, the following:

(1) to engage, dismiss, and replace personnel, attorneys, accountants, brokers or such other persons as may be deemed necessary or advisable by Managing Member;

(2) to authorize or approve all actions with respect to distributions by the Company, dispositions of the assets of the Company or its nominee, execution of leases, mortgage contracts, bonds, promissory notes, loan agreements and other instruments on behalf of the Company or its nominee, and to execute any agreements, instruments or documents relating to or affecting such matters;

(3) to acquire, mortgage, improve and convey real property and interests therein, including, but not limited to, easements and rights-of-way, and to execute any agreements, instruments or documents relating to or affecting such matters;

(4) to open, maintain, and close bank accounts and to draw checks and other orders for the payment of money; and

(5) to take such other actions and to incur such reasonable expenses on behalf of the Company as may be necessary or advisable in connection with the conduct of the affairs of the Company.

(6) The Managing Member hereby agrees to list the properties with Tatiana Kagan. In order to remove Tatiana Kagan as a listing broker by December 31, 2014 will require a written consent of the Members owning at least eighty one (81%) of the

6

Percentage Interests in the Company. After December 31, 2014 no such consent shall be required.

(c) <u>Liability of Managing Member.</u> In carrying out their duties, the Managing Member shall not be liable to the Company or to any other Members for any actions taken in good faith and reasonable believed to be in the best interest of the Company or which are taken upon the written advice of legal counsel for the Company.

(d) <u>Reliance on Act of Managing Member.</u> Third parties dealing with the Company shall be entitled to rely conclusively upon the power and authority of the Managing Member. Any person other than a Member may and shall be entitled to rely on certificates, instructions, agreements or assignments signed or purporting to be signed by a Managing Member for or on behalf of the Company, and on the statements and agreements set forth therein, without inquiry as to the due authorization thereof or the authority of the person signing or purporting to sign such certificates, instructions, agreements or assignments.

(e) <u>Delegation.</u> The Managing Member may appoint Members only with such titles as they may elect, including the titles of President, Vice President, Treasurer and Secretary, to act on behalf of the Company with such power and authority as the Members may delegate in writing to any such person.

(f) <u>Books and Records.</u> The Company's books and records shall be maintained in accordance with good record keeping practices and federal and state income tax laws and regulations. All books and records of the Company shall be maintained at the principal office of the Company, and each of the Members shall have access thereto to review the same at any time upon reasonable notice and during normal business hours.

(g) <u>Reimbursement of Managing Member.</u> The Managing Member shall be reimbursed by the Company for all reasonable expenses (including attorney and accountant's fees) incurred or paid by them for or on behalf of the Company.

7

# ARTICLE VII - VOTING, MEMBER CONSENTS AND MEMBER GUARATEE, MEETINGS

7.1 <u>Voting.</u> Each Member shall be entitled to vote in proportion to his or her Percentage Interest in the Company from time to time. Such vote may be exercised by written or oral notification by a Member to the other Members.

7.2 <u>Member Consents.</u> The amendment of this Agreement shall require the vote and unanimous approval of all the Members. All other actions taken by the Company, including the admission of a new Member, shall require the vote and approval of Members owning eighty percent (80%) or more of the Percentage Interest at the time of such vote.

7.3 <u>Member Guarantee.</u> **Mr. Filippov** shall, if required by institutional lender, provide that lender with a limited personal guarantee not to exceed $200,000.00 for all loans obtained by the Company related to the property located at 77 Lyman Road, Brookline, Massachusetts. Coincident with any provision by Mr. Filippov of such a guarantee, Messrs Kagan and Lipetsker shall each provide Mr. Filippov with a limited personal guarantee not to exceed, in the case of Mr. Kagan, $100,000.00 and in the case of Mr. Lipetsker, $20,000.00

7.4 <u>Meetings of the Members.</u> The Members may, but shall not be required, to meet from time to time to consider the affairs of the Company and to take any action permitted to be taken by the Members by law or under this Agreement. Meetings of the Members may be called at any time by any Member. Notice of any meeting shall be given to all Members not less than two (2) days nor more than thirty (30) days prior to the date of such meeting. Each Member may authorize any person to act for it by proxy on all matters on which a Member is entitled to participate, including waiving notice of any meeting, or voting or participating at a meeting. Every proxy must be signed by the Member or his or her attorney-in-fact. A quorum for each meeting shall be one more than one-half the number of all Members.

8

## ARTICLE VIII - ALLOCATIONS AND DISTRIBUTIONS

8.1 <u>Allocations of Profits or Losses.</u> *The net profits*, net cash flow and net proceeds of any sale or refinancing of any property of the Company or upon liquidation of the Company shall be allocated among the Members as follows: Mr. Alex Filippov (40%), Mr. Nickolay Lipetsker (10%) and Mr. Kagan (50%). In the event that the demolition permit is not issued by June 30, 2013, then *the net profits*, net cash flow and net proceeds of any sale or refinancing of any property of the Company or upon liquidation of the Company shall be allocated among the Members as follows: Mr. Alex Filippov (60%), Mr. Nickolay Lipetsker (10%) and Mr. Kagan (30%). The net losses from any sale of any property of the Company or upon liquidation of the Company shall be allocated among the Members according to the Percentage Interests of Each Member. Net profits and net losses shall, for both accounting and tax purposes, be net profits and net losses as determined for reporting on the Company's federal income tax return. *In the event that the property is not sold within twenty three (23) months from the date of acquisition, then Mr. Kagan shall be responsible for all carrying costs until such time as the property is sold. If Mr. Kagan fails to pays to pay monthly carrying costs, then Mr. Filippov shall be responsible to contribute the necessary carrying costs and subsequently his capital contribution and percentage interest in the Company shall increase by the same amount and percentage and at the same time will trigger reduction of Mr. Kagan's share of capital contribution by the same amount and subsequently his/her percentage interest in the Company.* For tax purposes, all items of depreciation, gain, loss, deduction or credit shall be determined in accordance with the Code and, except to the extent otherwise required by the Code, allocated to and among the Members in the same percentages in which the Members share in net profits and net losses. Any change to this paragraph will require a written consent of the Members owning at least eighty one (81%) of the Percentage Interests in the Company.

9

8.2 <u>Distribution to Members.</u> *The distribution to Members shall be in accordance with their respective Capital Contribution first, however, an additional five (5%) percent per annum payment based upon Members' respective Capital Contributions shall be paid out of Mr. Kagan's net profit share for each day that the property is not sold after twenty three (23) months of acquisition* For the purposes hereof, the term "Net Cash From Operations" shall mean the gross cash proceeds from Company operations less the portion thereof used to pay or establish reserves for Company expenses, debt payments, capital improvements, replacements, and guaranteed payments, all as determined by the Members. "Net Cash From Operations" shall not be reduced by depreciation, amortization, cost recovery deductions, or similar non-cash allowances, but shall be increased by any reductions of reserves previously established.

## ARTICLE IX - DISSOLUTION AND TERMINATION OF COMPANY

9.1 <u>Events of Dissolution.</u> The Company shall be dissolved and its affairs shall be would up upon the occurrence of any of the following events:

(a) the death, insanity, dissolution, incompetency, bankruptcy, retirement, resignation or expulsion of a Member ("Retiring Member") unless there are at least two (2) remaining Members of the Company, and the remaining Members owning a "majority in interest" in the Company elect to continue the Company within ninety (90) days of the death, insanity, dissolution, bankruptcy, retirement, resignation or expulsion of the Retiring Member;

(b) Notwithstanding the above paragraph, in the event of the death, insanity, dissolution, incompetency, bankruptcy, retirement or resignation of Mr. Filippov, his interest in this Company and control of this Company will automatically pass to his spouse by operation of this Agreement;

(c) the conclusion of the term of the Company set forth in Section 2.3. hereof;

VK
A.F N.L.

10

  (d) the sale or disposition of all or substantially all of the assets of the Company;

  (e) the written consent of the Members owning eighty (80%) or more of the Percentage Interests in the Company; or

  (f) the entry of a decree of judicial dissolution in accordance with the provisions of the Act.

For the purpose of Section 9.1 (a) above, the term "majority in interest" means eighty (80%) or more of the remaining Members' collective interest in profits and their respective Capital Accounts. For the purpose of the foregoing sentence, profits shall be determined and allocated based upon any reasonable estimate of profits from the date of the dissolution event to the projected termination of the Company taking into account present and future allocations of profits under this Agreement, and the Capital Account balances shall be determined upon the date of the dissolution event.

9.2 <u>Winding Up.</u> Upon the dissolution of the Company, the remaining Member or, if more than one Member then remains, the Member selected by the remaining Members (in either case, the "Liquidating Member"), shall proceed with the winding up of the Company and apply and distribute the Company's assets as provided in this Section 9.2. The assets shall first be applied to the payment of the liabilities of the Company (other than any loans that may have been made by the Members to the Company) and to the expenses of liquidation. A reasonable time shall be allowed for the orderly liquidation of the Company and for the discharge of liabilities to creditors, so as to enable the Liquidating Member to minimize the normal losses attendant to a liquidation. The remaining assets shall next be applied to the repayment of any loans made by the Members to the Company. All assets then remaining shall be distributed to the Members in accordance with their respective Capital Accounts after giving effect to all contributions, distributions and allocations for all periods. Notwithstanding any of the foregoing, the Liquidating Member may retain a sum deemed necessary by him or her as a reserve for any

contingent liabilities, expenses and obligations of the Company. Upon the final distribution of assets to the Members, each of the Members shall be furnished with a statement which sets forth the assets and liabilities of the Company as of the date of the complete liquidation.

## ARTICLE X - LIABILITY AND INDEMNIFICATION

10.1 Liability. Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort, or otherwise, shall be solely the debts, obligations and liabilities of the Company, and no Member shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member.

10.2 Indemnification. The Company shall indemnify and hold harmless the Members and their respective employees and authorized agents from and against any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Member, employee or authorized agent in good faith on behalf of the Company and reasonable believed to be within the scope of authority conferred by this Agreement, except that no Member, employee or authorized agent shall be entitled to be indemnified or held harmless from or against any loss, damage or claim incurred by reason of such Member's, employee's or authorized agent's gross negligence or willful misconduct; provided, however, that any indemnity under this Section 10.2 shall be provided out of and to the extent of Company assets only, and no Member shall have any personal liability on account thereof.

## ARTICLE XI - MISCELLANEOUS

11.1 Governing Law. The Company and this Agreement shall be governed by, and construed in accordance with, the laws of the Commonwealth of Massachusetts.

VK
AF. N.C.

11.2 <u>Agreement Binding.</u> This Agreement shall inure to the benefit of, and be binding upon, the parties hereto and their respective next-of-kin, legatees, administrators, executors, legal representatives, successors, and assigns.

11.3 <u>Notices.</u> Notices to the Members or to the Company to be furnished hereunder shall be deemed to have been given when mailed, by prepaid registered or certified mail, or when deposited with an express courier service,

addressed to the address set forth on Schedule A or as set forth in any notice of changes of address previously given in writing by the addressee to the addressor.

Executed as a Commonwealth of Massachusetts's instrument under seal on the day and year first above written.

_____
Nickolay Lipetsker, Member

_____
Vadim Kagan, Member

_____
Alex Filippov, Managing Manager

13

## SCHEDULE A

### Capital Contributions and Percentage Interests

| Member | | Capital Contribution | Percentage Interest |
|---|---|---|---|
| Name: | Nickolay Lipetsker | $250,000.00 | 10% |
| Address: | 52 Stony Brae Road, Newton, MA, 02461 | | |
| Name: | Alex Filippov | $2,000,000.00 | 80% |
| Address: | 130 Trapelo Road, Belmont, Massachusetts | | |
| Name: | Vadim Kagan | $250,000.00 | 10% |
| Address: | 99 Needham Street, Unit 1402, Newton, MA, 02461 | | |

VK , N.L.

14