UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| *In re:*<br><br>LYMAN-CUTLER, LLC,<br>    Debtor | Chapter 7<br>Case No. 15-13881 FJB |
| LYMAN-CUTLER, LLC, ALEX FILIPPOV,<br>and NICKOLAY LIPETSKER,<br><br>    Plaintiffs,<br><br>v.<br><br>VADIM KAGAN, TATIANA KAGAN,<br>KAGAN DEVELOPMENT KDC, CORP. and<br>PROEXCAVATION CORP.<br><br>    Defendants. | Adv. Case No. 1:16-ap-01120 |

**PLAINTIFFS' MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA *DUCES TECUM***

Non-party Comcast Business Communications, LLC ("Comcast") has records which Plaintiffs' anticipate will evidence the Defendants' fraud. Specifically in this instance, Plaintiffs believe that Vadim Kagan fabricated a "Proposal" by ProExcavation Corp. ("ProEx") well after construction was complete in order to support the ProEx component of the Kagan Development KDC Corp. ("KDC") proof of claim against Lyman-Cutler, LLC (the "LLC") in this proceeding. Mr. Kagan testified that he created the Proposals at issue in September and October 2013, more or less contemporaneously with the time ProEx purportedly performed work on the project.[1]

---

[1] It is important to note that these "Proposals" were never disclosed to the Plaintiffs until after the state court litigation commenced in 2015. Accordingly, even if the Court ultimately for

1

Plaintiffs have reason to believe these Proposals include a telephone number that Kagan did not start using until 2014. As such, Comcast is believed to have records that will confirm that those "Proposals" could not have been created when Mr. Kagan testified he created them.

Comcast has refused to produce these records without a court order or Mr. Kagan's consent, which he refuses to provide. Accordingly, Plaintiffs respectfully move for an Order requiring Comcast to comply with the subpoena by producing these records.

## ARGUMENT

The background of this matter is well known to the Court and need not be repeated at length here. As has been briefed previously at length, in May 2015, months after all of the work on the two luxury homes had been completed in October 2014, Mr. Kagan informed the other two members of the LLC for the very first time that his construction company, KDC, had incurred over $751,000 in extra construction-related expenses (plus other cost overruns for carrying costs and other anticipated charges). Approximately 6 weeks later, Mr. Kagan announced that his overruns had ballooned to nearly $2.1 million and filed a mechanics' lien on the subject properties. Plaintiffs have long maintained that these charges are false and fraudulent.

I.   **The Information Sought is Clearly Relevant.**

Among the items that appear most obviously inflated are the charges from Kagan's excavation company, ProEx, which total nearly **$900,000.** The only invoicing Kagan submitted to support these charges are a slim stack of "Proposals" dated September 2013 and October 2013. One, dated September 1, 2013, is for the demolition of the existing house in the amount of

---

some reason does not agree that they were fabricated after the fact, the claims by KDC and ProExcavation are baseless, a violation of the LLC Agreement, and grossly in excess of the budget Mr. Kagan presented to the Plaintiffs to induce them to invest in the Project.

2

$43,700. The other two, each dated October 1, 2013, are for the work constructing the two new homes, and are each in the amount of $418,150. *Proposals*, attached hereto as **Exhibit A**.[2] The "Proposals" also contain an address and a telephone number for ProEx, **617-610-1276**. At his deposition on May 23, 2018, Mr. Kagan clearly testified that he had prepared the Proposals himself back in 2013 on the dates they reflect. Deposition of Vadim Kagan, May 23, 2018 at 249-50, attached as **Exhibit B**.

According to KDC's former bookkeeper, Kristina Brusenkova, ProEx did not acquire the use of that particular telephone number until sometime in 2014. If this is accurate, then the "Proposals" were clearly not created when Kagan claims they were and it is more than fair to infer that he intentionally backdated them for the purpose of supporting ProEx's purported charges.[3]

## II.    The Subpoena is Narrowly Tailored.

The Court should note that the subpoena specifically does not seek ProEx's detailed telephone records. Instead, it is narrowly tailored to request the documents needed to confirm *when* ProEx or any of Mr. Kagan's other companies first acquired the use of that particular telephone number. Request No. 1 specifically asked for the production of documents sufficient to "reflect the owner or assignee of the number 617-610-1276 from January 1, 2012 to date, and the dates during which each person or company held or holds that telephone number." Request

---

[2]    These "Proposals" are dated after money was already purportedly paid to ProEx for the work described therein.

[3]    Plaintiffs have adduced other supporting evidence of this assertion already, including entries in ProEx's general ledger made well after the completion of construction, which total $425,000.

3

Nos. 2 – 4 sought the documents to show any other telephone number assigned to KDC, ProEx, or Mr. Kagan during the same time period. *See Subpoena*, attached as **Exhibit C**.

### III. The Subpoena and this Motion are Timely.

To corroborate Ms. Brusenkova's anticipated testimony, Plaintiffs issued the subpoena in question to Comcast two days after Kagan testified at his deposition on May 23, 2018 that he created the Proposals in 2013. *Subpoena*. It was served before the close of discovery and did not seek any live testimony. *Return of Service*, attached as **Exhibit D**.[4]

By letter dated June 12, 2018, Comcast objected to the subpoena pursuant to the Cable Communications Policy Act of 1984, 47 U.S.C. § 551. *Comcast Subpoena Response*, attached as **Exhibit E**. The Act prohibits Comcast from disclosing its customer's "personally identifiable information" without the customer's consent or a court order. *47 U.S.C. § 551(c)(1) and (2)(B)*. Comcast stated in its objection that it will produce the "limited" information it has if Mr. Kagan consents or if it receives a court order to do so.

The Parties are otherwise proceeding by agreement with four depositions in June – after the discovery deadline. Defendants' selective timeliness objection is telling. If Plaintiffs are correct that the telephone number on the Proposals was not assigned to ProEx until sometime in 2014, the information received from Comcast will provide the Court with direct evidence of Mr. Kagan's fraud.

---

[4] Kagan's current bookkeeper has already admitted that he and Kagan obtained invoices from subcontractors well after construction was complete in order to support the charges they have submitted in their proof of claim. Deposition of Daniel Gersh, May 17, 2018, at 54-55, 90-92, attached as **Exhibit F**.

4

## CONCLUSION

For the foregoing reasons, the Court should allow this motion and issue an order requiring Comcast to comply with the subpoena.

| | |
|---|---|
| LYMAN-CUTLER, LLC,<br>By its attorney, | ALEX FILIPPOV and<br>NICKOLAY LIPETSKER,<br>By their attorneys, |
| /s/ Peter Tamposi<br>Peter N. Tamposi, BBO No. 639497<br>The Tamposi Law Group, P.C.<br>159 Main Street<br>Nashua, NH 03060<br>T: (603) 204-5513 | /s/ Sean T. Carnathan<br>Sean T. Carnathan, BBO No. 636889<br>scarnathan@ocmlaw.net<br>Joseph P. Calandrelli, BBO No. 666128<br>jcalandrelli@ocmlaw.net<br>O'Connor, Carnathan and Mack, LLC<br>1 Van de Graaff Dr. Suite 104<br>Burlington, MA 01803<br>T:  781-359-9000 |

Dated:  June 19, 2018

### Certificate of Service

I hereby certify that a copy of the foregoing document was served on counsel of record for all of the parties on June 19, 2018.

/s/ Sean T. Carnathan
Sean T. Carnathan