UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re:<br><br>LYMAN-CUTLER, LLC,<br><br>    Debtor. | ) ) ) ) ) ) ) | Chapter 7<br>No. 15-13881-FJB |
| LYMAN-CUTLER, LLC,<br>ALEX FILIPPOV and<br>NICKOLAY LIPETSKER,<br><br>    Plaintiffs,<br>    Defendants in Counterclaim,<br><br>v.<br><br>VADIM KAGAN, TATIANA KAGAN,<br>KAGAN DEVELOPMENT KDC, CORP.<br>and PROEXCAVATION CORP.<br><br>    Defendants,<br>    Plaintiffs in Counterclaim. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Adv. Proc. No. 16-01120 |

**DEFENDANTS' LIMITED OBJECTION TO PLAINTIFFS' MOTION
TO COMPEL COMPLIANCE WITH SUBPOENA DUCES TECUM
(COMCAST SUBPOENA)**

Defendants Vadim Kagan ("Kagan"), Tatiana Kagan, Kagan Development KDC, Corp. ("KDC") and ProExcavation ("ProExcavation") submit this Limited Objection to Plaintiffs' Motion to Compel Compliance with Subpoena Duces Tecum in connection with the subpoena Plaintiffs served on non-party Comcast Business Communications, LLC ("Comcast") (Docket No. 167).

1. Defendants have no objection to Comcast's producing the documents requested in the subpoena. However, Defendants are compelled to respond to Plaintiffs' Motion to Compel because it is riddled with unsupported hyperbole.

2. Plaintiffs purportedly seek information from Comcast because they "anticipate" it will provide evidence of fraud in connection with the work performed by ProExcavation. Plaintiffs reach to Comcast because, as they admitted at their deposition, they cannot identify a single fraudulent transaction or instance of double-billing. At his recent deposition, Mr. Filippov was asked several times to identify a single instance of fraud, but he could not do so. His testimony reads:

   > Q. Can you give me any specific examples of double-billing that you're aware of on this project?
   > A. We're still digging into the books that Kagan conveniently didn't provide yet, because what he provided is nonsense. It's not books of a contractor. There is no details, there is no invoicing, there is nothing but numbers that he provided. Billed by KDC, billed by ProExcavation; looks like for the same job made. ProExcavation billed KDC, then KDC billed Lyman-Cutler.
   > Q. My question, sir, though, was can you give me specific examples of double-billing that occurred on this project? Are you able to do that as you sit here today?
   > A. No, I'm not able to give you specifics.

Alex Filippov Depo. Tr. at 99-100, attached hereto as Exhibit 1. All Mr. Filippov could muster was a general allegation that the entire ProExcavation charge of $480,000 (per home) was overstated. *Id.* at 100. Similarly, despite alleging that materials from other projects were improperly billed to Lyman-Cutler, Mr. Filippov was unable to identify any such improperly billed material. *Id.* at 111.

3. Similarly, Mr. Lipetsker could not identify a single fraudulent transaction. He testified:

   > Q. Mr. Lipetsker, my question was: Do you know of any double billings on the Lyman-Cutler project?
   > MR. CARNATHAN: Objection.

2

> A. Since I never received any invoices or any bills, I never had them in my hands, I cannot answer your question unequivocally. For me the main documents is the operating document. How things were done and not done, I don't know. I'm not in the position to review any documents like that. That's why we have experts.

Nickolay Lipetsker Depo. Tr. at 42, attached hereto as Exhibit 2.

4. The parties have been engaged in litigation for three years. Defendants have produced thousands of pages of documents on the Lyman Cutler project and several other projects. Thousands of additional documents have been produced by third-party witnesses. Despite all the time and effort, Plaintiffs still cannot identify any fraudulent transactions, and have now shifted gears to tangential matters such as to when ProExcavation obtained its phone number as they now believe ProExcavation's bill was pre-dated. Even if this was true, which defendants vehemently deny, that fact would be completely irrelevant to whether ProExcavation did the work and deserves to be paid.

5. Plaintiffs base their belief regarding the date of the assignment of a telephone number to the recollection of Kagan Development KDC, Corp.'s beleaguered former bookkeeper, Kristina Brusenkova, who was not even employed by KDC until months after the date of the ProExcavation invoices. Indeed, much of Plaintiffs' case rests on Ms. Brusenkova's shoulders yet she has proven to be less than a solid foundation for any claim, let alone one for fraud. When pressed at her deposition for specifics, she could not identify any fraudulent billings on the Lyman-Cutler project. She testified that she "can't recall" if there was any double-billing on the Lyman-Cutler project. Brusenkova Depo. Tr. at 125, attached hereto was Exhibit 3. Then, she testified that a QuickBooks report provided to her by Mr. Filippov indicated that the landscaping (performed by ProExcavation) was double-billed, but when she was shown the report at her deposition, she was unable to

3

identify anything approaching the $900,000 of fraudulent charges alleged by Plaintiffs. *Id.* at 132 ("Q. I'm asking you for any double payments that you can identify. If you can't, you can't? A. I can't because this is not my records."). She similarly had no specifics to support her contention that Mr. Kagan returned materials he purchased for the Lyman-Cutler project but then kept the credit for himself rather than apply the credit to the project. *Id.* at 94.[1] Ms. Brusenkova is and will be hopelessly ineffective and Plaintiffs erred in placing so much emphasis on her testimony.

6. Plaintiffs falsely contend in their Motion to Compel that Defendants have failed to document the work performed by ProExcavation on the Lyman-Cutler project, and they bury in a footnote that ProExcavation has produced invoices and payment records for its work. In reality, ProExcavation has provided Plaintiffs with robust documentation. One would think that after three years of litigation, Plaintiffs would be able to point to some actual evidence of fraud. Instead, they are wasting time and resources on a "fool's errand" that was nothing to do with the issue in this case, i.e. how much is due for the work provided by KDC and ProExcavation.

7. While Defendants have no objection to Comcast's producing the requested documents as they have nothing to hide, they do not want Plaintiffs or the Court to construe Defendants' position as a concession that the documents Comcast may possesses regarding the assignment of a telephone number at a particular point in time is relevant to any material facts at issue in this case. Regardless of any dispute over a phone number, either ProExcavation did the work and properly charged, or it did not. This manufactured supposition about a phone number is a colossal waste of time and resources.

---

[1] According to Mr. Filippov, Ms. Brusenkova was unable to provide him with any evidence of mishandling of refunds on the Lyman-Cutler project when the two met in connection with the affidavit she provided earlier in this litigation. Alex Filippov Depo. Tr. at 80, attached hereto as Exhibit 1.

4

WHEREFORE, Defendants respectfully request that this honorable Court:

    A. Note Defendants' position with respect to Plaintiffs' Motion to Compel documents from Comcast; and

    B. Grant such additional and further relief as the Court deems necessary.

Dated:  June 29, 2018

Respectfully submitted,

VADIM KAGAN,
TATIANA KAGAN,
KAGAN DEVELOPMENT KDC, CORP. and
PROEXCAVATION CORP.,

By their Attorneys,

/s/ John H. Perten
Christopher M. Candon, BBO# 650855
John H. Perten, BBO# 548728
James P. Harris, BBO# 678283
SHEEHAN PHINNEY BASS & GREEN, PA
255 State Street, 5th Floor
Boston, MA 02109
Tel: 617-897-5600
Fax: 617-439-9363
E-mail: ccandon@sheehan.com
        jperten@sheehan.com
        jharris@sheehan.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of June, 2018, a copy of the foregoing was served upon the parties listed below via ECF and/or first class mail, postage prepaid.

Eric K. Bradford
Office of the US Trustee
J.W. McCormack Post Office & Courthouse
5 Post Office Sq., 10th Fl, Suite 1000
Boston, MA 02109

Sean T. Carnathan
O'Connor, Carnathan and Mack, LLC
1 Van De Graaff Drive
Suite 104
Burlington, MA 01772

David B. Madoff
Madoff & Khoury LLP
124 Washington Street - Suite 202
Foxborough, MA 02035

Steffani Pelton Nicholson
Madoff & Khoury LLP
124 Washington Street
Foxborough, MA 02035

Sarah A Smegal
Hackett Feinberg P.C.
155 Federal Street
9th Floor
Boston, MA 02110

Joseph P. Calandrelli
O'Connor Carnathan and Mack LLC
1 Van De Graaff Drive
Suite 104
Burlington, MA 01772

Stephen G. DeLisle
Rubin and Rudman LLP
50 Rowes Wharf
3rd Floor
Boston, MA 02110

Amy M. McCallen
Rubin and Rudman LLP
50 Rowes Wharf
Boston, MA 02110

David C. Phalen
Hackett Feinberg P.C.
155 Federal Street, 9th Floor
Boston, MA 02110

Peter N. Tamposi
The Tamposi Law Group
159 Main Street
Nashua, NH 03060

/s/ John H. Perten
John H. Perten

# EXHIBIT 1

ORIGINAL

Exhibits: 1-30                              Volume 1, Pages 1-230

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

---

In Re:

LYMAN-CUTLER, LLC,                          Chapter 7
                                            Case No. 15-13881-FJB

        Debtor

---

LYMAN-CUTLER, LLC,

        Plaintiff
v.                                          Adv. Case No. 16-01120
VADIM KAGAN, TATIANA KAGAN,
KAGAN DEVELOPMENT KDC CORP.
and PROEXCAVATION CORP.,

        Defendants

---

DEPOSITION OF LYMAN-CUTLER, LLC, By Its
Representative ALEX FILIPPOV, and
of ALEX FILIPPOV Individually
Wednesday, April 25, 2018, 10:06 a.m.
Sheehan Phinney Bass + Green, P.A.
255 State Street, 5th Floor
Boston, Massachusetts

--------- Janis T. Young, RDR, CRR ---------
jty@fabreporters.com   www.fabreporters.com
Farmer Arsenault Brock LLC
Boston, Massachusetts
617-728-4404

80

1  already.  Did she tell you that the applying of
2  bills to different projects occurred on the Lyman-
3  Cutler project?
4      A.  Yes.
5      Q.  And did she give you specifics?
6      A.  I think she did.  I don't remember.
7  I think she did.
8      Q.  Did you take notes of any kind at this
9  meeting?
10     A.  That's a good question.  I might have had a
11 notepad with me; not a computer, a notepad.  But I
12 don't remember what happened to this.
13     Q.  Would you make a search for those notes and
14 give them to your counsel if you have them, please?
15     A.  I will.  I'm not sure if it's there.
16         Because I just took it from my memory
17 and conveyed that information to my attorney,
18 generally, the conversation.
19     Q.  With respect to refunds that he took and
20 didn't attribute to the specific project, did she
21 give you any examples of that happening in the
22 Lyman-Cutler project?
23     A.  Not specifics.
24     Q.  You said he was disorganized, actually, you

1  Q. The offer.
2  A. I don't think so. Maybe I asked who it
3  was, maybe I didn't ask it. It wasn't important,
4  basically, to me.
5     What was important to me, that there was
6  an offer that none of us were aware.
7  Q. Now, we'll look at this after the break,
8  perhaps, in more detail, but you've alleged in this
9  lawsuit that there has been double-billing; correct?
10 A. Yes.
11 Q. Can you give me any specific examples of
12 double-billing that you're aware of on this project?
13 A. We're still digging into the books that
14 Kagan conveniently didn't provide yet, because what
15 he provided is nonsense. It's not books of a
16 contractor. There is no details, there is no
17 invoicing, there is nothing but numbers that he
18 provided.
19    Billed by KDC, billed by Proexcavation;
20 looks like for the same job made. Proexcavation
21 billed KDC, then KDC billed Lyman-Cutler.
22 Q. My question, sir, though, was, can you give
23 me specific examples of double-billing that occurred
24 on this project? Are you able to do that as you sit

1  here today?
2      A.  No, I'm not able to give you specifics.
3      Q.  You've also alleged that certain bills were
4  inflated, were too high.  Can you give me specific
5  examples of bills that you believe were inflated?
6      A.  Yes.  The whole Proexcavation bill is
7  $480,000.
8          I talked to three different contractors
9  building similar houses.  All of them said the cost
10 is approximately $70,000.
11     Q.  What three different contractors did you
12 speak with?
13     A.  I talked to the contractor who owns the
14 company Built-Well, Paul Laffey.
15     Q.  Built-Well, Paul Laffey?
16     A.  Yes, Laffey; L-a-f -- double F or single
17 F -- e-y.
18         I talked to Cindy Stumpo.
19     Q.  I'm sorry?
20     A.  Cindy Stumpo.
21     Q.  How do you spell that?
22     A.  Ask Kagan; Kagan would know.
23     Q.  Cindy Stumpo?
24     A.  Stumpo, S-t-u-m-p-o.  She's the largest

1  That was the conversation.
2           MR. CARNATHAN:  Are we going to break
3  for lunch?  Seems like we've kind of drifted into
4  other topics at this point.
5           MR. PERTEN:  One last question, very
6  quickly.
7      Q.  Are you aware, sir, as you sit here today,
8  of any materials that Mr. Kagan purchased for
9  another project that were billed to this project?
10     A.  Without looking at this, I'm not ready to
11 give you details.
12     Q.  So your answer is no; as you sit here
13 today, you don't know?
14     A.  Correct.
15          MR. PERTEN:  So, why don't we take a
16 break at this point.
17          (Lunch recess)
18     Q.  Now, at some point, Mr. Filippov, there was
19 a decision made to put Lyman-Cutler into bankruptcy;
20 correct?
21     A.  Yes.
22     Q.  Who made that decision?
23     A.  I did.
24     Q.  Why?

# EXHIBIT 2

**ORIGINAL**

Exhibits: 38-39                     Volume 1, Pages 1-68

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

---

In Re:

LYMAN-CUTLER, LLC,                  Chapter 7
                                    Case No. 15-13881-FJB

        Debtor

---

LYMAN-CUTLER, LLC,

        Plaintiff

v.                                  Adv. Case No. 16-01120

VADIM KAGAN, TATIANA KAGAN,
KAGAN DEVELOPMENT KDC CORP.
and PROEXCAVATION CORP.,

        Defendants

---

DEPOSITION OF NICKOLAY LIPETSKER
Thursday, April 26, 2018, 11:30 a.m.
Sheehan Phinney Bass + Green, P.A.
255 State Street, 5th Floor
Boston, Massachusetts

---------- David A. Arsenault, RPR ----------
daa@fabreporters.com    www.fabreporters.com
Farmer Arsenault Brock LLC
Boston, Massachusetts
617-728-4404

42

1  increased by another million-plus for a total of 2.5
2  million, sorry, 2.1 million, so at that time when it
3  looked like those additional expenses were two times
4  more than the cost of the original construction of
5  those houses, I started having doubts that
6  everything was correct.  In view of that, several
7  subject matter experts were invited to look at the
8  construction costs and they came to the conclusion
9  that the cost of work, cost of labor and materials
10 was exaggerated.
11     Q.  Mr. Lipetsker, my question was:  Do you
12 know of any double billings on the Lyman-Cutler
13 project?
14         MR. CARNATHAN:  Objection.
15     A.  Since I never received any invoices or any
16 bills, I never had them in my hands, I cannot answer
17 your question unequivocally.  For me the main
18 document is the operating document.  How things were
19 done and not done, I don't know.  I'm not in the
20 position to review any documents like that.  That's
21 why we have experts.
22     Q.  If I can draw your attention to Exhibit
23 Number 5.  I ask you to turn to Paragraph 47.
24 Please read that to yourself.

# EXHIBIT 3

Case 16-01120    Doc 176    Filed 06/29/18    Entered 06/29/18 16:12:09    Desc Main
Document      Page 17 of 20

Exhibits: 1-14                           Volume 1, Pages 1-170

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

-------------------------------
In Re:
                                         Chapter 7
LYMAN-CUTLER, LLC,                       Case No. 15-13881-FJB

        Debtor
-------------------------------
LYMAN-CUTLER, LLC,

        Plaintiff
v.                                       Adv. Case No. 16-01120
VADIM KAGAN, TATIANA KAGAN,
KAGAN DEVELOPMENT KDC CORP.
and PROEXCAVATION CORP.,
        Defendants
-------------------------------

DEPOSITION OF KRISTINA BRUSENKOVA
Tuesday, March 20, 2018, 1:15 p.m.
Sheehan Phinney Bass + Green, P.A.
255 State Street, 5th Floor
Boston, Massachusetts

--------- David A. Arsenault, RPR ---------
daa@fabreporters.com    www.fabreporters.com
Farmer Arsenault Brock LLC
Boston, Massachusetts
617-728-4404

1    A.   No.

2    Q.   Did any of these things that you just
3  discussed occur on the Lyman-Cutler project?

4    A.   American Express credit, yes.

5    Q.   What happened on the Lyman-Cutler project
6  with American Express credits?

7    A.   If he return something, he applied it as
8  his income for KDC.

9    Q.   What did he return and not apply the
10 credit?

11   A.   I can't recall.

12   Q.   Do you have any specific details about what
13 he returned back and did not credit to Lyman-Cutler?

14   A.   I cannot recall.

15   Q.   What else do you recall specific to
16 Lyman-Cutler?  Any specifics?

17   A.   Yes.  When I met with Fillippov, he showed
18 me some kind of reports.  I'm not sure if it was
19 general ledger.  I'm not sure.  I noticed that there
20 was a name of KDC, it looks like KDC paid for
21 landscaping work from KDC checking account.
22 Basically when he usually pays for KDC for some kind
23 of project, he usually gets reimbursed from the
24 entity for which he paid for.  As I know, the

1  A. I don't understand your question.
2  Q. Where did you get the information that
3 enabled you to say what you said in Paragraph 6 of
4 your affidavit?
5  A. He usually create a company, a partnership.
6  Q. And do you believe that's improper?
7  A. I didn't say this.
8  Q. I didn't say you did. I just asked the
9 question. Is that improper somehow?
10  A. No.
11  Q. Now, you say in Paragraph Number 7 that he
12 regularly double-billed projects. Do you see that?
13  A. Yes.
14  Q. On the Lyman-Cutler project specifically
15 when did he double-bill?
16  A. I can't recall.
17  Q. Did he ever?
18  A. Based on the information that I saw, the
19 information that Fillippov provided me, yes, for
20 landscaping.
21  Q. So you believe he double-billed for
22 landscaping?
23  A. I believe, yes.
24  Q. Anything else?

132

1  Q. Do you know that?
2  A. Based on this, yes. I don't know
3  personally.
4  Q. That's what I wanted to know. Anything
5  else you want to point out?
6      (Pause.)
7  A. The last question?
8  Q. I'm asking you for any double payments that
9  you can identify. If you can't, you can't?
10 A. I can't because this is not my records.
11 Q. Let me ask you another question. Strike
12 that. Kagan Development would sometimes pay its
13 subcontractors out of a Kagan Development account,
14 correct?
15 A. Yes.
16 Q. And when it paid subcontractors out of a
17 Kagan Development account, it would then reimburse
18 itself for monies it laid out, right?
19 A. Yes.
20 Q. So if Kagan Development paid a foundation
21 subcontractor, it would then reimburse itself for
22 the foundation costs, wouldn't it?
23 A. Yes.
24 Q. So let's go back to your affidavit, Exhibit