UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | No. 15-13881-FJB |
| LYMAN-CUTLER, LLC, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| LYMAN-CUTLER, LLC, | ) | |
| ALEX FILIPPOV and | ) | |
| NICKOLAY LIPETSKER | ) | |
| | ) | |
| Plaintiffs, | ) | |
| Defendants in Counterclaim, | ) | |
| | ) | Adv. Proc. No. 16-01120 |
| v. | ) | |
| | ) | |
| VADIM KAGAN, TATIANA KAGAN, | ) | |
| KAGAN DEVELOPMENT KDC, CORP. | ) | |
| and PROEXCAVATION CORP. | ) | |
| | ) | |
| Defendants, | ) | |
| Plaintiffs in Counterclaim. | ) | |

MEMORANDUM IN SUPPORT OF MOTION TO STRIKE AMENDED EXPERT
DISCLOSURE, LATE EXPERT REBUTTAL AND SUR-REPLY EXPERT REPORT

Vadim Kagan, Tatiana Kagan, Kagan Development KDC, Corp. ("KDC") and

ProExcavation Corp. ("ProExcavation") (collectively, the "Kagan Parties"), request that this

court strike the amended expert disclosure of D.A. Doddridge & Associates, Inc. and the

"Supplemental Report of David Doddridge in Response to Von Salmi & Associates Report

Dated August 29, 2018, and in Rebuttal to Report Dated July 26, 2018 as Supplemented August

15, 2018". There were no grounds to file an amended expert disclosure. Even worse, over two

weeks after the deadline for filing a rebuttal report, and only after they received and reviewed

information contained in the Kagan Parties' timely filed rebuttal, did plaintiffs file an expert

rebuttal improperly addressing and incorporating significant information from the Kagan Parties'

rebuttal, to the extreme prejudice of the Kagan Parties.  Far from being a rebuttal, plaintiffs' late

filing is actually a sur-reply – half of the "rebuttal" is expressly directed to responding to the

points raised in the Kagan Parties' timely filed rebuttal, and the other half improperly utilizes

information provided in the Kagan Parties' rebuttal to supplement plaintiff's initial expert

disclosures.

By delaying taking a position until <u>after</u> reading the Kagan Parties' timely filed rebuttal

report and then incorporating a response to that rebuttal into their late filing, plaintiffs have

gained an unfair advantage and have substantially prejudiced the Kagan Parties.  The plaintiffs

should not be rewarded for violating the orders of this Court while the Kagan Parties suffer

extreme prejudice as a result thereof.  While the plaintiffs try to minimize their lateness by

claiming that there is no prejudice and that their lateness is "no big deal," it is a "big deal."

Plaintiffs' conduct taints these entire proceedings to the detriment of the Kagan Parties and must

not be tolerated.

<u>FACTS</u>

On February 14, 2018, in accordance with this Court's order [A.P. Doc. 92], the parties

filed a Joint Proposed Scheduling Order [Main Doc. 271; A.P. Doc. 115], which was adopted by

this Court.  [A.P. Doc. 117].  That scheduling order established June 30, 2018 as the date for

initial expert disclosures, and provided an opportunity to file rebuttal expert disclosures thirty

days later, July 30, 2018.

On June 20, 2018, plaintiffs' moved to extend all agreed upon deadlines for an additional

thirty days ostensibly because they needed more time to complete their expert disclosures.

[Main Doc. 299; A.P. No. 173]. Over the objection of Kagan Parties, this Court allowed

plaintiffs' motion. [Main Doc. 308; A.P. Doc. 182, 185]. The revised schedule called for initial

expert disclosures by July 30, 2018, with rebuttal reports, if any, due thirty days later, on August

29, 2018.

On August 13, 2018, the Kagan Parties moved to extend the deadline for filing the joint

pretrial memorandum which, after the thirty day extension, was due to be filed prior to the date

for filing dispositive motions. [Main Doc. 322; A.P. Doc. 193]. In the Kagan Parties' motion,

the expert disclosure deadlines were expressly noted: "rebuttal expert disclosures are now due on

August 29, 2018 (the deadline for initial expert disclosures was July 30, 2018)…" [Motion, ¶1].

At the hearing on the motion, the Kagan Parties explained that until they received rebuttal expert

reports, they could not fully analyze which claims might be the subject of dispositive motions, as

the content of those expert rebuttal reports could, in theory, impact their analysis. The Court

inquired of plaintiffs whether they intended to file a rebuttal expert report, and counsel replied in

the affirmative.

### THE KAGAN PARTIES TIMELY FILE THEIR EXPERT REPORTS

On June 30, 2018, the Kagan Parties timely submitted their initial expert disclosures and

expert reports. As it related to the total project costs, which plaintiffs have repeatedly claimed

were overstated and fraudulent, the Kagan Parties submitted an expert report from Von Salmi,

the principal of Von Salmi & Associates (the "Von Salmi Report"). In his report, Mr. Salmi

analyzed the cost to construct the project homes and concluded that the total project costs

charged by KDC and ProExcavation was fair and reasonable. In essence, Mr. Salmi put the

project "out to bid" and solicited unbiased bids to calculate the fair and reasonable cost of

3

construction.  As an exhibit to his report, he provided a summary of those bids.[1]  A true and

accurate copy of the Von Salmi Report is attached hereto as Exhibit 1.

### PLAINTIFFS FILE THEIR INITIAL DISCLOSURES LATE, AND THEN PURPORT TO "AMEND" THEM AFTER RECEIVING THE VON SALMI REPORT.

As of the close of business on July 30, 2018, no expert disclosures had been received

from plaintiffs.  The Kagan Parties were perplexed by this non-filing because plaintiffs have

vociferously alleged that KDC and ProExcavation overcharged for their work and fraudulently

created charges, and it was clear that to support those allegations plaintiffs would need an expert

to opine as to what the proper costs should have been.   The Kagan Parties' counsel checked his

"spam" e-mail folder and checked with his IT department to confirm that nothing from plaintiffs

had been blocked or rejected.  Nothing had been blocked.

After receiving the Von Salmi Report, reviewing it, and allowing the July 30th deadline to

pass, plaintiffs belatedly filed what they styled as an "Amended Expert Disclosure" – adding a

new expert report by D.A. Doddridge and Associates (the "Doddridge Report").  When receiving

the late "Amended Expert Disclosure," the Kagan Parties inquired as to whether there had been

an "initial" disclosure as nothing had been received previously.  Plaintiffs claimed that there

must have been some sort of e-mail glitch and forwarded a copy of their initial disclosure, which

did not include any reference to D.A. Doddridge and Associates.

Mr. Doddridge and the Doddridge Report were not part of plaintiffs' initial expert

disclosure.  It is inconceivable that plaintiffs merely "forgot" to list him in their initial

disclosures.  Rather, it is apparent that plaintiffs decided to wait and see what the Kagan Parties

---

[1] Contrary to plaintiffs' current position, the Von Salmi Report was not supplemented.  Rule 26(a)(2)(B) lists the information to be included in an expert disclosure, which includes "any exhibits that will be used to summarize or support them [the opinions]".  Fed. R. Civ. P. 26(a)(2)(B)(iii).  Von Salmi's work papers, which included the specifications he generated and the bids he received, were not provided with the report as he did not plan to use them as exhibits.  Plaintiffs asked for a copy of that back-up and defendants voluntarily provided it on August 15th. The report, however, was not supplemented.  On request, plaintiffs also submitted back-up for their expert report after filing the report itself.

4

disclosed in their initial disclosures, and only then, after reviewing the Von Salmi Report, decided that they needed to disclose somebody who could opine as to the value of the work which they had challenged.   A copy of plaintiffs' original expert disclosure and their "amended" disclosure with the attached Doddridge Report are annexed hereto as Exhibits 2 and 3, respectively.

The Doddridge Report solely addressed the costs charged by ProExcavation, notwithstanding that plaintiffs have claimed that the total project costs charged by KDC were overstated and fraudulent.   See e.g., Amd. Adv. Comp., ¶1 (alleging that KDC filed a "wholly false and fraudulent mechanic's lien for over $2 million"); ¶44 (alleging false assertion of unreimbursed construction costs); ¶46 (alleging double-billing, wrongful charges, failure to credit for returns, receiving cash kickbacks); ¶49 ("The KDC and ProExcavation bills are rife with double billing, false and inflated charges."); ¶50 (alleging that the construction costs were inflated); ¶54 (alleging unsubstantiated cost overruns, double billing and falsified); ¶75 (alleging violation of G.L. c. 93As based on false charges).  The Doddridge Report also included an analysis of the date of "substantial completion" which plaintiffs allege was not met.   The failure to have provided any expert opinion in their initial disclosure to support their allegation that the total costs charged by KDC were inflated or fictitious and that the date of substantial completion had been missed, would likely have led to the filing of a dispositive motion by the Kagan Parties.

Even if one were to overlook the late and improper amended filing of the Doddridge Report and accept it, at a minimum, by only addressing the charges asserted by ProExcavation, any challenge to the value of the remaining construction costs became moot and the likely subject of a dispositive motion.  Functionally, the failure to challenge the cost of construction other than as it related to ProExcavation work reduced the amount in controversy to about

$300,000, as opposed to the greater than $2 million challenged by plaintiffs, and significantly narrowed the remaining issues for trial.  Moreover, if there was any damage related to the alleged failure to achieve timely substantial completion, but for the amended disclosure, those damages too would be "off the table."

While the late filing of the initial disclosure and the subsequent "amendment" were clearly wrongful, given plaintiffs' insistence that their late filing was due to an e-mail issue, the Kagan Parties decided not to file an immediate motion to strike the initial disclosure.   There still remains, however, an unanswered question as to why the "amended disclosure" occurred as there was no "new evidence" which may have warranted an amendment other than the fact that by the time of the amendment, plaintiffs already had the benefit of having received and read the Von Salmi Report and apparently recognized that their initial (late) disclosure was deficient. Although the Kagan Parties did not know it then, this manipulation of the Court deadlines foreshadowed the even more egregious late filing of plaintiffs' rebuttal report which is also the subject of the instant motion.

## THE KAGAN PARTIES TIMELY FILE THEIR REBUTTAL TO THE "AMENDED" DISCLOSURE

Notwithstanding the late filing of plaintiffs' amended disclosure, on August 29, 2018, the Kagan Parties timely filed a rebuttal to the Doddridge Report (the "Von Salmi Rebuttal").  Von Salmi pointed out several deficiencies in how the Doddridge Report evaluated the ProExcavation costs, including, without limitation, that it failed to account for several tasks performed by ProExcavation and miscalculated several items (such as omitting 32 structural columns, failing to account for the installation of all utilities, utilizing the wrong size beams, failing to properly account for demolition costs, missing the costs of fireplaces and chimneys, undersizing footings and foundations and the attendant costs, to name just a few).  Even more shocking was that the

Doddridge Report relied on the wrong set of architectural plans!   Von Salmi also challenged Mr.

Doddridge's methodology and his determination of substantial completion.   A copy of the Von

Salmi Rebuttal is annexed hereto as Exhibit 4.

<u>PLAINTIFFS FAIL TO FILE THEIR OWN REBUTTAL REPORT</u>

Just as had happened with the deadline for the initial disclosures, the August 29th deadline

for rebuttal disclosures came and went with no filing by plaintiffs.   Again, the Kagan Parties'

counsel checked his "spam" folder and had his IT department confirm that nothing had been

bounced.   Again, the IT department confirmed that nothing from the plaintiffs was received.

Lightening, it appeared, struck twice.   As of that date too, plaintiffs had not noticed any expert

depositions which, according to agreed upon schedule, were to be completed by September 15th.

On Friday, September 7, 2018, at 4:18 p.m., plaintiffs' counsel e-mailed the Kagan

Parties' counsel requesting some dates to take Von Salmi's deposition.   In his e-mail, counsel

noted "we will be producing a response from Doddridge to Von Salmi early next week."   The

Kagan Parties' counsel responded to plaintiffs' counsel by letter noting that the deadline for

providing a rebuttal report expired on August 29, 2018 and that the Kagan Parties would not

assent to a late filing.   A copy of counsel's letter is annexed hereto as Exhibit 5.

On September 13, 2018, more than two weeks <u>after</u> expiration of the expert rebuttal

deadline, plaintiffs submitted another report from Mr. Doddridge which they claimed was their

late "rebuttal" report.   A copy of the rebuttal report and counsel's transmittal letter is annexed

hereto as Exhibit 6.   In his transmittal letter, counsel blamed the late filing on "logistical and

communication problems in August."   In a shameless attempt to redirect focus from their own

tardiness and bully the Kagan Parties, counsel also threatened to accuse the Kagan Parties of

improperly supplementing the original Von Salmi Report – an allegation that is patently false – if

they objected to the late filing.  As is evident for the reasons set forth below, the reason for

plaintiffs' late filing of their "rebuttal" report had nothing to do with logistical issues.  Rather, it

was a wrongful attempt to gain a tactical advantage by reviewing the Von Salmi Rebuttal first

before committing to their own position.

<u>LEGAL STANDARDS</u>

Federal Rule of Civil Procedure 37(c)(1) provides a "self-executing sanction" for failure

to make evidentiary disclosures required by the Federal Rules. <u>Ortiz-Lopez v. Sociedad Espanola</u>

<u>de Auxilio Mutuo y Benefiencia de P.R.</u>, 248 F.3d 29, 33 (1st Cir. 2001).  The rule states: "A

party that without substantial justification fails to disclose information required by Rule 26 (a) or

26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless

such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any

witness or information not so disclosed."  An important object of Rule 26 "is to avoid trial by

ambush" and "set[ting] temporal parameters for the production of such information…'promotes

fairness both in the discovery process and at trial.'" <u>MacCaulay v. Anas</u>, 321 F. 2d 45, 50 (1st

Cir. 2003) (excluding testimony where newly offered expert testimony "amounted to the

propagation of a brand-new theory").  The significant prejudice and inherent unfairness which

has inured to the Kagan Parties mandates the exclusion of the purported expert evidence.

"The expert disclosure requirements are not merely aspirational, and courts must deal

decisively with a party's failure to adhere to them."  <u>Lohnes v. Level 3 Commc'ns, Inc.</u>, 272 F.3d

49, 59-60 (1st Cir. 2001).  As noted by this Circuit, a party who "without substantial justification

fails to disclose information required by Rule 26(a) . . . is not, . . . , permitted to use as evidence .

. . any witness or information not so disclosed."  <u>Id.</u>  "Because the Rule contemplates strict

adherence to discovery rules and harsh sanctions for breaches, 'the required sanction in the

8

ordinary case is mandatory preclusion.'" Hipsaver Co. v. J.T. Posey Co., 497 F. Supp. 2d 96,

103 (D. Mass. 2007), *quoting*, Klonoski v. Mahlab, 156 F.3d 255, 269 (1st Cir. 1998). Thus a

court may preclude evidence if (1) "the offending parties were not 'substantially justified' in

failing to disclose information required by Rule 26(a) or Rule 26(e)" and (2) "the failure to

disclose was not harmless." Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo y Benefiencia

de P.R., 248 F.3d 29, 33 (1st Cir. 2001).

　　　The party offering late or undisclosed evidence bears the burden of showing substantial

justification or that the failure was harmless. See Primus v. United States, 389 F.3d 231, 234 (1st

Cir. 2004). When reviewing the conduct of the late disclosing party, the Court must "consider a

'multiplicity of pertinent factors,' including 'the history of the litigation, the proponent's need for

the challenged evidence, the justification (if any) for the late disclosure, and the

opponent's ability to overcome its adverse effects. Surprise and prejudice are important integers

in this calculation.'" Hipsaver Co. v. J.T. Posey Co., 497 F. Supp. 2d 96, 103 (D. Mass. 2007),

*quoting*, Gagnon v. Teledyne Princeton, Inc., 437 F.3d 188, 197 (1st Cir. 2006). See also .

Marine Polymer Techs., Inc. v. HemCon, Inc., 2009 U.S. Dist. LEXIS 23987 at *22, *citing*,

Santiago-Diaz v. Lab. Clinico Y De Referencia Del Este & Sara Lopez, M.D., 456 F.3d 272, 276

(1st Cir. 2006)(The court may consider "the history of the litigation, the party's need for the

expert testimony, the party's justification for late disclosure, and any prejudice to the opposing

party caused by the late disclosure.").

　　　Relatedly, if a supplemental expert disclosure presents a new theory that differs from the

expert's initial disclosure, a district court may exclude the supplemental expert declaration.

Global Naps, Inc. v. Verizon New England Inc., 603 F.3d 71, 91-92 (1st Cir. 2010). The Court

also has discretion to preclude testimony of expert witness who changed his theory of case after

time for filing expert reports in accordance with Fed. R. Civ. P. 26(a)(2)(C). <u>Martinez-Serrano</u>
<u>v. Quality Health Servs.</u>, 568 F.3d 278, 283 (1st Cir. 2009). Here, plaintiffs chose to only offer
expert testimony on the ProExcavation costs. The "rebuttal" seeks to expand the scope of Mr.
Doddridge's expert opinion by offering a new analysis, using different methodology than had
Mr. Salmi, of the entire project costs.

As discussed below, the failure to adhere to the deadlines ordered by this Court, the
impermissible amendment to the initial disclosure, the even later disclosure of the rebuttal report,
and the substantial prejudice to the Kagan Parties that has occurred, mandates that the Doddridge
Report and the Doddridge Rebuttal be excluded.

ARGUMENT

1.  <u>THE LATE EXPERT REPORT SHOULD BE STRICKEN.</u>

    a) <u>THERE IS NO EXCUSE FOR THE LATE FILING.</u>

This Court's scheduling order makes clear "**This Order and the deadlines established
by the Court may not be modified absent further order of this Court**. Failure to strictly
comply with the provisions of this Order may result in the automatic entry of a dismissal or a
default, or sanctions, as the circumstances warrant in accordance with Fed. R., Civ. P. 16 and
37." (Emphasis added) [Doc. 8, ¶21]. The Court further made clear that the parties must comply
with the expert disclosure deadline "absent further order of the Court." [Doc. 8, ¶10]. Plaintiffs
clearly understood this as they previously moved to extend the deadline for filing expert reports
and all other deadlines by thirty days. Over the objection of Kagan Parties, the Court allowed
that motion and established the new deadline for initial expert disclosure as July 30th, and August
29th for rebuttal reports. Notwithstanding that they had already received a thirty day extension,
plaintiffs failed to meet their own requested revised deadline.

10

The late rebuttal is not merely an inconsequential oversight due to logistics and miscommunications by plaintiffs' counsel.    Rather, it was a calculated and improper litigation tactic.  As even the title to the Doddridge Rebuttal concedes, **Mr. Doddridge states in the Doddridge Rebuttal, *inter alia,* that he was engaged to respond to the Von Salmi Rebuttal.** (Doddridge Rebuttal at 1).  Insofar as the Kagan Parties did not file the Von Salmi Rebuttal report until just before 5:00 p.m. on August 29, 2018, it is virtually impossible for Mr. Doddridge to have been engaged prior to that date to review that report.  Thus, the late filing was clearly not the product of miscommunication or logistical issues.  Rather, plaintiffs intentionally delayed preparing their rebuttal report until after receiving the Von Salmi Rebuttal.  They then took two additional weeks to review and analyze it before having Mr. Doddridge commit to a position.  This is significantly prejudicial to the Kagan Parties, is improper gamesmanship, and should not be countenanced by this Court.

Having already moved once to extend that deadline, plaintiffs can hardly be heard to suggest that somehow they did not know about the deadline, or that it had significance.  While the Kagan Parties were willing to give plaintiffs the benefit of the doubt when they were late on their initial and "amended" disclosure, the filing of the "rebuttal" report over two weeks late certainly suggests that the initial late filing was also intentional and, having "gotten away with it the first time," plaintiffs made a calculated risk that they could do the same thing without ramifications.  In fact, plaintiffs are counting on this by their comment "I doubt Judge Bailey will think highly of an objection based upon the timeliness of our production."  While the Kagan Parties do not presume to predict the Court's response, it is clear that the plaintiffs hope to present this as "much ado about nothing."  That characterization, however, is clearly untrue.

b)  THE KAGAN PARTIES ARE BEING SUBSTANTIALLY PREJUDICED.

Although plaintiffs seek to characterize the Kagan Parties' objection as "no big deal," it is a big deal. The ability to review the Von Salmi Rebuttal before committing to a position has given the plaintiffs an unfair advantage which the Kagan Parties did not have, and which they cannot obtain after the fact. The "rebuttal" goes far beyond the information disclosed in the initial Von Salmi Report and is based, almost entirely, on challenging the information contained in the Von Salmi Rebuttal. Plaintiffs are also attempting to expand the scope of their expert disclosure, through the guise of a rebuttal, to cover the entirety of the project costs instead of simply the ProExcavation costs. This is patently unfair.

As noted above, the initial Doddridge Report was part of an improper amended disclosure. The Doddridge Report addressed two issues only: (1) the fair and reasonable cost for the services provided by ProExcavation; and (2) the date of substantial completion. Despite having affirmatively plead that the costs charged by KDC were "wholly false" and "inflated", the Doddridge Report only challenged the amount charged by ProExcavation, thereby leaving the allegation as to the remaining $2 million unchallenged.[2] Thus, even if the Amended Disclosure is allowed to stand, any affirmative testimony by Mr. Doddridge should be limited to his challenge to the ProExcavation costs, while the balance of the project charges should be allowed as unopposed.

The Doddridge Rebuttal, however, goes further and attempts to affirmatively introduce a new analysis. For the first time, Mr. Doddridge purports to perform an analysis of the entire cost of the project – something that is part of plaintiffs' burden in this case and should have been part of their initial disclosure. In his new opinion, Mr. Doddridge now "fixes" the deficiencies

---

[2] Plaintiffs also submitted a report by a forensic accountant who questioned the veracity of some of the bills, though he was unable to say whether the inconsistencies he supposedly found were the result of poor record keeping or fraud. He did not opine on what the proper charge for any item of the project should be or whether any of the charges were inflated.

pointed out in in the Von Salmi Rebuttal.  For example, he now relies on the "Permit Plans" instead of improperly relying on earlier versions of the plans; he has increased the number of structural columns he charged for; and addressed improper measurements and scaling.  But for the review of the Von Salmi Rebuttal, undoubtedly Mr. Doddridge would have carried forward his earlier errors, allowing for effective cross-examination on that issue.  In fact, Mr. Doddridge admits that his project estimate is based upon much of the information provided in the Von Salmi Rebuttal:

> I have thoroughly reviewed Mr. Von Salmi's report dated August 29, 2018 [the Von Salmi Rebuttal] and addressed each and every item Mr. Von Salmi claimed was missing from my original estimate.  I have since performed a complete construction cost estimate to build each of the subject homes from permit to punch list and I have included each construction cost item Mr. Von Salmi claimed was missing from my original estimate.

(Doddridge Rebuttal at 28).  Further, in his description of the scope of his report, he candidly admits that he was engaged to respond to the August 29, 2018 Von Salmi Rebuttal.  (Doddridge Rebuttal at 1).  Thus, Mr. Doddridge clearly, and improperly, relied upon the Von Salmi Rebuttal to "fix" his initial mistakes and expand his opinion, thereby granting plaintiffs a "second bite at the apple" and an unfair tactical advantage.

By definition, a "rebuttal" is a response to the other side's filing.  See Black's Law Dictionary (5th Ed. 1983)("rebuttal" is "to explain, repel, contradict, or disprove facts given in evidence by the adverse party").  Nothing in the Von Salmi Report identified defects in the Doddridge Report.  Nothing in the Von Salmi Report challenged the methodology utilized by Doddridge.  Nothing in the Von Salmi Report pointed out that Doddridge used the wrong plans, miscalculated items, omitted items, etc., yet in the Doddridge Rebuttal all those items are addressed.  This is not a "rebuttal" – it is a sur-reply and should be stricken.

Other than striking the so-called rebuttal and the so-called amendment to the initial

disclosures, there is no way to mitigate the prejudice to the Kagan Parties. One cannot "unring

the bell." Plaintiffs should not be permitted to provide expert testify beyond the scope of the

initial disclosures – and Mr. Doddridge was not part of the initial disclosures. Had Doddridge

submitted a timely rebuttal, and limited his rebuttal solely to the issues raised by the Von Salmi

Report, his position would have been easily undermined as he would have continued to be

challenging based on improper and incomplete information. Now, that tool has been removed

from the Kagan Parties' quiver. That is patently unfair.

2.  <u>THERE IS NO PROCEDURE FOR SUBMITTING A SUR-REPLY TO AN EXPERT
    REBUTTAL.</u>

There is no procedure, either by the parties' agreement, this Court's order, or the law, for

filing a sur-reply to an expert rebuttal. The Rules of Civil Procedure contemplate an initial

expert disclosure only. <u>See</u> Fed. R. Civ. P. 26(a). This Court's original pretrial and scheduling

order provided no opportunity for expert rebuttal. The parties negotiated and submitted a joint

scheduling order for approval by this Court which included the filing of a rebuttal report thirty

days after the initial expert disclosures. The parties did not discuss, nor did the Court approve,

the filing of a sur-reply to the rebuttal expert report.

The so-called "rebuttal" filed by plaintiffs is in reality a sur-reply. Mr. Doddridge states

in his recitation of the scope of his engagement that he was engaged to review the Von Salmi

Rebuttal, and this admission is even noted in the title of his report. While plaintiffs are free to

engage Mr. Doddridge to help them prepare their trial strategy, they are not permitted to expand

the scope of a proper rebuttal to include a sur-reply to the Von Salmi Rebuttal. Caselaw is clear

that filing of a sur-reply is not allowed without leave of court, and then only rarely and for good

cause shown. <u>See</u> A<u>ero Union Corp. v. Aircraft Deconstructors Int'l LLC</u>, No. 1:11-484-JAW,

2012 WL 3679627, at *9 (D. Me. Aug. 24, 2012)("Neither the Federal Rules nor the Local Rules

permits a party to file a surreply to the moving party's reply."). Thus, sur-replies are disfavored

and granted only in rare circumstances, none of which are present in the instant matter. In re

Light Cigarettes Mktg. Sales Practices Litig., 832 F. Supp. 2d 74, 78 (D. Me. 2011).

### 3. COUNSEL'S ATTEMPT TO MINIMIZE AND EXPLAIN AWAY THE LATE FILING SHOULD BE REJECTED.

Counsel's attempt to minimize and explain away the failure to comply with the deadline

should be rejected.  His attempt to manufacture alleged transgressions by Kagan Parties to

excuse his own, should be disregarded.  The suggestion that this Court would likely see the over

two week delay and review of the Von Salmi Rebuttal as nothing important is not only

presumptuous, but unfair to the Court and to the Kagan Parties.  This is not just some

inconsequential technical oversight.  This was deliberate attempt to undermine the process

agreed upon and gain tactical advantage by reviewing Kagan Parties' rebuttal before committing

to any additional position.  The prejudice to Kagan Parties is real and significant.  The Court's

rules either mean something or they do not.

The suggestion that the failure to comply with the deadline was merely the product of

miscommunication and oversight between Mr. Carnathan and his expert is ludicrous.  The expert

disclosure deadlines were established months ago based upon an initial joint discovery plan

which was negotiated between the parties.  In open court during the hearing on August 21, 2018

on the Kagan Parties' motion to amend the schedule for filing the pre-trial memorandum, the

upcoming rebuttal deadline the deadline was discussed with Mr. Carnathan's colleague, Attorney

Joseph Calandrelli, who affirmed to this Court that plaintiffs intended to file a timely rebuttal

report.  Presumably, this was also on co-counsel, Peter Tamposi's, calendar.  As noted, the fact

that Mr. Doddridge admits that he was hired to review the Von Salmi Rebuttal makes it apparent

15

that the late filing was a tactical decision by plaintiffs to not bind themselves to any position until they read the Von Salmi Rebuttal.

The attempt to deflect responsibility for their lateness by claiming that "I think we could contend in response to a timeliness objection to the Doddridge Rebuttal Report that Von Salmi's opening report was not timely produced", is patently false. Even the manner in which this threat is phrased underscores that plaintiffs know this is a stretch. The Von Salmi Report was timely served on July 30, 2018. In response to a request that the Kagan Parties produce Mr. Salmi's work papers, which were not part of the report nor required to be, the Kagan Parties voluntarily produced them on August 15th. Plaintiffs too produced Mr. Doddridge's work papers which were not included with his initial disclosure. The Kagan Parties' expert report was _not_ late, _not_ amended, and _not_ supplemented. Even after receiving Mr. Salmi's work papers, plaintiffs still had an additional two weeks before their rebuttal report was due. To their credit, they do not claim that receiving Mr. Salmi's back-up on August 15th impacted their ability to meet the August 29th deadline.[3] This possible "contention" is nothing more than a poorly veiled attempt to bully the Kagan Parties with threats and seek to divert attention from the true issues regarding plaintiffs' late filing.

Plaintiffs' claim that by postponing the Von Salmi deposition, any prejudice is also mitigated, is also ludicrous. Expert depositions were supposed to be completed by September 15th. Instead of timely noticing a deposition, on Friday, September 7th, counsel e-mailed asking whether Von Salmi could present for a deposition the following Wednesday or Thursday, knowing full well that, especially given the Jewish holiday on Monday, September 10th, that this would leave the Kagan Parties insufficient time to prepare Von Salmi, even if he was otherwise

---

[3] It should also be noted that the Rules require the disclosure of expert compensation in the expert report. Plaintiffs did not make this disclosure until defendants brought to their attention that plaintiffs' expert reports were deficient. That _was_ a supplementation to their initial disclosure.

available for deposition.  Rule 30(a) requires "reasonable" notice for a deposition.  Providing

what is functionally one business day to prepare (and no deposition notice had even been

served), and then magnanimously offering to postpone the deposition to allow Von Salmi time to

review the late filed rebuttal report which was not even served until Thursday, September 13th,

the date proposed for deposition, is a transparent effort to manufacture the appearance of

reasonableness.  It does not mitigate the prejudice caused by the late filing.  Plaintiffs caused this

whole issue by failing to timely file their rebuttal report, and now seek to recast that failure into a

claim that they are the ones who are being reasonable knowing full well that they have no excuse

for their failure to comply with the order of this Court.

CONCLUSION

Based upon the foregoing, the Kagan Parties respectfully request that the amended

disclosure of Mr. Doddridge and his so-called "rebuttal" report be stricken and the Mr.

Doddridge be precluded from offering at trial the opinions contained therein.

> VADIM KAGAN, et als
>
> By their attorneys,
>
> /s/ John H. Perten, Esq.
> John H. Perten (BBO# 548728)
> SHEEHAN PHINNEY BASS & GREEN, P.A.
> 255 State Street, Fifth Floor
> Boston, MA 02109
> (617) 897-5600
> jperten@sheehan.com

Dated:  September 24, 2018

CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of September, 2018, a copy of the foregoing was

served upon the parties listed below via ECF and/or first class mail, postage prepaid.

Eric K. Bradford
Office of the US Trustee
J.W. McCormack Post Office & Courthouse
5 Post Office Sq., 10th Fl, Suite 1000
Boston, MA 02109

Joseph P. Calandrelli
O'Connor Carnathan and Mack LLC
1 Van De Graaff Drive
Suite 104
Burlington, MA 01772

Sean T. Carnathan
O'Connor, Carnathan and Mack, LLC
1 Van De Graaff Drive
Suite 104
Burlington, MA 01772

Stephen G. DeLisle
Rubin and Rudman LLP
50 Rowes Wharf
3rd Floor
Boston, MA 02110

David B. Madoff
Madoff & Khoury LLP
124 Washington Street - Suite 202
Foxborough, MA 02035

Amy M. McCallen
Rubin and Rudman LLP
50 Rowes Wharf
Boston, MA 02110

Steffani Pelton Nicholson
Madoff & Khoury LLP
124 Washington Street
Foxborough, MA 02035

David C. Phalen
Hackett Feinberg P.C.
155 Federal Street, 9th Floor
Boston, MA 02110

Sarah A Smegal
Hackett Feinberg P.C.
155 Federal Street
9th Floor
Boston, MA 02110

Peter N. Tamposi
The Tamposi Law Group
159 Main Street
Nashua, NH 03060

/s/ John H. Perten
John H. Perten