UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re:<br><br>LYMAN-CUTLER, LLC,<br><br>Debtor. | ) ) ) ) ) ) ) | Chapter 7<br>No. 15-13881-FJB |
| LYMAN-CUTLER, LLC,<br>ALEX FILIPPOV and<br>NICKOLAY LIPETSKER,<br><br>Plaintiffs,<br>Defendants in Counterclaim,<br><br>v.<br><br>VADIM KAGAN, TATIANA KAGAN,<br>KAGAN DEVELOPMENT KDC, CORP.<br>and PROEXCAVATION CORP.<br><br>Defendants,<br>Plaintiffs in Counterclaim. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Adv. Proc. No. 16-01120 |

**DEFENDANTS' MOTION IN LIMINE TO PRECLUDE EVIDENCE RELATING
TO APPRAISAL OPINION OF HUGH MORGAN FENNELL**

Defendants Vadim Kagan ("Kagan"), Tatiana Kagan, Kagan Development KDC, Corp. ("KDC") and ProExcavation ("ProExcavation") submit this Motion in Limine to Preclude Evidence Relating to Appraisal Opinion of Hugh Morgan Fennell. In support of their Motion, Defendants state as follows:

1. Plaintiffs disclosed as one of their experts Hugh Morgan Fennell, a real estate appraiser, who opines that the home constructed at 55 Lyman Road was worth $5.1 million as of

    March 11, 2016 and the home constructed at 88 Cutler Lane was worth $5.1 million as of January 29, 2016.

2. Notably, Mr. Fennell does not provide any opinion as to the homes' values on March 30, 2014, the date plaintiffs claim construction should have been complete, or as of November 30, 2014, the date plaintiffs claim the sale should have been completed. Thus, Plaintiffs offer simply a valuation at a date in time, which has no causal connection to the allegations in the complaint.

3. The appraisal reports are essentially the same form, template appraisal with some additional text authored by Mr. Fennell. The reports are nearly identical, except where there are objective differences between the two homes.

4. Mr. Fennell does more, however, than state his opinion as to the market value of the properties on those specific dates – without providing any facts to support his conclusions, he opines as to *why* the homes were each sold by the trustee in 2016 for less than market value. The heart of Mr. Fennell's opinion is encapsulated in two bolded sentences, which are identical in the two reports:

> **Based on the appraisers [sic] findings in this report, the extended construction period, lack of effective marketing, and legal dispute between the builder and investors significantly impacted the eventual selling price of both new homes. This is reflected in the difference between the appraised value of the subject property and the actual selling price.**

Exhibit A at Addendum pg. 1; Exhibit B at Addendum pg. 1 (bold in original).

5. As described below, the appraisals lack any detail or analysis to support a causal connection between these three factors that Mr. Fennell identifies as suppressing the homes' values and the sales of the two homes. Without a reliable methodology for making these connections, his opinions are inadmissible.

6. The reports contain no analysis by Mr. Fennell as to the "proper" construction time for these two homes nor does he opine as to the value of the homes had they been ready for sale between March, 2014 (when plaintiffs wrongfully claim they were supposed to be "completed") and November, 2014 (the outside date by which the properties, according to plaintiffs, were to be sold). He also provides no facts to support his conclusion that the properties were not completed on time, relying solely on what his "client" told him. Without this analysis and causal connection, his opinion about the effect of the "extended construction period" is unreliable and inadmissible.

7. Similarly, although concluding that the project lacked effective marketing, he never describes what an "effective marketing" campaign for these homes should have been. In other words, he does not compare the efforts taken to market the homes with what he apparently believes should have undertaken. Yet, despite having "no" information, somehow Mr. Fennell was able to conclude that there was a "lack of effective marketing." Moreover, nothing in his background suggests he is qualified to opine as to "marketing strategies". Again, his opinion is inadmissible.

8. The final factor he identifies as suppressing the value is the "legal dispute between the builder and investors" He offers no comparison between homes sold without "legal disputes" and homes sold with "legal disputes" to be able to quantify the impact "legal disputes" have on market value. All Mr. Fennell offers is a conclusory statement that, in his opinion, the homes were worth $5.1 million, but the trustee was able to sell them only for $4.4 million, and the litigation, which Plaintiffs themselves initiated, must explain the difference.

Case 16-01120    Doc 231    Filed 11/16/18    Entered 11/16/18 16:34:33    Desc Main
Document      Page 4 of 6

9. Additionally, Mr. Fennell neglects to note that the listing price set by the bankruptcy trustee, with the approval of this Court and without any objection by Plaintiffs, was $4.5 million, and the sale price of $4.4 million was also approved by this Court, without objection by Plaintiffs. Thus, any suggestion that Defendants are somehow responsible for the $4.4 million sale price is wholly undermined by the orders of this Court to which Plaintiffs offered no objection.

10. Defendants request that the Court exclude Mr. Fennell's opinions.

11. A memorandum of law accompanies this Motion.

WHEREFORE, Defendants respectfully request that this honorable Court:

    A. Issue an order prohibiting the introduction of evidence and argument concerning the appraisal opinion of Hugh Morgan Fennell;

    B. Issue an order precluding Plaintiffs from arguing that the "extended construction" period, "ineffective marketing" or initiation of the litigation caused the homes to sell for less than market value; and

    C. Grant such additional and further relief as the Court deems necessary.

Dated: November 16, 2018

Respectfully submitted,

VADIM KAGAN,
TATIANA KAGAN,
KAGAN DEVELOPMENT KDC, CORP. and
PROEXCAVATION CORP.,

By their Attorneys,

/s/ John H. Perten
Christopher M. Candon, BBO# 650855
John H. Perten, BBO# 548728
James P. Harris, BBO# 678283
SHEEHAN PHINNEY BASS & GREEN, PA
255 State Street, 5th Floor
Boston, MA  02109
Tel:  617-897-5600
Fax: 617-439-9363
E-mail: ccandon@sheehan.com
         jperten@sheehan.com
         jharris@sheehan.com

5

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of November, 2018, a copy of the foregoing was served upon the parties listed below via ECF and/or first class mail, postage prepaid.

Eric K. Bradford
Office of the US Trustee
J.W. McCormack Post Office & Courthouse
5 Post Office Sq., 10th Fl, Suite 1000
Boston, MA 02109

Sean T. Carnathan
O'Connor, Carnathan and Mack, LLC
1 Van De Graaff Drive
Suite 104
Burlington, MA 01772

David B. Madoff
Madoff & Khoury LLP
124 Washington Street - Suite 202
Foxborough, MA 02035

Steffani Pelton Nicholson
Madoff & Khoury LLP
124 Washington Street
Foxborough, MA 02035

Sarah A Smegal
Hackett Feinberg P.C.
155 Federal Street
9th Floor
Boston, MA 02110

Joseph P. Calandrelli
O'Connor Carnathan and Mack LLC
1 Van De Graaff Drive
Suite 104
Burlington, MA 01772

Stephen G. DeLisle
Rubin and Rudman LLP
50 Rowes Wharf
3rd Floor
Boston, MA 02110

Amy M. McCallen
Rubin and Rudman LLP
50 Rowes Wharf
Boston, MA 02110

David C. Phalen
Hackett Feinberg P.C.
155 Federal Street, 9th Floor
Boston, MA 02110

Peter N. Tamposi
The Tamposi Law Group
159 Main Street
Nashua, NH 03060

/s/ John H. Perten
John H. Perten