# EXHIBIT 13

**O'Connor Carnathan and Mack LLC**

Landmark One
1 Van De Graaff Drive
Suite 104
Burlington, MA 01803

Tel: 781.359.9000
Fax: 781.359.9001

www.ocmlaw.net

Sean T. Carnathan
Direct Line: 781.359.9002
scarnathan@ocmlaw.net

May 13, 2015

*Via Electronic Mail and U.S. Mail*

Alexander H. Pyle
Sheehan Phinney Bass + Green
255 State Street
Boston, MA 02109

Re:   **Lyman-Cutler, LLC**

Dear Mr. Pyle:

This Firm represents Alex Filippov in his capacity as Managing Member of the Lyman Cutler, LLC ("Company") for the purpose of responding to your letter dated May 7, 2015. Your client's presentation of the facts is inaccurate.

In 2012, Mr. Lipetsker came to Mr. Filippov seeking an investor for a venture he contemplated with Mr. Kagan. Mr. Kagan and Mr. Lipetsker persuaded Mr. Filippov to invest $2 million in the construction of two high-end homes in Brookline, Massachusetts. The Company was formed and the property acquired in late 2012.

Mr. Kagan, who owns and operates a construction company, was responsible for construction of the two homes, for which he has already been paid handsomely. Pursuant to the express written terms of the Company LLC Agreement, Mr. Kagan was obligated to complete construction on or before March 30, 2014. See LLC Agreement, ¶ 5.2. He failed to do so. Construction was not complete until approximately August 2014.

Again, under the express terms of the LLC Agreement, Mr. Kagan was responsible for seeing that the Properties were sold no later than November 2014. See LLC Agreement, ¶ 8.2 (23 months after the December 2012 acquisition date). Because Mr. Kagan failed to accomplish the timely completion and sale of the Properties, Mr. Kagan has been responsible not only for paying the carrying costs, but also for paying Mr. Filippov 5% interest on his $2 million investment.

Alexander H. Pyle
May 13, 2015
Page 2

In addition, the LLC Agreement obligated the Company to retain <u>Mr. Kagan's wife, Tatiana</u>, as the listing broker, but only through December 31, 2014.

When Mr. Kagan pitched Mr. Filippov on investing in the project on October 25, 2012, the planned selling price for each of the two Properties was <u>$4.9 million</u>. At no time since October 2012 has Mr. Kagan ever discussed the selling price with Mr. Filippov in any way whatsoever. On the contrary, Mr. Kagan (perhaps in consultation with his wife) unilaterally set the selling prices. The statement that Mr. Filippov has refused to approve a price reduction is completely false. He has never been consulted.

To make matters much worse, Mr. Kagan's contention that he is entitled to payment of $758,025.56, plus $50,000 for anticipated additional costs, plus $251,000 in carrying costs comes completely out of the blue, just two months after Mr. Kagan expressly assured Mr. Filippov that the project was on budget. None of these alleged and wildly excessive costs were ever approved by Mr. Filippov as the Managing Member and he expressly rejects them now. See LLC Agreement, ¶ 5.2 (requiring Mr. Kagan to construct the homes in accordance with the plans approved by the Managing Member).

The October 25, 2014 project budget projected construction costs of $1.3 million. The budget projected carrying costs of $200,000. At the outset of the project, Mr. Filippov authorized an additional $100,000 for unforeseen expenses, bringing the total budget for both construction and carrying costs for each home to $1.6 million. Where Mr. Kagan is the contractor on the project, the lion's share of this money has already been paid to him. This, of course, also means that the alleged cost overruns are almost certainly charges from Mr. Kagan's own company.

Contrary to your footnoted assertion in note 2 of your letter, the provision in paragraph 8.1 of the LLC Agreement obligating Mr. Kagan to pay the operating costs if the property is not sold by November 2014 is <u>not</u> inartfully drafted. Rather, it is a bargained-for protection of Mr. Filippov from exactly the scenario in which the Company now finds itself -- burdened by two high end properties which Mr. Kagan failed to complete on schedule, unilaterally overpriced, and which he and his wife have failed to sell on time. He has been grossly negligent. For him to now assert claims in excess of $1 million against the Company, while trying to inflict the carrying costs on Mr. Filippov, is entirely unacceptable, willful misconduct and a breach of the LLC Agreement and Mr. Kagan's fiduciary duty.

Given Mr. Kagan's and his wife's failure to perform, and their astonishing assertions in their letter, Mr. Filippov has no choice but to assert his authority as Managing Member of the LLC and take control over the sale of the Properties. LLC Agreement, ¶ 6.2(a). Please be advised that as of the date of this letter, Mr. Filippov is asserting full control over the Properties.

In recent weeks, Mr. Kagan has asked Mr. Filippov to sign a new listing agreement with Tatiana Kagan for the Properties, which Mr. Filippov declined to sign. To the extent Mr. Kagan has purported to retain his wife as the broker for the Properties, any such retention is void. Mr.

Alexander H. Pyle
May 13, 2015
Page 3

Filippov will be listing the Properties immediately with another broker at such price as the chosen broker recommends and on the best commission terms reasonably attainable.

I understand that Mr. Filippov has repeatedly demanded copies of the Company books and records and that, as of May 11, 2015, Joseph Cohen, the Strategic Business Manager of Kagan Development Company, Inc., represented that all such books and records would be provided on or before May 15, 2015. We expect Mr. Kagan and his Company to turn over the complete books and records with regard to the Properties to Mr. Filippov immediately. In addition, we hereby demand that Mr. Kagan turn over all keys to the Properties within 48 hours.

Mr. Filippov will be happy to reduce the price of the Properties, which Mr. Kagan unilaterally overpriced, as recommended by the new broker, and will see to it that they are sold as quickly as possible at the best price he can obtain. He will then disburse the funds in accordance with the terms of the LLC Agreement. I assure you that Mr. Lipetsker is in full agreement with Mr. Filippov's position and plan and that together they have the 81% of the vote required under paragraph 8.2 to make changes in the allocations of the profits and losses from the Project if Mr. Kagan impedes its successful completion. To be clear, we expect Mr. Kagan to cooperate fully in the maintenance, presentation and sale of the Properties during and after the assumption of control by Mr. Filippov.

Any interference or other misconduct will result in immediate legal action. Please call me with any questions or concerns.

Very truly yours,

*Sean Carnathan*

Sean T. Carnathan

cc:   Mr. Alex Filippov
      Mr. Nickolay Lipetsker