# EXHIBIT 14

```
Exhibits: 55-73                    Volume 1, Pages 1-133
         UNITED STATES BANKRUPTCY COURT
            DISTRICT OF MASSACHUSETTS
                (EASTERN DIVISION)
-------------------------------
In Re:
                                   Chapter 7
LYMAN-CUTLER, LLC,                 Case No. 15-13881-FJB

         Debtor
-------------------------------
LYMAN-CUTLER, LLC,

         Plaintiff
v.                                 Adv. Case No. 16-01120
VADIM KAGAN, TATIANA KAGAN,
KAGAN DEVELOPMENT KDC CORP.
and PROEXCAVATION CORP.,
         Defendants
-------------------------------

         DEPOSITION OF JASON GORDON
      Tuesday, May 22, 2018, 9:58 a.m.
      O'Connor Carnathan and Mack LLC
    1 Van de Graaff Drive, Suite 104
       Burlington, Massachusetts 01803

      --------- David A. Arsenault, RPR ---------
      daa@fabreporters.com   www.fabreporters.com
            Farmer Arsenault Brock LLC
               Boston, Massachusetts
                  617-728-4404
```

1    A.   I believe so.
2    Q.   Are you aware of large amounts of cash
3    transferring back and forth between Classic
4    Interiors and other Kagan companies?
5              MR. HARRIS:   Objection.
6    A.   I don't recall.
7    Q.   Have you ever reviewed any of the internal
8    controls at any of Mr. Kagan's companies?
9    A.   I have not done any internal control
10   review.
11   Q.   Have you ever suggested one to him?
12   A.   No.
13   Q.   Have you ever made any entries directly
14   into the QuickBooks of any of Kagan's entities?
15   A.   I believe so.
16   Q.   When have you done that?
17   A.   I may have done that with, via Web
18   conference with Dan Gersh.
19   Q.   With regard to which companies have you
20   made entries directly into the QuickBooks?
21   A.   I don't recall specifically.
22   Q.   Have you done it for KDC?
23   A.   I don't recall.
24   Q.   Have you done it for Proex?

72

1    A.    Yes.

2    Q.    On that one, I'm interested in Page 1373.
3  Down toward the bottom, there's an entry for an
4  invoice on January 1, 2015 to Lyman-Cutler Road for
5  a hundred thousand dollars.  Do you see that?

6    A.    Yes.

7    Q.    Can you explain to me why 325,000 was
8  entered as of 12/31/2014 against Lyman-Cutler Road
9  and another $100,000 was entered on January 1, 2015
10 against Lyman-Cutler Road?

11   A.    My recollection is it had to do something
12 with whether the receivable was going to be
13 realizable or not.

14   Q.    What's the basis for that recollection?

15   A.    My memory.

16   Q.    Did you ever talk to anybody about it?

17   A.    Yes.

18   Q.    Who did you talk to?

19   A.    About my recollection or the hundred
20 thousand dollars?

21   Q.    About the hundred thousand dollars.

22   A.    I believe a conversation or correspondence
23 with KDC.

24   Q.    Do you remember who at KDC?

Jason Gordon - Vol. 1 - 5/22/2018

73

1   A. Probably Dan Gersh.
2   Q. When was that?
3   A. I don't recall.
4   Q. As best you can recall, would you recount
5   to me who said what to whom during that
6   conversation.
7   A. To the best of my recollection, I said we
8   don't want to change the economics of what is owed
9   but we don't want to pay tax on money that we are
10  not going to receive if you are telling me it's not
11  going to be realizable.  That's my recollection.
12  Q. Did he tell you why it was not going to be
13  realizable?
14  A. No specifics.
15  Q. Why would the fact that it was not
16  realizable lead to booking it in 2015?
17  A. I believe it was set up as a reserve
18  in 2015.
19  Q. How did listing it on the general ledger
20  set it up as a reserve?
21  A. It was put on the books at the gross value.
22  And my recollection is that there's an account
23  called deferred revenue or something here that then
24  took it out of income so that it wouldn't be

79

A. Yes.

Q. Can you explain to me how there was 195-thousand-odd dollars that needed to be moved by a journal entry to the P&L?

A. Yes. As they are doing a project and accounting for it, all the costs get aggregated on the balance sheet. When the property sells, you should be moving all the costs off the balance sheet and expensing them as your cost-of-goods sold against the sales to match the revenue and expense.

Q. If I follow you right, 195-odd thousand dollars would have been money that Mr. Kagan spent on materials on that project?

A. Yes.

Q. And then once he sold the project, that gets moved on to the P&L as an expense against the revenue that was generated by selling the project? Do I have that right?

A. Yes.

Q. Would you have expected Mr. Kagan to put all of the money he spent on materials onto the balance sheet for Druid Hill during the project?

A. Yes.

Q. I want to quickly show you what we

FARMER ARSENAULT BROCK LLC

Jason Gordon - Vol. 1 - 5/22/2018

131

CERTIFICATE OF COURT REPORTER

    I, David A. Arsenault, Registered Professional Reporter, do certify that the deposition of JASON GORDON, in the matter of Lyman-Cutler vs. Kagan, et al., on May 22, 2018, was stenographically recorded by me; that the witness provided satisfactory evidence of identification, as prescribed by Executive Order 455 (03-13) issued by the Governor of the Commonwealth of Massachusetts, before being sworn by me, a Notary Public in and for the Commonwealth of Massachusetts; that the transcript produced by me is a true and accurate record of the proceedings to the best of my ability; that I am neither counsel for, related to, nor employed by any of the parties to the above action; and further that I am not a relative or employee of any attorney or counsel employed by the parties thereto, nor financially or otherwise interested in the outcome of the action.

Transcript review was requested of the reporter.

_____  6.4.18
David A. Arsenault, RPR

FARMER ARSENAULT BROCK LLC