# EXHIBIT 15

# Meeting of the Members
## Lyman Cutler LLC

**Date**:
> July 16, 2015

**Location**:
> Conference Room at
> O'Connor Carnathan, and Mack LLC
> 1 Van De Graff Drive
> Burlington, MA 01803

**Participants**:
> Alex Filippov ("Filippov")
> Vadim Kagan ("Kagan") [via proxy, James Joseph Cohen]
> Nicholas Lipetsker ("Lipetsker")

Parties were present as indicated above. Proxy for Kagan, James Joseph Cohen (Cohen) introduced himself and presented his proxy.

It was agreed that all parties would take notes of the meeting, as they wish. However, it was agreed Cohen would record the official record of the meeting. Cohen would circulate his record to the Members for their review.

Attached hereto are the agenda presented by Filippov. Also attached is a list of agenda issues presented by Cohen, as supplemented by a letter from Kagan's counsel, dated July 15, 2015. General discussion ensued as to the order of the issues to be reviewed. Parties agreed that Filippov could move through his agenda items first, as there was substantial overlap with that presented by Cohen. Cohen did not agree that Filippov was presiding at the meeting. However, Cohen did agree that Filippov could proceed first.

The following is the official record of the meeting:

1. Filippov called for a vote to ratify his actions as "Managing Member."
   a. Cohen objected as there was no opportunity to discuss the existing term of manager – Vadim Kagan. Lipetsker and Filippov refused to discuss this issue.
   b. Cohen asked as what process would be utilized to remove a manager, how many managers were permitted, and how was a manager appointed pursuant to the Operating Agreement. Filippov and Lipetsker refused to answer and called again for the vote.
   c. Cohen objected to the vote as being out of order.
   d. Notwithstanding the objection, and reserving all rights, the vote was taken

> Lipetsker voted "yes" in favor of ratification.
> Filippov voted "yes in favor of ratification.
> Kagan via proxy voted "no" against ratification, and stated:

> > *Absent a nomination and election, Kagan objected to the vote itself as a violation of the LLC Operating Agreement, and that earlier acclamation in advance of the formation of the LLC declared Kagan to be the managing member. Further, as the Operating Agreement clearly contemplated more than one manager, this vote, even if legal, was not dispositive of the rights of Filippov to take unilateral action on behalf of the LLC.*

2. Filippov called for a vote to ratify his unilateral action in hiring the law firm of O'Connor Carnathan, and Mack LLC to bring suit against Kagan. He advised that the fee charged by Sean Carnathan is $385.00 per hour and that he had spent approximately $18,000.00 in legal fees as of the end of June 2015.

   a. Cohen asked for discussion as to this issue prior to taking of a vote. Filippov refused to discuss.
   b. Cohen asked if Filippov expected that the LLC would reimburse his advance payment of fees. Filippov said that he did.
   c. Cohen asked if Filippov had a litigation budget. Filippov said "whatever it takes."
   d. Cohen asked Filippov to identify the provision of the Operating Agreement which permitted any member to hire counsel to sue another member on behalf of the company. Filippov said that he was managing member and did not need to discuss his decision with the other members.
   e. Cohen asked whether there was a litigation plan. Filippov refused to answer.
   f. Cohen asked if the LLC had a belief that it would recover money adequate to fund the cost of the litigation. Filippov said that he did not know, but referred Cohen to his previous statement in which he stated his desire to destroy Kagan.
   g. Cohen objected to the vote as being out of order.
   h. Notwithstanding the objection, and reserving all rights, the vote was taken

   Lipetsker voted "yes" in favor of ratification.
   Filippov voted "yes in favor of ratification.
   Kagan via proxy voted "no" against ratification, and stated:

   > Absent authority, the vote itself was objected to and a violation of the LLC Operating Agreement. Further, as the Operating Agreement clearly contemplated more than one manager, this vote, even if legal, was not dispositive of the right of Filippov to engage counsel on behalf of the LLC to sue a member.

3. Filippov called for a vote to ratify his request to remove Tatiana Kagan of Century 21, as listing broker for the LLC properties.

   a. Cohen asked as to the basis for this request. Filippov replied that he did not trust Tatiana.
   b. Cohen asked what actions Tatiana did or did not do that caused him to mistrust Tatiana Kagan. Filippov stated that Debra Goldman, a broker for Coldwell Banker that he has been in contact with, claims to have had an offer on the 55 Lyman Road Property during the month of March 2015. Filippov accused Tatiana Kagan of failing to forward this offer to him or Lipetsker. Filippov stated that this offer was for $4.5 million. Cohen requested a copy of the offer. Filippov replied that it was not a written offer, but merely a dialogue between Debra Goldman and Tatiana Kagan. Cohen opined that a discussion amongst brokers does not rise to the level of an offer, even if such a discussion was had. Cohen further inquired as to whether the risk posed by slandering/libeling Tatiana Kagan was offset by providing Filippov with an alternate broker. Filippov stated that he expected to find support for his allegations against Tatiana Kagan. Cohen stated that hoping to find support was a fishing expedition that could put LCLLC in severe jeopardy if such expedition was not fruitful. Filippov expressed his confidence that he would find something.
   c. Filippov called for an up or down vote.
   d. Cohen objected to the vote as being out of order.
   e. Notwithstanding the objection, and reserving all rights, the vote was taken

   Lipetsker voted "yes" in favor of ratification.
   Filippov voted "yes in favor of ratification.
   Kagan via proxy voted "no" against ratification, and stated:

*The unilateral and unreviewed action by the LLC against Century 21 was ill advised and could be considered tortious conduct for which the LLC could ultimately be held liable. Further, indemnification of the member, Filippov, for this precipitous action would not be available under the indemnification provision of the Operating Agreement.*

4. Filippov called for a vote to ratify his actions in suing – Kagan Development, KDC Corp, Century 21, Vadim Kagan, Tatiana Kagan, and Pro-Excavation.
   a. Cohen called for discussion prior to any vote, Filippov and Lipetsker refused and demanded a vote.
   b. Cohen objected to the vote as being out of order.
   c. Cohen opined that a ratifying resolution, presuming it to be legal, could not correct the deficiency of authority at the time of the actions.
   d. Cohen asked as to what proof supported the allegations in the suits. Filippov said that he did not have any yet, but would certainly find it.
   e. Cohen objected to commencing or continuing a suit absent substantive proof of wrong-doing by any party. Filippov refused to consider the objection
   f. Cohen renewed his objection as to a member using the LLC as a vehicle to seek redress against another member for an action that should have been taken in his own individual name. Filippov dismissed the objection and repeated his call for a vote.
   g. Cohen objected to the ratification as he believed it be against the interests of the LLC.
   h. Notwithstanding the objection, and reserving all rights, the vote was taken

Lipetsker voted "yes" in favor of ratification.
Filippov voted "yes in favor of ratification.
Kagan via proxy voted "no" against ratification, and stated:

*The decision to continue this suit is taken at full risk by the members voting for it. Kagan objects to burdening the company with a vendetta that could easily bankrupt the company.*

5. Filippov inquired as to whether Kagan admits that he is currently not paying costs on the LCLLC projects. Cohen confirmed that Kagan is no longer paying carrying costs. However, Cohen advised that Kagan has been paying carrying costs since the inception of the project(s) without an express requirement to do so.

Cohen asked Filippov how he and Lipetsker expected the carrying costs to be paid. Filippov advised that they should have been paid out of the construction loans as the Operating Agreement provided which, but for Kagan's "fraud," would have been adequate.

Cohen pointed out that the loans taken out by Filippov were not consonant with the requirements of the Operating Agreement in that they prohibited any loan proceeds from being used to pay carrying costs. Filippov then stated that the members previously agreed that Kagan would be paying all carrying costs.

Cohen asked when and where that previous meeting took place and were there any documents which reflected that agreement. Lipetsker stated it was over dinner at a restaurant prior to the execution of the Operating Agreement.

Cohen inquired if there were any official member meetings prior to this convened meeting. Both Filippov and Lipetsker confirmed that this was the only meeting of the LLC.

Cohen then advised the meeting that Kagan was only required to pay carrying costs until the CO's issued per the Operating Agreement. Cohen then inquired as to who was paying the carrying costs at this time. Filippov advised that he was paying the carrying costs. Cohen asked if he was expecting to be paid back by the LLC for his payment of the carrying costs.   Filippov advised that he was expecting to be

L-C BK 003172

reimbursed. Cohen inquired if he agreed that Kagan was entitled to reimbursement for his payment of carrying costs as well. Filippov said "we will see".

6. Filippov inquired of Cohen why work was being done on 88 Cutler on or about June 10th, 2015. Cohen advised that he was without adequate facts to answer that question but could surmise an answer. Filippov declined to listen to the conjecture. Cohen committed to sending a follow up answer by Monday the 20th of July 2015.

7. Filippov advised that 88 Cutler and 55 Lyman needed repairs in order to be marketed. He advised that 88 Cutler needed interior painting in the amount up to 27,000.00 dollars. He stated that 55 Lyman needed a lock on the balcony door and repair of some scratches on the floor. Filippov confirmed that these were the only "defects" that were noted at this time.

   Cohen asked for copies of the repair estimates. Filippov committed to sending copies of the estimates by Monday the 20th of July 2015.

   Filippov called for a vote authorizing the repairs. Cohen countered that they should use the existing sub-contractors as they would charge significantly less.
   Notwithstanding, Filippov called again for the vote.

   a. Cohen objected to the vote as being out of order as no estimates or reports were provided that would support the assertions propounded by Filippov.
   b. Notwithstanding the objection, and reserving all rights, the vote was taken

   Lipetsker voted "yes" in favor of authorizing Filippov to hire contractors to make repairs.
   Filippov voted "yes in favor of authorizing Filippov to hire contractors to make repairs.
   Kagan via proxy voted "no" against authorizing Filippov to hire contractors to make repairs, and stated:

   > *Filippov is without construction experience and is not adequately skilled to hire and select contractors. Therefore, LCLLC should engage existing subs to make the required repairs.*

8. Filippov opened discussion as to the sale and marketing of the properties. He advised that the new listing broker – Michelle Lane – of Century 21 has been making confirmable efforts. He stated that she has been providing reports. Cohen requested that the reports be published to all members. Filippov committed to sending the reports via email, to the members by Monday the 20th of July 2015. He advised that Lane is seeking interest from a buyer from China. She has shown 55 Lyman to 2 prospects. There are no open houses had or scheduled as agreed to by the members.

9. Cohen discussed previous efforts as delineated in the C21 letter of April or May 2015. Filippov asserts that he never received the letter. Cohen agrees to provide the letter via email, to the members by Monday the 20th of July 2015.

10. Cohen proposed resolution to request a written list of the efforts made by C-21 and Tatiana Kagan as to the marketing of 55 Lyman Rd. and 88 Cutler Rd. The request is to be constructed by Filippov and circulated to the other members for comments prior to sending it to Century 21.

    Lipetsker voted "yes" in favor.
    Filippov voted "yes in favor.
    Kagan via proxy voted "yes" in favor.

11. Filippov proposed a resolution requiring the removal of Kagan Development signage from the properties. After consultation and discussion the vote was taken.

Lipetsker voted "yes" in favor.
Filippov voted "yes in favor.
Kagan via proxy voted "yes" in favor.

12. Filippov request that Kagan provide the staging agreement for 55 Lyman. Cohen agreed to provide a copy of the contract and contact information.

13. Filippov called for resolution prohibiting member Kagan from entering the properties without Filippov's permission. Cohen advised that such a resolution would be patently illegal and would elevate the rights of one member above that of another member. Cohen advised that the parties would have to amend the Operating Agreement in order to give the authority to one member over another and that such would require unanimous approval of all members. Cohen suggested that the parties speak to their respective counsel if unsure. The meeting took a short break so that the Members could so consult. Following consultation with counsel, Filippov abandoned his proposed resolution.

Thereafter, Cohen and Filippov jointly called for a vote that would only limit KDC from engaging in any further work on the property, but would not impede the access of any members.

Lipetsker voted "yes" in favor.
Filippov voted "yes" in favor.
Kagan via proxy voted "yes" in favor.

14. Filippov requested that KDC provide the "painting formulas" for 88 Cutler, interior. Cohen advised that he would inquire as to the paint formulas from the existing painting subcontractor(s).

15. Cohen requested that the prior year tax returns be provided to the members. Filippov advised that Credence P.C. is the accounting firm and that he would request the returns be provided to all members. He further stated that no financials have been created for the LLC.

16. Cohen called for a discussion of the financials for the LLC. Filippov stated that no financials were available since they did not have the receipts and invoices from the sub-contractors. Cohen advised that the LLC had the invoices from KDC and that would certainly be sufficient to produce the financials. Filippov demurred and said that he did not see the need for financials. Cohen pointed out that the preparation of tax returns in accordance with Generally Accepted Accounting Principles would require the preparation of at least a balance sheet and income statement. Further, Cohen again stated that the invoice from the general contractor together with the Quick Book records would be sufficient to prepare rudimentary but sufficient financials. Filippov refused to reply and requested that the meeting abandon this line of discussion and move on to other matters.

17. Discussion was had as to the general contracting agreement. Filippov stated that the Operating Agreement only called for the construction to be done by Kagan. Cohen advised that it was Kagan's position that Kagan was within his authority to engage a general contractor, as his obligation under the agreement, since it clearly was not contemplated that he build the houses without assistance. Filippov asserted that he did not have a copy of the general contracting agreement. Cohen advised that he would provide the agreement and expected to have the backup invoicing organized for review within 2 weeks from Monday the 20th of July 2015.

18. After a request for all financial records by Cohen, Filippov advised that the Quick Book files represent the sum total of the financial records of the LLC.

19. Cohen requested that Filippov identify where and when he believes that he was designated as the "Managing Member" of the LLC.

Filippov refused to answer.

20. Cohen requested that Filippov or Lipetsker state what process and procedure was necessary to appoint a "Managing Member" per the Operating Agreement of LCLLCC.

Neither Filippov nor Lipetsker answered. They refused to discuss the matter and claimed that this question was a ruse.

21. Cohen inquired as to the likely recovery against the entities or person sued by the LLC. Filippov advised that the matter was one of "double billing". Cohen inquired as to what proof the LLC had as to the alleged double billing. Filippov said none.....Yet. Cohen again requested that Filippov answer the question on the table regarding the likelihood of recovery through the suit initiated at Filippov's direction. Filippov refused to answer and requested that Cohen move on.

22. Cohen inquired if the pending suits should be dismissed until such time as proof could be had as to the alleged double billing. Filippov refused to permit any discussion and refused to answer. Lipetsker said that he felt the parties needed to sit down over a drink and work out the conflict. Filippov said that the suit was Vadim's fault and Cohen's fault as they originally sent the lawyer's letter to the members.

23. Cohen inquired if the carrying costs paid from the inception of the project were to be the joint responsibility of the members. Filippov stated that the carrying costs were to be paid by the bank out of the construction loans. Cohen pointed out that the loans were not permitted to be used for the carrying costs. Filippov ended the discussion and terminated the inquiry without further response; telling Cohen to "move on."

24. Cohen inquired as to long term financing in the event the properties do not sell since the bank will not grant a further extension. Filippov and Lipetsker agreed that they might need to take out a mortgage on the property(s).

25. Upon inquire from Cohen, Filippov advised that the loans had been extended to December of 2015.

The meeting ended at this point. And the parties left the conference room.

Signed/James Joseph Cohen

_____ Date: July 21, 2015

L-C BK 003175