UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re:<br><br>LYMAN-CUTLER, LLC,<br><br>      Debtor. | )<br>)<br>)<br>)<br>)<br>)<br>) | Chapter 7<br>No. 15-13881-FJB |
| LYMAN-CUTLER, LLC,<br>ALEX FILIPPOV and<br>NICKOLAY LIPETSKER,<br><br>      Plaintiffs,<br>      Defendants in Counterclaim,<br><br>      v.<br><br>VADIM KAGAN, TATIANA KAGAN,<br>KAGAN DEVELOPMENT KDC, CORP.<br>and PROEXCAVATION CORP.<br><br>      Defendants,<br>      Plaintiffs in Counterclaim. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Adv. Proc. No. 16-01120 |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE**

Defendants Vadim Kagan ("Kagan"), Tatiana Kagan, Kagan Development KDC, Corp. ("KDC") and ProExcavation ("ProExcavation") submit this Opposition to Plaintiffs' Motion in Limine (Docket Nos. 218 and 348). In support of their Opposition, Defendants state as follows:

**I.**
**The Burden of Proof**

Plaintiffs take too myopic a view of who bears the burden of proof in this case; their claim that Kagan violated a fiduciary duty is not the only claim in this case. The Court has already agreed that Defendants need not call any subcontractors to prove that their charges are

{S1267585.9}

reasonable. The Court stated that *Plaintiffs* must first come forward with "substantial evidence" to support their objections to Defendants' proofs of claim and only then must Defendants proffer additional proof as to those items. *See* Trans. of Oct. 9, 2018 Hearing at 7-9, attached hereto as Exhibit A. Bankruptcy Rule 3001(f) is not suspended merely because a fiduciary is involved.[1]

The Court's prior order is in line with rules of this Court and bankruptcy law, and also mirrors the logic of a case cited by Plaintiffs. *Coggins v. New Engl. Patriots Football Club*, 397 Mass. 525 (1986), relies heavily on a case that requires the party attacking the corporate transaction to first demonstrate a basis for attacking its fairness *before* the burden shifts to the fiduciary to prove its fairness. *See Weinberger v. UOP, Inc.*, 457 A.2d 701 (Del. 1983) ("while ultimate burden of proof is on the majority shareholder to show by preponderance of the evidence that the transaction is fair, it is first the burden of the plaintiff [the minority] attacking the merger to demonstrate some basis for invoking the fairness obligation."). Here, Plaintiffs must carry an initial burden and if they fail to do so, the burden of persuasion never shifts to Defendants.

Plaintiffs also reach too far when contending that Kagan should be required to prove the fairness of the listing agreement between Debtor and Century21. He most certainly was not on "both sides" of the listing agreement with Century21, an entity in which he has no ownership interest whatsoever. He had no control over the terms required by that firm. His wife, Tatiana, also had little to no control over the terms required by her employer, Century21. Despite what Plaintiffs contend, the record shows that Tatiana herself would not have received the full commission on the sale of the homes. Rather, that commission could have been shared with a cooperating broker and the remainder would have been paid to Century21 or to Tatiana

---

[1] This argument is fully developed in Defendants' opposition to plaintiffs' motion for summary judgment and incorporated herein by reference.

consistent with her arrangement with her firm. *See* Tatiana Kagan Depo. Tr. at 60-61, attached hereto as Exhibit B.  Listing the properties with Tatiana and her firm was explicitly authorized by the members in their Operating Agreement, so he did not act independently of Debtor in undertaking the ministerial act of signing the listing agreements.

Beyond this, Plaintiffs have presented no evidence (including no expert opinion) to even suggest that the terms of the Century21 listing agreement were unreasonable or unfair.  They have no expert opinion or documentation to suggest that any modification to the boiler plate agreements was made to distinguish them from industry standard agreements.  Moreover, the record demonstrates very clearly that Filippov had actual knowledge of the listing agreement and did not object to its terms.  Nor did Plaintiffs contest the payment of a commission to Century21 when the properties sold.[2]  If Plaintiffs believed the terms of the listing agreements were unfair, they have waived any such argument by remaining silent as the commission was paid.  There is no basis to require Kagan to carry the burden of proving that the listing agreement with an established real estate firm was fair to Debtor under these circumstances.

## II.
## The Binders Proving KDC's Proof of Claim Are Admissible

Plaintiffs' Hail Mary attempt to exclude documentation supporting KDC's proof of claim stems from a fundamental mischaracterization of the source of the documentation. They argue, without proof, that Mr. Gersh created documentation to support the proof of claim.  In fact, this assertion is false.  Mr. Gersh testified that he ***collected*** documentation from vendors and suppliers; he did not ***create*** that documentation.  He made accounting adjustments in KDC's QuickBooks files to reflect the documentation received from the subcontractors and vendors, but those entries are summaries and compilations of underlying documentation received. **When**

---

[2] *See* Tatitana Kagan's Motion for Summary Judgment on all Counts of Amended Complaint and on Proof of Claim No. 5 (Docket Nos. 351-54); Docket No. 67 (trustee's motion for authority to sell).

{S1267585.9}                                    3

KDC received the underlying documentation simply does not have the impact Plaintiffs contend. Whether KDC possessed the documentation before, during, or after the project, does not alter its admissibility. Rather than deal with the substance of the documentation, Plaintiffs draw an arbitrary line in the sand – if documents were received after a date selected by Plaintiffs, they claim they should be excluded. This makes no logical sense and has no support in the applicable rules.

Defendants easily exceed the low threshold for admitting the documentation supporting KDC's proof of claim. Federal R. Evid. 901(a) requires only some "evidence sufficient to support a finding that the item is what the proponent claims it is." The Rule provides examples of satisfactory proof, including "Testimony that an item is what it is claimed to be," and "The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(1), (4). The Rules also make certain types of documents "self-authenticating", including documents bearing trade inscriptions, signs, tags or labels "purporting to have been affixed in the course of business and indicating origin, ownership, or control." Fed. R. Evid. 902 (7). The records provided by the vendors and subcontractors easily satisfy the authentication standard. *Byrne v. CSX Transp., Inc.*, 617 F. App'x 448 (6th Cir. 2015) (invoices with company logo are self-authenticating).

As described above, the Court has already agreed that Defendants need not call all of the subcontractors and suppliers to support KDC's proof of claim. *See* 10/9/18 Hrg. Trans., Exhibit A. Calling all of the vendors and subcontractors to testify at trial will significantly prolong trial which hardly seems necessary since Plaintiffs have come forward with no credible criticism of these records. Even Plaintiffs' expert, a Certified Fraud Examiner, deliberately stopped short of

contending that any such records are fraudulent.³  For this additional reason, the Court should refuse Plaintiffs' request to exclude the documentation wholesale at this juncture.

Plaintiffs' mischaracterization of the source of the documents also leads them to erroneous applications of the hearsay rules.  KDC's receipt of copies of the documents from third parties had nothing at all to do with whether they satisfy business record exception to the hearsay rule, for example.  One element of the business records exception is whether the documents were created contemporaneously by a person with knowledge.  Plaintiffs incorrectly focus on Mr. Gersh's knowledge of when KDC received the documents, but they offer no argument to undercut the reliability of documents created by representatives of the vendors and subcontractors.  Plaintiffs simply focused on the wrong source of information and therefore make no viable argument to warrant excluding hundreds of pages of evidence.

In another act of desperation, Plaintiffs contend that photocopies of the records should not be admitted.  Federal R. Evid. 1003 reads: "A duplicate is admissible to the same extent as the original unless a **genuine question** is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." (emphasis added).  Plaintiffs raise no genuine question about whether the copies are true to the originals, which is the central issue. *United States v. Balzano*, 687 F.2d 6, 8 (1st Cir. 1982) ("'The tape[] [is] not inadmissible merely because 'one can conjure up hypothetical possibilities that tampering occurred.'") (quoting *United States v. Cortellesso*, 663 F.2d 361, 364 (1st Cir. 1981)).  Without a genuine question as to the authenticity, the photocopies of the records are admissible, and Plaintiffs' Motion should be denied.

Finally, Plaintiffs falsely represent to the court that they requested the original contract between KDC and Debtor.  Again, this statement is untrue.  Rather, Plaintiffs wasted their efforts

---

³ *See* Defendants' Motion in Limine to Preclude Opinions of Michael Goldman (Docket Nos. 358-59).

{S1267585.9}                              5

tracking down the *metadata* for the electronic transmission of the contract – they *did not* request Defendants produce the original, signed KDC Contract. *See* Ex. 19 to Plaintiff's Motion ("We hereby demand production of the original, native format document of the KDC Contract with all metadata" and then threatening to undertake a forensic examination of computers). In response to Plaintiffs' attempt to analyze the contract's metadata, Defendants produced the file natively twice – once as part of Defendants' production with a load file containing the metadata and a second time by direct email transmission when Plaintiffs requested it be produced in a second format. *See* June 14, 2018 Email, attached hereto as Exhibit C; Affidavit of James P. Harris, ¶¶ 5-10. Notably, Plaintiffs voiced no objection regarding the production of the metadata. More to the point, at no time prior to filing with Motion in Limine did Plaintiffs ask for the original, signed copy of the contract. They simply misrepresented this to the Court. Also, of significance, they have not provided any statement by an expert questioning the integrity of the document as a result of its metadata. Their silence speaks volumes. In any event, Defendants offer no credible argument that the KDC contract was not signed. Indeed, much of their case depends on the fact that Kagan signed it. There is no need for the original, signed contract, but to the extent the original is required, Defendants possess it and it can be introduced at trial. Plaintiffs' Motion in Limine should be denied as to the binders proving the amounts incurred by KDC to construct the homes.

### III.
### Von Salmi's Expert Opinion Is Admissible

To warrant excluding the expert opinions of Von Salmi, Plaintiffs must demonstrate that his methodology is so inherently unreliable or that he unreliably applied his principles and methods to the facts of the case. Fed. R. Evid. 702; *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998) ("In short, *Daubert* neither requires nor empowers trial

courts to determine which of several competing scientific theories has the best provenance. It demands only that the proponent of the evidence show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion."). Plaintiffs' criticisms of Mr. Salmi go to the weight and credibility to be afforded his opinions, not their admissibility. The Court need not be convinced that Mr. Salmi's analysis is perfect for it to be admissible. *Zeolla v. Ford Motor Co.*, 2013 U.S. Dist. LEXIS 10462, *25-26 (D. Mass. Jan. 24, 2013).[4]

Plaintiffs state, in conclusory fashion, that the project specifications created by Mr. Salmi are "inherently unreliable", but they never explain why. In truth, creating project specifications *after* the homes were completed is *more* reliable because there are no unknowns at that juncture. For example, Mr. Salmi had actual knowledge of the site conditions encountered because the work had been completed, he knew the actual quantities of materials used to construct the homes, he benefitted from knowledge of the actual finishes installed in the homes, and so on. Mr. Salmi reviewed the actual invoices from suppliers and subcontractor (at first with the prices redacted) to determine the quantities of work and compared them against photographs taken of the completed homes. Notably, Plaintiffs do not identify a single "inaccuracy" in the specifications Mr. Salmi created; they simply characterize them as unreliable. The fact that Plaintiffs offer no countering expert opinion also speaks volumes. The specifications Mr. Salmi provided to the subcontractors and suppliers to bid on the project were based on the actual construction, which is inherently reliable and therefore his opinions are admissible.[5]

Plaintiffs also seek to exclude Mr. Salmi's opinions because he obtained only one bid per trade. This attack goes to the weight and credibility to afford to Mr. Salmi's opinion, not its

---

[4] Plaintiffs' provided the Court with a copy of Mr. Salmi's report at Exhibit 21.
[5] Plaintiffs' purported expert, David Doddridge, did essentially the same thing that Plaintiffs now claim is inherently unreliable. Mr. Doddridge created takeoffs from the plan documents and details from photos of the homes to plug material quantities into a software program to generate an estimate. He extrapolated information from the available documents, just as Mr. Salmi did.

{S1267585.9}                    7

admissibility. *See Medical Plaza, LLC v. United States Fid. & Guar. Co.*, 2008 U.S. Dist. Lexis (S.D. Miss. Oct. 7, 2008) (allowing an architect to opine as to cost to rebuild a commercial building). Plaintiffs' purported expert merely complained that some of the bids received by Mr. Salmi were not all inclusive, were over-inclusive, or were unclear. He did not, however, provide any reasoned opinion that Mr. Salmi's methodology was unreliable. Plaintiffs cite to no cases in which a court excluded an expert on the basis of using one bid per trade.[6] Mr. Salmi pre-qualified all of the bidders as he had worked with them in the past, so he was justified in relying on their quotes. He did not just accept the bidders' quotes blindly, he reviewed them carefully, employing his years of experience and knowledge, and would have gone out to get additional bids if the first ones appeared to have gone awry. *See* Von Salmi Depo. Tr. at 92-93, attached hereto as Exhibit D. For example, in the instance in which certain windows were not specified, he obtained two quotes. *Id*. at 114. Mr. Salmi used his forty-eight years of experience as a check on the bids received and Plaintiffs offer no legitimate critique of the methodology used by Mr. Salmi.

Plaintiffs then offer the vexing argument that Mr. Salmi's opinion as to fair and reasonable costs to construct the homes should be excluded because it is irrelevant. Plaintiffs take the exact ***opposite*** position earlier in their Motion in Limine (and in their Motion for Summary Judgment) when they argue that Kagan, because he was a fiduciary, bears the burden of proving the fairness of the transaction between Debtor and KDC (only if Plaintiffs first make the requisite threshold showing). This is more than arguing in the alternative; Plaintiffs take diametrically opposing positions in the very same pleading. *United States v. Royal*, 7 F. Supp. 2d 96, 105-106 (D. Mass. June 12, 1998) ("Inconsistent arguments in the alternative are

---

[6] Notably, neither of the construction contracts at issue in this litigation required the general contractor building the homes to obtain multiple bids.

{S1267585.9}    8

permissible advocacy, but often, as in this instance, unpersuasive in both prongs."). Mr. Salmi's opinion demonstrates the fair and reasonable cost to construct the homes, the very issue Plaintiffs contend Kagan must prove. Mr. Salmi's opinions also will be helpful to the trier of fact to compare to KDC's actual costs to the extent Plaintiffs mount a challenge to KDC's proof of claim. His opinions further support other claims such as KDC's equitable claims for the fair value of the services provided and benefits conferred by KDC as well as a defense to several of Plaintiffs' claims (including the claim of fraud). Plaintiffs' contention that Mr. Salmi's opinion is irrelevant should be rejected out of hand.

Plaintiffs also include several arguments that are simply incorrect. First, they contend Mr. Salmi's opinions are inadmissible because he interviewed Kagan. They fail to inform the Court of the correct timeline, however. Mr. Salmi did not meet with Kagan until *after* Mr. Salmi completed his estimate of costs, and Kagan confirmed during that interview the work Mr. Salmi had already completed. Plaintiffs argue that Mr. Salmi used 2018 prices, which actually goes to the weight of the opinion, notwithstanding that this is directly contrary to Mr. Salmi's report in which he explained that he controlled for temporal price differences. *See* Von Salmi Report, Exhibit 21 to Pls.' Motion at pg. 8 (explaining that he "looked at cost deviations between when the Project was constructed and current prices" and noting that incremental increases in materials have been "minor" and labor costs have been "extremely stable.").

### IV.
### McDonald's Expert Opinion Is Admissible

Plaintiffs next move to exclude the opinion of Paul McDonald, a hand-writing expert who opines that Kristina Brusenkova's signature appears on a non-disclosure agreement benefitting KDC. Plaintiffs do not contest Mr. McDonald's methodology, but rather contends that his opinion constitutes an impermissible attack on Ms. Brusenkova's credibility. Plaintiffs have put

{S1267585.9}                                   9

the cart before the horse.  Defendants assume Plaintiffs will call Ms. Brusenkova to testify, as they have repeatedly rested their allegations of fraud on her.  Once she takes the stand, her credibility becomes relevant.  She may be asked on cross-examination whether she signed the non-disclosure covenant bearing her signature.  If she denies signing it, as she denied in her deposition, Mr. McDonald's opinions are no longer "collateral."  His testimony will demonstrate that she lied when denying having signed the non-disclosure agreement, which will further erode her credibility.  *See* Fed. R. Evid. 608 (b) (allowing extrinsic evidence of specific instances of conduct on cross-examination if probative of the truthfulness of the witness).

Courts have held that extrinsic evidence is admissible to contradict a statement made by a witness on the stand.  In *United States v. Rodriguez*, 539 F Supp 2d 592 (D. Conn. Mar. 25, 2008), the court properly admitted the testimony of two police officers to impeach a defendant's testimony that he had never seen drugs or drug deliveries.  That evidence was admissible because it was not a general attack on the defendant's character for truthfulness, but rather testimony directly contradicting the witness's testimony.  In *United States v. Fleming*, 19 F3d 1325, 76 (10th Cir.), *cert. denied*, 513 US 826 (1994), the court allowed extrinsic evidence to demonstrate that a statement made by the witness on the stand was false.  As the court noted, a witness may not make false statements and then rely on another party's inability to challenge the witness's credibility as to those statements.  On the assumption that Ms. Brusenkova testifies consistently with her deposition testimony, she will make Mr. McDonald's opinions admissible.  As such, Plaintiffs' motion in limine should be denied as to Mr. McDonald.

WHEREFORE, Defendants respectfully request that this honorable Court:

    A.  Issue an order denying each part of Plaintiffs' Motion in Limine; and

    B.  Grant such additional and further relief as the Court deems necessary.

Dated:   December 7, 2018

Respectfully submitted,

VADIM KAGAN,
TATIANA KAGAN,
KAGAN DEVELOPMENT KDC, CORP. and
PROEXCAVATION CORP.,

By their Attorneys,

/s/ John H. Perten
Christopher M. Candon, BBO# 650855
John H. Perten, BBO# 548728
James P. Harris, BBO# 678283
SHEEHAN PHINNEY BASS & GREEN, PA
255 State Street, 5th Floor
Boston, MA  02109
Tel:  617-897-5600
Fax: 617-439-9363
E-mail: ccandon@sheehan.com
jperten@sheehan.com
jharris@sheehan.com

# CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of December, 2018, a copy of the foregoing was served upon the parties listed below via ECF and/or first class mail, postage prepaid.

Eric K. Bradford
Office of the US Trustee
J.W. McCormack Post Office & Courthouse
5 Post Office Sq., 10th Fl, Suite 1000
Boston, MA 02109

Sean T. Carnathan
O'Connor, Carnathan and Mack, LLC
1 Van De Graaff Drive
Suite 104
Burlington, MA 01772

David B. Madoff
Madoff & Khoury LLP
124 Washington Street - Suite 202
Foxborough, MA 02035

Steffani Pelton Nicholson
Madoff & Khoury LLP
124 Washington Street
Foxborough, MA 02035

Sarah A Smegal
Hackett Feinberg P.C.
155 Federal Street
9th Floor
Boston, MA 02110

Joseph P. Calandrelli
O'Connor Carnathan and Mack LLC
1 Van De Graaff Drive
Suite 104
Burlington, MA 01772

Stephen G. DeLisle
Rubin and Rudman LLP
50 Rowes Wharf
3rd Floor
Boston, MA 02110

Peter N. Tamposi
The Tamposi Law Group 50 Rowes Wharf
159 Main Street
Nashua, NH 03060

David C. Phalen
Hackett Feinberg P.C.
155 Federal Street, 9th Floor
Boston, MA 02110

/s/ John H. Perten
John H. Perten