# EXHIBIT A

Pages 1-30

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

------------------------------

In Re:

LYMAN-CUTLER, LLC,

    Debtor

Chapter 7
Case No. 15-13881-FJB

------------------------------

LYMAN-CUTLER, LLC,

    Plaintiff

v.

VADIM KAGAN, TATIANA KAGAN,
KAGAN DEVELOPMENT KDC CORP.
and PROEXCAVATION CORP.,

    Defendants

Adv. Case No. 16-01120

------------------------------

TRANSCRIPTION OF AUDIO RECORDING

Hearing Before Hon. Frank J. Baily

October 9, 2018

--------- David A. Arsenault, RPR ---------

daa@fabreporters.com   www.fabreporters.com

Farmer Arsenault Brock LLC

Boston, Massachusetts

617-728-4404

## Page 2

APPEARANCES:

John H. Perten, Esq.
  Sheehan Phinney Bass & Green, P.A.
  255 State Street, 5th Floor
  Boston, Massachusetts 02109
  617-897-5600
  jperten@sheehan.com
  for Vadim Kagan, Tatiana Kagan, Kagan
  Development KDC Corp. and Proexcavation
  Corp.

Sean T. Carnathan, Esq.
  O'Connor Carnathan and Mack LLC
  1 Van de Graaff Drive, Suite 104
  Burlington, Massachusetts 01803
  781-359-9000
  scarnathan@ocmlaw.net
  for Alex Filippov and Nickolay Lipetsker

Peter Tamposi, Esq.
  for the Debtor, Lyman-Cutler, LLC

## Page 3

PROCEEDINGS
(Audio File 1)
    THE CLERK: Court is now in session.
    THE COURT: Be seated. Sorry for the delay.
    THE CLERK: Case No. 15-13881, Lyman-Cutler, LLC. This is a rescheduled status conference on the document 167, Objection Claim 9; Adversary Proceeding 16-1130 (sic), Lyman-Cutler, LLC versus Kagan, et al., rescheduled status conference.
    Would the parties please state their names for the record.
    MR. CARNATHAN: Good afternoon, Your Honor. Sean Carnathan for Fillippov and Lipetsker.
    MR. TAMPOSI: Good afternoon, Your Honor. Peter Tamposi for the debtor.
    MR. PERTEN: Good afternoon, Your Honor. John Perten Vadim Kagan, Tatiana Kagan, Proexcavation Corp., and Kagan Development KDC Corp.
    THE COURT: Okay. First of all, I have the -- I don't know that I entered it -- the proposed order on the motion from last week to strike the amended late disclosure statement -- I'm

## Page 4

sorry -- amended disclosure, et cetera. That's ready to be signed? Everybody is in agreement?
    MR. PERTEN: Yes, Your Honor.
    THE COURT: All right. Mary has that -- if not, that's fine with me. That can be entered.
    All right. So let's speak freely about how, what we need to do to get this case finished now with where we are today.
    MR. PERTEN: Your Honor?
    THE COURT: Mr. Perten?
    MR. PERTEN: Yes, if I might. We have been talking amongst ourselves as to scheduling and open issues. In the order that Your Honor just signed we had agreed on November 16th as dispositive motions. I think that under the rules that would give, if I file -- well, whoever files them 21 days to the other side, which would bring us to the first week of December, if my math is correct --
    THE COURT: Yes.
    MR. PERTEN: -- before you get them. And then you would have to schedule a hearing and rule on them. So realistically, depending on the Court's schedule, I'm guessing that we are not going to be looking at a decision on the dispositive

## Page 5

motions until sometime late January.
    THE COURT: I have them.
    MR. PERTEN: That's optimistic. The Court's schedule may be such that --
    THE COURT: It depends. I haven't seen the motions. It may be that I'll say I'm not going to decide them until -- let's go ahead and put it on for trial.
    MR. PERTEN: So there's that piece that we have to schedule. The other piece that we discussed briefly last week is, there are challenges that we are going to have to the experts; whether the Court wanted them as quasi Daubert motions or motions in limine or how the Court wanted to deal with that.
    And then in terms of the actual trial, Your Honor, I know that I had some questions for the Court on how you are going to proceed, which would inform on timing and the like. So I don't know if you want me to jump right into that piece or you want to discuss --
    THE COURT: That's fair enough. I'll take it in any order. So that's certainly an issue. My normal way of handling trials is that

**6**

1  I try full days starting at 9:30. And if we have
2  enough lead time, I'll try to get you -- I almost
3  always need to have a free Tuesday to handle
4  motions. And so if I don't have any time in a week
5  where I can handle motions, I run into problems with
6  motions for relief from stay, et cetera, that have
7  fuses on them that I can't otherwise deal with. So
8  I always have to reserve some time for that.
9          So, but I'm open to hearing how you guys
10  would like to try it. In addition, do you have a
11  sense of --
12          If the case were postured the way it is
13  today, in other words, everybody is in for all
14  things, all the counts, how many days do you expect
15  the trial to run?
16          MR. CARNATHAN: A little more than a
17  week. I was thinking seven or eight days.
18  Fillippov on a stand for a day; (inaudible) on the
19  stand for a day, Lipetsker, Gersh. I've got three
20  of them, he has got one.
21          THE COURT: I can tell you right now if
22  you say a little more than a week or a week and a
23  half and you say a little more than a week, it's ten
24  days; it's two weeks. And what you've said already

**7**

1  tells me -- so if you say a day by the principal, a
2  day by your principal, that's a day and a half. You
3  never know, but I'm sensing ten trial days here.
4  And wouldn't we all be happy if it ends up being
5  six, but I think that's what I would schedule for on
6  this, what I would schedule this trial for.
7          MR. PERTEN: Your Honor, could I ask
8  procedurally?
9          THE COURT: Yes.
10          MR. PERTEN: Because as I understand it,
11  typically you would try your adversary proceedings
12  and then the last thing in the Chapter 7 that would
13  happen is, you marshal the assets, you have a got a
14  pot of money and then we would try proof of claims.
15  In this case obviously we are running them
16  simultaneously, as I understand it, since a lot of
17  issues overlap. As I read the case law certainly on
18  the adversary proceeding, the burden of proof on the
19  plaintiff on that, that's no question. As I read
20  the case law on the proof of claims --
21          THE COURT: Right.
22          MR. PERTEN: -- it pretty much follows
23  the way the pre-objection things go; in other words,
24  prima facie case, here's the proof of claim with my

**8**

1  backup, thank you, sit down; and then they have to
2  come forward with their evidence --
3          THE COURT: Substantial evidence.
4          MR. PERTEN: -- substantial evidence to
5  object. So one of the questions that I had, which
6  again would inform on duration of trial, my
7  understanding or at least I'd like to have a better
8  understanding is, I'm envisioning, frankly, my case
9  is ten minutes and here's the proof of claim, here's
10  the binders that we did, thank you, sit down. I'm
11  not anticipating that we would have to call every
12  subcontractor to substantiate every invoice because
13  I don't even know which ones that are going to be
14  objected to. That would be part of their -- if they
15  want to say ABC Contracting is lying, then that's
16  part of their case, not part of my case.
17          So I just wanted to confirm my
18  understanding that that's how it's going to
19  essentially be run, where on both the adversary
20  proceeding and the proof of claim functionally I'm
21  in the defensive chair. I mean it's my proof of
22  claim, but functionally the way this case gets tried
23  I'm in the defensive chair. Again, I just wanted to
24  confirm that.

**9**

1          THE COURT: Yes, that is the way it
2  works. I mean that's the burden. Yes, that's
3  correct. Now, as far as which of the -- you don't
4  need to come in with each of the subcontractors and
5  prove up their value there of their services of
6  something. You may have to respond with that.
7          MR. PERTEN: Correct, understood.
8          THE COURT: Yeah, that's right.
9          MR. PERTEN: Okay. That's helpful.
10  Thank you.
11          The other question that I had is both
12  sides have a claim that would call for an award of
13  attorneys' fees -- they are ongoing. Neither side
14  has exchanged their bills, and so on and so forth.
15  I'm assuming that when and if Your Honor determines
16  that an award for attorney's fees for either side is
17  warranted, there would be a hearing.
18          THE COURT: A separate process, a
19  separate process that follows the trial.
20          MR. PERTEN: So that's not part of the
21  trial per se.
22          THE COURT: Do not come -- you don't
23  need to come ready to prove up attorneys' fees on a
24  case that hasn't finished yet. And my experience

### Page 10

1  with that is sometimes you can get into some real
2  fight on that and process, but more often than not
3  it won't be too big a fight and it will resolve
4  itself. If it doesn't, it doesn't. But don't come,
5  you don't need to prove that until we see how it
6  comes out.
7       MR. PERTEN: Very good. Those are the
8  procedural questions that I have. Again, we do
9  envision filing substantive motions which we think
10 will significantly narrow the case and hopefully
11 shorten the trial, if not do away with it. And we
12 need guidance from the Court on these expert, quasi
13 Daubert things.
14      THE COURT: Right. Well, first of all,
15 are both sides going to file dispositive motions of
16 some sort?
17      MR. CARNATHAN: I expect that we will,
18 Your Honor. I don't want to commit at this moment,
19 but that's the vision that we have too.
20      THE COURT: And will you be relying on
21 affidavits or something from experts on the
22 dispositive motion part of this or should that await
23 a determination on the dispositive motions?
24      MR. PERTEN: How to answer that? I will

### Page 11

1  not be relying upon experts, my own experts for
2  purposes of the -- at least I don't think I will
3  be -- for purposes of the dispositive motions.
4       However, whether or not the experts that
5  have been disclosed on the other side are allowed to
6  stand and testify will definitely inform on the
7  dispositive motions. So I think just procedurally
8  it may make more sense, Your Honor, to deal with
9  that expert stuff because it's our contention, and
10 we expect to file however we style that motion,
11 that the -- again, we are not suggesting -- it is
12 not truly a Daubert. We are not saying this guy
13 isn't qualified to do an accounting or (inaudible)
14 isn't qualified.
15      THE COURT: That's not Daubert anyway.
16      MR. PERTEN: Or junk science or
17 something like that. So that's not -- we are saying
18 that what they are purporting to testify to they
19 shouldn't be allowed to go there.
20      THE COURT: And why?
21      MR. PERTEN: There are several reasons,
22 without totally showing my hand at this point, Your
23 Honor, but it is outside the scope of expert
24 testimony, is primarily --

### Page 12

1       THE COURT: In other words, it's not the
2  proper subject of expert testimony.
3       MR. PERTEN: Correct.
4       THE COURT: That's what you're saying.
5       MR. PERTEN: Correct. And there's no
6  basis for some of the conclusions. They are
7  conclusions without any connecting of the dots, if
8  you will. So that --
9       THE COURT: I'm just worried that we are
10 getting into -- I'm seeing this as turning into
11 three phases, rather large phases of effort here.
12 One is -- and I've never seen this before. We deal
13 with whether experts can testify or not. That's one
14 of phase of motions. Following that we have
15 dispositive motions. Following that if there's
16 anything left, we have a trial. That's an awful lot
17 of process.
18      MR. PERTEN: Of if I could suggest, Your
19 Honor, maybe the expert and the dispositive happen
20 simultaneously. It seems to me that if I file my
21 dispositive motion and the response is hey, I have
22 my expert that says such and such, maybe the way we
23 deal with it is that I would then file a motion to
24 strike because it is for whatever reason. And so it

### Page 13

1  gets decided in the context of a dispositive motion.
2  Again, I'm trying to --
3       THE COURT: I hear you.
4       MR. PERTEN: I'm trying to think of a
5  way to streamline that. As a practical matter, I
6  will also share with the Court that counsel and I
7  have looked at our calendars as to our most
8  optimistic timing, when we have wide availability
9  for trial, obviously subject to the Court's
10 schedule. Our most optimistic combined time would
11 be looking at early to mid-April. So we are now
12 mid-October now. So we do have three and a half
13 months to play with, if you will, subject to --
14      THE COURT: Hold just one second.
15      (Pause.)
16      THE COURT: Mr. Carnathan?
17      MR. CARNATHAN: Thank you, Your Honor.
18 I guess subject to the Court's view, because
19 obviously Your Honor has a dive and hunt in terms of
20 all the work that we are going to be looking to Your
21 Honor to do, if Mr. Perten feels like the expert
22 motions are going to inform the summary motions in a
23 way that he needs to get them both into play, I
24 guess I would favor doing them at the same time as

14

1 opposed to stretching this out into a series of
2 motions. But I recognize that that is asking Your
3 Honor to go on more things.
4 　　　THE COURT: Look, maybe I just haven't
5 thought this through well yet, but if Mr. Perten
6 files a motion for summary judgment and in it he
7 anticipates that some element of your case,
8 Mr. Carnathan, can only be proven -- maybe you are
9 not saying this -- through expert testimony but you
10 don't have an expert identified, that therefore you
11 can't meet your threshold of proof --
12 　　　MR. CARNATHAN: The only thing that
13 comes to mind that that would be true about, I
14 think, is our damages claim for the diminution of
15 the value of the property where I have to have my
16 expert testify about that or I don't have any way to
17 prove my damages that I can think of. Other than
18 that, I can't imagine what element of my claim I
19 don't have other proof on. I think the experts
20 illuminate some things in a very meaningful way. In
21 particular, I think our forensic accountant is going
22 to be a very important witness to marshal things in
23 a way that keeps this from becoming a conflagration.
24 But I mean, I've got other factual things that I can

15

1 prove all day long on the other elements that don't
2 require experts. So I don't know how he gets
3 summary judgement by excluding any of my experts.
4 　　　THE COURT: My concern is that I don't
5 know until I -- you have expert reports. They are
6 not filed. I don't see expert reports. And so I
7 don't know what the experts are going to say. And
8 so to start arguing before I have yet to hear from
9 those experts or heard from them on the stand --
10 　　　Have they been deposed or will they be
11 deposed?
12 　　　MR. PERTEN: They will be. My expert is
13 deposed next week or scheduled for that.
14 　　　And then the other aspect in play which
15 again we alluded to last week, Your Honor, was there
16 is that question about whether or not other projects
17 are going to be allowed in and other investors'
18 experiences on other projects are admissible in this
19 case. Your Honor had expressed some concern about
20 that months and months ago. That's still an open
21 issue and that's one that's in play obviously.
22 　　　And that again sort of goes to the
23 expert because one of the things that this expert
24 says is I've looked at other projects and I think

16

1 there's some hanky panky going on in other projects
2 and therefore there must be hanky panky going on in
3 this project, although he says it more eloquently
4 than that. And we obviously don't think that expert
5 has any ability to say that. That's not an issue in
6 this case, we don't believe.
7 　　　And then the manner in which it is set
8 forth in the expert report, there's a lot of
9 extraneous supposition and innuendo which we feel is
10 not supported by the expert's own report. So that's
11 where it all comes in; so that whole issue on other
12 projects.
13 　　　There was a whole issue that was raised
14 about whether or not the prices on this project were
15 intentionally inflated whereas if they were just
16 projects which he built on his own, my client, he
17 charged less for himself than he did for other
18 projects, which of course we vehemently deny and we
19 don't believe -- we don't believe the expert
20 affidavit or the expert report can draw that
21 conclusion. And that's the kind of thing obviously
22 that makes a huge difference. It changes the way
23 the case gets tried. And we think that, you know,
24 using those two as examples of things that are

17

1 problematic in the experts' testimony, those would
2 be examples of the kinds of things that we need this
3 Court's guidance on. Because we don't think that
4 stuff, you know, allegedly prior bad acts, we don't
5 think that has any place in this case, and obviously
6 I need to know if I'm trying that part of the case.
7 So that's the other issue that is sort of tied up
8 into this.
9 　　　THE COURT: Well, one way to do it, I
10 suppose, is to say on the same schedule as summary
11 judgment is heard that if anyone wants to file a
12 motion to strike or a motion in limine, same
13 thing --
14 　　　MR. PERTEN: Yes.
15 　　　THE COURT: -- an expert from
16 testifying, tee it up for the same time.
17 　　　MR. PERTEN: That's acceptable from my
18 perspective. That would keep this case moving
19 forward. That would give us until November,
20 functionally a little more than a month to tee up
21 all these motions.
22 　　　THE COURT: Does that work for you?
23 　　　MR. CARNATHAN: That's fine with the
24 plaintiffs, Your Honor. I guess the only thing I

18

1  would ask is, if I understand the rule right, you
2  get 21 days to oppose a summary judgment motion, 14
3  for a typical motion. Could we bring those together
4  just to avoid confusion or would you still want the
5  14?
6         THE COURT: I can set an actual schedule
7  and I would set a schedule including some limited
8  reply for final replies, and I will probably put
9  page limits.
10        I am going to go off the bench for a
11 moment. I want to consult a couple things and also
12 talk to Mary about what it looks like coming into
13 the fall and then into the winter so that I can
14 figure out what I can do here.
15        But is there anything else that you want
16 me to be thinking about while setting this schedule?
17 I may give you trial days here and hope we get
18 there. And at some point if it looks like I can't
19 decide it and get an opinion to you quickly enough,
20 we may have to adjourn those dates, but to have you
21 holding some dates, is it your preference -- if I
22 gave you ten trial days, full trial days, or would
23 you prefer to -- and I'm open to this on a longer
24 trial. So my trial days would go 9:30 to about 4:00

19

1  o'clock. I mean usually we are running out of
2  steam. If somebody is on the stand, it is going to
3  4:30 or even 5:00, that would be okay. I would take
4  about a 15-minute break mid-morning, a 15-minute
5  break mid-afternoon and about an hour for lunch, a
6  longer break for lunch.
7         I would also be open to trying the case
8  from 8:30 to 1:00 o'clock every day. You get about
9  the same number of hours of testimony in with just a
10 mid-morning break. You think about that while I
11 take my break here and come back out. All right?
12 See what you think would be preferable to you. Then
13 you can keep your light going and prepare for the
14 next day, and I can do some motions in the
15 afternoons if I need to. Okay? I'll be right back.
16        MR. PERTEN: Thank you, Your Honor.
17        (Pause.)
18
19
20
21
22
23
24

20

1         (Audio File 2)
2         THE CLERK: All rise. Court is in
3  session.
4         THE COURT: Be seated.
5         All right. Anything to report, any
6  thoughts before I --
7         MR. PERTEN: Counsel would prefer the
8  8:30 to 1:30. I feel like I should run it by my
9  client. That would certainly be my recommendation
10 to the client.
11        THE COURT: I don't think we need to
12 decide that today, actually, now that you say it.
13 Let me tell you what I've come up with.
14        Dispositive motions and motions in
15 limine, November 16, 25-page page limits on briefs.
16        December 7, oppositions, responses
17 oppositions, 20-page page limits.
18        And December 17, which is a Monday,
19 December 7 being a Friday, December 17 is a Monday.
20 Replies due that day, 10 pages.
21        I'll tell you my story by Judge Rya
22 Zobel who once gave me a 5-page reply brief limit on
23 something that was a very big motion. I thought,
24 man, this is so unfair. Best brief I ever wrote was

21

1  that 5-page and I lost too. But it was the best
2  brief I ever wrote. I could have done it in two and
3  I think it would have been even better.
4         Let's see, a hearing on all of those
5  motions, whatever motions have been on file; so
6  summary of dispositive motions, motions in limine,
7  January 15 at 9:30 a.m.
8         Trial, just to hold your calendars for
9  me, the weeks of May 6 and May 13. So May 6 through
10 10, 13 through 17.
11        I'll ask, Mary, on January 15 would you
12 include on the docket a further scheduling
13 conference, which will remind us to talk about how
14 you want to use those days, the weeks of May 6th and
15 13. What I had in mind is that if we are trying
16 normal days the way I described earlier, from 9:30
17 to 4:00 or so, then on May 7 and 14 we would take
18 the mornings off and I would have my motions those
19 days, and we would resume the trial at 2:00 p.m.
20 those days and go a little later. If you come back
21 and we talk on January 15 and you say I would like
22 to try the 8:30 to 1:00, that will change things and
23 I'll do my motions in the afternoon on the 7 on 14
24 and that will work out fine as well. Okay?

**Page 22**

1  MR. PERTEN: That's fine, Your Honor.
2  The only other scheduling question then is, does the
3  Court still want a prefile memo and all that and
4  when would that be due? It would be after the
5  dispositive motions?
6      THE COURT: I do want it. Let's say if
7  we are looking at starting on May 6, why don't I say
8  April -- (Pause) -- what day is May 6, what day of
9  the week?
10     MR. PERTEN: May 6 is a Monday.
11     THE CLERK: May 6 is a Monday.
12     THE COURT: Of course it is. We'll say
13 April 22nd, Monday April 22nd. Okay? Anything else
14 that we should schedule?
15     MR. CARNATHAN: May I just ask on the
16 page limits, is that 25 pages in the aggregate
17 regardless of whether it is a motion for summary
18 judgment, a motion in limine, or is it 25 --
19     THE COURT: No, that's a good point.
20 That, the page limits I gave you are on the
21 dispositive motions. All right. On motions in
22 limine, I'll say a 15-page limit on each motion, a
23 10-page limit on replies or oppositions. Let's go
24 with the Judge Zobel rule, 5-page replies. That

**Page 23**

1  should be enough. That's a lot of briefing to begin
2  with but that, should be able to get done in all
3  that.
4      Mary, did you get those?
5      MR. CARNATHAN: Sorry, at the risk of
6  over thinking it. If there's a summary judgment in
7  the main action on the proofs of claim, which may be
8  procedurally unlikely, but is that in a separate
9  adversary proceeding or would that dovetail?
10     THE COURT: No, I think the summary
11 judgment motions -- hold on. So the -- it doesn't
12 matter. I was going to say that the claims
13 adjudication is a 9014 proceeding. Right? I was
14 going to look to see if the summary judgment even
15 applies. It doesn't matter. I'll make it apply.
16 But it should be all bundled together; there's
17 enough overlap here. Do you see what I mean, you
18 move for summary judgment, it's with respect to all
19 matters pending in the AP and the claims
20 adjudication. Okay?
21     MR. PERTEN: Again, I just --
22     THE COURT: No, I want you to do this.
23     MR. PERTEN: I, off the top of my head,
24 envision, for example, there will be a dispositive

**Page 24**

1  motion which is unique to Tatiana Kagan's claims
2  which are distinct from the others, so I would file
3  that as a separate motion.
4      THE COURT: Well, I don't want to see --
5      MR. PERTEN: 36 motions; I get that.
6      THE COURT: Four dispositive motions on
7  your side with 25 pages each.
8      MR. PERTEN: Right. That's my question.
9  I don't want to run afoul of that. The only
10 stand-alone that I'm envisioning now is Tatiana, and
11 the reason I'm envisioning it now is I've pretty
12 much written that. And again, the allegations
13 against, the grounds for her are unique as opposed
14 to the grounds for the other people.
15     THE COURT: Well, let me put it out
16 there and you talk me out of this if you think you
17 should or can. Can't you use a couple of pages of
18 your 25 for her? Do you need more than that?
19     MR. PERTEN: I think I do, Your Honor.
20 Because again, remember that she -- remember, you
21 may not know. She played a different role than
22 anybody else.
23     THE COURT: I do.
24     MR. PERTEN: So there are a whole host

**Page 25**

1  of facts that are unique to her which have nothing
2  to do with the construction of the project. So I
3  don't see any problem with everything else being
4  lumped into one. But if I add in her, there's a
5  whole new fact session which in and of itself is
6  five pages right there.
7      THE COURT: All right. I think,
8  Mr. Carnathan, unless you have a reason to talk me
9  out of this, you can peel off Tatiana and that could
10 be a separate motion.
11     MR. PERTEN: Very good.
12     THE COURT: Okay? Any other nuances
13 that you guys see?
14     Now this is just for fun, pure fun,
15 right? Is there any chance of mediating again if I
16 got you a free mediator? I don't know if I can get
17 you a free mediator but if I got you a mediator or
18 you got your own mediator, is there any --
19     MR. PERTEN: I would certainly recommend
20 it to my client.
21     MR. CARNATHAN: I'll take a run at it
22 with my client. I think my guy may have crossed
23 that rubicon, so to speak, but I'm always in favor
24 of taking a run at settling things, but I don't know

26

1 if he'll agree.
2 THE COURT: Okay. I probably should
3 have started with that. How do you want to do this
4 then? Let's assume you both come back and say jeez,
5 I'm surprised but my guy is willing to mediate. Do
6 you want to mediate? Have we just wasted our time
7 and should I push all these things out?
8 MR. CARNATHAN: I think not.
9 THE COURT: You would rather do the
10 summary judgment stuff or do the motion practice and
11 you mediate while I decide it?
12 MR. PERTEN: My bet, Your Honor, may be
13 counterintuitive is that the strength of the
14 dispositive motions either way will probably
15 influence, I expect would influence the parties.
16 THE COURT: Okay. It's not
17 counterintuitive.
18 MR. PERTEN: Right now, Sean,
19 Mr. Carnathan has been hearing the same thing from
20 me for three years, I've been hearing the same thing
21 from him.
22 THE COURT: Fair enough.
23 MR. PERTEN: That parties have been
24 pretty --

27

1 THE COURT: Okay. Moving to the next
2 step, you know, can have both of those effects.
3 Sometimes it's don't spend the money. I'll spend
4 the same money on settlement and so save me the X
5 thousands of dollars it's going to cost me to file
6 this group of motions, or we need to see this.
7 MR. PERTEN: I think we do. I think
8 perhaps the best way to do it is Mr. Carnathan and I
9 will chat. If there's a likelihood that we can
10 mediate, we will inform the Court. But I think for
11 purposes now we should just stick with the schedule
12 unless we advise the Court.
13 THE COURT: Stick with the schedule. We
14 will be together on January 15.
15 Mary, if we include in that that we are
16 setting the schedule to talk -- the scheduling
17 conference to do at least two things. One is to
18 decide what trial days we will include, and second
19 to take up the issue of mediation yet again.
20 I say yet again because I think you
21 mediated, did you not?
22 MR. PERTEN: We did early on right when
23 the case was filed we did. Sort of did. We tried
24 to do it ourselves with Mr. Madoff, who is the

28

1 Chapter 7 trustee acting -- we all came together and
2 he acted as the mediator, if you will, because he
3 didn't really have a dog in the hunt or whatever the
4 cliche is. But we did not done a mediation where we
5 had an outside mediator.
6 MR. CARNATHAN: We did. The fellow
7 from --
8 THE COURT: Rick.
9 MR. CARNATHAN: You were there.
10 MR. PERTEN: I'm showing my age, Your
11 Honor.
12 THE COURT: So you know who is around
13 and I have great confidence in him, in his
14 ability -- I have great confidence, by the way, in
15 Rick Michaels because he has mediated both for fees
16 and nonfees in cases that I have had, and he's been
17 successful; but now retired Judge Lou Kornreich.
18 He's in Portland, Maine, essentially with -- who is
19 the firm up there, the big bankruptcy guys?
20 MR. CARNATHAN: Bob Keach?
21 THE COURT: With Bob Keach. He's with
22 Bob Keach's firm. He would do it down here. I
23 could probably ask him to do it for you and he would
24 do it and probably at a reduced rate. A terrific

29

1 guy, if your guys need to hear somebody who used to
2 wear a robe and has very, very good thinking skills
3 and I think could be helpful in a thorny dispute
4 like this, but you could pick whoever you want.
5 So we'll put that on the calendar for
6 January 15. While I'm struggling with your motions,
7 you can consider whether it is worth a day to see if
8 you can get that done before a ten-day trial.
9 Okay? Anything else?
10 MR. PERTEN: No, Your Honor. Thank you.
11 MR. CARNATHAN: Thank you.
12 THE COURT: Thank you all.
13 (End of Recording.)

```
                                                    30
 1                    C E R T I F I C A T E
 2
 3
 4            I, David A. Arsenault, Registered
 5    Professional Reporter, and Certified Reporter in the
 6    Commonwealth of Massachusetts, #100693, do hereby
 7    certify that the foregoing transcription is a true
 8    and accurate transcription of the audio file from
 9    the Bankruptcy Court provided to me by Atty. Perten
10    in the above-captioned matter.
11
12
13
14
15
16            _____
17                    David A. Arsenault, RPR
18
19
20
21
22
23
24
```