UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ ) | | |
| *In re:* ) | | |
| ) | | |
| LYMAN-CUTLER, LLC, ) | | Chapter 7 |
| Debtor ) | | Case No. 15-13881 FJB |
| _____) | | |
| | | |
| _____ ) | | |
| LYMAN-CUTLER, LLC, et al., ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | Adv. Case No. 1:16-ap-01120 |
| v. ) | | |
| ) | | |
| VADIM KAGAN, et al., ) | | |
| ) | | |
| Defendants. ) | | |
| _____) | | |

**PLAINTIFFS' OPPOSITION TO THE MOTION FOR SUMMARY
JUDGMENT OF TATIANA KAGAN ON ALL COUNTS OF THE AMENDED
COMPLAINT AND ON PROOF OF CLAIM NO. 3**

Pursuant to Fed. R. Civ. P. 56, Bankr. Rule 7056 and this Court's October 10, 2018 order,

as modified on November 6, 2018 (Docket No. 215), Plaintiffs Lyman-Cutler, LLC (the "LLC"),

Alex Filippov ("Filippov"), and Nickolay Lipetsker ("Lipetsker") (collectively, "Plaintiffs")

respectfully oppose the Motion for Summary Judgment of Tatiana Kagan (the "Motion") (Doc.

No. 351, Adv. P. No. 221).

The evidence adduced in discovery establishes that Tatiana Kagan ("Tatiana") did

exactly what the Plaintiffs alleged she did – aided and abetted the breach of fiduciary duty by her

husband, Vadim Kagan ("Kagan"), conspired with Kagan and their jointly owned companies,

Kagan Development KDC Corp. ("KDC") and ProExcavation Corp. ("ProEx") to execute their

bad faith, fraudulent scheme to extort unfair profits from the LLC in violation of Kagan's

1

contractual and fiduciary duties, and knowingly asserted invalid listing agreements against the

LLC in violation of Chapter 93A.  See Amended Adversary Complaint (Adv. P. No. 52), Counts

III, IV, V, VI, VIII.  Furthermore, Tatiana has no claim for indemnification because:  (1) she is

not an agent of a member of the LLC within the meaning of the Operating Agreement, as

explained in the Plaintiffs' Motion for Summary Judgment, incorporated by reference herein;

and (2) of her own willful misconduct, which disqualifies her under the LLC's Operating

Agreement.  The Court should deny Tatiana's Motion and grant the Plaintiffs' Motion.

## FACTS AND PROCEDURE

### A.      The Amended Adversary Complaint

Plaintiffs' Amended Adversary Complaint sounds eight counts, including:  Breach of

Contract by Kagan (Count I), Breach of Fiduciary Duty by Kagan (Count II), Aiding and

Abetting Breach of Fiduciary Duty by Tatiana, KDC and ProEx (Count III), Fraud by all

Defendants (Count IV), Conspiracy (Count V), Violation of M.G.L. c. 93A by Tatiana, KDC and

ProEx (Count VI), Breach of Contract by KDC (Count VII) and Equitable Subordination against

all Defendants (Count VIII).

### B.      Statement of Disputed Material Facts

Pursuant to D. Mass. Bankr. L.R. 7056-1 and D. Mass. L.R. 56-1, Plaintiffs have

submitted and incorporate by reference their response to Tatiana's separate statement of material

facts of record as to the dispositive facts of which there is a genuine issue to be tried ("Plaintiffs'

Fact Response").  For the sake of brevity, Plaintiffs also respectfully incorporate by reference the

statement of undisputed material facts recounted in their Memorandum in Support of their

Motion for Summary Judgment, Doc No. 350 Adv. Doc. No. 220 ("Plaintiffs' First Memo") and

Separate Statement of Material Facts, Doc No. 353, Adv. P. No. 221 ("SSUMF").[1]  For the

Court's convenience, Plaintiffs recount the facts relating to Tatiana here:

### 1.   The Listing Agreements

With regard to listing the Project Properties with Tatiana, the LLC's Operating

Agreement provides as follows:

> The Managing Member hereby agrees to list the properties with Tatiana Kagan.
> In order to remove Tatiana Kagan as a listing broker by December 31, 2014 will
> require a written consent of the Members owning at least eighty one (81%) of the
> Percentage Interests in the Company.  After December 31, 2014 no such consent
> shall be required.

Affidavit of Sean Carnathan, Nov. 16, 2018 (Doc. No. 355, Adv. Doc. No. 222) ("Carnathan

Aff."), Ex. 1 (LLC's Operating Agreement), § 6.1(b)(6).  Filippov held 80% of the percentage

interest in the LLC and Lipetsker held 10%.  Id., Schedule A.  Accordingly, the two men

effectively had the right to remove Tatiana at any time.  After December 31, 2014, Filippov, as

the managing member, had the unilateral right to remover her.  See SSUMF ¶ 59.  Kagan and

Filippov specifically discussed this deadline after which Filippov could replace Tatiana if she

failed to sell the properties at a meeting after Kagan took Filippov on a driving tour of other

homes he had built.  See Second Transmittal Affidavit of Sean T. Carnathan ("Second Carnathan

Aff."), Ex.21, Excerpts from Deposition of Alex Filippov ("Filippov Dep."), at 48.

On or about April 23, 2015, Kagan suddenly asked Filippov to sign a listing agreement

retaining Tatiana as the listing broker for the Property at 55 Lyman Road.  Id., at 212-221.

Filippov by this time had concluded that Tatiana lacked the experience and contacts to sell the

Properties for the LLC and wanted to replace her.  Id., at 94, 97, 140, 149-151.  Filippov did not

---

[1]    For the purpose of opposing Tatiana's Motion for Summary Judgment, Plaintiffs do not
accept as true Tatiana or Kagan's version of the facts as they did in connection with their Motion
for Summary Judgment.

consent to Kagan signing an exclusive listing agreement with Tatiana, and believed he had the

right to choose a new broker under the Operating Agreement.  Id., at 138, 212-21.  Kagan signed

it anyway.  Carnathan Aff., Ex. 31.  On May 7, 2015, less than two weeks after Kagan suddenly

insisted on a listing agreement for Tatiana, Kagan – through counsel – demanded over $1 million

from the LLC and stated his intention to stop paying the carrying costs in violation of the

Operating Agreement.  SSUMF ¶ 21 (demand letter); Carnathan Aff. Ex. 1, § 8.1.

　　　Plaintiffs rejected Kagan's demand and stated their intention to list the Properties with a

new broker.  See Affidavit of John Perten, November 16, 2018 (Doc. No. 357; Adv. P. No. 227),

Ex. 21, Affidavit of Greg Keily, Ex. D (May 26, 2015 Letter demanding that Century 21 step

aside).  Kagan and Tatiana's brokerage, Century 21, refused to allow a change in broker.  Id.

(Keily affidavit insisting listing agreements are enforceable).[2]  The evidence adduced in

discovery has now established that:  (1) Kagan knew the Operating Agreement provided for

Tatiana's replacement by Filippov after December 31, 2014; and (2) Kagan had the power to

honor that provision of the Operating Agreement because Tatiana would do whatever he told her

to do; and (3), therefore, the refusal to permit Filippov to exercise his clear contractual right to

replace Tatiana as the broker in May 2015 was a knowing and intentional violation of the

Operating Agreement and Kagan's fiduciary duty, which Tatiana knowingly aided and abetted.

　　　At her deposition, Tatiana specifically testified that her husband, Kagan, determines

whether she gets paid a commission on the sale of a property for him, and that if it is one of his

---

[2]　　　After a period of negotiation, the validity of the listing agreements became the first issue
in the litigation between the parties.  Plaintiffs felt strongly enough that Tatiana and Century 21
lacked the ability to sell the Properties that they sought injunctive relief to replace them with
Coldwell Banker.  Second Carnathan Aff., Ex. 1  Century 21 and the Kagan Defendants
succeeded in persuading the Court not to order the immediate replacement of Century 21.
History shows that the Plaintiffs were right to seek to replace Century 21.

properties, she delivers her commission to "Dan Gersh," who is the Chief Financial Officer of

KDC.  Second Carnathan Aff., Ex. 28, Deposition Tatiana Kagan ("Tatiana Dep."), at 57-62;

Second Carnathan Aff., Ex. 27, Deposition of Daniel Gersh, May 17, 2018 ("Gersh Dep."), at 18-

20, 38.

> In particular, Tatiana testified as follows:

>> Q.  Under what circumstances would you waive your commission for a property you sold for your husband?

>> A. He handles all the finances. I can't tell you.  I don't know.

>> Q. So your husband determines whether or not you are going to get a commission when you sell the property?

>> A. If it is his house, yes.  If it is somebody else's house, it comes directly from Century 21, it comes directly to me.  And I deliver that check to the office and hand it to Daniel Gersh.

Tatiana Dep. at 61.  She further testified:

>> Q. Does Century 21 ever object to you waiving a commission for one of your husband's projects?

>> A. No.

Tatiana Dep. at 59.

> After the litigation commenced, the Kagans produced a second listing agreement, this one

for 88 Cutler Lane, which Filippov and Lipetsker had never seen before.  Carnathan Aff. Ex. 31.

Allegedly signed August 12, 2014, it granted to Tatiana an exclusive 18-month listing.  Id.  Over

the Plaintiffs' objection, the Kagans and Century 21 insisted on enforcing it until the Trustee was

able to reject it in the bankruptcy proceeding.  See Perten Aff. Ex. 21.  There can be no doubt

that when Kagan signed this 18-month listing, he knew the Operating Agreement required that

the LLC be able to remove Tatiana at any time.  Where Tatiana has explicitly testified she would

do whatever Kagan told her to do with regard to her listings, it necessarily follows that she

contributed to the conspiracy of the Defendants in exactly the way the Plaintiffs alleged.  As one

of two shareholders of KDC and ProEx, along with her husband, Kagan, Tatiana plainly stands

to benefit personally from any unfair sums KDC might have extorted from the Plaintiffs.

SSUMF ¶¶ 14 and 15 (Tatiana shareholder of ProEx and KDC).

## 2. Tatiana's Anemic Sales "Efforts"

Whether Tatiana made any good faith effort to sell the Properties while she was the

listing broker is a disputed fact for trial.  It is true that at her deposition she offered up vague,

self-serving testimony of having conducted open houses and run ads.  Tatiana Dep. at 38-39.

She did not recall how many.  Id.  The Keily Affidavit includes a letter, however, which

purports to list all of Century 21's efforts to sell the Properties through May 14, 2015.  See

Perten Aff. Ex. 21, Keily Aff. Ex. C.  The letter does not list a single open house.  It lists only 4

advertisements for 88 Cutler Lane, the earliest being in Winter 2014/2015 -- after receiving the

listing in August 2014.  Id.  Only one advertisement was placed for 55 Lyman Road, which was

for publication in June 2015.  Id.

The evidence also shows that Deborah Gordon conveyed an oral offer of $4.5 million to

Tatiana, which Tatiana never mentioned to the Plaintiffs.  Filippov Dep. at 97.  Filippov will

testify that he didn't even know either Property had been listed until October or November 2014,

and that he learned of the listing by text message.  Filippov Dep. at 91, 94.  When he looked at

the listing on the MLS, he found that the Property's square footage was understated by 1,000

feet.  Filippov Dep. at 91.  Such an error would doubtless hurt interest in a $5.5 million listing.

In short, Tatiana's self-serving testimony does not establish she acted diligently or competently

to sell the Properties.

## ARGUMENT

Where Tatiana has explicitly testified:  (1) she only charges commissions on Kagan's projects when he tells her to; (2) she can waive her commission whenever she likes and Century 21 does not object; and (3) she turns her commissions over to KDC, of which she is an officer and shareholder, then it is fair to conclude that Century 21 refused to release the listings at Tatiana's direction, which by her own testimony would have been at Kagan's direction.  The evidence, therefore, establishes that, just as the Plaintiffs alleged, Tatiana acted in concert with Kagan to breach the Operating Agreement and his fiduciary duty and in concert with KDC and ProEx to try and force the Plaintiffs to accept the unfair and fraudulent cost overruns asserted in the mechanic's lien.  Tatiana stood to gain personally from the extortionate scheme.  This inference of intentional violation of the Operating Agreement by Kagan and Tatiana acting in concert is further supported by the 18-month term of the August 12, 2014 exclusive listing agreement that Filippov and Lipetsker never saw until it was produced until the litigation.  Kagan signed this listing agreement knowing Tatiana was subject to removal at any time by 81% membership vote and just only four and a half months before the December 31, 2014 date after which Filippov had a unilateral right to replace Tatiana.

## I.      Tatiana is Jointly and Severally Liable with the Other Defendants.

As a party who has aided and abetted her husband's breach of fiduciary duty, materially contributed to a conspiracy to extort additional payments from the LLC and acted in violation of Chapter 93A, Tatiana is jointly and severally liable with the other Kagan Defendants for the damages the Plaintiffs have suffered.  See Perten Aff. Ex. 7, Filippov Supp. ATI No. 9; Ex. 8, LLC Supp. ATI No. 9; Ex. 9, Lipetsker Supp. ATI No. 9; Plaintiffs' Opposition to the Defendants' Motion for Summary Judgment, filed contemporaneously and incorporated herein

by reference ("Plaintiffs' Opp. To Kagan MSJ"); see also ITyX Sols., AG v. Kodak Alaris Inc.,

2018 U.S. Dist. LEXIS 87793, at * (D. Mass. May 25, 2018) ("[Anyone] who knowingly

participates with a fiduciary in a breach of trust is liable for the full amount of the damage caused

thereby to the cestuis que trust.") (applying New York law, citation omitted).[3]

## II.    **None of Tatiana's Collateral Contentions Hold any Merit.**

Tatiana's entire argument is premised on the erroneous assertion that all she did was

serve (ineffectually) as the real estate agent for the Properties.  With this fallacy laid bare by her

own testimony, none of her other contentions hold any merit.

### A.    **Filippov Never Ratified the Listing Agreements.**

The evidence shows that Filippov never ratified the Listing Agreements.  At best for

Tatiana, this would be a fact issue for trial.  Furthermore, in order to show any ratification,

Kagan and Tatiana carry the burden to prove entire fairness, where the listing agreements are

self-dealing transactions between a husband and wife in knowing contravention of the terms of

the Operating Agreement.  See Plaintiffs' Motion in Limine, Nov. 16, 2018 (Doc. No. 348, Adv.

Doc. No. 218) incorporated herein by reference.  The interaction among Filippov, Tatiana and

Kagan in April 2015, crediting Filippov's account that he never agreed to sign the listing

agreement, is evidence that Tatiana knew she and Kagan were acting wrongfully.

The assertion that Filippov never objected to the listing agreements does not square with

Tatiana's own submission.  See Perten Aff. Ex. 21, Ex. D (May 26, 2015 Carnathan Letter,

---

[3]    Plaintiffs do not ascribe direct damages to Tatiana's anemic and inept sales efforts.  The
evidence, however, shows why it was important that Filippov be permitted to exercise his clear
contractual right to replace her and why the Kagan's breach of the Operating Agreement and his
fiduciary duties, aided and abetted by Tatiana, in forcing the LLC to live with the self-dealing
listing agreements until the Trustee in Bankruptcy rejected them contributed to the harm inflicted
on the Plaintiffs by the Defendants' wrongdoing.

objecting to listing agreements).  It is true that Filippov did not object to the listing agreements until April 2015. But the evidence shows he had never seen the August 2014 listing agreement, only was asked to sign a listing agreement in April 2015, and believed he could remove Tatiana at any time under the Operating Agreement.   By May 2015 his objection was clear, his contractual right to remove Tatiana was always clear, and the ability of Tatiana and Kagan to have honored that right is now also clear.[4]  The evidence shows that she and Kagan conspired to give themselves an unfair, self-dealing advantage over the Plaintiffs, just as alleged.

### B.    The Trustee's Sale of the Properties Does Not Insulate Tatiana or Any Other Defendant from Liability.

Tatiana repeats the argument made by the other Defendants in their Motion for Summary Judgment that the Plaintiffs cannot recover for the diminished sale price of the Properties because they did not object to the Trustee's Motions to sell them.  The cases she cites do not stand for that proposition.  Plaintiffs incorporate by reference their response to that argument in Plaintiffs' Opp. To Kagan MSJ.  Plaintiffs do not contend that any better price could have been had for the Properties by the time of the Trustee sales and under the circumstances presented. That is the point.  They contend that if the Defendants had not engaged in their unfair, fraudulent scheme to extort large payments from the LLC to which they were not entitled, the Properties could have been in the ordinary course for more money.

---

[4]     Plaintiffs respectfully submit it is common knowledge that an 18-month listing agreement is excessive and no expert testimony to establish that point is required.  Even if such testimony were required in the abstract, Kagan signed the 18-month listing agreement on August 12, 2014. See Carnathan Aff., Ex. 31 at p. 4.   When Kagan signed it, Tatiana was subject to removal at any time pursuant to written consent of 81% of the members and after December 31, 2014, she was subject to removal by Filippov unilaterally.  Yet Kagan purported to grant her an 18-month exclusive listing.  Plaintiffs now know that Tatiana could have waived it at any time and Kagan could have honored the Operating Agreement, but chose not to.  So at the end of the day, it does not matter if 18-months is within the realm of a reasonable length for an exclusive listing agreement (but it is not).

**C.    The Expert Report of Morgan Fennell is Admissible as Evidence of Plaintiffs' Damages.**

Tatiana also repeats the argument that the Court should disregard the Expert Report of Morgan Fennell.  For the same reasons stated in their Opposition to the Defendants' Motion to Strike the Expert Report of Morgan Fennell and Plaintiffs' Opp. To Kagan MSJ, the Court should reject Tatiana's contentions.  She substantially contributed to the Defendants' overall scheme as set forth herein and is jointly and severally liable with them.

**D.    Tatiana is Liable for her Personal Contribution to the Extortionate Scheme of the Kagan Defendants, including ProEx and KDC, of which she is an Officer and Shareholder.**

Tatiana is liable for her personal contribution to the extortionate scheme, as set forth above.  Discovery has confirmed her participation, just as the Plaintiffs alleged at the outset.  It is true that at her deposition Tatiana presented herself as a pure pawn of her husband, but this does not excuse her from her own contribution to the scheme.  Accordingly, the statutory cite Tatiana offers is of no help to her because it stands only for the proposition that a corporate shareholder cannot be held liable unless she is personally involved in the wrongdoing.  See M.G.L. ch. 156D, § 6.22(b).[5]

---

[5]    It is perhaps worth noting that as an officer, she must discharge her duties "in good faith . . . with the care that a person in a like position would reasonably exercise under similar circumstances."  M.G.L. Ch. 156D, § 8.42.  Abdicating any knowledge and simply blaming her husband can hardly qualify as good faith and reasonable care.  But Plaintiffs do not assert she is liable merely for holding office.

**E.     All of the Plaintiffs' Claims against Tatiana Raise Disputed Issues of Fact
for Trial.**

Tatiana's challenge to Count IV (Fraud) is essentially the same as the challenge raised by

the other Defendants.  The Plaintiffs incorporate their response to that challenge in the Plaintiffs'

Opp to Kagan MSJ.

Tatiana's challenge to Count V (Conspiracy) is meritless.  As the case Tatiana relies upon

Aetna Casualty Sur. Co. v. P & B Autobody, 43 F.3d 1546 (1st Cir. 1994) expressly states,

Massachusetts law recognizes a claim for civil conspiracy, which comes in two forms: a

"coercive" conspiracy or a "concerted action" conspiracy.  Both apply here.

For a coercive conspiracy, the Plaintiffs must prove that the Defendants together had

"'some peculiar power of coercion' over plaintiff[s] that they would not have had if acting

independently."  Id. at 1563 (citing Jurgens v. Abraham, 616 F. Supp. 1381, 1386 (D. Mass.

1995)).  Each of the Defendants contributed to create a "peculiar power of coercion" that they

would not have had without the others.  Kagan had the relationship with the LLC, as the member

in charge of the construction.  KDC and ProEx were vehicles not only to assert over $1.3 million

in purported charges that are pure profit, but also to intermingle charges and payments in a

chaotic manner that they have used to try and camouflage their deception.  Tatiana had control

over the listing agreements and whether or not they would be enforced such that the other

Defendants could use them as leverage and another source of potential profit.

The evidence also fits a "concerted action" conspiracy, which requires a common design

and a wrongful act by each conspirator in furtherance of it.  Aetna, 43 F.3d at 1564.  As the

Restatement, cited in Aetna, outlines the claim:

> For harm resulting to a third person from the tortious conduct of another, one is
> subject to liability if he

> (a)  does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b)  knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c)  gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Restatement (Second) of Torts § 876.  Tatiana, KDC and ProEx all gave substantial assistance to Kagan in furtherance of the common design – to force the LLC to pay large sums of money to which none of the Defendants are entitled.

Tatiana's conduct also satisfies the requirements for liability for aiding and abetting breach of fiduciary duty, which requires that she substantially assist in a known breach of fiduciary duty by Kagan.  Baker v. Wilmer Cutler Pickering Hale & Dorr LLP, 91 Mass. App. Ct. 835, 847 (2017).  The evidence clearly supports a finding that Tatiana gave substantial assistance.  So too does the evidence support a finding that she knew of the breach by Kagan. Tatiana's tabula rasa testimony cannot insulate her from the fair inferences to be drawn from her undisputed conduct, from Filippov's testimony and from status as Kagan's wife, and as officer/director/shareholder of ProEx and KDC, who gives her commission checks to KDC. Particularly where the Parties ended up in litigation over the listing agreements, it strains credulity to believe that Tatiana simply did what Kagan told her to do with no knowledge of the Defendants' bad faith goals.

Finally, the evidence shows that Tatiana's conduct violates Chapter 93A.  The evidence is that she knowingly asserted two listing agreements at her husband's direction, when the Operating Agreement clearly provided for her removal.  She plainly stood to benefit not only from any commission, but from any other financial concessions co-conspirator KDC extorted

12

from the Debtor. <u>Arthur D. Little, Inc. v. Dooyang Corp.</u>, 147 F.3d 47, 55 (1st Cir. 1998) ("The courts of Massachusetts have consistently held that "conduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes."); <u>see</u> <u>Community Builders v. Indian Motocycle Assocs.</u>, 44 Mass. App. Ct. 537, 557-58 (1998) (extortionate conduct in violation of known contractual obligations is a violation of Chapter 93A); <u>see</u> <u>also</u> <u>Northern Sec. Ins. Co. v. R.H. Realty Trust</u>, 78 Mass. App. Ct. 691, 695-96 (2011) (same principle).

## III.      **Tatiana Cannot Recover Indemnification under her Proof of Claim.**

As a matter of law, Tatiana cannot recover indemnification under her Proof of Claim (or the corresponding count of the Counterclaims in the Adversary Proceeding) because she was never an agent of a member within the meaning of the Operating Agreement. <u>See</u> Plaintiffs' Motion for Summary Judgment, Nov. 16, 2018 (Doc. No. 349, Adv. Doc. No. 219) and supporting materials, incorporated herein by reference. She was, for a time, an agent of the LLC itself, which is not at all the same thing. The indemnification provision of the Operating Agreement is intended to benefit the members, acting in their capacity as members. It would make no sense to include in the Operating Agreement a provision that provides for indemnification of every vendor with which the LLC ends up in a dispute.

Tatiana cannot recover as a factual matter as well. The evidence shows that she willfully aided and abetted her husband's breach of fiduciary duty and the corporate defendants' wrongdoing as set forth herein. She would be disqualified from indemnification even if she were otherwise entitled, which she is not. Carnathan Aff. <u>Ex. 1</u>, § 10.2 (no indemnification for gross negligence or willful misconduct, or conduct not taken in good faith on behalf of the Company). As a final note, Tatiana makes no challenge to Count VIII (Equitable Subordination). Even if

she had a claim for indemnification, which she does not, it should be equitably subordinated to

full recovery by the Plaintiffs.


## CONCLUSION

For the foregoing reasons, the Court should deny Tatiana's Motion for Summary

Judgment.


LYMAN-CUTLER, LLC,                          ALEX FILIPPOV and
By its attorney,                            NICKOLAY LIPETSKER,
                                            By their attorneys,



/s/ Peter Tamposi                           /s/ Sean T. Carnathan
Peter N. Tamposi, BBO No. 639497            Sean T. Carnathan, BBO No. 636889
The Tamposi Law Group, P.C.                 scarnathan@ocmlaw.net
159 Main Street                             Joseph P. Calandrelli, BBO No. 666128
Nashua, NH 03060                            jcalandrelli@ocmlaw.net
T: (603) 204-5513                           O'Connor, Carnathan and Mack, LLC
                                            1 Van de Graaff Dr. Suite 104
                                            Burlington, MA 01803
                                            T:  781-359-9000

Dated:  December 7, 2018



### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing and
paper copies will be sent to those indicated as non-registered participants on December 7, 2018.


/s/ Sean T. Carnathan


14