UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| *In re:* | ) | |
| | ) | |
| LYMAN-CUTLER, LLC, | ) | Chapter 7 |
|        Debtor | ) | Case No. 15-13881 FJB |
| | ) | |
| | | |
| LYMAN-CUTLER, LLC, ALEX FILIPPOV, and NICKOLAY LIPETSKER, | ) | |
| | ) | |
|        Plaintiffs, | ) | Adv. Case No. 1:16-ap-01120 |
|    v. | ) | |
| VADIM KAGAN, TATIANA KAGAN, KAGAN DEVELOPMENT KDC, CORP. and PROEXCAVATION CORP. | ) | |
|        Defendants. | ) | |

**PLAINTIFFS' OPPOSITION TO MOTION IN LIMINE TO PRECLUDE EVIDENCE RELATING TO APPRAISAL OPINION OF HUGH MORGAN FENNELL**

Plaintiffs Lyman-Cutler, LLC (the "LLC"), Alex Filippov, and Nickolay Lipetsker (collectively, the "Plaintiffs") oppose the Defendants' Motion in Limine to Preclude Evidence Relating to Appraisal Opinion of Hugh Morgan Fennell (Doc. No. 360; Adv. P. No. 231) ("Defendants' Motion").

**ARGUMENT**

**I.  Defendants Do Not Challenge Mr. Fennell's Appraisal, His Methodology, or His Qualifications To Render An Opinion as to the Properties' Fair Market Value.**

The Plaintiffs retained Mr. Fennell as an expert witness primarily to opine on the fair market value of the properties located at 55 Lyman Road and 88 Cutler Lane (the "Properties")

1

as of the date they were each sold to their respective buyers. See Exhibit C to Defendants' Motion, Plaintiffs' Supplemental ATI No. 9 (stating that Plaintiffs will rely on Mr. Fennell's reports to establish that "[t]he damages for the diminished selling price of the homes equal $1.4 million, plus interest"); see also Exhibits A & B to Defendants' Motion, Mr. Fennell's Reports, at 2 (stating that the intended use of the report was to provide a valuation of the subject Properties). Mr. Fennell opines that the fair market value of each home as of the date it eventually sold was $5.1 million, as opposed to the $4.4 million it was actually sold for through the bankruptcy. It is important to note that the Defendants' do not challenge: (i) Mr. Fennell's opinion as to the fair market value; (ii) his methodology at arriving at the fair market value; or (iii) his qualifications to do so. Nor can they.

Mr. Fennell is a licensed Certified General Real Estate Appraiser in the Commonwealth of Massachusetts. He has been an appraiser for 20 years, is a member of the Massachusetts Board of Real Estate Appraisers, and currently serves as a Vice President/Legal Services for the Appraisers Group where he is responsible for managing the company's appraisal services for attorneys and private clients. See Exhibits A & B to Defendants' Motion, Mr. Fennell's Reports, at 30. He previously has been qualified as an expert witness in numerous courts throughout the Commonwealth. Id., at 31. Mr. Fennell conducted a thorough analysis of each of the Properties and conducted an appraisal of each that conformed to the Uniform Standards of Professional Appraisal Practice. Id., at 7. He concludes that each of the Properties' fair market values as of the day each sold out of the bankruptcy was $5.1 million. Id., at 4.

The *only* challenge Defendants' make to Mr. Fennell's methodology or fair market value conclusions is that the appraisals amount to a "valuation at a date in time, which has no causal connection to the allegations in the complaint." See Defendants' Motion, at 2. This is simply

untrue. The LLC's damages claim is based upon the price difference between what the Properties' fair market value was in 2016 compared to what they were forced to sell for through the bankruptcy. Mr. Fennell's reports, therefore, are tied directly to the date on which each Property actually sold (March 11, 2016 for 55 Lyman and January 29, 2016 for 88 Cutler). Comparing the actual sales price to the fair market value of the Properties on any other day would have been illogical. Mr. Fennell's expert opinion concerning the Properties' respective fair market values are indisputably admissible.

**II.        Mr. Fennell May Also Testify Concerning the Reason for the Deflated Sale Price.**

What the Defendants' actually challenge is Mr. Fennell's statements concerning the cause of the Properties' reduction in sales price from their fair market values. Specifically, the Defendants assert that Mr. Fennell's statements concerning the impact of the extended construction process and the ineffective marketing are not admissible because they are based upon information that was obtained from Plaintiffs' counsel and because the reports do not identify what the sale price would have been had the construction been performed timely with effective marketing. Once again, the Defendants' challenges are misguided.

Contrary to Defendants' assertion, Mr. Fennell was not retained to opine on whether there was, in fact, a delay in the construction period or an ineffective marketing strategy. His reports assumed as true the Plaintiffs' assertion that the construction process took longer than the parties originally agreed and that the Properties were not properly marketed. This type of assumption is plainly permissible. As stated by the Supreme Court:

> For more than 200 years, the law of evidence has permitted the sort of testimony that was given by the expert in this case. Under settled evidence law, an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true. It is then up to the party who calls the expert to introduce other evidence establishing the facts assumed by the expert. While it was once the practice for an expert who

> based an opinion on assumed facts to testify in the form of an answer to a hypothetical question, modern practice does not demand this formality and, in appropriate cases, permits an expert to explain the facts on which his or her opinion is based without testifying to the truth of those facts.

Williams v. Illinois, 567 U.S. 50, 57 (2012). The fact that these assumptions were obtained from Plaintiffs' counsel is of no consequence because experts routinely assume certain disputed facts to be true for purposes of their opinion.

It is worth noting, however, that the LLC's Operating Agreement expressly confirms that Vadim Kagan was expected and contractually obligated to complete the homes such that a certificate of occupancy could be issued (i.e., "substantial completion") no later than March 30, 2014 and that Kagan would be financially penalized if the Properties were not sold by November 2014. See Exhibit D to Defendants' Motion, Operating Agreement, at ¶ 5.2 (substantial completion by March 30, 2014) and ¶ 8.1 ("In the event that the property is not sold within twenty three (23) months from the date of acquisition [December 2012], then Mr. Kagan shall be responsible for all carrying costs until such time as the property is sold."). If the Defendants believe the expected construction time was something different than what is set forth in the Operating Agreement, they are permitted to introduce contrary evidence and to cross-examine Mr. Fennell as to the basis of his assumption at trial. EEOC v. Texas Roadhouse, Inc., 215 F. Supp. 3d 140, 148-149 (D. Mass. 2016) (stating that the appropriate means of attacking an opinion is through "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof"). It is not a basis to exclude his testimony.[1] See West

---

[1] It is ironic that the Defendants put so much emphasis on the supposedly unknown fair market value of the properties in 2014, when construction was supposed to be completed. The project's lender, Rockland Bank, performed appraisals on the homes at various points during the project. The bank's 2013 pre-construction appraisals concluded that the properties would be worth $5.3 million. The bank's 2015 post-construction appraisals concluded that the properties were worth $5.2 million each. See Second Transmittal Affidavit of Sean T. Carnathan, Exhibits

4

Boylston Cinema Corp. v. Paramount Pictures Corp., 12 Mass. L. Rep. 530 (Mass. Super. 2000) ("this court is also presented with no authority for the proposition that expert opinion testimony ought to be excluded merely because it was based on disputed facts").

Mr. Fennell's opinion concerning the effect of the bankruptcy is likewise admissible. As a licensed appraiser with two decades of experience, Mr. Fennell is well qualified to render an opinion concerning the financial effect that certain factors can have on a property's selling price, including a bankruptcy. That Mr. Fennell bases his opinion on his own experience rather than "statistics" or "interviews with the buyers", as Defendants contend he should have done, is inconsequential. See United States v. Monteiro, 407 F. Supp. 2d 351, 371 (D. Mass. 2006) ("there are many situations in which an expert's manifestly subjective opinion (an opinion based . . . on one's personal knowledge, ability, and experience') is regarded as admissible evidence in an American courtroom.")

Further challenging Mr. Fennell's opinion, the Defendants argue that there is a "logical disconnect" between Mr. Fennell's conclusions and this proceeding because the disputes between the parties have "nothing to do with marketable title or the ability to sell the homes." See Defendants' Motion, at 8. This is a puzzling, myopic view of these proceedings. While this Court is certainly not being asked to resolve a title dispute or the validity of an encroachment, the LLC is clearly seeking damages arising from the reduced selling price of the Properties due to the bankruptcy. There can be no question that there is a logical connection between the LLC's

---

17, 18, 19, and 20. The LLC's damages would therefore be higher if the Court were to compare the 2016 sale prices to the 2014 valuations.

claim for damages and Mr. Fennell's opinion as to the amount of those damages if the Plaintiffs are able to prevail on their claims.[2]

Even if there was some defect in Mr. Fennell's opinion, which there is not, the Court could permissibly draw a reasonable inference that the $700,000 price difference between the Properties' selling prices and their fair market values was caused by the distressed sale, which resulted from Defendants' wrongdoing. The fact finder can readily infer that the Defendants' financial attack on the LLC and resulting distressed sales was a but-for factor that caused the properties to be sold for less than fair market value. See Wagenmann v. Adams, 829 F.2d 196, 219 (1st Cir. 1987) (collecting cases where a Court will dispense of expert testimony in a case where the causal connection is clear); Crooker v. United States, 2015 U.S. Dist. LEXIS 12386, at *11 (D. Mass. Feb. 3, 2015) ("Where a reasonable juror could infer causation from other evidence, expert testimony is not required to establish causation"); Fibermark, Inc. v. Merrimac Paper Co., 2003 U.S. Dist. LEXIS 26866, at *93094 (D. Mass. Mar. 11, 2003) (expert testimony not required to establish causation of lost profits from misuse of confidential information); see also United States v. Corey, 207 F. 3d 84, 97 n.26 (1st Cir. 2000) ("On the other hand, expert testimony does not assist where the jury has no need for an opinion because it easily can be derived from common sense, common experience, the jury's own perceptions, or simple logic"), quoting Scott v. Sears, Roebuck & Co., 789 F.2d 1052, 1055 (4th Cir. 1986); United States v. Mills, 1996 U.S. App. LEXIS 7436, at *8-9 (10th Cir. 1996) (a reasonable jury could infer

---

[2] Plaintiffs need not further address the Defendants' assertion that Mr. Fennell bases his opinion on "faulty assumptions" because it was the Plaintiffs, not Kagan, who made the decision to file for bankruptcy. Mr. Fennell does not opine as to *who* is responsible for the bankruptcy. He opines as to the decreased value of the Properties as a result of the bankruptcy. The Plaintiffs' contention that the bankruptcy was essentially forced upon them given the Defendants' unlawful conduct will be resolved at trial.

causation by combining expert testimony with other facts); Weitz Co., LLC v. MH Washington, LLC, 2008 U.S. Dist. LEXIS 123223, at *84-85 (W.D. Mo. Aug. 19, 2008) (same); see generally Putnam Resources v. Pateman, 958 F.2d 448, 460 (1st Cir. 1992) ("Application of the legal cause standard to the circumstances of a particular case is a function ordinarily performed by, and peculiarly within the competence of, the factfinder.");   All of Defendants' assertions regarding why they believe the bankruptcy in this case would have had little to no effect on the sale price are appropriate for cross-examination, not a motion in limine.

**III.     Plaintiffs Are Not Estopped from Seeking Damages Caused by the Distressed Price of the Properties.**

Defendants' assertion that Plaintiffs are estopped from "complaining" about the artificially low price at which the Trustee was forced to sell the Properties is factually baseless and, in any event, misconstrues the Plaintiffs' claim.

The Plaintiffs' lack of an objection to the $4.4 million sale price of the Properties cannot support the Defendants' estoppel argument.  As the Defendants' concede in their brief, equitable estoppel requires, among other things, that the Defendants prove that the Plaintiffs' lack of an objection was an intentional act engaged in for the purpose of inducing detrimental reliance thereon. Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 123 (1992) (a representation "intended to induce a course of conduct" is an "essential factor" of an estoppel argument); Cahoon v. Shelton, 647 F. 3d 18, 28 (1st Cir. 2011) ("the key element of an estoppel is intentionally induced prejudicial reliance").  Defendants' motion is completely devoid of *any* evidence to even remotely suggest that Plaintiffs' lack of an objection was designed to induce the Trustee to sell the Properties at the lower price, or that the Trustee relied on the lack of an

objection to proceed with the sale.[3] The Defendants have no facts to support their assertion. <u>See also</u> Opposition to Motion for Summary Judgment of Vadim Kagan, Kagan Development KDC Corp. and ProExcavaton Corp., Dec. 7, 2018, filed contemporaneously herewith and incorporated by reference (addressing similar argument).

More importantly, the Defendants' argument badly misconstrues the Plaintiffs' damages claim. The Plaintiffs are not contending that the Trustee somehow acted improperly by selling the Properties for $4.4 million each. The Plaintiffs' contention is that this reduced sale price was the best that could be done in the context of a distressed sale caused by the Defendants' unlawful actions.

The Plaintiffs' contention that it is entitled to damages based on this lower selling price has been made abundantly clear to the Defendants since the Defendants' filed their first motion to dismiss back in September 2016. In clear and unambiguous terms, the Plaintiffs asserted in their opposition that:

> With regard to damages, Defendants again (willfully?) misunderstand the consequences of their actions. The Defendants' practices forced the LLC to seek bankruptcy protection and, ultimately, sell off its two assets at a significant discount.

Plaintiffs' Opposition to Defendants' (First) Motion to Dismiss (Adv. P. No. 22), at 12. Plaintiffs repeated this assertion in their Amended Adversary Complaint, <u>see</u> Amended Adversary Complaint, ¶ 49 (asserting that the Defendants' conduct forced the LLC into bankruptcy and resulted in a sale of the properties at a below market price), and repeated it again in their Supplemental Answers to Interrogatories. <u>See</u> <u>Exhibit C</u> to Defendants' Motion,

---

[3] The Defendants' counsel's unsupported, self-serving statement that the "Defendants" moved forward with the sale based in part on the lack of an objection is non-sensical. The "Defendants" did not sell the Properties. The Trustee did.

Supplemental ATI No. 9 ("The LLC's damages include the difference between the selling price of the properties -- $4,400,000 per house – and the fair market value each house would have sold for but for Kagan's conduct - $5,100,000 per house."). The Plaintiffs do not challenge, and have never challenged, the Trustees' actions in selling the Properties for $4.4 million. The Plaintiffs' assert just the opposite. It was the Defendants' conduct which forced the Trustee to sell these Properties for a combined $1.4 million below their fair market value, and the opinion of Mr. Fennell is admissible to establish what the fair market value of the Properties would have been at the time of the sales.

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendant' Motion in Limine to Preclude Evidence Relating to the Appraisal Opinion of Hugh Morgan Fennell.

| | |
|---|---|
| LYMAN-CUTLER, LLC,<br>By its attorney, | ALEX FILIPPOV and<br>NICKOLAY LIPETSKER,<br>By their attorneys, |
| */s/ Peter Tamposi*<br>Peter N. Tamposi, BBO No. 639497<br>The Tamposi Law Group, P.C.<br>159 Main Street<br>Nashua, NH 03060<br>T: (603) 204-5513 | */s/ Sean T. Carnathan*<br>Sean T. Carnathan, BBO No. 636889<br>scarnathan@ocmlaw.net<br>Joseph P. Calandrelli, BBO No. 666128<br>jcalandrelli@ocmlaw.net<br>O'Connor, Carnathan and Mack, LLC<br>1 Van de Graaff Dr. Suite 104<br>Burlington, MA 01803<br>T:  781-359-9000 |

Dated:  December 7, 2018

<u>Certificate of Service</u>

  I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on December 7, 2018.

            */s/ Sean T. Carnathan*