UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| *In re:* | ) | |
| | ) | |
| LYMAN-CUTLER, LLC, | ) | Chapter 7 |
|        Debtor | ) | Case No. 15-13881 FJB |
| | ) | |

|  |  |  |
|---|---|---|
| | ) | |
| LYMAN-CUTLER, LLC, ALEX FILIPPOV, | ) | |
| and NICKOLAY LIPETSKER, | ) | |
| | ) | |
|        Plaintiffs, | ) | |
| | ) | Adv. Case No. 1:16-ap-01120 |
|    v. | ) | |
| | ) | |
| VADIM KAGAN, TATIANA KAGAN, | ) | |
| KAGAN DEVELOPMENT KDC, CORP. and | ) | |
| PROEXCAVATION CORP. | ) | |
| | ) | |
|        Defendants. | ) | |
| | ) | |

**PLAINTIFFS' OPPOSITION TO MOTION IN LIMINE TO
PRECLUDE OPINIONS OF MICHAEL GOLDMAN**

Plaintiffs Lyman-Cutler, LLC (the "LLC" or the "Debtor"), Alex Filippov, and Nickolay Lipetsker (collectively, the "Plaintiffs") oppose the Defendants' Motions in Limine to Preclude Opinions of Michael Goldman (A.P. Doc. 228; Bank. Doc. 339) ("Defendants' Motion").

**INTRODUCTION**

In a case where the veracity of the alleged cost overruns asserted in a $2.1 million mechanic's lien and proof of claim is a key issue, those records are riddled with inconsistencies and indicia of fraud and are so haphazard that they appear to have been intentionally muddled to conceal the Defendants' wrongdoing. Faced with a mish mash of contradictory, incomplete and admittedly created-after-the-fact "records" of Kagan Development KDC Corp.'s ("KDC")

1

purported charges, Plaintiffs retained Michael Goldman to examine the documentation Defendants provided in support of their claims and to offer an opinion about the veracity and reliability of that documentation.  Mr. Goldman has concluded that these records are wholly unreliable, and that the problems with them are so pervasive as to support a conclusion of knowing fraud.  He identifies numerous, specific issues in the records that would not be apparent to a layman.  His expert opinion scrupulously avoids usurping the role of the fact finder in reaching conclusions on the ultimate issues, and offers expert analysis and opinion that will greatly assist the Court in resolving this dispute.[1]

## THE REPORT OF MICHAEL GOLDMAN

Michael Goldman is a highly qualified expert.  He is a Certified Public Accountant, Certified Fraud Examiner, Certified Valuation Analyst and is Certified in Financial Forensics. Goldman Report, attached hereto as Exhibit 1 for the Court's convenience, ¶¶ 1-11 and Exhibit 1 thereto.[2]  He holds a Bachelor of Arts degree from Rice University and a Master of Management from Northwestern University with a concentration in accounting and finance.  Id.  His experience is extensive and he has been qualified to testify in multiple prior court proceedings. Id.  Defendants do not challenge Mr. Goldman's credentials.

Mr. Goldman was retained to "opine on the veracity of the accounting information and documentary support provided by the Defendants with regard to the mechanic's lien." Id. ¶ 21.

---

[1]    Daniel Gersh, the Chief Financial Officer for KDC, the defendant asserting the mechanic's lien and proof of claim, has openly admitted that KDC failed to keep contemporaneous records of the construction costs.  Plaintiffs' Concise Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment, Nov. 16, 2018 (Doc. No. 353, Adv. P. No. 221) ("SSUMF"), ¶ 17.  Rather, he and Defendant Vadim Kagan ("Kagan") recreated the "records" they claim evidence the cost overruns after the fact.  Indeed, they did so after Kagan sent his May 7, 2015 letter asserting there were cost overruns.  SSUMF ¶¶ 17-25.

[2]    Mr. Goldman's Report was previously submitted as Exhibit 20 to the Affidavit of Sean T. Carnathan, Nov. 16, 2018 (Doc. No. 355, Adv. P. No. 222).

His detailed report includes specific analysis of the charges asserted, comparing the invoices, books and records of the entities, the American Express Charges, and the payment records. Id. ¶¶ 24-50. Mr. Goldman's work involved examining the records provided for the Debtor, KDC and Defendant ProExcavation Corp. ("ProEx"). Because the Defendants so cavalierly commingled charges and payments, there are numerous elements of KDC's claim that cannot be verified. Id. ¶¶ 24-32 (Kagan failed to maintain <u>most</u> of the documentation he should have and as a result, there is no way to detect the intermingling of his projects). Mr. Goldman specifically states that the Defendants commingled payment methods "with no apparent pattern" among the LLC, KDC and KDC by credit card. Id. ¶ 47(c). "Typically, this degree of commingling or complexity in the handling of cash is done to disguise or confuse the nature of individual transactions." Id.

In a number of instances, Mr. Goldman found highly specific problems with the claims by KDC. By way of example and without limitation:

- The Mechanics Lien and the Quick Books reports provided do not match. Id. ¶ 35.
- Mr. Goldman also notes that a number of the invoices presented appear "spurious on their face," but were apparently paid anyway. Id. ¶ 47(e).
- He concludes that the claim based on charges by Construction Specialties are overstated by $10,295 for March 2014 alone. Id. ¶ 58.
- He concludes that it is likely that "at some point Defendants took the original accounting file and cloned it and then modified it to inflate the amounts on the lien." Id. ¶ 58(d).
- He concludes that the charges for Horner Millworks is overstated by $16,243.84 for May 2014 alone. Id. ¶ 59.
- He concludes that the "invoices provided in the mechanic's lien for Huntington TV appear fabricated." Id. ¶ 60.
- He concluded that the Décor Art invoices look "suspicious" and several appear "fabricated." Id. ¶ 61.
- He notes numerous inconsistencies in the invoices from Paul DiGiacomo, "which strongly impl[y] that they were fabricated." Id. ¶ 62.
- He observes significant inconsistencies in the invoices for Pave Tech, BST Plumbing, Ferguson, Sergei Nikolaev, V&D Heating, DaCosta Construction, Unicon Electric, Affordable Lawn Sprinklers and ProEx. Id. ¶ 64-68, 70-72, 74.

- He explicitly opines that the "Dream Flooring invoices appear fabricated," and explains why. Id. ¶ 69.
- He explicitly opines that the Eastcoast Pipelines invoice appears fabricated. Id. ¶ 73.
- He opines that while ProEx billed the LLC $23,000 for snow removal, other projects were not billed at all, suggesting the LLC may have paid for their snow removal. Id. ¶ 75.
- He opines that the records produced are insufficient to refute Ms. Brusenkova's testimony that Kagan routinely billed double for ProEx work, once through ProEx and once through KDC. Id. ¶ 78.

Mr. Goldman further examined the documents produced by the Defendants for the five "Other Construction Projects" as ordered by this Court during discovery, and compared those materials to the documentation for the Lyman-Cutler Project. Mr. Goldman found that on the projects with investors (55 Lyman, 88 Cutler, 10 Lyman and Yarmouth Road), Kagan had per square foot construction costs of $250, $236, $272 and $262 respectively. On projects he did without investors (Parker Road, Fredette and Druid Hill), he had per square foot costs of $144, $130 and $144. Id. ¶ 50. Doing the math, it turns out that when Kagan does a project with investors, he claims average per square foot building costs of $255 per square foot. According to his own records, when he does a project on his own, the costs average $139 per square foot.

Mr. Goldman also examined the records provided by ProEx in an effort to verify the $916,800 in charges asserted on behalf of ProEx in KDC's Proof of Claim. Mr. Goldman found first that ProEx's own accounting records reflected billings of only $749,300 to the LLC. Id. ¶ 107. Compare Goldman Report ¶ 107 with SSUMF ¶ 47 (ProEx proof of claim tally). More important, Mr. Goldman could confirm only a grand total of **$345,335** in materials and other costs expended by ProEx on the Project. Goldman Report ¶ 108 ($140,894 for 55 Lyman and $204,441 for 88 Cutler). Even crediting these numbers as reliable (which they are not), that means that, just doing the math, ProEx would extract unfair profits of **$573,265** if its component of the KDC Proof of Claim were honored. ($918,600-$345,335).

4

To summarize Mr. Goldman's overarching opinions, he expressly states that in over twenty years of forensic work, Mr. Goldman has only ever seen one other set of documentation containing so much "inconsistency and incredibility" and there was significant fraud in that case. Id. ¶ 36. Mr. Goldman concludes that "the accounting process employed by Mr. Kagan are severely deficient and … the attempts to recreate data that was never properly captured the first time are not at all convincing. The claim as it is presented now is not supported with reliable information and, <u>based on how pervasive the problems are, may be knowingly fraudulent</u>." Id. ¶ 39 (emphasis added); <u>see also</u> id. ¶ 47 (to same effect); id. ¶ 114(h) (bold conclusion on final page). **He concludes that the documentation provided is not credible.** Id. ¶ 51. Neither are the accounting records for KDC and ProEx. Id. ¶¶ 81-106.

## ARGUMENT

### I. Mr. Goldman's Opinion Goes to the Heart of the Matter Without Usurping the Role of the Finder of Fact at Trial

The Defendants' challenge to Mr. Goldman's testimony rests on a misunderstanding of the burdens of persuasion at trial. Mr. Goldman's opinion properly goes to key issues in this case without usurping this Court's role as the fact finder at trial.

The first, overarching issue is whether KDC has any valid claims for compensation at all. With regard to the KDC Proof of Claim, (and the claims for breach of the Operating Agreement and breach of fiduciary duty by Kagan and the other Defendants' participation in that wrongdoing), the Defendants must prove the "entire fairness" of KDC's claims. <u>See</u> <u>Coggins v. New Eng. Patriots Football Club</u>, 397 Mass. 525, 530-31 (1986) (quoting with approval, <u>Weinberger v. UOP, Inc.</u>, 457 A.2d 701, 711 (Del. 1983)); Plaintiffs' Motion in Limine, Nov. 16, 2018 (Doc. No. 348, Adv. P. 218). In that context, the Defendants emphatically cannot be heard to assert that it is the Plaintiffs' burden to catch them in specific fraudulent charges. It is

5

their burden to prove that the June 24, 2013 KDC contract upon which the mechanic's lien (and proof of claim) relies is entirely fair and that the charges that KDC asserts by and through it are entirely fair. Where the ProEx charges are a double layer of self-dealing, they must further prove that the ProEx engagement was entirely fair and that any charges asserted by ProEx are entirely fair. Given the state of the Defendants' books and records, it is impossible for them to carry this burden. See Plaintiffs' Motion for Summary Judgment, Nov. 16, 2018 (Doc. 349, Adv. P. 219) and supporting papers. Mr. Goldman's analysis and opinion concerning the documentation submitted by the Defendants eliminates any basis to conclude that the KDC Mechanic's Lien is entirely fair.

Another overarching question (for the purpose of Count IV of the Amended Adversary Complaint only) is whether the Defendants are merely grossly negligent and/or incompetent or whether they are engaged in knowing fraud. Plaintiffs bear the burden to prove fraud, but to do so they are entitled to present all the circumstantial evidence, which taken together, add up to sufficient "badges of fraud" to conclude that the Defendants have knowingly and intentionally engaged in fraud. See United States v. Goodchild, 25 F.3d 55, 60 (1st Cir. 1994) ("Fraud is usually proven by circumstantial evidence. Direct proof of a knowing intent to defraud is rare. . . .") (citation omitted); see Plaintiffs' Opposition to the Motion for Summary Judgment by Vadim Kagan, Kagan Development KDC Corp. and ProExcavation with supporting materials, Dec. 7, 2018 filed contemporaneously herewith ("Plaintiffs' Opp. to Kagan MSJ"). In connection with proving fraud by the Defendants, Mr. Goldman's report outlines massive circumstantial evidence supporting the conclusion that the Defendants are engaged in fraud. The testimony by Mr. Goldman is buttressed by a tremendous amount of other evidence. See Plaintiffs' Opp. to Kagan MSJ. Mr. Goldman, however, scrupulously avoids infringing on the province of the Court as

6

fact finder at trial. He correctly opines as to the pervasiveness of the problems with the documentation proffered and concludes it is so pervasive as to evidence fraud, but he does not purport to reach that conclusion for the Court.

**II.    Defendants' Mischaracterize Mr. Goldman's Opinions; He Properly Opines on the Veracity and Reliability of Documentation and Financial Records.**

Defendants conflate humans with documents when they contend that Mr. Goldman cannot testify as to credibility. Mr. Goldman does not purport to testify to the credibility of any witness. He will testify as to the veracity and reliability of the documentation produced by the Defendants. Such testimony by a qualified expert is well-recognized to be admissible. See, e.g., WWP, Inc. v. Wounded Warriors Family Support, Inc., 628 F.3d 1032, 1039-40 (8th Cir. 2011) (forensic accountant properly permitted to testify at trial to misdirected donations based upon examination of defendant's books and records); BL Dev. Corp. v. Masella (In re Masella), 2007 Bankr. LEXIS 2719 (Bankr. D. Conn. Aug. 7, 2007) (denying Daubert challenge to testimony of forensic accountant and Certified Fraud Examiner to adequacy of debtor's recordkeeping); cf. United States ex rel. Baker v. Cmty. Health Sys., 2012 U.S. Dist. LEXIS 186854 at *20 (D.N.M. Mar. 30, 2012) (denying Daubert challenge to testimony of forensic accountant on damages "based upon her experience as a forensic accountant, forensic accounting investigation techniques and a review of the plethora of facts and data that are part of this case, including depositions and affidavits, documents, health care reports, and county budgets and state auditor financial statements"); Jenkins v. CST Timber Co., 761 So. 2d 177, 181 (Miss. 2000) ("Forensic accountants are commonly employed to uncover fraudulent schemes or to determine whether certain activities comply with business standards"); Farris v. State, 1999 Tex. App. LEXIS 5457, at *2-3 (Tx. Ct. App. July 22, 1999) (expert properly permitted to testify to "fraud indicators" in insurance fraud case).

The cases cited by Defendants are all highly distinguishable and do not provide grounds for excluding Mr. Goldman.  For example, many of the cases Defendants cite purportedly in support of their proposition that an expert may not testify regarding credibility are not cases involving expert credibility assessments.  See Adams v. New Eng. Scaffolding, Inc., 2015 U.S. Dist. LEXIS 170688, at *27 (D. Mass. Dec. 22, 2015) (legal conclusions regarding the elements of negligence overstepped the bounds of permissible expert testimony); United States v. Duncan, 42 F.3d 97, 103 (2d Cir. 1994) (expert testimony found admissible; case did not involve issue of credibility); Zaccaro v. Shah, 746 F. Supp. 2d 508, 518 (S.D.N.Y. 2010) (expert analysis relied on speculation as to future events and made improper legal conclusions by telling the jury what decision to reach as to defendant's intent); Taylor v. Evans, 1997 U.S. Dist. LEXIS 3907, at *3-5 (S.D.N.Y. Mar. 28, 1997) (expert report addressed factual issues which could be understood without expert testimony and opined on whether defendants violated a legal standard); see also Aponte-Rivera v. DHL Solutions (USA), Inc., 650 F.3d 803, 809 (1st Cir. 2011) (case does not involve an expert witness); MacQuarrie v. Howard Johnson Co., 877 F.2d 126, 128 (1st Cir. 1989) (distinguishing between a jury and a judge in terms of who may decide credibility, not between a jury and an expert witness).

Further, even those cases which do involve expert assessments of credibility involve one expert witness evaluating the credibility of the testimony of another trial witness.  See Hinton v. Outboard Marine Corp., 2012 U.S. Dist. LEXIS 8505, at *3-4 (D. Me. Jan. 25, 2012) (accident reconstruction expert summarized the deposition testimony of various witnesses, then set forth view of the most probable accident scenario, including which witness' recollection was "probably most accurate"); United States v. Deleon, 2016 U.S. Dist. LEXIS 89537, at *40-41 (D. Mass. May 9, 2016) (ineffective assistance of counsel case involved allegation that attorney

8

should have hired an expert to challenge and review the trial testimony of another witness);

United States v. Scop, 846 F.2d 135, 142 (2d Cir. 1987) (expert not permitted to offer a personal assessment of the credibility of another witness' testimony, where expert's area of expertise did not encompass evaluation of testimony); United States v. Ward, 169 F.2d 460, 462 (3d Cir. 1948) (expert ascertained the reliability of trial witnesses based on material not in evidence); United States v. Lumpkin, 192 F.3d 280, 289 (2d Cir. 1999) (court found expert witness testimony regarding the relationship between confidence and accuracy in eyewitness identifications to insert the expert's view of the witness' credibility for that of the jurors); Lippe v. Bairnco Corp., 288 B.R. 678, 688 (S.D.N.Y. 2003) (involved expert opining on the credibility of witnesses and defendants' motivations); GST Telecomms., Inc. v. Irwin, 192 F.R.D. 109, 110-11 (S.D.N.Y. 2000) (in case involving business judgment of a board of directors, where experts were expressing legal conclusions on ethics and business transactions, the court stated that experts should not have "the responsibility to give conclusory opinions and characterizations of the business conduct portrayed").  Mr. Goldman's expert analysis of the documentation, books and records proffered by the Defendants follows a recognized, reliable methodology based upon impeccable training and decades of experience and will be extremely helpful to the Court as the finder of fact at trial.  See Fed. R. Evid. 702.

### III. Mr. Goldman's Conclusion that the Deficiencies, Inconsistencies, Problems and Lack of Credibility are so Pervasive as to Indicate Knowing Fraud is Helpful to the Trier of Fact.

Contrary to Defendants' unsupported assertion, Mr. Goldman's opinion has much greater weight than "there might be fraud."  He gives a detailed report specifying innumerable deficiencies, inconsistencies, apparent fabrications, lack of accounting controls, and indicia of a complete lack of credibility of the "documentation" provided.  He has seen only one other case

in which the documentation was this bad in over 20 years of forensic accounting. Goldman Report ¶ 36. Although he carefully refrains from purporting to opine directly on the ultimate issue, he states that the documentation provided is totally unreliable. It is for the fact finder to decide whether this is a matter of gross incompetence and/or negligence or knowing and intentional fraud.

Mr. Goldman will testify based on over 20 years of experience that problems this pervasive support a conclusion that the Defendants engaged in knowing fraud. This is a proper form of expert testimony. See Fed. R. Evid. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue"); Fed. R. Evid. 704(b) (expert cannot testify about mental state in a criminal case); see United States v. Brawner, 173 F.3d 966, 969 (6th Cir. 1999) (expert properly permitted to testify at trial Roberts testified that defendant's "business operations were consistent with those generally followed by fraudulent telemarketing organizations"). There will be other evidence to support that conclusion as well.[3]

---

[3] Even if the Court for some reason declines to allow Mr. Goldman to testify to this one point, all the rest of his report is admissible, relevant and helpful to the Court as finder of fact. Bacchi v. Mass. Mut. Life Ins. Co., 2016 U.S. Dist. LEXIS 37772, at *11-15 (D. Mass. Mar. 23, 2016).

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendants' Motion in Limine to Preclude Opinions of Michael Goldman.

| | |
|---|---|
| LYMAN-CUTLER, LLC,<br>By its attorney, | ALEX FILIPPOV and<br>NICKOLAY LIPETSKER,<br>By their attorneys, |
| */s/ Peter Tamposi*<br>Peter N. Tamposi, BBO No. 639497<br>The Tamposi Law Group, P.C.<br>159 Main Street<br>Nashua, NH 03060<br>T: (603) 204-5513 | */s/ Sean T. Carnathan*<br>Sean T. Carnathan, BBO No. 636889<br>scarnathan@ocmlaw.net<br>Joseph P. Calandrelli, BBO No. 666128<br>jcalandrelli@ocmlaw.net<br>O'Connor, Carnathan and Mack, LLC<br>1 Van de Graaff Dr. Suite 104<br>Burlington, MA 01803<br>T:  781-359-9000 |

Dated:  December 7, 2018

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on December 7, 2018.

　　　　　　　　　　　*/s/ Sean T. Carnathan*