UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| *In re:* | ) | |
| LYMAN-CUTLER, LLC, | ) | Chapter 7 |
| Debtor | ) | Case No. 15-13881 FJB |
| | ) | |

| | | |
|---|---|---|
| LYMAN-CUTLER, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Adv. Case No. 1:16-ap-01120 |
| v. | ) | |
| | ) | |
| VADIM KAGAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY MEMORANDUM IN
FURTHER SUPPORT OF THEIR MOTION IN LIMINE**

Plaintiffs respectfully submit this Reply Memorandum in further support of their Motion

in Limine (Bankr. Doc. 348; Adv. P. 218) (the "Motion").

**I.    The Kagan Defendants Must Prove Entire Fairness.**

Bankruptcy Rule 3001(f) does not excuse the Defendants from proving entire fairness

with regard to their self-dealing claims.  Plaintiffs address this contention in detail in their Reply

Memorandum in Further Support of their Motion for Summary Judgment, Dec. 17, 2018, filed

contemporaneously herewith.  The evidence easily requires a burden shift on the Proof of Claim,

and Rule 3001(f) does not apply to the claims and counterclaims in the Adversary Proceeding.

The Defendants' obligation to prove entire fairness encompasses the listing agreements

retaining Tatiana.  A transaction is self-dealing if the fiduciary stands to financially benefit.  See

Bergeron v. Ridgewood Sec. Corp., 610 F. Supp. 2d 113, 116 n.10 (D. Mass. 2009) (a fiduciary

must prove entire fairness if he "appeared on both sides of a transaction or derived a personal

benefit from a transaction in the sense of self-dealing").  Conferring a contract on his wife is a

personal benefit to Kagan.  Pereira v. Cogan, 294 B.R. 449, 532 (S.D.N.Y 2003) (loans director

caused company to make to his wife subject to entire fairness); International Communications

Assn., Inc. v 258 St. Nicholas Ave. LLC, 2018 N.Y. Misc. LEXIS 531, at *14 (N.Y. Supr. Ct.

Feb. 15, 2018) (payments defendant caused company to make to his wife subject to entire

fairness); see 11 U.S.C. § 101(31) (defining insider to include relatives of persons in control of

the debtor).  Kagan and Tatiana filed joint tax returns.  Deposition of Jason Gordon, May 22,

2018, at 76.  Tatiana admits that Kagan dictates her commission and that she turns her

commission checks over to KDC.  See Opposition to Tatiana Kagan's Motion for Summary

Judgment (Bankr. Doc. 378; Adv. P. Doc. 248).  Accordingly, unless the Kagan Defendants can

prove the listing agreements were entirely fair, which they cannot, they are void.[1]

## II.    The "Records" KDC Will Submit in Support of Its Claims Are Inadmissible.

To divert the Court's attention from the legal basis of the Plaintiffs' request to exclude

from evidence the binders of non-contemporaneous, photocopied "documentation," Defendants

resort to *ad hominem* attacks on counsel.  It is difficult to imagine how much more clearly

Plaintiffs could have challenged the authenticity of Defendants' documentation these past three

years.  Plaintiffs did not "fundamentally mischaracterize" the source of KDC's purported

invoices.  Plaintiffs' Motion lays out with care exactly what Mr. Gersh and Mr. Kagan did to

"document" KDC's supposed claim.  In case there is any confusion, Plaintiffs do not assert that

Mr. Gersh created any documentation in this case.  Plaintiffs do, however, contend that the

---

[1]      The Kagan Defendants also assert that the Plaintiffs did not object to the payment of a
commission to Century 21.  That is not right.  See Doc. No. 82.  In fact, the Defendants have
elsewhere argued that the objection was mean spirited, which is not right either.

evidence and undisputed facts support the conclusion that Kagan and Cohen did create documentation in 2015 to support KDC's supposed claim.

Mr. Gersh, KDC's Rule 30(b)(6) designee, cannot identify which of the subcontractors' invoices were in the KDC files and which were gathered in mid 2015, nor was he able to identify which entries on KDC's own books and records were made at the time of the purported payments and which were made long after the fact. See Motion, at 6-7. Importantly, he could not recall which subcontractors he approached and which Kagan (allegedly) approached. He had never seen the KDC Contract, which Plaintiffs believe was forged in June 2015. These documents cannot be authenticated and are, therefore, inadmissible. See Fed. R. Evid. 901. Neither can the Defendants glibly assert that someone with knowledge can testify to meet the requirements of the business records exception to the hearsay rule. Fed. R. Evid. 803(6). Many documents, on their face, were not contemporaneous but instead are dated in 2015. See Motion, at 8. At no time has this Court ruled to the contrary.[2]

The Defendants' offer to provide the originally signed paper copy of the KDC Contract to the Court may satisfy the best evidence rule with regard to that one document but ultimately does not help them. If anything, it is telling that the Defendants offer only this document in the original. The reasons to question the authenticity of Defendants' documentation are legion and are outlined in Plaintiffs' other filings in detail.

---

[2]    Defendants' assertion that the Court previously ruled that Defendants need not call all of the subcontractors and suppliers is particularly outrageous. The Court has not previously issued any evidentiary rulings. The transcript of the October 9, 2018 hearing shows that this Court expressly warned Defendants' counsel that he may need to call the vendors and the subcontractors in order to prove KDC's claim once the *prima facie* case was rebutted. See Defendants' Opposition, Exhibit A, at 9 (stating that KDC need not initially call all the vendors and subcontractors by stating: "You may have to respond with that."). The Defendants' conclusory assertion that there is not a "genuine question" about the authenticity of the subcontractors' invoices is belied by the overwhelming evidence set forth in Plaintiffs' Motions.

With regard to the supposed KDC Contract in particular, as the Plaintiffs explain in their Reply in Further Support of their Motion for Summary Judgment, the evidence shows that Kagan and Cohen forged the KDC Contract in June 2015.[3]  At minimum, the evidence that the native format email the Kagan Defendants produced, which purports to be an email from Cohen to Kagan July 24, 2013, but which attaches an electronic copy of the KDC Contract last printed on June 17, 2015, raises genuine questions about the authenticity of the KDC Contract that the Kagan Defendants cannot simply dismiss.  See Motion, at 9.  They should be held strictly to all foundational requirements of the Federal Rules of Evidence.

### III.      Two of Defendants' Experts Should be Precluded From Testifying.

Defendants provide no authority for their assertion that Mr. Salmi's opinion is admissible, let alone "more reliable," because he created his own specifications on which third parties relied to provide him with the information he needed to formulate his opinion.  An expert's creation of his own set of facts (the specifications) is the clearest example of what an expert is not permitted to do.  See e.g., Lavinia v. Satin, 33 Mass. L. Rep. 434 (Mass. Super. 2016) (where an opinion "rests upon an assumed fact that is not established in the evidence, the opinion is unreliable and cannot stand").  Defendants' reasoning is circular when they contend Mr. Salmi's opinion that the construction costs are fair is reliable because they are based upon the construction documentation Kagan and Gersh put together to support their claim.

The Defendants' contention that Mr. Salmi's opinion is relevant to KDC's Proof of Claim is equally unavailing.  KDC's proof of claim is explicitly dependent on the mechanic's lien, which is itself explicitly dependent on the KDC Contract with regard to which the Kagan

---

[3]      Plaintiffs note that although they believe that the Court will agree the KDC Contract was forged in June 2015 after reviewing all the evidence, even if the Court concludes that Kagan and Cohen drafted and Kagan signed the KDC Contract in July 2013, that does not salvage KDC's Proof of Claim.

Defendants must prove entire fairness.  See Plaintiffs' Memorandum of Law in Support of MSJ, at 17.  There is no inconsistency in Plaintiffs' contentions.  Mr. Salmi's opinion – that some arms-length contractor in 2018 based upon specifications Mr. Salmi created would have charged much more to build the homes – does not illuminate in any way whether the KDC Contract or the KDC charges are genuine or entirely fair.  Those determinations depend on the deal the parties made, the disclosures Kagan made and the actual charges he incurred, not on what some third party might hypothetically have charged.  As set forth in the Summary Judgment briefing, KDC has no equitable right to recover the "value of its services."  Accordingly, Mr. Salmi's opinion is irrelevant.

With regard to the handwriting expert, Defendants merely assert that they are legally entitled to attack Ms. Brusenkova's credibility.  This generic rule is limited, however, when a party impeaches a witness on a collateral matter.  See Motion, at 13.  Defendants do not explain, nor can they, how impeaching Ms. Brusenkova about whether she signed an NDA is anything but collateral to the issues presented in this case.  Asking her an irrelevant question to create an issue on which to impeach her does not change the rule.

LYMAN-CUTLER, LLC,
By its attorney,

/s/ Peter Tamposi
Peter N. Tamposi, BBO No. 639497
The Tamposi Law Group, P.C.
159 Main Street
Nashua, NH 03060
T: (603) 204-5513

ALEX FILIPPOV and
NICKOLAY LIPETSKER,
By their attorneys,

/s/ Sean T. Carnathan
Sean T. Carnathan, BBO No. 636889
scarnathan@ocmlaw.net
Joseph P. Calandrelli, BBO No. 666128
O'Connor, Carnathan and Mack, LLC
1 Van de Graaff Dr. Suite 104
Burlington, MA 01803
T:  781-359-9000

Dated:  December 17, 2018

<u>Certificate of Service</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on December 17, 2018.


*/s/ Sean T. Carnathan*