UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| *In re:* ) <br> ) <br> LYMAN-CUTLER, LLC, ) <br>        Debtor ) <br> ) | Chapter 7 <br> Case No. 15-13881 FJB |
| ) <br> LYMAN-CUTLER, LLC, et al., ) <br>        Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> VADIM KAGAN, et al., ) <br>        Defendants. ) <br> ) | Adv. Case No. 1:16-ap-01120 |

**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

Plaintiffs respectfully submit this Reply Memorandum in further support of their Motion for Summary Judgment.

**I.    Defendants Fail to Controvert the Defendants' Statement of Facts as Required.**

Pursuant to D. Mass. Bankr. L.R. 7056 and D. Mass. L.R. 56.1, "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties." Although Defendants have submitted a statement of facts they assert are disputed (and Plaintiffs agree that most of those facts are disputed), they do not specifically dispute the factual assertions in the Plaintiffs' statement, leaving the Court and the Plaintiffs to try and work out where the actual points of dispute are. This is insufficient and the Court should deem Plaintiffs' statement as undisputed. In re Cape Animal Referral &

1

Emergency Ctr., LLC, 2011 Bankr. LEXIS 693, at *8-9 (Bankr. D. Mass. Feb. 22, 2011) (with regard to facts where opposing party's affidavit was unresponsive, facts deemed admitted).

For example, the Defendants' Concise Statement of Disputed Material Facts in Opposition to Plaintiffs' Motion for Summary Judgment, Dec. 7, 2018 (Doc. 372, Adv. Doc. 242) does not dispute that the express terms of the Lyman-Cutler Operating Agreement make Kagan responsible for building the homes in return for a 50% share of the net profits. Plaintiffs' Concise Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment, Nov. 16, 2018 (Doc. No. 353, Adv. Doc. 221) ("SSUMF") ¶¶ 4-7. The Defendants do not dispute (nor could they) the financial figures. The undisputed facts include that under its Proof of Claim, KDC asserts fees and charges totaling **$918,975.66** based upon the KDC Contract. SSUMF ¶¶ 34, 39-42. The undisputed facts further include that KDC bases **$916,800** of its Proof of Claim on alleged charges to it from ProEx. SSUMF ¶ 47. The undisputed facts include that ProEx cannot say how much of this sum is profit and that Kagan did not show the ProEx proposal to Filippov or Lipetsker in 2013. SSUMF ¶¶ 48, 50.[1] The undisputed facts are that KDC did not know within $1 million what its "final" claim was in May 2015.

**II.    Bankruptcy Rule 3001(f) Does Not Excuse the Defendants From Proving Entire Fairness with regard to their Self Dealing.**

Defendants do not challenge that the KDC Contract is an act of self-dealing or that the retention of ProEx is an act of self-dealing. Neither do they appear to challenge their burden to

---

[1]    Kagan purports to quibble with the fact Kagan never showed Plaintiffs the ProEx proposal because he testified he could not recall if he showed it to them. Defendants Opp. Mem. at 13 n.11. But Filippov and Lipetsker assert he did not and he has no evidence to rebut that assertion. Perten Aff. Ex. 7 (Filippov Supp. ATI) at 5. The fact is, therefore, undisputed. Ayer v. United States, 902 F.2d 1038, 1045 (1st Cir. 1990) ("lack of memory does not create an inference" for trial); Coakley v. Agar Supply Co., 2001 Mass. Super. LEXIS 318, at *22 n.11 (July 5, 2001) ("Coakley's effort to characterize this fact as disputed also distorts the record. Brownbeck's lack of memory does not contradict Fine's sworn testimony").

prove entire fairness with regard to these transactions, other than to contend that they are somehow shielded by Bankruptcy Rule 3001(f), which provides only that a proof of claim is prima facie evidence of the validity and amount of the claim.  Once the objecting party provides substantial evidence to rebut the claim, the burden shifts to the claimant to carry the burden to prove its claim.  In re Cape Animal Referral & Emergency Ctr., LLC, 2011 Bankr. LEXIS 693, at *24.  "Substantial evidence" means evidence that, if believed, would refute one of the essential elements of the claim.  In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992); In re Costa, 2008 Bankr. LEXIS 1224, at *7-8 (Bankr. D. Mass. Apr. 22, 2008) ("equivalent probative evidence to rebut the presumption of validity and amount").  Rule 3001 does not apply to the claims and counterclaims in the adversary proceeding.

### A. Plaintiffs Have Rebutted the Prima Facie Presumption of the Validity and Amount of the KDC Proof of Claim.

In the first place, the burden shift depends upon the Plaintiffs coming forward with evidence, not upon undisputed facts as required for the entry of summary judgment. Accordingly, even though some important points are disputed, Plaintiffs have produced substantial evidence of serious wrongdoing by the Kagan Defendants, refuting every element of KDC's Proof of Claim including the validity of the contract itself and all of the charges under it. The evidence shows that the purported KDC Contract contradicts the deal reflected in the Operating Agreement and that Kagan never discussed the KDC Contract with the Plaintiffs, never showed them a copy prior to the litigation, and never received any authorization to sign it. The evidence is that Kagan assured the Plaintiffs they could rely on him to build the homes for $1.6 million per home, including carrying costs through sale, and that he stood behind his guarantee by agreeing to pay the carrying costs if he did not complete and sell the homes on time.  Based on this evidence, all of the cost overruns asserted in the KDC Proof of Claim are

3

contrary to the agreement among the Parties. The evidence is that Kagan <u>never</u> discussed any cost overruns or upgrades with the Plaintiffs, he and Gersh assembled the "documentation" of the KDC Proof of Claim long after the fact, and that over $700,000 of the claim is for amounts KDC never paid, which just so happens to be allegedly payable to the subcontractors whose documentation is the among the fishiest Kagan and Gersh assembled. <u>See</u> Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (Doc. No. 377, Adv. Doc. 247) ("Pl. Opp.").

Moreover, the <u>undisputed</u> facts are sufficient to rebut the presumption of the validity and amount of the KDC Proof of Claim and shift the burden to the Defendants to prove entire fairness. The undisputed facts include the fact that (1) the Operating Agreement assigned to Kagan the obligation to build the two homes in return for a 50% share of the net profits as his compensation; (2) together KDC and ProEx (both of which Kagan owns and controls) account for over $1.8 million of the KDC Proof of Claim; (3) Kagan cannot say what the profit margin is for ProEx; (4) the Kagan Defendants failed to keep track of the costs of construction and demanded just over $1 million on May 7, 2015, only to double the figure 6 weeks later when KDC filed its Mechanic's Lien on June 22, 2015. The undisputed fact is that more than a year after they allegedly completed construction, the Kagan Defendants did not know the magnitude of their own alleged claim by a factor of over $1 million.

### B. The Self-Dealing Contracts are Void.

A self-dealing contract is <u>void</u> unless the Defendants can prove it was on entirely fair terms and "all the parties beneficially interested manifest assent with full understanding of their legal rights and <u>all relevant facts that the fiduciary knows or should know</u>." <u>Demoulas v. Demoulas</u>, 1995 Mass. Super. LEXIS 870, at *204 (Aug. 2, 1995) (emphasis added); <u>see</u> <u>Puritan Medical Ctr., Inc. v. Cashman</u>, 413 Mass. 167, 172 (1992) ("there may be no ratification of self-

4

dealing without full disclosure"); see also Kidder v. Greenman, 283 Mass. 601, 615-616 (1933) (plaintiff provided with copy of the lease did not ratify it because she had no reason to examine it). The cases Defendants rely upon, therefore, do not help them. In In re Americana Apparel, Inc., 55 B.R. 160 (E.D. Pa. 1985), the Court found that the objecting creditors had made "a showing of fraud, overreaching, inequitable conduct or, in some instances, the violation of the rules of fair play and good conscience by the claimant" and subordinated the claimant's claim to all of the debtors' claims. Id. at 162-63. The claimant had purported to hire himself as a consultant to the company in return for 3 1/2 % of the gross revenues. There, as here, the asserted "liability was not reflected on the debtor's financial statements as either a short or long term obligation and it was not listed on [the Company's] books as an account receivable." Id. at 162. In fact, this Court has previously cited Americana Apparel in a decision applying close scrutiny to an insider deal and requiring the insider to prove entire fairness. In re Inter-Island Vessel Co., 98 B.R. 606, 608 (Bankr. D. Mass. 1988) (disallowing insider notices based on application of rule applying strict scrutiny and requiring insiders to prove "inherent fairness and good faith"). As this Court then observed:

> This case clearly illustrates the need to place the burden of proof as to pre-petition acts of the debtor, to the extent permissible, on the insider. <u>The insiders are the people who were in the position to clearly document or obfuscate the debtor's pre-petition actions</u>. The reasons for obfuscation can be endless and can include insider theft, [and] incompetence . . . . This is especially true when the chief executive officer at the time denies any liability and the insider has no personal records of his financial relationship with the debtor. <u>The potential for fraud is just too great</u>.

Id. at 609 (emphasis added). See also Pepper v. Litton, 308 U.S. 295, 306-08 (1939) ("[A fiduciary's] dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to

5

show its inherent fairness from the viewpoint of the corporation and those interested therein."); Dzikowski v. Tri-O-Clean Sys. (In re Tri-O-Clean), 230 B.R. 192, (Bankr. S.D. Fla. 1998) (insiders must prove the bona fides of their claim "beyond cavil").[2]

    **C.    The Defendants Cannot Prove Entire Fairness.**

Even crediting Kagan's testimony, the Kagan Defendants cannot prove entire fairness with regard to the KDC Contract and the charges thereunder because there is no evidence they even knew their own claims sufficiently to meet their duty of full disclosure and fair dealing. Demoulas v. Demoulas Super Mkts., 424 Mass. 501, 531 (1997) ("to satisfy the duty of loyalty, a fiduciary wishing to engage in a self-dealing transaction must disclose details of the transaction and the conflict of interest to the corporate decisionmakers"); Estate of Johnson v. Rose, 2007 Mass. Super. LEXIS 184, at *114-15 (May 9, 2007) ("a fiduciary may demonstrate the fairness of a transaction by showing that he made a free and frank disclosure of <u>all the relevant information</u> he had, that the consideration was adequate, and that the principal had competent and independent advice before completing the transaction, considering the relative sophistication and bargaining power among the parties") (emphasis added). The Kagan Defendants must carry this burden by clear and convincing evidence. Estate of Johnson v. Melvin Rose, Inc., 2009 Mass. App. Unpub. LEXIS 1203, at *3 (Nov. 19, 2009).

---

[2] The other cases Defendants cite also state the principle that after the prima facie presumption is rebutted, they must prove entire fairness. In re Mobil Steel Co., 563 F.2d 692, 701 (5th Cir. 1977) ("an objection resting on equitable grounds cannot be merely formal, but rather must contain some substantial factual basis to support its allegation of impropriety"); Matter of Multiponics, 622 F.2d 709, 714 (5th Cir. 1980) ("As to the conduct of fiduciaries, special scrutiny must be given their dealings with the debtor"); In the Matter of Lemco Gypsum, Inc., 108 B.R. 831, 834 (S.D. Ga. 1988) (upon rebuttal, claimant must prove entire fairness).

6

Kagan's testimony that Filippov told him to sign the KDC Contract and that he gave Filippov a copy is a country mile from satisfying his obligation to prove by clear and convincing evidence that he fully and frankly informed Filippov and Lipetsker of all relevant information, which would necessarily include all the sums KDC would receive under the KDC Contract and how these charges affected the potential profit outcomes. Crediting for the purpose of summary judgment Kagan's vague (false and wildly implausible testimony) that he discussed cost overruns with the Plaintiffs as the Project proceeded, the undisputed facts still preclude any showing of entire fairness. <u>The undisputed facts, based on their written demand through Counsel compared to the June 22, 2015 Mechanic's Lien, are that the Kagan Defendants did not know within $1 million what the cost overruns were as of May 7, 2015 – more than one year after they claim Kagan substantially completed the homes and that the KDC charges were not included in that demand. There is, accordingly, absolutely no possibility that they can prove that they made disclosures to the Plaintiffs during the construction sufficient to satisfy entire fairness.</u>[3]

The KDC Proof of Claim also must fail based on the ProEx claim, which accounts for **$916,800** of the KDC charges. Kagan admits that he has no idea how much of this figure is profit, which ends up in his self-dealing pocket. He also cannot dispute that he never showed the ProEx Proposal to Filippov and Lipetsker. Where Kagan himself does not know how much of this sum would end up in his pocket, and cannot recall ever even showing the ProEx Proposal to Filipov and Lipetsker, he cannot conceivably have made a disclosures sufficient to carry his

---

[3] The Salmi Report is irrelevant to the analysis and raises no genuine issue of material fact. Salmi offers an opinion, based upon specifications he made up himself and upon a single 2018 bid for each component of the job, that an arms-length general contractor would have charged more for the construction. This opinion has no bearing on the arrangement between the Parties, Kagan's actual costs of construction, the disclosures he made to the Plaintiffs in connection with the retention of KDC and ProEx and the charges he purports to inflict on the LLC that are pure profit to him.

burden to prove entire fairness for a component of the claim totaling quite nearly $1 million. [4]

Puritan Medical Ctr., Inc. v. Cashman, 413 Mass. 167, 172 (1992) ("there may be no ratification of self-dealing without full disclosure" -- "No half-hearted disclosure or partial discovery is sufficient . . . . The trustee's duty of disclosure is not discharged by leaving the cestui to draw doubtful inferences, conclusions and suspicions . . . ."). Entire fairness includes all the self dealing charges; the KDC Proof of Claim must fail entirely along with the ProEx charges.

### III. KDC Cannot Use Equitable Claims to Avoid Entire Fairness.

KDC misquotes Meehan v. Shaughnessy, 404 Mass. 419 (1989) at page 15 of its brief when it asserts that Meehan provides for recovery of the value of a faithless fiduciary's services after a finding of breach of fiduciary duty. What the court actually says, including what KDC omits, makes a distinction between forfeiting compensation and being forced to repay previously received compensation:

> [Plaintiff] is correct in stating that a fiduciary "can be required to forfeit the right to retain or receive his compensation for conduct in violation of his fiduciary duties." . . . . [Plaintiff] fails to consider, however, that a fiduciary may be required "to repay only that portion of his compensation, if any, that was in excess of the worth of his services to his employer."

---

[4] Based on the work by Plaintiffs' Expert, Michael Goldman, Plaintiffs believe this figure includes **$571,465** in profit to ProEx. Pl. Opp. at 8. Here is Kagan's actual testimony about the ProEx Profit:
Q: Can you tell me within $50,000 how much profit was built into this proposal for Proexcavation?
A: I don't know right now.
Q: Do you have any kind of record anywhere that would show you how much profit was built into that Proexcavation proposal?
A: I don't know.
Q: Do you know of anyone who would know?
A: I don't.
Kagan Dep. at 262.

8

Id. at 440 (citations omitted); see also Tomsic v. Lautieri (In re Tri-Star Techs. Co.), 257 B.R. 629, 636 (Bankr. D. Mass. 2001) ("[t]his limitation stems from the premise that the forfeiture remedy is not a penalty but really reimbursement of payment for services not properly performed."); Ellis v. Varney, 2003 Mass. Super. LEXIS 479, at *134 (Jan. 9, 2004) ("While a fiduciary may be required to forfeit the right to retain or receive her compensation for conduct in violation of her fiduciary duties, she will generally be required to repay only that portion of her compensation, if any, that was in excess of the worth of her services.).  Plaintiffs do not contend that the Kagan Defendants must disgorge what they have already been paid.  Because the KDC Contract is void for lack of entire fairness, KDC forfeits all unpaid compensation in the Proof of Claim, regardless of the theory it asserts. Meehan, 404 Mass. at 440.

**IV.     Tatiana, KDC and ProEx are not agents of any Member of the LLC.**

Crediting Defendants' account, Tatiana was retained to act as the listing agent for the Debtor, KDC was (allegedly) retained as the general contractor by the Debtor, and ProEx was retained by KDC to do the site work.  None of them were agents for Kagan individually in his capacity as a member of the LLC.  If that were the case, he would pay them personally and the parties would not be having this dispute.  KDC asserts its claim against the Debtor.  Tatiana expected to be paid a commission by the Debtor (not the Managing Member).  ProEx was paid and allegedly is owed more money by KDC.  The Operating Agreement indemnification provision grants indemnification to the members of the LLC, so long as they are acting in good faith in the best interests of the LLC and do not engage in willful misconduct or gross negligence, and their agents.  Carnathan Aff. Ex. 1, § 10.2.  It would make no sense at all for the LLC to grant indemnification rights to every vendor it hires, thereby potentially having to pay

every vendor's attorney's fees in the event of a dispute. As a matter of law, Tatiana, KDC and ProEx have no claim for indemnification.

### V.     Lipetsker and Filippov Contacted Witnesses in this Case.

The Kagan Defendants offer no evidence, merely an assertion, that Lipetsker and Filippov "suborned perjury." Defendants Mem. at 17 ("Defendants also allege that Filippov actively encouraged Brusenkova to lie . . .") . The people that Lipetsker and Filippov allegedly contacted wrongfully are all witnesses in this case. Id. (Abramsky, Kayserman, Lande). The distinction that the Kagan Defendants purport to make – that the privilege applies only to counsel – is wrong. The cases extend it to investigators, and to clients too. Harihar v. United States Bank Nat'l Ass'n, 2017 U.S. Dist. LEXIS 50596, at *32-33 (D. Mass. Mar. 31, 2017) ("[u]nder Massachusetts law**, statements by a party**, counsel or witness in the institution of, or during the course of, a judicial proceeding are absolutely privileged provided such statements relate to that proceeding") (emphasis added); Taylor v. Swartwout, 429 F. Supp. 2d 209, 214-15 (D. Mass. 2009) (attorney's absolute litigation privilege applies to alleged actions by private investigators).

| | |
|---|---|
| LYMAN-CUTLER, LLC,<br>By its attorney, | ALEX FILIPPOV and<br>NICKOLAY LIPETSKER,<br>By their attorneys, |
| */s/ Peter Tamposi*<br>Peter N. Tamposi, BBO No. 639497<br>The Tamposi Law Group, P.C.<br>159 Main Street<br>Nashua, NH 03060<br>T: (603) 204-5513 | */s/ Sean T. Carnathan*<br>Sean T. Carnathan, BBO No. 636889<br>scarnathan@ocmlaw.net<br>Joseph P. Calandrelli, BBO No. 666128<br>jcalandrelli@ocmlaw.net<br>O'Connor, Carnathan and Mack, LLC<br>1 Van de Graaff Dr. Suite 104<br>Burlington, MA 01803<br>T:  781-359-9000 |

Dated:  December 17, 2018

Certificate of Service

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on December 17, 2018.

*/s/ Sean T. Carnathan*