UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | ) ) | Chapter 7 |
| | ) | No. 15-13881-FJB |
| LYMAN-CUTLER, LLC, | ) ) | |
| Debtor. | ) ) | |
| | | |
| | ) | |
| LYMAN-CUTLER, LLC, et al., | ) | |
| Plaintiffs, | ) | |
| Defendants in Counterclaim, | ) ) | Adv. Proc. No. 16-01120 |
| v. | ) ) | |
| VADIM KAGAN, et al. | ) ) | |
| Defendants, | ) | |
| Plaintiffs in Counterclaim. | ) ) | |

**REPLY TO OPPOSITION TO VADIM KAGAN'S, KAGAN DEVELOPMENT KDC, CORP.'S AND PROEXCAVATION CORP.'S MOTION FOR SUMMARY JUDGMENT**

There is an old adage which says, "If you don't have the law on your side, argue the facts. If you don't have the facts, argue the law. And, if you don't have either the law or the facts, pound your fist on the table." Plaintiffs' opposition falls into the last category. They largely ignore the arguments posed by defendants, and instead rely on disparaging remarks and unsubstantiated argument not based in facts, materially mis-citing the record and the law. Plaintiffs still have not come forward with any recoverable damages, continue in their inability to identify the specific transactions they allege are improper, and fail to establish any reliance on the acts or omissions of each defendant. Moreover, they continue to lump all the defendants together, without articulating what each allegedly did. See Rick v. Profit Mgmt. Ass., Inc., 241

F.Supp. 3d 215, 224 (D. Mass. 2017)("[W]here there are multiple defendants, the specific role of each must be alleged.")

I. PLAINTIFFS HAVE STILL NOT IDENTIFED THE FRAUDULENT TRANSACTIONS AT ISSUE.

Plaintiffs have now had over three years to investigate and pour over defendants' books. They have repeatedly assured both the defendants and this Court that after completion of discovery, they would identify the specific fraudulent transactions that caused them damage. They still have not done so, and now that they have failed, they argue they need not identify any fraudulent acts. The fact that they still can only speculate as to which transactions **might** be fraudulent, while simultaneously conceding that their questions may just as easily be a case of sloppy bookkeeping, is not enough to warrant a trial.[1] Worse still, the deposition transcript plaintiffs rely upon supposedly to refute the fact that they have no such evidence and spent no money in reliance on defendants' books and records, do no such thing. See Resp. to Fact Nos. 33 – 35, 37. The lack of any specificity, lack of any demonstrated reliance, and lack of compensable damages is fatal to plaintiffs' position.

Even accepting as true for purposes of this motion that fraudulent intent can be proven by circumstantial evidence, (Pl. Opp. at 4), plaintiffs still need to prove the other elements of the claim. "[T]o recover in an action for deceit, 'the plaintiff must prove "that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to [its] damage.'" Totalizing Sys. v. PepsiCo, Inc., 29 Mass. App. Ct. 424 , 431 (1990), citing, Danca v. Taunton Sav. Bank, 385 Mass. 1 (1982) (citations omitted). Fraud cannot be based entirely on speculation and innuendo, yet speculation and innuendo is exactly what the

---

[1] Defendants incorporate by reference their motion in limine to strike the expert report and testimony by Michael Goldman.

2

plaintiffs' claims still are based upon: smoke and mirrors. See Children's Hosp. Corp. v. George Wash. Univ., 750 F. Supp. 2d 239, 251-52 (D. Mass. 2010) (granting summary judgment on fraud claim where plaintiff failed to adduce any evidence beyond "simple speculation" regarding falsity of alleged misrepresentation).

Plaintiffs' various theories are incompatible and demonstrate the lack of merit to the action. First, they argue that Kagan misrepresented the construction costs when he initially met with them, i.e. fraudulent inducement. (Pl. Opp. at 4-5). However, they have not pled fraudulent inducement nor sought rescission of the Operating Agreement. Rather, the entire complaint is predicated on there being a valid and enforceable agreement between the parties. And, if their claims are based on fraudulent inducement by Kagan, the claims against ProExcavation and KDC must be dismissed as they had no involvement with the pre-project discussions.

Next, they argue that the construction contract was a fixed price contract. However, if that is their claim, then there would be no obligation whatsoever to account for anything – regardless of the actual cost, the price was fixed – and defendants' failure to keep a proper accounting, even if true (which is denied), cannot possibly be actionable.

Now, plaintiffs seem to abandon those theories and base everything on a cost plus contract, while simultaneously denying that there was any contract with KDC. (See Resp. to Fact No. 84). In fact, plaintiffs aver that "KDC provided no services whatsoever." (Response to Fact No. 6). If that's their position, how can they possibly claim that KDC owed them a duty or did anything wrong? Plaintiffs' fluid and inconsistent positions highlight why summary judgment is appropriate for defendants.

II.     RELIANCE IS AN ELEMENT OF FRAUD AND FRAUD BASED CLAIMS.

Plaintiffs, once again, try to rewrite established jurisprudence. Recognizing that they have failed to establish reliance on any act or omission of KDC or ProExcavation, or even Kagan (other than his supposed initial representation as to anticipated construction costs which they seem to have now abandoned), plaintiffs make the incredible claim that they do not have to prove reliance to recover for fraud. (Pl. Opp. at 11-12). Not one of the cases cited supports this position. McClellan v. Cantrell, 217 F.3d 890 (7th Cir. 2000), In re Lawson, 791 F.3d 214 (1st Cir. 2015) and Bailey v. Community Bank of Homewood-Flossmoor, 145 B.R. 919 (Bankr. N.D. Ill. 1992) were all cases discussing the fraud exception to a discharge under 11 U.S.C, §523(a)(2) where reliance is not a required element of the statute. None of these cases discussed the elements of the tort of fraud. In re Maher, 144 F. 503 (D. Mass. 1906) also discussed fraud in the context of dischargeability of a debt. Cordeck Sales, Inc. v. Construction Systems, Inc., 382 Ill. App. 3d 334 (Ill. App. Ct. 2008) was a case interpreting constructive fraud under the Illinois mechanics lien statute which also has nothing to do with the tort of fraud.

It is blackletter law that reliance is an element of fraud. See Sebago, Inc. v. Beazer E., Inc., 18 F. Supp. 2d 70, 95 (D. Mass. 1998) (plaintiff must "plead reliance with particularity."); Collins v. Huculak, 57 Mass. App. Ct. 387, 389 (2003) (fraud claim failed because could not establish justifiable reliance). Plaintiffs' failure to plead reliance, much less come forward with any evidence thereof, is fatal to all the fraud based claims. See Davis v. Dawson, Inc., 15 F. Supp. 2d 64, 142-43 (D. Mass. 1998) (granting summary judgment where plaintiff failed to provide evidence of reliance and damages).

III.     PLAINTIFFS MUST COME FORWARD WITH FACTS TO ESTABLISH THAT DEFENDANTS' CONDUCT "CAUSED" DAMAGES.

Plaintiffs argue that causation is a fact question for resolution at trial. (Pl. Opp. at 15). This presupposes that that there are facts that tie the alleged damages to conduct by the defendants. As argued in defendants' opening brief and motions in limine, plaintiffs have failed to connect the dots between their alleged damages and defendants' alleged conduct.

    a.   Plaintiffs' Claim For A 5% Return On Their Investment Fails.

Plaintiffs seek a 5% return on their investment, notwithstanding that they affirmatively testified that they were not guaranteed any rate of return.[2] As set forth in their interrogatory responses, plaintiffs erroneously claimed that the 5% return was based on Section 8.2 of the Operating Agreement. (Def. Memo at 16-18). In their opposition, plaintiffs abandon their reliance on Section 8.2. Instead, they now argue that they are entitled to a 5% return because "[a] 5% interest rate makes perfect sense…" (Pl. Opp. at 18). This is not a legal theory. No expert has been put forward to opine that but for defendants' conduct the properties would have sold for X, which would have generated a return of Y, which if invested properly would have resulted in a 5% return totaling Z. Therefore this damage claim fails.

    b.   Debtor Is Not Entitled To An Affirmative Recovery For Costs Incurred By The Chapter 7 Trustee As A Result Of Its Decision To File A Voluntary Petition For Bankruptcy.

Filippov, with the acquiescence of Lipetsker, made the decision to file a voluntary Chapter 11 petition. He did this without calling for a vote or consulting with Kagan. None of the plaintiffs objected to the Trustee's motion to convert the case to a Chapter 7. The Chapter 7 Trustee incurred certain administrative costs and will be entitled to a commission. The Debtor now seeks to have the defendants reimburse the estate for those costs. There is nothing in the

---

[2] Plaintiffs do not dispute the fact that there was no guaranteed rate of return. See Resp. to Fact No. 59)

5

Bankruptcy Code or the Rules that permits such a recovery.   In contrast, were this an involuntary petition and the Court ultimately determined that the creditors who involuntarily petitioned the Debtor into bankruptcy could not make the necessary showing to support their petition, the Court could dismiss it and order an award of fees and costs.   11 U.S.C., §303(i).  There is no similar provision when a **voluntary** petition is filed by the principals of the Debtor.

The cases cited by plaintiffs provide no support.  Primavera Familienstiftung v. Askin, 130 F.Supp. 2d 450 (S.D.N.Y 2001) was a securities fraud action arising out of a failed hedge fund.  Among the claims filed, two brokers alleged breach of contract as a result of wrongful margin calls for which they had to liquidate certain stock portfolios.  In the short discussion of that single count, the issue was whether the brokers should be estopped from recovering "liquidation" damages because in their interrogatories they claimed that they were seeking "bankruptcy" costs.  The Court did not discuss whether bankruptcy costs were recoverable in a voluntary bankruptcy, and this was not a bankruptcy decision.  It merely determined that the brokers were not estopped by their interrogatory responses from recovering "liquidation" damages.  Id. at 534-35.

Lambert v. Weyerhaeuser Co., 324 B.R. 829 (Bankr. N.D. Ga. 2005) involved breach of warranties in an asset purchase agreement and a related intellectual property agreement.  As a result of the breach of warranties, a state court judgment entered against the eventual debtor and an injunction issued precluding it from using the patented assets.  This led to the filing of a Chapter 11 bankruptcy.  As part of their damages, the Debtor sought to recover administrative and professional fees incurred in the operation of the debtor-in-possession. That is a markedly different scenario than the instant matter and provides no support for the Debtor's claim.

6

Plaintiffs unilaterally made a decision to file a voluntary petition so as to avoid their obligations to dissolve (OA, §2.3), pay carrying costs (OA, §8.1) and liquidate (OA, §§9.1, 9.2). Having made that voluntary election, they cannot now be heard to complain about statutory costs attendant to their unilateral decision.

    c.    Filippov's Obligation To Pay Carrying Costs Is Required By The Operating Agreement, And He Is Bound By Its Terms.

Plaintiffs ignore the fact that KDC paid carrying costs throughout the project notwithstanding that it was the Debtor's obligation. Plaintiffs now want a windfall. As argued in defendants' opening brief (pages 16-17), the Operating Agreement obligates Filippov to pay carrying costs if Kagan does not do so and sets forth the agreed upon financial repercussions if that occurs, which Filippov has claimed. (OA, §8.1). Filippov cannot simultaneously reclassify those same costs as damages. Plaintiffs' opposition simply does not address this argument.

    d.    Damages Caused By Diminution In Value Of Property.

As set forth in the motion in limine to exclude Mr. Fennell's testimony, there are no facts established to make the causal connection between defendants' claims for additional monies and the inability to sell the properties for more money. Nothing in the opposition contests this.

IV.    PLAINTIFFS' CONCESSION THAT COUNT VII CAN BE DISMISSED IS INDICATIVE OF PLAINTIFFS' TACTIC TO MAKE WILD ACCUSATIONS WITHOUT ANY BASIS IN FACT. PLAINTIFFS SHOULD BE SANCTIONED.

Count VII alleged breach of the KDC contract by failing to construct in a good and workmanlike manner. Plaintiffs pled that KDC had a contract. See Amd. Cmp., ¶78 ("The Company entered into a contract with Defendant KDC…"). Filippov, testifying as the Debtor representative and individually, affirmed that the allegations in the complaint were true. (Filippov dep. at 124). Now, having forced defendants to waste money on discovery and motion practice on Count VII, and recognizing that to support their other claims they have to now

7

dispute that there was a KDC contract, plaintiffs magnanimously agree to the dismissal of that count. Contrary to Filippov's affirming testimony, plaintiffs now reverse and claim that "the existence of any contract is vigorously disputed." (Resp. to Fact No. 84). They go even further, stating that "KDC provided no services whatsoever." (Resp. to Fact No. 6). As such, the only possible conclusion is that Count VII was frivolous as is every other count based on KDC's performance on this project.

Any defense based on the position that the KDC contract is not an operative agreement should be precluded as contrary to the sworn deposition testimony by Filippov. Any claim that KDC had any obligation to account for anything to plaintiffs should similarly be rejected. If KDC provided no services, how can it be liable for failing to properly account for anything? At a minimum, plaintiffs should be sanctioned through an award of attorneys' fees for the waste of money defendants incurred in having to deal with this frivolous claim. Fed. R. Civ. P. 11(c).

V.     THERE IS NO EVIDENCE OF A "FORGED" CONTRACT BY KDC.

Plaintiffs claim that the KDC contract is "forged." (Pl. Opp. at 8-9). There is no evidence whatsoever that Kagan did not sign that contract. In fact, plaintiffs' claims are predicated on the fact that he did sign it. According to plaintiffs, the metadata shows that the document was created in June 2013, just before it was signed, and last printed off in June 2015. So? Their conclusion as to what the metadata shows assumes that plaintiffs have any understanding as to what the metadata demonstrates (they don't), and there is no expert to testify as to the conclusions to be drawn from metadata.

VI.    PLAINTIFFS DID NOT OBJECT TO PROOF OF CLAIM NO. 4

KDC filed two proofs of claim. One was for recovery of construction costs under the construction contract. (Claim No. 1). The other was for indemnity under the Operating Agreement. (Claim No. 4). Plaintiffs' objected to Claim No. 1. That objection addressed only

KDC's claim for recovery of construction costs. It did not mention the indemnity claim or address any aspect of that claim. Plaintiffs' sole argument that they timely objected to Claim No. 4 is that the Court docket incorrectly referenced their objection as applying to both Claims 1 and 4. (Docket No. 116). However, a simple review of that objection shows that it has nothing to do with the indemnity claim. The plaintiffs failed to object to Claim No. 4 and it should be allowed.

Defendants moved to dismiss plaintiffs' original objection referring to it in their motion, correctly, as being an objection to Claim No. 1. (Docket No. 125). The Court dismissed the Debtor's objection, and allowed Lipetsker and Filippov to file a new objection. (Docket No. 131). Lipetsker and Filippov filed a new objection (Docket No. 139, Perten 3d Aff., Exh. 1). This time the docket accurately identifies the filing as "Verified Objection to Claim 1 of Claimant Kagan Development KDC Corp." See also Docket No. 176.

In an abundance of caution, lest it be considered a compulsory counterclaim, KDC also plead the indemnity as part of its counterclaim, specifically noting that this was duplicative of Claim No. 4. This did not restart the clock running. Plaintiffs ignored the deadline for opposing KDC's proof of claim No. 4. Therefore, it should be allowed. See 11 U.S.C, §502(a)(a claim not objected to shall be allowed).

VII.     PLAINTIFFS' SMEAR CAMPAIGN HAS NO PLACE IN THIS LITIGATION.

The issue on summary judgment is not credibility, but facts. Facts alleged must be admissible. Fed. R. Civ. P. 56(a)(2). Plaintiffs' gleefully impugn the character of Joseph Cohen, a consultant for KDC, whose only involvement was drafting the KDC contract prior to commencement of construction and drafting the mechanics lien form after the project was complete. During the project, he had no role whatsoever. Over ten years ago, Mr. Cohen was convicted of financial crimes arising out of a highly contested divorce proceeding. This "fact"

9

has nothing to do with the liability issues in this action.  Rule 404(b)(1) of the Federal Rules of Evidence precludes the use of a criminal conviction to impugn a witnesses' character.  Rule 609(b)(1) precludes evidence of a criminal conviction on cross-examination where the conviction is more than ten years old, unless there is a showing that the probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect."  No such showing has been made– this is just gratuitous public disparagement which has no place in these papers.[3]

VIII. **PLAINTIFFS' RESPONSE TO DEFENDANTS' CONCISE STATEMENT OF FACTS IS REPLETE WITH ARGUMENT AND FALSE DISPUTES.**

Perhaps in an effort to do an "end run" around the page limitations imposed by this Court, plaintiffs use their response to defendants' statement of facts to fill the record with additional argument.  For example, in response to Fact No. 15, plaintiffs rambled on for six pages!  The Response to Fact No. 33 rambles on for four pages.  Even facts that are "undisputed" have additional commentary that is wholly unnecessary and interposed solely to run up fees and muddy the waters.  See, e.g., Resp. to Fact Nos. 8, 10,11, 17, 18, 20, 51, 57.  All the extraneous argument should be stricken.

Dated:  December 17, 2018            VADIM KAGAN, ET AL.

By their attorneys,

/s/ John H. Perten, Esq.
John H. Perten (BBO# 548728)
James P. Harris (BBO # 678283)
SHEEHAN PHINNEY BASS & GREEN, P.A.
255 State Street, Fifth Floor
Boston, MA 02109
(617) 897-5600
 jperten@sheehan.com

---

[3] This Court should also strike Exhibits 3-7, and 34 of the December 7, 2018 Affidavit of Sean T. Carnathan as they have no place in this record and are included to antagonize only.