UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Chapter 7 No. 15-13881-FJB |
| LYMAN-CUTLER, LLC, | ) ) | |
| Debtor. | ) ) ) | |
| | | |
| LYMAN-CUTLER, LLC, et al., Plaintiffs, Defendants in Counterclaim, v. VADIM KAGAN, et al. Defendants, Plaintiffs in Counterclaim. | ) ) ) ) ) ) ) ) ) ) ) ) | Adv. Proc. No. 16-01120 |

**REPLY TO OPPOSITION TO TATIANA KAGAN'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Tatiana Kagan's ("Tatiana") motion argues that there is virtually no evidence that ties her to the alleged transgressions by her husband, Vadim Kagan, and that there are no damages causally related to any act or omission by her. In their opposition, plaintiffs essentially concede these allegations. Instead of coming forward with specific facts to refute those set forth by Tatiana, they simply repeat, over and over again, that Tatiana is jointly liable for everything notwithstanding the complete lack of any evidence of malfeasance by her. The Plaintiffs seem to believe that if they say something often enough, it will create a fact question. It does not.

<u>PLAINTIFFS' RENDITION OF THE FACTS</u>

Plaintiffs' description of the "facts" relating to the execution of the listing agreements focuses exclusively on what Kagan, not Tatiana, said or did. (Pl. Memo at 3-4). Assuming,

*arguendo*, that plaintiffs' rendition is accurate, that still has nothing to do with Tatiana. As argued in her summary judgment motion, to support their claims, plaintiffs must come forward with specific facts demonstrating that Tatiana had some active role in the construction project and its billing. After three years of litigation, plaintiffs still are unable to point to anything.

As this Court knows, Kagan sometimes has outside investors finance projects, and sometimes does the projects himself without outside investment. Plaintiffs cite prominently to Tatiana's deposition testimony about when she might waive a commission. (Opp. at 5). As noted, at her deposition, Tatiana was asked about circumstances when she might waive a commission "for a property you sold **for your husband.**" (Tatiana dep. at 61). The properties at issue in this litigation are not properties that were being sold for her husband but rather for Lyman-Cutler. Tatiana answered, clearly, that when her husband is the seller, she allows her husband to determine whether to waive her commission: "If it is **his** house, yes." (Id.)(Emphasis added). Consistently, she testified that Century 21 did not object if she waived her commission "for one of [her] husband's projects." (Id. at 59). She then drew a distinction regarding how it would be handled if "If it is **somebody else's house**…" (Id.)(Emphasis added). How this testimony is damning or even relevant to the allegations in the complaint remains a mystery. Immediately after the portion of her testimony cited in plaintiffs' memorandum, (Pl. Opp. at 5), Tatiana was asked who would make decisions on properties, such as the ones at issue in this litigation, where Kagan was only a part owner. She answered "I wouldn't know. I'm not involved in those agreements, conversations, financial part is not my thing." (Tatiana dep. at 61-62).

From this innocuous testimony, plaintiffs then conclude that because "Tatiana has explicitly testified that she would do whatever Kagan told her to do with regard to her listings, it

2

necessarily follows that she contributed to the conspiracy of the Defendants in exactly the way the Plaintiffs alleged." (Pl. Opp. at 5). Tatiana is at a loss to see where she testified to this fact "explicitly" or how the fact that she sometimes waives commissions for her husband's projects gets translated to the conclusion "that it necessarily follows" that she is part of a conspiracy to defraud on the Lyman-Cutler project. Even if relevant, and it is not, there is no support in the record for this "fact."

Plaintiffs then criticize Tatiana's efforts at marketing, without any expert testimony to back up this criticism nor any causal connection between her efforts and the lack of a sale. (Pl. Opp. at 6). And, as to the alleged failure to convey a potential "offer" mentioned by another broker in a phone conference which figures prominently in plaintiffs' complaint, plaintiffs make no effort whatsoever to refute the fact that there never was a written offer and an oral offer is not binding. Nor have plaintiffs provided any law, rule or standard which would have obligated Tatiana to report every telephone conference with potential offerors prior to receipt of a written offer. (Id.). Finally, plaintiffs have not claimed any damages relating to this supposed offer leaving Tatiana to wonder why this "fact" is even relevant to this dispute.

## REPLY TO PLAINTIFFS' ARGUMENTS

1. JOINT AND SEVERAL LIABILITY.

Plaintiffs provide no argument as to why Tatiana should be held jointly and severally liable, other than to simply repeat their mantra that she aided and abetted her husband's breach of fiduciary duty, contributed to a conspiracy and violated Chapter 93A. (Pl. Memo at 7-8). Facts, not conclusions, are what is needed to defeat summary judgment. Other than the quoted testimony about when she might waive a commission, which is irrelevant and, as noted above, incomplete, plaintiffs have no facts.

3

2. RATIFICATION OF THE LISTING AGREEMENTS.

Plaintiffs simply repeat their conclusion that there was no ratification of the listing agreements. (Pl. Opp. at 8-9). The fact remains undisputed that plaintiffs did not object to the payment of a commission to Century 21 pursuant to the very listing agreement plaintiff now claims is fraudulent when the Trustee moved to sell the properties. And, the failure to object to a free and clear sale, despite notice, constitutes consent to the sale order together with the payment of commission under the listing agreement. See BAC Home Loans Servicing LP v. Grassi (In re Grassi), No. EP 11-010, 2011 Bankr. LEXIS 4362, at *14-16 (B.A.P. 1st Cir. Nov. 21, 2011) (a failure to object to a free and clear sale, despite notice, constitutes consent to the sale order and its provisions. ); see also In re Vista Mktg. Grp. Ltd., No. 12-B-83168, 2014 Bankr. LEXIS 1441, at *12-13 (Bankr. N.D. Ill. Mar. 28, 2014) ("[L]ack of objection (provided of course there is notice) counts as consent." (quotation marks omitted), citing, FutureSource LLC v. Reuters Ltd., 312 F.3d 281, 285 (7th Cir. 2002)). Regardless of whether there was a ratification of the listing agreements, there still are no facts that tie Tatiana into the nefarious conspiracy that has been alleged. Even if there was a fact question about ratification, Tatiana is still entitled to summary judgment as there is nothing in the record that ties her to Kagan's alleged transgressions.

In response to Tatiana's argument that there is no expert testimony establishing that an 18 month listing agreement is contrary to industry norms, the best plaintiffs can offer is a footnote that "it is common knowledge" that an 18 month listing term is excessive. Actually, it is not "common knowledge" and certainly not simply because counsel says it is. At her deposition, Tatiana was asked about the 18 month term and why it was, according to plaintiffs' counsel, three times the industry standard. Tatiana replied, "There is no such thing as an agency standard.

4

It is whatever the market determines at the time of sale." (Tatiana dep. at 37). This testimony remains unrefuted.

3. TATIANA HAS NO CONNECTION TO THE ALLEGED "EXTORTION SCHEME."

Plaintiffs now, finally, disclose their theory of damages which has nothing to do with any monies spent on construction or anything to do with fraudulent billing. They state: if the defendants (collectively) "had not engaged in their unfair, fraudulent scheme to extort large payments from the LLC to which they were not entitled, the Properties could have been [sold] in the ordinary course for more money." (Pl. Opp. at 9). Whether this is a legitimate theory or not, and Tatiana does not accept it as true, there are still no facts connecting Tatiana to the alleged extortion. The record fails to establish that Tatiana had any role in the construction or billing of the project and the repeated use of the word "defendants" does not overcome the lack of specific facts attributable to Tatiana. See Rick v. Profit Mgmt. Ass., Inc., 241 F.Supp. 3d 215, 224 (D. Mass. 2017)("[W]here there are multiple defendants, the specific role of each must be alleged."). As such, she is entitled to summary judgment.

4. TATIANA IS NOT RESPONSIBLE FOR HER "PERSONAL CONTRIBUTION" TO THE EXTORTIONATE SCHEME.

Plaintiffs simply make the statement that Tatiana is "liable for her personal contribution to the extortionate scheme." (Pl. Memo at 10). Tatiana is not sure how to respond to this conclusory statement as she does not know what "personal contribution" plaintiffs are referencing and plaintiffs do nothing to enlighten her. Again, plaintiffs identify no facts whatsoever, to support their conclusion that she "contributed" to the extortion allegedly perpetrated by Kagan, KDC and ProExcavation. Tatiana is entitled to summary judgment.

5. <u>INCORPORATION BY REFERENCE OF THE ARGUMENTS AGAINST KAGAN, KDC AND PROEXCAVATION ADDS NOTHING WITHOUT SOME FACTS TYING TATIANA TO THEIR ALLEGED MISCONDUCT.</u>

Plaintiffs are disingenuous. They have no facts to support their claims against Tatiana and believe that they can "pull the wool over" the court's eyes simply by incorporating their positions as to the other defendants. That does not work, however.

As to the claim of fraud, it remains unrefuted that plaintiffs have no evidence of fraud by Tatiana as to the listing agreements or that she had any role whatsoever in the construction or alleged billing irregularities by KDC. There also remains the irrefutable fact that nowhere in the record is there any allegation of reliance on anything Tatiana did or did not do. This is fatal to the fraud and fraud related claims. <u>Collins v. Huculak</u>, 57 Mass. App. Ct. 387, 389 (2003) (fraud claim failed because could not establish justifiable reliance). Plaintiffs' failure to plead reliance on Tatiana's acts, much less come forward with any evidence thereof, is fatal to all the fraud based claims against her. <u>See</u> <u>Davis v. Dawson, Inc.</u>, 15 F. Supp. 2d 64, 142-43 (D. Mass. 1998) (granting summary judgment where plaintiff failed to provide evidence of reliance and damages).

As to the conspiracy claim, it is shocking that in response to the motion to dismiss the complaint filed a year ago (Docket No. 72), plaintiffs made no claim that there was a conspiracy based on coercion. <u>See</u> Omnibus Opposition at 23. Now, suddenly, plaintiffs claim that Tatiana somehow held some peculiar act of coercion over them, an allegation that makes no sense and which Tatiana cannot parse out from reading the opposing brief. Even more shocking, this is directly contrary to the sworn interrogatory responses cited in Tatiana's brief. As such, this new position should be disregarded. As plaintiffs explain it, because Tatiana "had control over the listing agreements and whether or not they would be enforced, she provided another source of

6

coercive leverage to the other defendants. (Pl. Opp. at 11). Not only is this nonsensical, where in the record is there any support for the claim that she had control over the Century 21 listing agreements? The short answer is there is **no** support for this allegation. It is yet another argument invented out of thin air. As to the other type of conspiracy akin to acting pursuant to a common design, once again plaintiffs fail to enlighten just how Tatiana provided "substantial assistance" in favor of the common design. (Pl. Opp. at 11-12). Merely repeating the "buzz words" does not make them true or defeat summary judgment.

This same undefined "substantial assistance" provides no support for the allegation of aiding and abetting a breach of fiduciary duty. (Pl. Opp. at 12). According to plaintiffs, "[t]he evidence clearly supports a finding that Tatiana gave substantial assistance." (Id.). It would indeed be helpful to know what that evidence is, because there is nothing in the record. Apparently, the best that can be offered is that it is based on "fair inferences" from her "undisputed conduct," which conduct remains unidentified, "from Filippov's testimony," which also remains unidentified, "from status as Kagan's wife," irrelevant, and her status as an officer/director of KDC and ProExcavation, though there is no evidence that she personally participated in any part of KDC's or ProExcavation's alleged transgressions. (Id.). The lack of any specificity and the absence of any facts, speaks volumes.

As to the Chapter 93A claim, plaintiffs claim that the "evidence is that she knowingly asserted two listing agreements at her husband's direction." (Id.). As to where that "evidence" that she did anything at her husband's direction is, especially as the listing agreements were not signed not by her but by a manager of Century 21, we are left to speculate. The fact that she stood to make a commission, but did not as a result of plaintiffs' conduct, changes nothing.

7

6. **TATIANA IS ENTITLED TO INDEMNITY UNDER SECTION 10.2 OF THE OPERATING AGREEMENT.**

Plaintiffs offer nothing but a circular argument that because they have concluded that Tatiana was working for the LLC but not for a member, she is not covered by the Operating Agreement. Tatiana notes how odd it is that when convenient, Tatiana is joined at the hip with her husband and acting in concert with him. But, when it is inconvenient, suddenly she has nothing to do with her husband and was acting solely for the benefit of the LLC. Plaintiffs really need to decide which case they are planning to try. They can't try both.

As to the allegation that Tatiana acted with gross negligence or willful misconduct such that she is not covered by the indemnity clause, Plaintiffs provide no facts to support those conclusions.

7. **PLAINTIFFS' RESPONSE TO TATIANA'S CONCISE STATEMENT OF MATERIAL FACTS IS MOSTLY INADMISSIBLE ARGUMENT AND, IN FACT, DOES NOT DISPUTE ANYTHING PERTINENT.**

Plaintiffs are wasting everyone's time and resources in responding to Tatiana's statement of material facts as it is replete with argument and not countervailing facts. Nearly all of the facts that plaintiffs "dispute" (which are actually very few) rely on their response to Fact No. 4 which averred that Tatiana had nothing to do with the construction of the project. Plaintiffs devote two pages to argue that because she could waive her commission on her husband's projects, she must have had something to do with construction of the Lyman-Cutler project. Not only is this not what she testified to, that is hardly a "concise" response. Argument has no place in their response. For the reasons set forth above, the whole discussion about when she might waive a commission is irrelevant. See Response to Fact Nos. 30, 31, 32, 33, 57, 59 all of which incorporate the arguments purporting to be a response to Fact No. 4.

8. PLAINTIFFS' EQUITABLE SUBORDINATION CLAIM IS MERITLESS.

Equitable subordination is a remedy in which the order of payment rather than the existence of the debt is at issue. It is not an affirmative claim for recovery. Under Section 510(c) of the Bankruptcy Code, allowed claims may be subordinated to allowed claims, but allowed claims may not be subordinated to interests. 11 U.S.C. §510(c); see also Shubert v. Lucent Techs. Inc. (In re Winstar Communications, Inc.), 554 F.3d 382, 414 (3d Cir. 2009)("a creditor's claim can be subordinated only to the claims of other creditors, not equity interests"); Adelphia Recovery Trust v. Bank of America, N.A., 390 B.R. 80, 99 (S.D.N.Y. 2008)("a given claim may not be subordinated to an equity interest, but only to another claim").

The deadline for filing claims in the Debtor's case was May 3, 2016. Filippov and Lipetsker filed proofs of interest. However, Lipetsker did not file a proof of claim and Filippov only filed a late claim for a purported mortgage in the amount of $208,333. [Claim No. 9] against which an objection has been filed. [Docket No. 167]. Given that Lipetsker did not file a claim and Filippov's late-filed claim is the subject of an objection, neither Lipetsker nor Filippov have standing to assert equitable subordination claims, and the suggestion that the Defendants' claims could be equitably subordinated to their interests is not authorized by Section 510(c). Additionally, to the extent the equitable subordination claim is based on the unsubstantiated allegations of fraud, there is no basis for equitable subordination in any event. Finally, even if equitable subordination was appropriate (it is not), since the estate has more than $3 million dollars to distribute for the payment of allowed claims, any re-ordering of the payment of such claims is likely a meaningless exercise.

## CONCLUSION

For the reasons set forth in Tatiana's motion for summary judgment and supporting memoranda and documents, her motion should be allowed.

                TATIANA KAGAN,

                By her attorneys,

                /s/ John H. Perten, Esq.
                John H. Perten (BBO# 548728)
                James P. Harris (BBO # 678283)
                SHEEHAN PHINNEY BASS & GREEN, P.A.
                255 State Street, Fifth Floor
                Boston, MA 02109
                (617) 897-5600
                jperten@sheehan.com

Dated:  December 17, 2018