UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>LYMAN-CUTLER, LLC,<br><br>Debtor. | Chapter 7<br>No. 15-13881-FJB |
| LYMAN-CUTLER, LLC, et al.,<br>  Plaintiffs,<br>  Defendants in Counterclaim,<br><br>v.<br><br>VADIM KAGAN, et al.<br>  Defendants,<br>  Plaintiffs in Counterclaim. | Adv. Proc. No. 16-01120 |

## DEFENDANTS' MOTION TO STRIKE CERTIFICATION OF WILLIAM HARTZELL

Plaintiffs attempt to evade expert disclosure and authentication requirements in their effort to admit their analysis of metadata associated with an exhibit, Plaintiffs' Exhibit 65. The Rules do not permit the type of end-run attempted by Plaintiffs.

Attendant to Plaintiffs' Exhibit 65, Plaintiffs include a report created by William Hartzell, a paralegal in the office of Plaintiffs' counsel. A copy of the report Mr. Hartzell prepared is attached hereto as **Exhibit A**. Plaintiffs attempt to self-authenticate the report by a certification Mr. Hartzell authored, a copy of which is attached as **Exhibit B**. Mr. Hartzell's report, Exhibit A, purports to reflect his analysis of metadata Mr. Hartzell mined from the native version of a Microsoft Word document produced by Defendants. Analysis such as the type Mr. Hartzell performed is outside the ken of an average finder of fact and therefore requires expert testimony. *Pearson v. U.S. Bank Nat'l Ass'n*, No. 13-889 (MJD/JSM), 2014 U.S. Dist. LEXIS 116533, at

*43-44 (D. Minn. Aug. 21, 2014) ("Plaintiff's attorney's opinion testimony about the document's metadata is not competent expert testimony and is inadmissible."); *Coquina Invs. v. Rothstein*, No. 10-60786, 2011 U.S. Dist. LEXIS 120267, at *17 (S.D. Fla. Oct. 18, 2011) (allowing the opinions of a digital forensics expert, qualified to provide opinions as to metadata analysis).

Unfortunately, Plaintiffs never disclosed Mr. Hartzell, or anyone else for that matter, as an expert to opine as to mining, collecting or analyzing metadata. Even so, Mr. Hartzell lacks the qualifications to serve as an expert, as his Certification, Exhibit B, reveals his formal training is limited to CLE's he attended. Nevertheless, Mr. Hartzell attempts to offer substantive information beyond the ken of an average finder of fact in his report of the metadata. Because Plaintiffs did not disclose a qualified expert in accordance with the Court's order to do so, Plaintiffs should not be permitted to present expert testimony through Mr. Hartzell. *Pena-Crespo v. Puerto Rico*, 408 F.3d 10 (1st Cir. 2005) (untimely disclosure lead to exclusion of expert).

Aside from failing to comply with the discovery deadlines, Plaintiffs also fail to satisfy the authentication requirements necessary for the admissibility of the report analyzing metadata. In Mr. Hartzell's Certification, Exhibit B, Plaintiffs attempt to invoke Fed. R. Evid. 902(13), which reads:

> The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted: **(13) Certified Records Generated by an Electronic Process or System.** A record generated by an electronic process or system that produces an accurate result, as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12). The proponent must also meet the notice requirements of Rule 902(11).

Fed. R. Evid. 902(11), in turn, reads:

> **Certified Domestic Records of a Regularly Conducted Activity.**
> The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of

2

the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court. Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record — and must make the record and certification available for inspection — so that the party has a fair opportunity to challenge them.

Fed. R. Evid. 803(6)(A)-(C) then requires:

**(6) Records of a Regularly Conducted Activity.** A record of an act, event, condition, opinion, or diagnosis if:

**(A)** the record was made at or near the time by — or from information transmitted by — someone with knowledge;

**(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

**(C)** making the record was a regular practice of that activity; …

The "record" Plaintiffs seek to admit via Mr. Hartzell's certification is a printout of metadata he created while analyzing Plaintiff's Exhibit 65. Creating records of metadata is not part of the regularly conducted business of the law firm, Mr. Hartzell's employer. This "record" was created especially by Mr. Hartzell for purposes of this litigation. In other words, the law firm is not in the business of analyzing metadata and generating these types of reports. This "record" is not an invoice or other similar document the firm regularly generates. This "record" is a part of the firm's advocacy on behalf of its clients. As such, it lacks the kind of inherent reliability that allows for authentication through a certification. As the Committee Notes to Fed. R. Evid. 902 (13) indicate, "If the certification provides information that would be insufficient to authenticate the record if the certifying person testified, then authenticity is not established under this Rule."

Not only did Plaintiffs fail to disclose an expert as required by the Court's order, but they also failed to provide timely notice of their intention to rely upon a certification under Fed. R. Evid. 902 (13). They did not provide Mr. Hartzell's certification until Thursday, May 2, 2019,

3

just two business days before the commencement of trial. This late disclosure deprived Defendants of the opportunity to counter the report, and is contrary to what the drafters of the Rule intended. *See Secure Energy, Inc. v. Coal Synthetics*, No. 4:08CV01719 JCH, 2010 U.S. Dist. LEXIS 13532, at *14 (E.D. Mo. Feb. 17, 2010) ("Given that expert testimony may be required regarding the retrieval and interpretation of the metadata from the .dwg files, the Court finds that Defendants would be prejudiced by their late production."). The Committee Notes state: "A challenge to the authenticity of electronic evidence may require technical information about the system or process at issue, including possibly retaining a forensic technical expert; such factors will affect whether the opponent has a fair opportunity to challenge the evidence given the notice provided."

Federal R. Evid. 902 (13) was adopted in 2017, so there is little case law interpreting it, but one case confirms that Mr. Hartzell's certification fails to satisfy the requirements of the Rule. In *Bradley La Force v. GoSmith, Inc.*, No. 17-cv-05101-YGR, 2017 U.S. Dist. LEXIS 204500, at *8-9 (N.D. Cal. Dec. 12, 2017), the court held: "The declaration of Jeremy M. Glapion, plaintiff's counsel, includes the date, device, and browser used to obtain the webpage and web application screenshots, but fails verify that he retrieved those images. The Court thus finds the Glapion declaration insufficient to meet the self-authentication requirements of Rule 902(13)." *Id.* (internal citation omitted). The same is true here, as Mr. Hartzell does not adequately explain the method used to create the report. He states only that he opened the "document information panel" and printed out the resulting information. He provides no information in his certification as to how the "document information panel" accomplishes the task of revealing the metadata in the report Mr. Hartzell created or give any indication as to the

4

reliability of the process he used. As such, the certification fails the requirements of Fed. R. Evid. 902 (13) and Plaintiffs' Exhibit 65 is not self-authenticating.

WHEREFORE, Defendants respectfully request that this honorable Court:

A. Find Mr. Hartzell's certification to be insufficient to establish the authenticity of the metadata report Plaintiffs attach to Plaintiffs' Exhibit 65; and

B. Grant such additional and further relief as the Court deems necessary.


Dated: May 9, 2019

VADIM KAGAN, ET AL.

By their attorneys,

/s/ John H. Perten, Esq.
John H. Perten (BBO# 548728)
James P. Harris (BBO # 678283)
SHEEHAN PHINNEY BASS & GREEN, P.A.
255 State Street, Fifth Floor
Boston, MA 02109
(617) 897-5600
jperten@sheehan.com
jharris@sheehan.com

## CERTIFICATION

I hereby certify that on this 9th day of May, 2019, I hand-delivered a copy of the foregoing pleading to counsel for Plaintiffs.

/s/ James P. Harris
James P. Harris

5

# EXHIBIT A

| Properties ▼ | Plaintiffs Trial Ex. No. 065.pdf |
|---|---|
| Size | 67.5KB |
| Pages | |
| Words | |
| Total Editing Time | 2 Minutes |
| Title | None |
| Tags | None |
| Comments | None |
| Template | Normal |
| Status | None |
| Categories | None |
| Subject | None |
| Hyperlink Base | None |
| Company | SARC |

## Related Dates

| Last Modified | 6/24/2013 7:51 PM |
|---|---|
| Created | 6/24/2013 7:50 PM |
| Last Printed | 6/17/2015 9:45 AM |

## Related People

| Manager | None |
|---|---|
| Author |  Vadim Kagan |
| Last Modified By |  Joseph Cohen |

Show Fewer Properties

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

| | |
|---|---|
| In re:<br><br>LYMAN-CUTLER, LLC,<br><br>Debtor. | Chapter 7<br>Case No. 15-13881-FJB |
| LYMAN-CUTLER, LLC, ALEX FILIPPOV and NICKOLAY LIPETSKER,<br><br>Plaintiff,<br><br>v.<br><br>VADIM KAGAN, TATIANA KAGAN, KAGAN DEVELOPMENT KDC CORP. and PROEXCAVATION CORP.<br><br>Defendants. | Adv. Case No.16-01120 |

**CERTIFICATION OF WILLIAM HARTZELL PURSUANT TO FED. R. EVID. 902(13)**

I, William Hartzell, having been duly sworn, hereby certify that:

1. I am over 18 years of age. I am a paralegal for the law firm of O'Connor, Carnathan and Mack LLC ("OCM"), which represents Alex Filippov ("Filippov") and Nickolay Lipetsker ("Lipetsker") in the above-captioned matter.

2. I submit this Certification in accordance with Federal Rule of Evidence 902(13).

3. I have been working as a litigation paralegal for approximately 19 years. I received a Certificate in Paralegal Studies from Northeastern University in 1996 and

subsequently worked as a paralegal at three litigation firms: Swartz & Swartz, Barry D. Lang, M.D. & Associates, and OCM. Throughout my career I have completed several Continuing Legal Education programs both online and in person, focused on law firm technology and discovery of electronically stored information. During my work as a paralegal for nearly two decades, I have gained extensive experience in and familiarity with reviewing and organizing electronically stored information ("ESI") and the metadata associated therewith. I regularly review and organize ESI and associated metadata as part of my day-to-day duties as a paralegal at OCM.

4. In the above-captioned case, I was responsible for reviewing and organizing all documents, including ESI and associated metadata, produced by the parties and third parties pursuant to subpoenas.

5. During the course of this litigation, on May 23, 2018, Defendant Vadim Kagan produced documents in a tiff images and text format, bates numbered KAGAN 003024-3037, consisting of:

  a. KAGAN 003024, a purported May 22, 2018 e-mail from Joseph Cohen [polysavant@hotmail.com] to himself [j.cohen@kagandevelopment.com], subject line "Fwd: CONSTRUCTION MANAGEMENT Lyman Cutler Executable", and listing an attachment "CONSTRUCTION MANAGEMENT Lyman Cutler Executable";

  b. KAGAN 003025, a purported June 24, 2013 e-mail from Joseph Cohen [polysavant@hotmail.com] to Vadim Kagan [vadim.kagan@yahoo.com], subject line "CONSTRUCTION MANAGEMENT Lyman Cutler Executable", and

listing an attachment "CONSTRUCTION MANAGEMENT Lyman Cutler Executable.docx"; and

c. KAGAN 003026-2037, a document titled "Construction Management/General Contractor Agreement."

6. Based on the appearance of these purported e-mails, on June 5, 2018, OCM requested the native Word (docx) document.

7. On June 6, 2018, counsel for Kagan forwarded via e-mail, as an attachment, the May 22, 2018 e-mail message identified as KAGAN 003024, with its own attachment, an e-mail message dated June 24, 2013, and attached to that June 24, 2013 e-mail, a Word document named "CONSTRUCTION MANAGEMENT Lyman Cutler Executable.docx."

8. Opening the Word document directly from the June 24, 2013 e-mail, I then opened the document information panel to reveal the document properties. A true and correct printout of the metadata for the document identified as KAGAN 003026-37 is attached to that document as part of **Plaintiff's Trial Exhibit 65**.

9. The process described in the foregoing paragraph for retrieving a record of metadata is a process I have performed countless times over my nearly two decades as a paralegal and, based on my experience and understanding, it produces an accurate result.

10. From the time that OCM first received the native e-mail items corresponding to the production identified as KAGAN 003024-37 until the time I viewed the metadata, and at all times thereafter, these files have been maintained in the exact form in which they were produced and have not been altered in any fashion.

Signed under the pains and penalties of perjury on May 2, 2019.

_____
William Hartzell, Paralegal