UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| *In re:* | ) | |
| | ) | |
| LYMAN-CUTLER, LLC, | ) | Chapter 7 |
|     Debtor | ) | Case No. 15-13881 FJB |
| | ) | |

| | | |
|---|---|---|
| LYMAN-CUTLER, LLC, ALEX FILIPPOV, and NICKOLAY LIPETSKER, | ) | |
|     Plaintiffs, | ) | Adv. Case No. 1:16-ap-01120 |
| v. | ) | |
| VADIM KAGAN, TATIANA KAGAN, KAGAN DEVELOPMENT KDC, CORP. and PROEXCAVATION CORP. | ) | |
|     Defendants. | ) | |

**PLAINTIFFS' SUBMISSION CONCERNING EVIDENCE OF THE CRIMES AND OTHER WRONGS OF JOSEPH COHEN, AND OPPOSITION TO DEFENDANTS' <u>MOTION TO STRIKE HARTZELL AFFIDAVIT</u>**

Debtor and Plaintiff Lyman-Cutler, LLC, along with Plaintiffs Alex Filippov and Nickolay Lipetsker (collectively referred to as "Plaintiffs") hereby make their submission in support of the admission of evidence of the crimes and other wrongs of James Joseph Cohen ("Cohen") and also hereby oppose the Defendants' Motion to Strike the Rule 902 Affidavit of William Hartzell [A.P. Doc. 313] and reiterate their request to admit Plaintiffs' Trial Exhibit 65 for identification.

1

**Submission Concerning Evidence of the Crimes
and Other Wrongs of Joseph Cohen fka Jamie Edelkind**

I. **Mr. Cohen Was Imprisoned until 2011, and so the Evidence Must Be Admitted Pursuant to Fed. R. Evid. 609(a)(1)(A).**

During the trial, Plaintiffs' counsel asserted that he had evidence that Mr. Cohen had been untruthful at his deposition (and more so in his errata sheet) when he testified he had been released from prison in 2009 – and then changed his errata sheet to say February 2008.  See Deposition of James Joseph Cohen, May 8, 2018 at 17-19 & Errata Sheet, attached hereto as Exhibit 1.  At 2:50 p.m. on May 9, 2019, Defendants' lead counsel, Attorney John Perten, notified Plaintiffs' counsel by email that "Mr. Cohen just advised me that he was convicted for failing to pay child support which resulted in his incarceration into 2011."  See Email from John Perten, May 9, 2019, attached hereto as Exhibit 2.  Because Mr. Cohen was released from prison less than 8 years ago, the 10 year time limit set forth in Fed. R. Evid. 609(b) does not apply.  See Fed. R. Evid. 609(b) ("This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later.")

Indeed, Mr. Cohen continues to lie when he claims that his continued incarceration was limited to his incarceration for Willful Failure to Pay Child Support.  In truth, Mr. Cohen was incarcerated until 2011 for his convictions for Bank Fraud (his various prison sentences ran concurrently).  As Mr. Cohen/Mr. Edelkind swore ***under oath*** in the affidavit he submitted in support of his Motion for Permission to Travel:  "I was continuously in federal custody serving sentences for **federal white collar offenses** from October 4, 2004 through August 4, 2011."  See Affidavit of Jamie Edelkind in Support of Motion for Permission to Travel, September 13, 2011, D. Mass. Criminal Docket No. 04-cr-10066-PBS, attached hereto as Exhibit 3 (emphasis

2

supplied).  Mr. Cohen's Affidavit was filed in the proceeding arising out of his Bank Fraud convictions.

Because Mr. Cohen was released from prison less than eight years ago, the evidence of his convictions must be admitted (subject only to Rule 403) because this is a civil case in which Mr. Cohen is not a defendant.  See Fed. R. Evid. 609(a)(1)(A).  There is no unfair prejudice in the admission of this evidence.  To the contrary, in light of Mr. Cohen's systematic untruthfulness, the exclusion of the evidence would be unfairly prejudicial to the Plaintiffs.

**II.     There is No Unfair Prejudice in the Admission of the Evidence of Mr. Cohen's Criminal Convictions.**

At one point at the hearing, Defendants' counsel argued something to the effect that Mr. Cohen has "has lived a blameless life for more than ten years."  The evidence is profoundly to the contrary.  Rather, Mr. Cohen lived an incarcerated life until August 2011.  In 2012, he turned up at KDC as Kagan's "Strategic Business Manager" and a director of the Company.  At some point not long after Mr. Cohen's arrival, he and Kagan began systematic overcharging of Kagan's investors.  The fraud the Plaintiffs suffered began in late April 2015.  There is not a long period of blameless living by Mr. Cohen, if any existed at all.

**III.    The Kagan Parties Were on Written Notice of the Plaintiffs' Intent to Offer Evidence of Mr. Cohen's Crimes and Other Wrongdoing.**

Even if the written notice provision of Fed. R. Evid. 609(b)(2) applied, the Kagan Parties had "reasonable written notice of intent to use it so that [they had] a fair opportunity to contest its use."  Fed. R. Evid. 609(b)(2).  "The purpose of the notice provision [in Rule 609(b)] is to prevent surprise."  United States v. Sloman, 909 F. 2d 176, 180 (6th Cir. 1990).  As a result, a failure to provide the advance written notice will not result in the exclusion of evidence if the adverse party had actual knowledge of the conviction.  See Sloman, 909 F.2d at 180 (trial court

3

properly admitted 609(b) evidence where government failed to provide notice because defense counsel was aware of conviction and knew defendant would be subject to cross-examination if he chose to testify); see also United States v. Peatross, 377 F. App'x 477, 492 (6th Cir. 2010) (admitting past criminal convictions without the required notice because adverse party was not prejudiced by lack of notice).

Pre-trial filings are sufficient to constitute the required notice.  See Jones v. Walters, 2016 U.S. Dist. LEXIS 57454, at *12-13 (N.D. Ill. Apr. 29, 2016) (discussion of the intended use of a criminal conviction in a motion *in limine* constituted sufficient advance notice); see also United States v. Morton, 461 F. App'x 252, 254 (4th Cir. 2012) (defendant's receipt of an investigation report detailing his criminal history and a pre-trial motion *in limine* regarding these convictions constituted sufficient notice).  So too are responses to discovery.  United States v. McBride, 1994 U.S. App. LEXIS 3965, at *9 (6th Cir. Mar. 1, 1994) (government's identification of a defendant's criminal convictions during discovery was sufficient notice under Rule 609(b)).

On December 7, 2018, some five months ago, in their Opposition to the Kagan Parties' Motion for Summary Judgment, the Plaintiffs stated that Mr. Cohen drafted the KDC Contract and Mechanic's Lien, and then stated at length in footnote 4 on page 7:

> Mr. Cohen, formerly known as Jamie Edelkind, is a career criminal who has been convicted twice of bank fraud, sentenced to years in prison and ordered to make millions in restitution.  Second Transmittal Affidavit of Sean T. Carnathan ("Second Carnathan Aff."), Exs. 3-6.  On March 11, 1996, the United States District Court for the District of Northern Georgia, in an enforcement action brought by the Securities and Exchange Commission ("SEC") permanently enjoined Mr. Cohen, a/k/a Edelkind, from violations of securities law based upon misrepresentations made in connection with a company called Sage Technology, Inc.  Second Carnathan Aff. Ex. 3.  On September 17, 1997, the Court issued civil penalties against Mr. Cohen and further ordered disgorgement.  Id.  On July 22, 2004, Mr. Cohen was convicted of Bank Fraud in the United States District Court for the Northern District of Georgia, and sentenced to one year and one day

4

in prison, five years probation, plus fines and restitution of $221,000. Second Carnathan Aff. Ex. 4. On July 12, 2005, Mr. Cohen was again convicted of four counts of bank fraud and aiding and abetting bank fraud in the United States District Court for the District of Massachusetts. Second Carnathan Aff. Ex. 5. He was sentenced to five years in prison, three years probation, fines and ordered to make restitution in the amount of $3,298,197.45. Id. On January 9, 2007, he was convicted in the United States District Court for the Western District of Louisiana for the willful failure to pay child support. Second Carnathan Aff. Ex. 6. He was sentenced to two years in prison, one year of probation and ordered to make restitution in the amount of $94,443.88. Id. According to Kagan at his deposition, Cohen has been an officer of KDC "for a few years" as of May 3, 2018. Kagan Dep. at 29.

Plaintiffs' Memorandum in Opposition to the Motion for Summary Judgment of Vadim Kagan, Kagan Development KDC Corp. and ProExcavation Corp., Dec. 7, 2018 at 7 (Docket No. 377, Adv. Docket No. 247). On December 17, 2018, in their Reply briefs, the Kagan Parties responded at some length and moved to strike the supporting materials filed by the Plaintiffs. See Reply to Opposition to Vadim Kagan's, Kagan Development KDC Corp.'s and ProExcavation Corp.'s Motion for Summary Judgment, Dec. 17, 2018 at 9-10 (Docket No. 385, Adv. Docket No. 256).

Accordingly, the Kagan Parties have been on actual notice, with written notice of the Plaintiffs' intention to offer this evidence for nearly five months. Indeed, during the exchange at trial on May 9, 2019, Attorney John Perten, representing the Kagan Parties, conceded as much, saying (in substance, from memory), "we frankly expected to get the [609] notice and were surprised when we didn't." Rule 609(b) simply requires some written notice to prevent unfair surprise; it does not require some particular formal document labeled "Notice of Intent to Offer Evidence." The Defendants have suffered no surprise at all.

5

**IV.  At this Point, the Evidence of Convictions Impeaches Mr. Cohen's Specific Testimony and Goes Farther than Simply Impeaching His "Character for Truthfulness."**

Rule 609 deals with offering evidence to impeach the witness's "<u>character</u> for truthfulness." (Emphasis added).  At his deposition, Mr. Cohen was much less than candid about his criminal history and incarceration.  <u>See</u> Deposition Transcript, <u>Exhibit 1</u> at 17-19.  At that time, it had not yet come to light that Cohen had once gone by the name, Jamie Edelkind.  Cohen/Edelkind claimed to have been convicted only of failure to pay child support in the First Circuit, and "aiding and abetting mortgage fraud" in 2004.  In truth, he had also been convicted of Bank Fraud in the United States District Court for the Northern District of Georgia on July 22, 2004, conviction attached as <u>Exhibit 4</u>, and of four counts of Bank Fraud <u>and</u> Aiding and Abetting in the United States District Court for the District of Massachusetts on July 12, 2005.  <u>See</u> Conviction, attached as <u>Exhibit 5</u>.  He claimed to have been sentenced to 36 months, and to have served "about 50-odd-some-months" between the failure to pay child support and aiding and abetting convictions combined.  In truth, he was sentenced to five years for bank fraud and served a total of seven years.  <u>See</u> Edelkind Affidavit, <u>Exhibit 3</u>.  He claimed to have been released in 2009, then revised that to February 2008, when in truth he was in prison until August 2011.  <u>Compare</u> <u>Exhibit 1</u> and <u>Exhibit 3</u>.

In a different context, Mr. Cohen's conviction for failure to pay child support might otherwise indeed be unpersuasive.  It is an older conviction and does not necessarily involve dishonesty or a false statement.  But here it becomes compelling because he was untruthful about his history at his deposition and continues to be untruthful about it even as he tries to dodge the consequences of his other untruthfulness.  The conviction was for "Willful Nonpayment of Child Support" in the United States District Court for the Western District of Louisiana on October 15,

6

2005. It resulted in a sentence of two years in prison and one year of supervised release, concurrent with his bank fraud convictions. See Exhibit 6. In this context, however, Mr. Cohen's evasive and untruthful testimony confirms that all of the evidence of his crimes and wrongdoing must be admitted to contradict specific instances of untruthful sworn testimony.

    **V.**     **Plaintiffs Are Entitled to Offer the Cohen Wrongdoing Evidence Substantively under Fed. R. Evid. 404(b).**

The evidence of Mr. Cohen's crimes and other wrongs, however, is more telling still. Rule 609 deals with impeachment by evidence of a bad character for truthfulness. It is offered to impeach his denial that he and Kagan cooked up the KDC Contract in June 2015, in order to falsely double the charges to Lyman-Cutler and record a mechanic's lien. Rule 404, in contrast, deals with the substantive offer of evidence of Crimes, Wrongs or Other Acts to prove facts at issue, not simply to impeach. Although such evidence cannot be used to prove action in conformity with a bad character, it can be offered for "another purpose," examples of which include – "intent, preparation, plan, knowledge, . . . [and] absence of mistake." Fed. R. Evid. 404(b)(2). The list is non exhaustive, however, "for the range of relevancy outside the ban is almost infinite; and further, . . . the purposes are not mutually exclusive for the particular line of proof may fall within several of them." United States v. Fields, 871 F.2d 188, 198 (1st Cir. 1989), *quoting* McCormick, Evidence § 190 at 448 (Cleary ed. 1972).

The admissibility of past convictions is analyzed separately under Rules 404 and 609. See United States v. McCollum, 732 F.2d 1419, 1424 (9th Cir. 1984) (holding that any error in ruling the conviction admissible under Rule 609 was harmless because it was properly admitted under Rule 404(b)); United States v. Cordoba, 104 F.3d 225, 229 (9th Cir. 1997) ("We have held that when a prior conviction is properly admitted under Rule 404(b), then any error in admitting such conviction under Rule 609(a)(1) is harmless"); Robertson v. United States, 144 F. Supp. 2d

7

58, 68-69 (D.R.I. 2001) (analyzing separately). Although time is a factor in admitting evidence under Rule 404(b), the Rule is "not constrained by the ten-year limitation applicable to Rule 609(b)." Fields, 871 F.2d at 198.

Plaintiffs anticipate that Defendants will claim that the documentation of the KDC Proof of Claim, which is riddled with indicia of fraud, is the result of mere sloppiness and poor bookkeeping (perhaps blaming Kristina Brusenkova). Plaintiffs, accordingly, offer this evidence in support of the conclusion that all of these indicia of fraud are exactly that – the result of a calculated plan, intentionally orchestrated to force the Plaintiffs to pay false "cost overruns" and manufactured fees and charges by KDC.

In this light, a Massachusetts bank fraud conviction is particularly telling because of the pervasive, long term, criminal forgery and deception involved. See United States v. Edelkind, 496 F.3d 791 (1st Cir. 2006) (affirming Cohen's convictions and reciting the facts supporting that conviction). Indeed, Plaintiffs submit the Court should take judicial notice under Fed. R. Evid. 201(b)(2) of the facts recited by the First Circuit in affirming Cohen/Edelkind's convictions because the facts recited by the First Circuit are not subject to reasonable dispute and the First Circuit is a source whose accuracy cannot reasonably be questioned. Here are the facts as stated by the First Circuit:

> Facing bankruptcy in the summer of 2000, Edelkind concocted a false resume for his stay-at-home wife Linda, forging documents to make her appear to be a well-paid executive in a (sham) technology company he called "Apostille, Inc." Using the forged documents, Edelkind convinced a lender, America's Moneyline ("Moneyline"), to extend a mortgage of $800,000 in Linda's name in order to purchase the former "Honey Fitz" mansion in Hull, Massachusetts.
>
> Edelkind then repeatedly refinanced the Hull property for larger and larger amounts, each time paying down outstanding previous loans and retaining the surplus or "cash out" amount. He persuaded lenders to extend the loans on the basis of false representations and fabricated documents, including tax forms,

> showing Linda to be earning from $200,000 to over $1 million per year. Specifically:
>
> In September 2001, Edelkind refinanced the Hull property by securing a $1 million mortgage in Linda's name from South Shore Savings Bank ("South Shore"), a federally insured lender. He retained $143,781.53 after paying down the Moneyline loan.
>
> In spring 2002, Edelkind used the property as collateral to obtain several home equity loans in Linda's name, including a $350,000 line of credit from Wells Fargo, a federally insured bank.
>
> In March 2003, Edelkind refinanced the Hull property again, this time with a $2.1 million mortgage in Linda's name from Washington Mutual Bank ("Washington Mutual"), another federally insured bank. He retained $205,370.29 after paying off South Shore, Wells Fargo, and other lenders.
>
> In August 2004, representing that Linda's income was $1.1 million a year, Edelkind obtained a $3.3 million loan through Fairmont Funding ("Fairmont"), a non-federally insured mortgage broker, which funded the loan with the approval of Aurora Loan Services ("Aurora"), itself a subsidiary of Lehman Brothers, a federally insured bank. Lehman Brothers later purchased the loan. Edelkind used the proceeds to pay off the Washington Mutual loan and an additional $356,242.38 that had been run up on the Wells Fargo credit line, leaving him with $569,878.83 in cash surplus.

United States v. Edelkind, 496 F.3d at 793-94.

This is <u>not</u> an isolated incident, evidence of which might be unfairly prejudicial. Rather, it is a multi-year campaign of pervasive fraud, which involves the forgery of multiple documents. The evidence will further show that Mr. Cohen is subject to a permanent injunction against committing securities fraud under Section 17 of the Securities Act of 1933 and 10-b of the Securities Act of 1934 as well as Rule 10b-5 based on a Securities and Exchange enforcement action against him in 1996. Rather than being conduct too old to be persuasive, this evidence shows that his <u>known</u> criminal conduct extends over a ten-year period, which was interrupted only by his incarceration shortly after which, Plaintiffs respectfully submit, he resumed his fraudulent lifestyle upon partnering with Kagan.

9

**The Screenshot of the Properties of the Native Word File of the KDC Contract, Produced by the Kagan Parties, Should Be Admitted into Evidence.**

Ironically, Mr. Cohen had a truthful moment on the stand when he admitted that the last page of Exhibit 65 for identification was the screenshot of the properties of the KDC contract he claims to have emailed to Kagan in June 2013. At that point, the document was authenticated and the need for a Fed. R. Evid. 902 certification was obviated. Fed. R. Evid. 901(b)(a) (testimony of a witness with knowledge that the item is what it is claimed to be is sufficient to authenticate a document).

In any event, Mr. Hartzell's certification is more than sufficient. This is not a complex issue of electronic evidence that requires an expert witness to interpret. The proffered page consists of a screen shot of the properties page of a Word document. Rudimentary skills are needed to open the properties page and print out a screen shot. Indeed, Plaintiffs have the electronic version of the document and could project the screen shot onto the court's monitors for comparison with the print out that has been offered into evidence.

Rule 902(13) does not layer on an additional requirement of technical expertise in order to "qualify" to submit a Certification: "The Rule specifically allows the authenticity foundation that satisfies Rule 901(b)(9) to be established by a certification rather than the testimony of a live witness." Federal Rules of Evidence Amendments, Dec. 1, 2017, Advisory Committee Notes to Fed. R. Evid. 902(3). Rule 901(b)(9) allows for authentication by "[e]vidence describing a process or system that produces an accurate result." Mr. Hartzell does simply that. He does not offer any opinion about what the screen shot shows. He describes the process that he went through in order to produce an accurate copy of the properties page for submission into evidence at trial. He is "qualified" to describe this process and his certification constitutes "evidence

sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901.

Courts generally permit the authentication of web postings, bearing a web address and the date printed, by a witness who saw and printed the postings "for the limited purpose of proving that the postings had appeared on the world wide web on the days that [the witness] personally saw the postings and printed them off the computer." Saadi v. Maroun, 2009 U.S. Dist. LEXIS 102879, at *4 (M.D. Fla. Nov. 4, 2009) (permitting, in defamation case, witness who printed derogatory statements off of the Internet to authenticate them for the narrow purpose of proving they appeared on the Internet); Knit With v. Knitting Fever, Inc., 2012 U.S. Dist. LEXIS 112118, at *7 (E.D. Pa. Aug. 8, 2012), aff'd sub nom; Knit With v. Knitting Fever, Inc., 625 F. App'x 27 (3d Cir. 2015) (permitting witness who printed blog entries of derogatory comments to authenticate them for the purpose of showing reputational damage); Premier Nutrition, Inc. v. Organic Food Bar, Inc., 2008 U.S. Dist. LEXIS 78353, at *6 (C.D. Cal. Mar. 27, 2008), aff'd, 327 F. App'x 723 (9th Cir. 2009) (permitting testimony of witness who conducted Lexis search to authenticate a printout of the search results, which bore the web address and date printed, for the purpose of showing generic use in trademark case); see also SMS Audio, LLC v. Belson, 2017 U.S. Dist. LEXIS 118942, at *8-10 (S.D. Fla. Mar. 17, 2017) (collecting cases).

In the lone decision that Plaintiffs have been able to find that actually addresses Fed. R. Evid. 902(13), the declaration at issue was held insufficient because the declarant failed to "describe the process by which the web page was retrieved." Bradley La Force v. GoSmith, Inc., 2017 U.S. Dist. LEXIS 204500, at *8 (N.D. Cal. Dec. 12, 2017). In contrast, Mr. Hartzell's declaration quite specifically explains exactly how he "retrieved" the properties page at issue and printed out a true and correct copy of it. Hartzell Dec. ¶¶ 7-10. This testimony is sufficient to

11

meet the test that the item is what the Plaintiffs claim it to be. If the Kagan Parties have some evidence to the contrary (and they do not), then they can come forward with it.

## CONCLUSION

For the foregoing reasons, the Court should overrule the Defendants' objections to the introduction of Mr. Cohen's criminal history, deny the Defendants' Motion to Strike the Hartzell Affidavit and admit Exhibit 65 for identification into evidence.

| | |
|---|---|
| LYMAN-CUTLER, LLC, <br> By its attorney, | ALEX FILIPPOV and <br> NICKOLAY LIPETSKER, <br> By their attorneys, |
| /s/ Peter Tamposi <br> Peter N. Tamposi, BBO No. 639497 <br> The Tamposi Law Group, P.C. <br> 159 Main Street <br> Nashua, NH 03060 <br> T: (603) 204-5513 | /s/ Sean T. Carnathan <br> Sean T. Carnathan, BBO No. 636889 <br> scarnathan@ocmlaw.net <br> Joseph P. Calandrelli, BBO No. 666128 <br> jcalandrelli@ocmlaw.net <br> O'Connor, Carnathan and Mack, LLC <br> 1 Van de Graaff Dr. Suite 104 <br> Burlington, MA 01803 <br> T:  781-359-9000 |

Dated:  May 10, 2019

### Certificate of Service

I hereby certify that a copy of the foregoing document was served by ECF on counsel of record for all of the parties on May 10, 2019.

/s/ Sean T. Carnathan
Sean T. Carnathan