FILED IN OPEN COURT
6/25/19 AT 10:32 A.m.
U.S BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>LYMAN-CUTLER, LLC,<br><br>      Debtor. | Chapter 7<br>No. 15-13881-FJB |
| LYMAN-CUTLER, LLC, et al.,<br>    Plaintiffs,<br>    Defendants in Counterclaim,<br><br>v.<br><br>VADIM KAGAN, et al.<br>    Defendants,<br>    Plaintiffs in Counterclaim. | Adv. Proc. No. 16-01120 |

## DEFENDANTS' MOTION FOR JUDGMENT ON PARTIAL FINDINGS AS TO COUNTS IV, V, VI, VII, VIII, IX AND X OF PLAINTIFFS' AFFIRMATIVE CLAIMS AND PLAINTIFFS' PROOFS OF CLAIM

Despite over eight trial days[1], Plaintiffs have failed to come forward with sufficient evidence to allow them to prevail on several of their affirmative claims and proofs of claim. As such, Defendants are entitled to judgment on partial findings pursuant to Fed. R. Civ. P. 52 (c). Plaintiffs bore the burden of proof as to the claims discussed below. In many instances, they failed to introduce any proof whatsoever as to those claims. Even where Plaintiffs attempted to introduce proof, their presentation was insufficient and judgment for Defendants is warranted.

---

[1] Although the trial has proceeded longer than eight days, plaintiffs advised this Court that other than the testimony of Attorney Boris Maiden, which proceeded out of order to accommodate his vacation schedule, they rested their case.

## I.
## Applicable Standard

Federal R. Civ. P. 52 (c) empowers this Court to find against Plaintiffs now that they have rested their case. That Rule reads:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

*Id.* Bankruptcy Rule 7052 makes Fed. R. Civ. P. 52(c) applicable to this proceeding. *Bellas Pavers, LLC v. Stewart (In re: Stewart and Perone)*, BAP No. MB 12-017, * 12 (Oct. 18, 2012) (unpublished) (reviewing on appeal the court's granting a motion for judgment on partial findings). Courts consider motions such as this one with some frequency. *See, e.g., Yules v. Gillis (In re Gillis)*, Nos. 05-23528-RS, 06-01007, 2007 Bankr. LEXIS 2228, at *4-5 (Bankr. D. Mass. June 28, 2007) ("A motion for directed verdict is appropriate only in a jury trial; when made in a bench trial, a motion for directed verdict is treated as a motion for judgment on partial findings under Rule 52(c) of the Federal Rules of Civil Procedure."); *see also Federal Insurance Co. v. HPSC, Inc.*, 480 F.3d 26, 32 (1st Cir. 2007); *Morales Feliciano v. Rullan*, 378 F.3d 42, 59 (1st Cir. 2004); *Breed's Hill Ins. Agency, Inc. v. Fravel (In re Fravel)*, 485 B.R. 1, 10 (Bankr. D. Mass. 2013).

In applying Fed. R. Civ. P. 52 (c), courts have held that judgment on partial findings with respect to a particular count is appropriate where the party bearing the burden of proof has finished presenting evidence and the evidence is deemed by the trier insufficient to sustain the

2

party's burden of proof as to that count. *Yules v. Gillis (In re Gillis)*, Nos. 05-23528-RS, 06-01007, 2007 Bankr. LEXIS 2228, at *4-5 (Bankr. D. Mass. June 28, 2007); *see also Bellas Pavers, LLC v. Stewart (In re: Stewart and Perone)*, BAP No. MB 12-017, * 12-13 (Oct. 18, 2012) (citing *Giza v. Amcap Mortg., Inc. (In re Giza)*, 458 B.R. 16, 24 (Bankr. D. Mass. 2011) and *Mosher v. Evergreen Mgmt., Inc. (In re Mosher)*, 432 B.R. 472, 475 (Bankr. D.N.H. 2010) and *In re Marine Risks, Inc.*, 441 B.R. 181, 199 (Bankr. E.D.N.Y. 2010). Another court stated that a motion for judgment on partial findings should be granted where the plaintiff fails to make out a prima facie case or despite a prima facie case, the court determines that the preponderance of evidence goes against the plaintiff's claim. *Giza v. Amcap Mortg., Inc. (In re Giza)*, 458 B.R. 16, 24 (Bankr. D. Mass. 2011). As described below, judgment on partial findings should be granted in this instance as to several of Plaintiffs' affirmative claims and proofs of claim.

## II.
## Plaintiffs Have Failed to Carry Their Burden as to the Following Affirmative Claims

    A. *Count IV (Fraud vs. Vadim Kagan), Count VI (Fraud vs. KDC), and Count VII (Fraud v. ProExcavation)*

        i. *There is Insufficient Evidence of Financial Malfeasance*

Since the inception of this case, Plaintiffs have boldly proclaimed they would prove fraud. Now that the evidence it closed, it is clear that they have failed to deliver on those proclamations. In Count IV, Plaintiffs allege Mr. Kagan engaged in a scheme to manufacture charges and "double billed" on the Project. Plaintiffs make identical allegations against KDC in their Count VI and against ProExcavation in their Count VII. Despite their repeated proclamations, Plaintiffs have not identified a single instance of fraudulent charges or double-billing – not a single dollar. Indeed, Plaintiffs' expert, Michael Goldman, who had access to all of the financial records of KDC and ProExcavation relating to Lyman-Cutler as well as the

3

financial records of several other projects, expressly testified that he could not offer any opinion as to fraud. Despite his efforts, he could not identify any materials that were charged to the Lyman-Cutler Project but were actually used on another project; he could not identify any instances of kickbacks; he did not identify any materials that were returned without credits back to the Lyman-Cutler Project; he did not investigate how much subcontractors should have charged for this Project; and he offered no opinion as to the proper value of the work. He concluded that accounting irregularities could have been incompetence and not fraud. Quite simply, incompetence is not fraud and Plaintiff cannot be awarded damages unless and until they demonstrate fraud.

Mr. Filippov too could not identify any improper charges and certainly offered no evidence of fraudulent billing. His testimony boiled down to the assertion that simply because he claimed to have not known there were outstanding charges, the only explanation is fraud. His expert, however, failed to back him up. Similarly, Mr. Lipetsker also testified that he assumed there was double-billing because the final costs exceeded his expectations, but he too could not identify any improper payments, had no proof of Mr. Kagan's pocketing money for returned materials, and had no support for the allegation that materials were charged to Lyman-Cutler but used on another project. Ms. Brusenkova, KDC's former bookkeeper who figured prominently in Plaintiffs' promises of proof, also could not identify any improper charges by either KDC or ProExcavation.

### ii. *There is No Evidence of Reasonable Reliance or Damages*

Plaintiffs have not offered any evidence of reasonable reliance or damages, even if there was fraud. In part because Plaintiffs have failed to identify even a single fraudulent charge, they failed to demonstrate that they actually paid for something for which they should not have. In

4

other words, neither Lyman-Culter, LLC, Mr. Filippov, nor Mr. Lipetsker pointed to an outlay of cash for work that was not actually performed. The record shows they flatly refused to pay when KDC submitted its invoice. At best, Plaintiffs have alleged an *attempted*, but unsuccessful, fraud. If Plaintiffs have not paid, it follows they have not suffered any damages. Plaintiffs cannot recover an award of money damages on the facts they have presented to the Court.[2]

Plaintiffs failed to demonstrate an agreement or guarantee on the costs to construct the two homes. Mr. Filippov acknowledged that his request to incorporate the October 2012 estimate spreadsheet into the parties' Operating Agreement was rejected. Attorney Maiden confirmed as much when he testified that he approached Mr. Kagan with this request, Mr. Kagan refused, and the spreadsheet was not made part of the parties' contract. Mr. Filippov then stretched to contend that when Mr. Kagan agreed to construction pursuant to the "plans" in § 5.2 of the Operating Agreement, that constituted a successful incorporation of the spreadsheet Mr. Kagan refused to incorporate expressly. Mr. Filippov's construction of "plans" strains logic and the word's plain meaning, but it was also contradicted by Attorney Maiden who authored the Operating Agreement and testified that "plans" referred to floor plans and site plans – not the spreadsheet with estimates. In the end, Plaintiffs cannot prove that they reasonably relied on any purported limit on construction costs and cannot possibly prevail on their claim of fraud.

To the extent Plaintiffs claim their damages are measured by some diminution in the properties' values when they were sold, this argument fails. Mr. Filippov testified that *he* decided to list the properties for less than their alleged fair market value in an effort to try to sell them in the unrealistic period of a few weeks. In other words, he decided *not* to try to garner full

---

[2] Count IV, for fraud against Mr. Kagan, is also duplicative of Plaintiffs' Count against Mr. Kagan for breach of fiduciary duty, which is not addressed in this Motion. Plaintiffs have never articulated a damage theory, let alone proven one, that would afford them damages under a claim of fraud that they could not recover under their claim for breach of fiduciary duty.

5

market value. The evidence is clear this decision was made without Mr. Kagan's input or involvement. Plaintiffs unilaterally chose to place Lyman-Cutler into bankruptcy, and then did not object to the listing price used by the Trustee nor object to the sale price when the properties were about to sell. If the properties sold for less, it was Plaintiffs' doing. In any event, the fair market value opinion offered by Plaintiffs' expert, Mr. Fennell, is disconnected from Plaintiffs' theory of the case because he examined the values of the properties on the dates they actually sold. He did not, for example, examine the values when construction purportedly should have been completed. Nor did Mr. Fennell offer any opinion as to causation – why the homes sold for less than fair market value.[3] The only other possible element of damages Plaintiffs have introduced is the costs incurred in connection with the bankruptcy, but these are not properly recoverable. Without proof of fraud or recoverable damages as a result of fraud, Defendants are entitled to judgment as to these counts.

### B. *Count IX (Violation of M.G.L. c. 93A vs. KDC and ProExcavation)*

In Count IX, Plaintiffs allege that KDC and ProExcavation violated M.G.L. c. 93A by making fraudulent charges, double billing and asserting a purportedly fraudulent mechanics lien. These allegations are repetitive of the fraud counts addressed above. Because Plaintiffs failed to allege and then failed to prove any unfair or deceptive conduct beyond the fraud alleged in other counts, KDC and ProExcavation are entitled to judgment as a matter of law. Moreover, as discussed above, Plaintiffs failed to carry their burden as to the alleged fraudulent conduct, so they cannot possibly prevail on a claim for violation of the statute.

---

[3] The Court will recall that Defendants filed a motion *in limine* to preclude Mr. Fennell from offering any opinions as to causation, a motion to which Plaintiffs objected. When it came time for Mr. Fennell to testify, Defendants renewed their objection. Despite insisting that their expert was competent to testify as to causation, Plaintiffs then chose not to ask him his opinions as to causation.

6

*C. Counts V (Fraud), VIII (Conspiracy) and IX (Violation of c.93A) vs. Tatiana Kagan*

In Count V, Plaintiffs seek affirmative recovery against Tatiana Kagan for fraud. For the reasons stated above, Plaintiffs have failed to offer any proof of fraud, but this is particularly so with respect to Tatiana Kagan. Plaintiffs have introduced no evidence that Mrs. Kagan was involved in any allegedly fraudulent activity whatsoever. She was not involved in the Operating Agreement, the pre-project meetings, the construction, or the finances of the Project. Mr. Lipetsker conceded that she had no involvement. Tatiana Kagan's only role was to list the properties for sale. Mr. Filippov testified, and the records establish, that he knew of the listing agreements and their details but did not object to them. Mr. Filippov admitted that he never inquired as to the marketing efforts. Contrary to Plaintiffs' bold pronouncements, the Operating Agreement did not prohibit a listing persisting beyond December 31, 2014; it merely allowed Mr. Filippov the right to terminate it after that date, a right he did not exercise until after commencing litigation. Plaintiffs have offered no evidence to warrant making Mrs. Kagan individually responsible for the corporations' actions. The evidence in the record shows that Mrs. Kagan did not exert control or direct any company to defraud Plaintiffs. And, as stated above, Plaintiffs have not offered any evidence of damages suffered as result of a fraudulent act, let alone one perpetrated by Mrs. Kagan.

The same dearth of evidence mandates a judgment on partial findings for Mrs. Kagan with respect to Counts VIII (for conspiracy) and IX (for violation of M.G.L. c. 93A). Plaintiffs have failed to connect Mrs. Kagan to any plan or scheme to harm them, and she cannot be found personally liable for the claims asserted in this case. Plaintiffs have not identified any unfair or deceptive act undertaken by Tatiana Kagan and prohibited by c. 93A. For these reasons, she is entitled to judgment as to these counts.

*D. Count X (Breach of Contract, Debtor vs. KDC)*

Plaintiffs alleged in Count X that KDC breached its contract with Lyman-Cutler, LLC by failing to construct the homes in a good and workmanlike manner. Plaintiffs did not put on any evidence regarding the quality of the construction. At the summary judgment phase, Plaintiffs represented they would dismiss this count. Under these circumstances, KDC is entitled to judgment as to Count X against it.

*E. Mr. Filippov's Proof of Claim (Claim No. 9) for Purported $200,000 Loan to the Debtor*

Mr. Filippov failed to carry his burden with respect to his claim for reimbursement of a purported loan of $200,000 he made to the Debtor secured by a mortgage that he granted to himself on the same day he filed Debtor's bankruptcy petition. As Mr. Filippov himself testified, this inherently self-interested transaction was never approved by the Debtor's members. He unilaterally decided to make a loan and to grant himself the mortgage. Mr. Filippov could not identify which of his outlays were loans and which were not, so he did not carry his *prima facie* burden to allow for any possible recovery. Nor did Mr. Filippov attempt to show that this self-interested transaction was entirely fair to the corporation. As such, this Court should enter judgment as to Mr. Filippov's proof of claim.

*F. O'Connor Carnathan and Mack LLC's Proof of Claim (Claim No. 2)*

The evidence presented during Plaintiffs' case was that Plaintiffs' law firm was paid significantly more than what was disclosed on the bankruptcy schedules and more than the proof of claim amount. There was an absence of evidence that the Debtor's members authorized the use of corporate funds to pay the firm's invoices. Finally, the evidence established that the firm has provided services for the benefit of two of the Debtor's members by advancing their personal

claims, which does not convey any benefit upon the Debtor. For these reasons, judgment on this proof of claim is warranted pursuant to Fed. R. Civ. P. 52 (c).

WHEREFORE, Defendants respectfully request that this honorable Court:

A. Grant Defendants judgment on partial findings as to Plaintiffs' affirmative counts IV, V, VI, VII, VIII, IX and X;

B. Grant Defendants judgment on partial findings disallowing Mr. Filippov's proof of claim for the purported loan of $200,000 to the Debtor;

C. Grant Defendants judgment on partial findings disallowing the proof of claim filed by O'Connor Carnathan and Mack LLC; and

D. Grant such additional and further relief as the Court deems necessary.

Dated: June 25, 2019

VADIM KAGAN, ET AL.

By their attorneys,

/s/ John H. Perten, Esq.
John H. Perten (BBO # 548728)
James P. Harris (BBO # 678283)
SHEEHAN PHINNEY BASS & GREEN, P.A.
28 State Street, 22nd Floor
Boston, MA 02109
(617) 897-5600
jperten@sheehan.com
jharris@sheehan.com

## CERTIFICATE OF SERVICE

I, John H. Perten, hereby certify that on June 25, 2019, copies of the foregoing was served on Plaintiffs in-hand and subsequently by the Court's ECF system.

Dated: June 25, 2019

/s/ John H. Perten
John H. Perten