UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: | Chapter 7 |
| | No. 15-13881-FJB |
| LYMAN-CUTLER, LLC, | |
| | |
| LLC. | |

| | |
|---|---|
| LYMAN-CUTLER, LLC, | |
| ALEX FILIPPOV and | |
| NICKOLAY LIPETSKER, | |
| | |
| Plaintiffs/Counterclaim Defendants, | |
| | Adv. Proc. No. 16-01120 |
| v. | |
| | |
| VADIM KAGAN, TATIANA KAGAN, | |
| KAGAN DEVELOPMENT KDC, CORP. | |
| and PROEXCAVATION CORP. | |
| | |
| Defendants/Counterclaim Plaintiffs. | |

## DEFENDANTS' REQUESTS FOR RULINGS OF LAW

Defendants, Vadim Kagan ("Kagan"), Tatiana Kagan ("Tatiana"), Kagan Development KDC Corp. ("KDC"), and ProExcavation Corp. ("ProEx")(collectively "Defendants") submit these requests for rulings of law for consideration by the Court.   Lyman-Cutler, LLC shall be referred to herein as "LLC"; Alex Filippov shall be referred to herein as "Filippov" and Nickolay Lipetsker shall be referred to as "Lipetsker." Collectively the LLC, Filippov and Lipetsker shall be referred to as "Plaintiffs."

### Table of Contents

Requests Nos.

I.    Plaintiffs' Claims ...................................................................... 1-154

a.  Plaintiffs' Claim that Kagan Breached the Operating
    Agreement ....................................................................................... 1-30
        i.   Plaintiffs' Claim that Kagan Failed to Complete
             Construction On Time ............................................................. 7-12
        ii.  Plaintiffs' Claim that Kagan Breached the Operating
             Agreement by Signing the KDC Contract ............................... 14-17
        iii. Plaintiffs' Claim that Kagan Breached the Operating
             Agreement by Not Paying Carrying Costs ............................... 18-22
        iv.  Plaintiffs' Claim that Kagan Breached the Operating
             Agreement by Submitting "False" Claims ............................... 23-30
b.  Plaintiffs' Claim that Kagan Breached His Fiduciary Duties ............. 31-83
        i.   The Claim of Refusing to Pay Carrying Costs ........................ 32-35
        ii.  The Fundamental Fairness Doctrine ....................................... 36-49
        iii. The Claim that the Listing Agreements were Unauthorized
             and/or Unlawful ..................................................................... 50-58
        iv.  The Claim that the KDC Contract was Unauthorized and/or
             Unlawful ................................................................................. 59-74
        v.   The Claim for Making False Claims for Payment .................. 75-78
        vi.  Plaintiffs' Alleged Damages for Breach of Fiduciary Duty ... 79-83
c.  Plaintiffs' Claim that Tatiana Kagan, KDC and ProEx Aided and
    Abetted Kagan's Breaches of Fiduciary Duties .................................. 84-87
d.  Plaintiffs' Claim that Kagan Committed Fraud ............................... 88-104
        i.   The Elements Plaintiffs Must Prove ...................................... 89-94
        ii.  The Evidence Does Not Support Plaintiffs' Allegations ........ 95-96
        iii. Plaintiffs Are Required to Prove Detrimental Reliance ........ 97-100
        iv.  The Need for Plaintiffs to Prove Damages .......................... 101-104
e.  Plaintiffs' Claim that Tatiana Kagan Committed Fraud ................. 105-110
        i.   The Claim that the Listing Agreements were not
             Authorized ........................................................................... 105-108
        ii.  The Claim of Individual Liability for Damages Caused by
             KDC and ProEx ................................................................... 109-110
f.  Plaintiffs' Claim that KDC Committed Fraud ............................... 111-116
g.  Plaintiffs' Claim that ProEx Committed Fraud ............................. 117-122
h.  Plaintiffs' Claim for Conspiracy ................................................... 123-130
i.  Plaintiffs' Claim against Tatiana Kagan, KDC and ProEx for
    Violation of M.G.L. c. 93A ............................................................ 131-144
        i.   The Claim of Fraudulent Listing Agreements .................... 136-137
        ii.  The Claim that ProEx Fraudulently Billed ........................ 138-139
        iii. The Claim that KDC Fraudulently Billed ........................... 140-142
        iv.  The Requirement to Prove Damages .................................. 143-144
j.  Tatiana and Kagan Cannot be Liable for KDC's and ProEx's
    Alleged Conduct ............................................................................ 145-151
        i.   The Claims Against Tatiana ............................................... 146-147
        ii.  The Effort to Pierce the Corporate Veil of KDC
             and ProEx ........................................................................... 148-151

      k. LLC's Claim that KDC Breached the KDC Construction Contract ........................................................................................... 152-154

II.     Defendants' Claims ................................................................................. 155-268
      a. Filippov and Lipetsker Breached their Fiduciary Duties to Kagan ......................................................................................... 155-181
          i. Filippov's False Statements to the Bank ............................. 156-160
          ii. Plaintiffs' Additional Breaches of Fiduciary Duty ............. 161-167
          iii. Plaintiffs' Self-Dealing Transactions ................................. 168-170
          iv. Plaintiffs' Duty to Prove Fundamental Fairness ................. 171-181
      b. Fillipov and Lipetsker Froze Out Kagan .................................... 182-196
      c. Filippov and Lipetsker Breached the Operating Agreement .......... 197-207
      d. Filippov and Lipetsker Breached the Covenant of Good Faith and Fair Dealing Implied in the Operating Agreement ......................... 208-214
      e. The LLC Breached the KDC Construction Contract ...................... 215-223
      f. The LLC Breached the Covenant of Good Faith and Fair Dealing Implied in the KDC Construction Contract ................................... 224-233
      g. The LLC is Liable to KDC for Unjust Enrichment and Quantum Meruit ......................................................................................... 234-248
      h. The LLC is Liable to KDC Under Promissory Estoppel ............... 249-255
      i. The LLC Should be Judicially Dissolved ...................................... 256-260
      j. Filippov and Lipetsker Engaged in a Civil Conspiracy .................. 261-264
      k. KDC Properly Perfect its Mechanics Lien .................................... 265-268
III.    Defendants' Proofs of Claim ................................................................. 269-298
      a. KDC Prevails on its Proof of Claim (Claim No. 1) ........................ 269-282
      b. Kagan is Entitled to Indemnity (Claim No. 4) ............................... 283-289
      c. KDC, ProEx and Tatiana Kagan are Entitled to Indemnity as Agents of the LLC ..................................................................... 290-298
IV.   Plaintiffs' Proof of Claim .................................................................... 299-305
V.    Equitable Subordination ...................................................................... 306-309
VI.   Miscellaneous Legal Provisions .......................................................... 310-311
VII.  Award/Judgment ................................................................................. 312-324

# I.    **PLAINTIFFS' CLAIMS**

## a.  **Plaintiffs' Claim that Kagan Breached the Operating Agreement**

1. Plaintiffs alleged in their Adversary Complaint that Kagan breached the Operating Agreement [Exh, 15] by: failing to construct the two homes on time, signing a contract with KDC without authority, refusing to pay carrying costs after the 23rd month, and asserting "false" claims for payment.  [Amd. Adv. Cmp., Count I]

2. To prevail on their claims for breach of the Operating Agreement, Plaintiffs must demonstrate that there was an agreement between the parties; the agreement was supported by consideration; they were ready, willing, and able to perform their part of the contract; Kagan committed a breach of the contract; and the Plaintiffs suffered harm as a result. Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 690 (2016).

3. The Operating Agreement is a contract. Allison v. Eriksson, 479 Mass. 626, 635 (2018) See Furman v. Gossels, 28 Mass. L. Rep. 364, *9 (2011) ("The Operating Agreement is a contract, and the principal guide to contract interpretation is, of course, the language of the contract itself.").

4. Courts construe contracts so as to give meaning to all of the words used by the parties such that none are rendered superfluous. Worcester Mut. Ins. Co. v. Marnell, 398 Mass. 240, 245 (1986) (contract not to be read to render terms superfluous). See also Jasty v. Wright Med. Tech., Inc., 528 F.3d 28, 36 (1st Cir. 2008) ("'[C]onstructions that render contract terms meaningless should be avoided.'") (quoting Summit Packaging Sys., Inc. v. Kenyon & Kenyon, 273 F.3d 9, 12-13 (1st Cir. 2001)).

5. Under Massachusetts law, a party is bound by a contract's term even if he did not read its contents. See Commerce Bank & Tr. Co. v. Hayeck, 46 Mass. App. Ct. 687, 693 (1999) (party who was "sophisticated in business matters, and having prior experience in banking" was "bound … by the terms of a note he voluntarily signed but did not read.").

6. See also Collins v. Huculak, 57 Mass. App. Ct. 387, 393 n.7 (2003) (collecting cases); Hull v. Attleboro Sav. Bank, 33 Mass. App. Ct. 18, 24, 596 N.E.2d 358 (1992) ("One who signs a writing that is designed to serve as a legal document . . . is presumed to know its contents").

4

*i.  Plaintiffs' Claim that Kagan Failed to Complete Construction On Time*

7. The Operating Agreement did not set a time for final completion of the homes.  It merely provided a date for "substantial completion," though that term was not defined.  Because there is no "time is of the essence" clause in the Operating Agreement [SOF 107-108][1], Kagan had a reasonable amount of time to complete construction of the two homes. Thermo Electron Corp. v. Schiavone Constr. Co., 958 F.2d 1158, 1164 (1st Cir. 1992); LimoLiner, Inc. v. Dattco, Inc., 809 F.3d 33, 39 (1st Cir. 2015) ("Under Massachusetts law, if a contract is silent as to the term for performance, then 'the term shall be a reasonable time based on all the relevant evidence.'" (quoting Bushkin Assocs. v. Raytheon Co., 815 F.2d 142, 146 (1st Cir. 1987)); SAA Grp., LLC v. Old Republic Nat'l Title Ins. Co., 28 Mass. L. Rep. 304, *9 (2011) ("In situations where parties do not indicate that time is of the essence, parties must perform within a reasonable amount of time.").

8. Plaintiffs knew that the project was delayed approximately five months due to Town of Brookline scheduling issues in connection with the application to subdivide the property. [SOF 125] Thus, if the actual construction was within the same time frame anticipated, it was "reasonable."

9. Plaintiffs did not assert that Kagan had breached any timeliness requirement of the Operating Agreement until after Kagan indicated he could no longer pay the carrying costs.  Plaintiffs therefore waived their claim that Kagan breached any timeliness requirement of the contract. See Providence Washington Ins. Co. v. Beck, 356 Mass. 739, 739 (1970) (continued acceptance of payments after breach waives breach);  Ellrich v. U.S. Bank Nat'l Ass'n, No. 03-11839-RWZ, 2005 U.S. Dist. LEXIS 24607, at *3 (D.

---

[1] "SOF" refers to Defendants' Requests for Findings of Fact.

Mass. Oct. 24, 2005) ("Where a party to an agreement has actual knowledge of another party's breach and continues to perform under and accepts the benefits of the contract, such continuing performance constitutes a waiver of breach.")

10. Section 5.2 of the Operating Agreement states that "The construction shall be substantially completed no later than March 30, 2014."  [Exh. 15]  Because the word was used by the parties in their contract, the word "substantial" must be given meaning and it logically must mean something less than actual "completion."  Worcester Mut. Ins. Co. v. Marnell, 398 Mass. 240, 245 (1986) (contract not to be read to render terms superfluous). See also Jasty v. Wright Med. Tech., Inc., 528 F.3d 28, 36 (1st Cir. 2008) ("'[C]onstructions that render contract terms meaningless should be avoided.'") (quoting Summit Packaging Sys., Inc. v. Kenyon & Kenyon, 273 F.3d 9, 12-13 (1st Cir. 2001)).

11. Plaintiffs failed to present evidence to establish when each new home was "substantially completed" so they have failed to prove Kagan breached this clause of the Operating Agreement.  [SOF 280]  Judgment is therefore entered for Kagan and against Plaintiffs on their claim that Kagan breached the Operating Agreement for failing to construct the homes "on time."

12. With respect to Plaintiffs' claim that Kagan breached the Operating Agreement by failing to construct the homes on time, Plaintiffs have failed to carry their burden.  The evidence shows that the first home was completed by no later than July 2014 [SOF 280] and the parties did not want to list both homes for sale simultaneously [SOF 288], so only one home had to be substantially complete within a reasonable time around the dates set in the Operating Agreement.  The homes were completed within a reasonable time of the date set forth in the Operating Agreement.

13. Even if the homes were not completed timely, plaintiffs have identified no damages that were caused by the brief delay in completion. [SOF 597-98] This fatal to Plaintiffs' claim. Don v. Soo Hoo, 75 Mass.App.Ct. 80, 85 (2009) (The general rule is that the plaintiff must prove its damages for breach of contract with reasonable certainty.).

> *ii. Plaintiffs' Claim that Kagan Breached the Operating Agreement by Signing the KDC Contract*

14. The Operating Agreement expressly delegates to Kagan the obligation to construct the homes. [Exh. 15, § 5.2] Signing a contract with a general contractor is a reasonable step by Kagan, consistent with the authority vested in him by the Operating Agreement, toward completing that obligation. [SOF 180] Costonis v. Medford Hous. Auth., 343 Mass. 108, 115 (1961) ("'An agent typically has implied authority to do that which usually accompanies, is incidental to, or is reasonably necessary to complete the transaction for which the agent has actual authority.'") (quoting McDonald v. Gough, 326 Mass. 93, 97 (1950)); see also Lopes v. Beland, Civil Action No. 11-cv-12063-DJC, 2015 U.S. Dist. LEXIS 112841, at *13 (D. Mass. May 14, 2015) (same).

15. There is no clause of the Operating Agreement [Exh. 15] depriving Kagan of the authority to sign a contract with a general contractor such as KDC. As such, Plaintiffs have failed to carry their burden of proving a breach of the Operating Agreement as a result of Kagan's signing a contact with KDC. Raytheon Co. v. Cont'l Cas. Co., 123 F. Supp. 2d 22, 27-28 (D. Mass. 2000) (stating that breach of contract claim requires plaintiff to "identify the terms of the contract, the parties' obligations under the contract, that the plaintiffs were ready to perform or that defendants' breach prevented their performance" that a court properly dismisses a breach of contract claim when then elements are not met) (citing Doyle v. Hasbro, Inc., 103 F.3d 186, 194-195 (1st Cir.

1996)); <u>Richmond v. Wells Fargo Bank, N.A.</u>, No. 12-10011-RWZ, 2012 U.S. Dist. LEXIS 118434, at *3 (D. Mass. Aug. 22, 2012) (breach of contract claim fails where plaintiff failed to identify the "terms of [the] agreement that were breached.").

16. The evidence shows that Filippov and Lipetsker knew of the contract between KDC and the LLC and knew KDC was serving as general contractor.  [SOF 181-183]  Neither Filippov nor Lipetsker questioned or complained about KDC's involvement, despite their actual knowledge that it was performing the construction and receiving payment for its efforts, which defeats their claim that Kagan breached the Operating Agreement.  <u>Ellrich v. U.S. Bank Nat'l Ass'n</u>, No. 03-11839-RWZ, 2005 U.S. Dist. LEXIS 24607, at *3 (D. Mass. Oct. 24, 2005) ("Where a party to an agreement has actual knowledge of another party's breach and continues to perform under and accepts the benefits of the contract, such continuing performance constitutes a waiver of breach.")  <u>Providence Washington Ins. Co. v. Beck</u>, 356 Mass. 739, 739 (1970).

17. There is no dispute over the fact that KDC actually completed the construction and that the houses were sold.  There is no dispute that neither the LLC, Filippov or Lipetsker actually paid KDC more than the amount earmarked for that purpose from the construction loans.  [SOF 592]  Accordingly, Plaintiffs have failed to establish that they were damaged by the execution of the KDC contract.  Therefore, their claim fails. <u>Haven Real Estate Grp., LLC v. Bell Atl. Mobile of Mass. Corp.</u>, 236 F. Supp. 3d 454, 463 (D. Mass. 2017) (finding for defendant on "breach of contract claim because [plaintiff] has suffered no damages."); <u>Donahue v. Fannie Mae</u>, No. 17-cv-10635-DJC, 2019 U.S. Dist. LEXIS 84460, at *15 (D. Mass. May 20, 2019) (The "failure to comply with" terms incorporated into the contract "cannot sustain [plaintiff's] claim for breach of contract

because she suffered no damages."); <u>Cablevision of Bos., Inc. v. Shamatta</u>, 63 Mass.

App. Ct. 523, 524 (2005)

> ### iii.  Plaintiffs' Claim that Kagan Breached the Operating Agreement by Not Paying Carrying Costs

18. The Operating Agreement obligated the LLC (not Kagan) to pay carrying costs for the first 23 months of the project.  [Exh. 15, §§4.1,4.2, 8.1] Kagan, though his company, KDC, paid the carrying costs on behalf of the LLC for the first 23 months.  KDC is entitled to be reimbursed for those carrying costs.

19. The Operating Agreement required Filippov to pay carrying costs after the 23rd month if Kagan did not pay them.  [Exh. 15, § 8.1]  Accordingly, if Filippov paid any carrying costs, he was simply doing what the parties contracted for, which does not give rise to any independent claim for damages and certainly cannot be considered a breach of contract.

20. The Operating Agreement fixes a remedy between Filippov and Kagan if Kagan did not pay the carrying costs after the 23rd month – the adjustment of Filippov's and Kagan's respective capital account interests.  [Exh. 15, § 8.1]  Filippov has invoked that remedy. (Claim No. 11)

21. Because the Operating Agreement provides a remedy which has been invoked, Plaintiffs cannot also recover an award of money damages for Kagan's alleged refusal to pay carrying costs after the 23rd month, because such an award would be contrary to the Operating Agreement and duplicative.  Massachusetts recognizes that a party "made an election of remedies from which she cannot now retreat." <u>Hoppe v. CMGI, Inc.</u>, 20 Mass. L. Rep. 207 (2005). <u>See also</u> <u>Dalton v. Am. Ammonia Co.</u>, 236 Mass. 105, 107 (1920) ("There is no doubt of the general principle of law that the plaintiff had an election of

remedies; and if he chose to treat the contract as ended or rescinded and recovered the value of the work and labor done he could not thereafter consider it as subsisting and recover damages for its breach. Such an action would be inconsistent with his former action, and he must accept the consequences of his assent to the repudiation of the contract by the defendant."). "[T]he primary purpose served by the 'election of remedies' doctrine is to prevent double [*viz.*, sequential] recoveries for the same wrong." <u>Gens v. Resolution Tr. Corp.</u>, 112 F.3d 569, 573 (1st Cir. 1997).

22. Plaintiffs' claim for an affirmative recovery of damages for Kagan's alleged failure to pay carrying costs after the 23rd month is therefore denied. Filippov's remedy, if any, is accounted for in the distribution of LLC assets in accordance with the Operating Agreement after payment of all debts to its creditors. Judgment is entered for Kagan and against Plaintiffs on this claim.

> *iv. Plaintiffs' Claim that Kagan Breached the Operating Agreement by Submitting "False" Claims.*

23. Plaintiffs allege Kagan breached the Operating Agreement by submitting "false" claims for payment.

24. The only "claim" submitted by Kagan was for indemnity. The claims for additional construction costs and carrying costs were submitted by KDC. KDC is an independent corporate entity and is not a party to the Operating Agreement. It maintains its own books and records, submits its own tax returns and has its own employees. [SOF 5-6] The mere fact that Kagan is the principal and shareholder of KDC does not mean that KDC is an "alter ego" for Kagan. <u>Abdallah v. Bain Capital LLC</u>, 752 F.3d 114, 121-22 (1st Cir. 2014) ("[D]ominant shareholders" such as Kagan "are almost always 'active participants' in the affairs of an owned corporation. And, in the usual case, the exercise of

such control . . . does not result in the owner's personal liability.'"). There is also insufficient evidence to permit this Court to "pierce the corporate veil" and hold Kagan liable for the alleged transgressions of KDC [or ProExcavation].

25. Corporate officers (such as Kagan) are ordinarily not liable for a corporation's (KDC's) breach of contract." <u>M. McDonough Corp. v. Connolly</u>, 313 Mass. 62, 65-66 (1943)); <u>Lothian v. Mumford</u>, No. 00-02565, 2006 Mass. Super. LEXIS 274, at *13 (June 9, 2006).   As such, even if KDC's claims were "false," which I do not find, Kagan cannot be found to have breached the Operating Agreement by virtue of KDC's   attempt to recover payment from the LLC.

26. Plaintiffs had the obligation to attempt to mitigate the harms alleged suffered.  <u>Fleet Nat'l Bank v. Anchor Media Television</u>, 45 F.3d 546, 561 (1st Cir. 1995).  <u>Burnham v. Mark IV Homes, Inc</u>., 387 Mass. 575, 586 (1982) ("The general rule with respect to mitigation of damages is that a plaintiff may not recover for damages that were avoidable by the use of reasonable precautions on his part"). They had the opportunity to bond off or seek to invalidate KDC's mechanic's lien in the pending state court litigation. M.G.L. c. 254, §§ 11, 14, 15A.  Section 15A of M.G.L. c. 254 provides for an expedited hearing if plaintiffs thought the lien was improper.  Having failed to bond off or seek to invalidate the lien when they had the chance, Plaintiffs failed to mitigate the alleged damages.  They were also aware that KDC was working on the project and incurring costs.  Plaintiffs could have mitigated by having KDC cease operations before incurring additional costs.  They did nothing.   Accordingly, plaintiffs' claim is denied.  Judgment is entered for Kagan and against Plaintiffs on this claim.

27. As Kagan submitted only a claim for indemnity, he has not breached the Operating
Agreement and judgment is entered for Kagan and against Plaintiffs on this claim.

[Requests 28 to 30 to be used only if the Court considers KDC's claims for payment as a
potential breach of the Operating Agreement by Kagan]

28. There was no evidence that any of the claims submitted by KDC were "false". Plaintiffs'
own forensic accounting expert was unable to identify any "false" claims. He was only
able to opine that he found the records "unreliable" though he conceded this was just as
likely to be a function of sloppy bookkeeping as anything else. [SOF 397-415] Plaintiffs
themselves had no evidence, other than their general suspicions, that any claims were
"false". [SOF 384-395] Each of the subcontractors whose invoices were challenged as
"false" testified that they did the work and properly billed for that work. [SOF 436-469]
Plaintiffs failed to submit any evidence that their bills were inflated or that the work had
not been completed.

29. Plaintiffs' construction expert, Mr. Doddridge, did not testify during plaintiffs' case in
chief. He testified only in rebuttal to defendants' expert, Mr. Salmi. Even then, Mr.
Doddridge did not challenge any of the invoices submitted by KDC's subcontractors. He
focused his testimony at an effort to undercut Mr. Salmi's methodology and opinion of
value. [SOF 511-551]

30. The Court finds that plaintiffs have failed to meet their burden of proving that either
Kagan or KDC submitted "false" claims for payment and therefore enters judgment for
Kagan and against Plaintiffs on this claim, and any claim that relies on this predicate
allegation.

**b. Plaintiffs' Claim that Kagan Breached His Fiduciary Duties**

31. Plaintiffs allege in their Adversary Complaint that Kagan breached his fiduciary duties to them by: refusing to pay carrying costs after 23 months, signing a real estate listing agreement without authority, signing the KDC construction contract without authority, and making false claims for payment. [Count II]

   *i.   The Claim of Refusing to Pay Carrying Costs*

32. The source of the purported duty on Kagan to pay carrying costs comes from the parties' contract, the Operating Agreement.  [Exh. 15, § 4.1, 8.1]  Because that duty is defined in the parties' contract, and Plaintiffs have not identified an extra-contractual duty for that obligation, they cannot recover affirmative damages in tort. <u>Aldrich v. ADD, Inc.</u>, 437 Mass. 213, 222 (2002)("[P]urely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage."), (*quoting,* <u>FMR Corp. v. </u>Boston Edison Co., 415 Mass. 393, 395 (1993)).  This rule 'was developed in part to prevent the progression of tort concepts from undermining contract expectations,' on the theory that contracting parties are free to allocate the risk of economic loss as they see fit." <u>Dig. Strategists, LLC v. Leap Payments, Inc.</u>, 35 Mass. L. Rep. 237, *11 (2018), (*quoting,* <u>Wyman v. Ayer Properties, LLC</u>, 469 Mass. 64, 70 (2014)

33. Because the Operating Agreement obligates Filippov to pay carrying costs if Kagan does not and provides a remedy if he is called upon to do so [Exh. 15, §8.1], Plaintiffs cannot also recover an award of money damages for Kagan's alleged refusal to pay carrying costs after the 23rd month, because such an award would be contrary to the Operating Agreement and duplicative.  Massachusetts recognizes that a party "made an election of remedies from which she cannot now retreat." <u>Hoppe v. CMGI, Inc.</u>, 20 Mass. L. Rep. 207 (2005). <u>See also</u> <u>Dalton v. Am. Ammonia Co.</u>, 236 Mass. 105, 107 (1920) ("There is

no doubt of the general principle of law that the plaintiff had an election of remedies; and
if he chose to treat the contract as ended or rescinded and recovered the value of the work
and labor done he could not thereafter consider it as subsisting and recover damages for
its breach. Such an action would be inconsistent with his former action, and he must
accept the consequences of his assent to the repudiation of the contract by the
defendant.").  "[T]he primary purpose served by the 'election of remedies' doctrine is to
prevent double [*viz.*, sequential] recoveries for the same wrong." <u>Gens v. Resolution Tr.
Corp.</u>, 112 F.3d 569, 573 (1st Cir. 1997) Plaintiffs' claim for an affirmative recovery of
damages for Kagan's alleged failure to pay carrying costs after the 23rd month is therefore
denied.  Filippov's remedy, if any, is accounted for in the distribution of LLC assets in
accordance with the Operating Agreement.

34. The evidence establishes that Kagan caused KDC to pay carrying costs from the
beginning of the project, even though that obligation belonged to the LLC for the first 23
months.  [SOF 197-211]  In determining whether Filippov and Lipetsker suffered any
harm as result of Kagan's alleged refusal to pay carrying costs after the 23rd month, the
Court must take into account that KDC saved the LLC (and therefore the members) from
the initial burden of paying carrying costs. Awarding Filippov and Lipetsker affirmative
damages without taking into account the amounts KDC paid would result in an unlawful
windfall.  <u>Reilly v. United States</u>, 863 F.2d 149, 165 (1st Cir. 1988) ("To be sure, the
prudential policies which underlie the law of torts are uncomfortable with the prospect of
windfalls: compensatory damages are meant to compensate, and duplicative recoveries,
which by definition overcompensate, are disfavored.").  If anything, KDC should be
reimbursed for the monies it advanced on behalf of the LLC.  Plaintiffs have failed to

present the Court with any damage calculation that takes into account the $665,545.49 which KDC paid, and they therefore have failed to carry their burden.  <u>White Spot Const. Corp. v. Jet Spray Cooler, Inc.</u>, 344 Mass. 632, 634,  (1962) (In the event a breach of fiduciary duty is found and damages are sought, the party seeking such damages must prove a sum-certain pecuniary loss, and "must establish his claim upon a solid foundation in fact"; as such, the claimant "cannot recover when any essential element is left to conjecture, surmise, or hypothesis.").   In fact, plaintiffs have failed to establish that they suffered any damages whatsoever due to Kagan's alleged failure to pay carrying costs after the 23rd month, especially where the Operating Agreement expressly contemplated this possibility and shifted the burden to Filippov in that event.  [Exh. 15, §8.1]

[Request No. 35 to be used in the event the Court finds KDC to be Kagan's alter ego]

35. Plaintiffs have suggested that KDC is some sort of alter ego for Kagan.  If this is true, the carrying costs paid by KDC/Kagan for the first 23 months must be credited against the amount Plaintiffs claim Kagan should have paid after the 23rd month.  If KDC is Kagan's alter ego, no money is due from Kagan to Plaintiffs, after crediting the amounts paid by KDC for the first 23 months.  If anything, Kagan overpaid and should be reimbursed for the payments he made prior to the expiration of the initial 23 month period. Plaintiffs' own accounting lists multiple payments of carrying costs which they attributed to Kagan. [Exh. 291, SOF 570] Judgment is therefore entered for Kagan and against Plaintiffs on this claim.

ii.   *The Fundamental Fairness Doctrine*

36. Plaintiffs allege that Kagan engaged in two self-dealing transactions: (1) the contract between the LLC and KDC; and (2) the listing agreements between the LLC and

Century21 to sell the completed homes. Plaintiffs contend that Kagan bears the burden of proving the fundamental fairness of each of these transactions.

37. Under Massachusetts law, members of a limited liability company owe each other fiduciary duties. Allison v. Eriksson, 479 Mass. 626, 635 (2018); Freid v. Gordon, Civil Action No. 09-10928-DJC, 2011 U.S. Dist. LEXIS 31319, at *10 (D. Mass. Mar. 25, 2011) ("Like corporate directors, managers of a limited liability company owe a fiduciary duty of care and loyalty to the company and its members.").

38. Before the burden of persuasion can shift to Kagan to prove the fairness of any transactions in which he was "on both sides," Plaintiffs are required first to demonstrate that there is some basis on which to invoke the fairness obligation.  Weinberger v. UOP, Inc., 457 A.2d 707, 711 (Del. 1983) (The Chancellor also held that even though the **ultimate** burden of proof is on the majority shareholder to show by a preponderance of the evidence that the transaction is fair, **it is first the burden of the plaintiff attacking the merger to demonstrate some basis for invoking the fairness obligation**.) (emphasis added).  As Plaintiffs' own expert validated the amount charged by KDC, Plaintiffs failed to otherwise prove any actual impropriety with respect to KDC's charges, and Plaintiffs failed to raise any material challenge to the terms of the listing agreements, the burden of persuasion never shifted to Kagan in this case.  Judgment is entered for Kagan and against Plaintiffs as to Plaintiffs' claim that Kagan breached his fiduciary duties by entering into the KDC contract and the listing agreements.

[Requests 39 to 49 are to be used only if the Court finds that the burden of persuasion shifts to Kagan to prove the fairness of one or both of the transactions]

39. Massachusetts "[e]ndors[es] Delaware's conception of fairness…" MAZ Partners LP v. Shear (In re PHC, Inc. S'holder Litig.), 894 F.3d 419, 431 (1st Cir. 2018); Coggins v.

New Eng. Patriots Football Club, 397 Mass. 525, 531 (1986) ("We note that the 'fairness' test to which the Delaware court now has adhered is, as we later show, closely related to the views expressed in our decisions.").

40. The "fundamental fairness" test is composed of two components: "fair dealing and fair price." Coggins, 397 Mass. at 531 (quoting Weinberger v. UOP, Inc., 457 A.2d 701, 715 (Del. 1983)).

41. Fair dealing means that "the fiduciary … who engages in self-dealing must prove that his or her actions were intrinsically fair" to the corporation. Demoulas, 424 Mass. at 529-30.

42. Fair price "'relates to the economic and financial considerations of the [transaction], including all relevant factors . . .'" Sanderson v. Verdasys, Inc., 31 Mass. L. Rep. 22 (2012) (quoting Weinberger, 457 A.2d at 711) (applying Delaware law).

43. Whether the transactions were fair to the LLC is measured at the time that they were entered into. Genesis Tech. & Fin., Inc. v. Cast Navigation, LLC, 74 Mass. App. Ct. 203, 211 n.15 (2009).  (citing Demoulas, 424 Mass. at 538).

44. The fairness test is holistic.   MAZ Partners LP v. Shear (In re PHC, Inc. S'holder Litig.), 894 F.3d 419, 43, n.4 (1st Cir. 2018) ("fairness inquiry involves examination of totality of circumstances").  See also MAZ Partners LP v. Shear, 265 F. Supp. 3d 109, 114 (D. Mass. 2017) ("The fair dealing and fair price components are not viewed in isolation. Rather, you [the jury] should consider both concepts in conjunction."); Weinberger, 457 A.2d at 711 (The fairness test "is not a bifurcated one as between fair dealing [] and price. All aspects of the issue must be examined as a whole since the question is one of entire fairness.").

45. In other words, whether a transaction is "fair and equitable" rests on the "particular sets of facts" regarding the transaction.  Demoulas, 424 Mass. at 529.  See also Diamond v. Pappathanasi, 78 Mass. App. Ct. 77, 95-96 (2010) (while "defendants bore the burden of proving that transactions from which they potentially stood to profit at the expense of SRA were 'in all respects fairly and equitably conducted,' this principle does not prohibit a trial judge from considering the particular circumstances presented in weighing what is fair and equitable."); Finnegan v. Baker, Nos. 121567, SUCV2009-03772-BLS1, 2012 Mass. Super. LEXIS 306, at *82-83 (Oct. 18, 2012) (applying Delaware law) ("Entire fairness is a flexible standard, 'requiring an examination of all aspects of the transaction to gain a sense of whether the deal in its entirety is fair.'") (quoting Kahn v. Lynch Commc'n Sys., Inc., 669 A.2d 79, 84 (Del. 1995)).

46. In the construction loan agreement, the LLC (through its manager, Filippov) covenanted that any contracts entered into with Kagan or any affiliated company, are on "fair and reasonable terms and conditions substantially as favorable to the Borrower as would be obtainable by Borrower in a comparable arm's length transaction with an unaffiliated third party." [Exh. 342, § 5.17].  The LLC is estopped from now claiming that these same contracts are not fair and reasonable.  Gill v. Metro. Prop. & Cas. Ins. Co., 864 F. Supp. 251, 253 (D. Mass. 1994), (quoting, John Hancock Life Ins. Co. v. Schwarzer, 354 Mass. 327, 329 (1968)); see also Albrecht v. United States, 329 U.S. 599 (1947) ("[W]here a party to such a contract stands upon its terms to enforce them for his own advantage, he cannot at the same time successfully disavow those terms so far as he conceives them to be to his disadvantage"); Trachy v. Laframboise, 146 N.H. 178, 185 (2001) (Smith, J.

dissenting) ("As applied to the law of contracts, one who enters a contract is estopped from denying the existence of the contract terms.") (collecting cases).

47. "In a non-fraudulent transaction, 'price may be the preponderant consideration outweighing all other features' of the transaction." Finnegan, 2012 Mass. Super. LEXIS 306, at \*83 (quoting Weinberger, 457 A.2d at 711); see also Ams. Mining Corp. v. Theriault, 51 A.3d 1213, 1244 (Del. 2012) ("In a non-fraudulent transaction, price may be the preponderant consideration outweighing other features of the merger. Evidence of fair dealing has significant probative value to demonstrate the fairness of the price obtained. The paramount consideration, however, is whether the price was a fair one."); Encite LLC v. Soni, Civil Action No. 2476-VCG, 2011 Del. Ch. LEXIS 177, at \*65 (Ch. Nov. 28, 2011) ("[W]hat ultimately matters most is that the price was a fair one."). And in evaluating price, a court need not "flyspeck every expense." Diamond v. Pappathanasi, 78 Mass. App. Ct. 77 , 96 (2010).

48. Therefore, a transaction may be "fair" even though no procedural fairness occurred. Genesis Tech. & Fin., Inc. v. Cast Navigation, LLC, 74 Mass. App. Ct. 203, 211 n.15 (2009)

49. Even if Defendants had not met their burden of proving that a transaction was fair and reasonable, and I do not find this, this would not void the contract and allow Plaintiffs to get a windfall. MAZ Partners LP v. Shear (In re PHC, Inc. S'holder Litig.), 894 F.3d 419, 436 (1st Cir. 2018);  ("Ordering a fiduciary to relinquish **the undue advantage** obtained through a breach of his fiduciary duty …"); Chelsea Indus., Inc. v. Gaffney, 389 Mass. 1, 14 (1983). This Court can utilize its equitable powers to determine the reasonable amount due to the party with which the contract was entered (i.e. KDC in the instance of the

19

KDC contract).  Sagalyn v. Meekins, Packard & Wheat, Inc., 290 Mass. 434, 439 (1935)

(corporation entitled to the return of proceeds in excess of "the fair value of [] services"

for breach of a member's fiduciary duty).  The only available damages would be

compensation for the **undue** benefit conferred.  MAZ Partners LP, 894 F.3d at 436.

There is no evidence of any undue benefit conferred to Kagan.  KDC received only the

monies earmarked for that purpose from the construction loans, and Kagan is seeking

only his contractual entitlement to the net proceeds from the sale of the properties as

permitted and agreed to by the parties under the Operating Agreement.  [Exh. 15, §8.1]

> iii.  *The Claim That the Listing Agreements were Unauthorized and/or Unlawful*

50. Plaintiffs characterize the real estate listing agreements with Century 21 as "self-dealing"

transactions – that Kagan is on both sides of those transactions.

51. Kagan was not on both sides of the listing agreements, as they were between the LLC and

Century 21, a real estate firm in which Kagan has no direct interest and over which

Kagan exerts no control. [SOF 286]  Jernberg v. Mann, 358 F.3d 131, 138 (1st Cir.

2004).  See also Bergeron v. Ridgewood Sec. Corp., 610 F. Supp. 2d 113, 136 n.10 (D.

Mass. 2009) ("The plaintiff has the burden [to] … demonstrate that the Defendants

"appeared on both sides of [a] transaction or derived a personal benefit from a transaction

in the sense of self-dealing…").  Because Kagan was not on both sides of the listing

agreements, Kagan does not bear the burden of proving the entire fairness of the real

estate listing agreements.

52. The Operating Agreement expressly contemplated the signing of listing agreements with

Tatiana Kagan's firm, Century 21.  [Exh. 15, §6.1(b)(6)] As such, Kagan was authorized

to sign such agreements.  Homeowner's Rehab, Inc. v. Related Corp. V SLP, L.P., 479

Mass. 741, 763 (2018) (Where "the contours of fiduciary duties are defined with reference to the terms of the contract, there can be no claim for a breach of fiduciary duty where a partner's 'contested action falls entirely within the scope of a contract' between the partners." (quoting Fronk v. Fowler, 456 Mass. 317, 331-332 (2010)); Perry v. Perry Farms, Inc., 638 F. Supp. 2d 840, 845 (N.D. Ohio 2009) ("No breach of fiduciary duty exists when an agreement is signed that effectively relieves the fiduciary of liability by authorizing the action."). Moreover, the evidence is clear that plaintiffs were aware that Kagan was signing the listing agreements and failed to object. [SOF 282-301]. Plaintiffs have failed to prove that Kagan lacked authority to sign the listing agreements on the LLC's behalf and judgment is entered for Kagan and against Plaintiffs on this claim.

53. Filiipov and Lipetsker were fiduciaries of the LLC. Filippov is also the managing member of the LLC, and thus owes a further fiduciary duty to the LLC and its members. Allison v. Eriksson, 479 Mass. 626, 635 (2018). Freid v. Gordon, Civil Action No. 09-10928-DJC, 2011 U.S. Dist. LEXIS 31319, at *10 (D. Mass. Mar. 25, 2011) ("Like corporate directors, managers of a limited liability company owe a fiduciary duty of care and loyalty to the company and its members.").

54. Filippov, as a fiduciary, cannot "purposefully shut his eyes to means of information within his own possession and control" having only that knowledge which he cares to have. This is especially true of [a fiduciary], which functioned as the 'business center' [] and had a duty to keep itself informed of [] business." Perkins v. Rich, 11 Mass. App. Ct. 317, 322 (1981). See also Stoughton Lumber Co. v. Sveum, 787 F.3d 1174, 1177 (7th Cir. 2015) (a party cannot "preserve a patina of innocence" by "playing ostrich" or having "conscious disregard" of risk, "willful blindness," or "gross recklessness" of facts).

21

Filippov and Lipetsker therefore cannot base their claims against Kagan on information they possessed, or reasonably could have possessed, but chose not to pursue.

55. The evidence establishes that Filippov and Lipetsker were aware of the listing agreements. [SOF 282-301] The failure to disavow contracts known to the fiduciary constitutes a ratification of those contracts. See GE Credit Corp. V. Mutual Ford, Inc., 1985 U.S. Dist. LEXIS 23274, *19-20 (D. Mass. January 21, 1985),  (citing, Cmty. Nat'l Bank v. Loumos, 6 Mass. App. Ct. 830, 831 (1978); Juergens v. Venture Capital Corp., 1 Mass. App. Ct. 274, 278 (1973)).   In GE Credit, the Court explained that under Massachusetts law that "it is clear that directors of a corporation have a duty to keep themselves informed about the conduct of their business [and] [a] director cannot purposefully shut his eyes to the means of information within his own possession and control." Id.  When he "has the knowledge of [a binding legal document] entered into on behalf of his corporation available to him at all times, knowledge of their existence will be imputed to him; absent prompt disavowal, the corporation is deemed to have ratified the agreement."  Filippov and Lipetsker therefore cannot maintain claims against Kagan where they possessed all the facts necessary to have actual knowledge about the listing agreements.  Accordingly, they are deemed to have ratified contracts entered on behalf of the LLC such as the listing agreements and the KDC construction contract.

56. The evidence shows that that Filippov and Lipetsker were aware of the listing agreements and did not complain about them until after a dispute among the parties arose.  [SOF 285-304]  Because they were aware of the agreements and did nothing, Plaintiffs cannot recover on a claim of breach of fiduciary duty. Liston v. Gottsegen, 348 F.3d 294, 305 (1st Cir. 2003) (in small LLCs, less likely that there are "disinterested shareholders" so

members' actual knowledge precludes claim against acting member); <u>ADA Sols., Inc. v. Meadors</u>, 98 F. Supp. 3d 240, 265 (D. Mass. 2015) (there can be no breach of fiduciary duty if "the principal … authorize[d] or acquiesce in the arrangement.") <u>rev'd in part on other grounds by</u> 665 Fed. Appx. 3 (1st Cir. 2016).  Judgment is entered for Kagan and against Plaintiffs on this claim.

57. Plaintiffs have failed to demonstrate a basis on which to invoke the fairness doctrine with respect to the listing agreements, so the burden does not shift to Kagan to prove the entire fairness of the listing agreements. <u>Weinberger v. UOP, Inc.</u>, 457 A.2d 707, 711 (Del. 1983) (The Chancellor also held that even though the **ultimate** burden of proof is on the majority shareholder to show by a preponderance of the evidence that the transaction is fair, **it is first the burden of the plaintiff attacking the merger to demonstrate some basis for invoking the fairness obligation**.) (emphasis added).

[Requests 58 to 67 should be used only if the Court finds that Kagan bears the burden of proving the fairness of the listing agreements]

58. Kagan has proven that the listing agreements were fair to the LLC when they were signed.  The terms of the listing agreements were materially similarly to the listing agreements the Trustee used to sell the properties.  [SOF 361] The commission rates to be paid under the challenged listing agreement were the same as the commission rates the Trustee paid, so the "price" to the LLC under the challenged listing agreement was fair. The evidence also shows that Filippov had actual knowledge of the listing agreements and they were presented to him, so the process followed when signing them was also fair. Judgment is therefore entered for Kagan and against Plaintiffs on this claim.

*iv.  The Claim that the KDC Contract was Unauthorized and/or Unlawful*

59. Plaintiffs allege that Kagan breached his fiduciary duty by signing the KDC contract and that Kagan should bear the burden of proving the fundamental fairness of the deal between the LLC and KDC.

60. Plaintiffs have failed to demonstrate a basis on which to invoke the fairness doctrine with respect to the KDC contract, so the burden does not shift to Kagan to prove the entire fairness of the KDC contract. Weinberger v. UOP, Inc., 457 A.2d 707, 711 (Del. 1983) (The Chancellor also held that even though the **ultimate** burden of proof is on the majority shareholder to show by a preponderance of the evidence that the transaction is fair, **it is first the burden of the plaintiff attacking the merger to demonstrate some basis for invoking the fairness obligation**.) (emphasis added).  The burden therefore does not shift to Kagan and Plaintiffs have failed to carry their burden of proving a breach of fiduciary duty.  Judgment is entered for Kagan and against Plaintiffs on their claim that Kagan breached his fiduciary duty by causing the LLC to enter into the KDC contract.

61. The Operating Agreement [Exh. 15, §5.2] expressly delegated to Kagan the responsibility to contract the homes for the project.  Implicit in that obligation was the authority to bind the LLC to an agreement with a general contractor.  Costonis v. Medford Hous. Auth., 343 Mass. 108, 115 (1961) ("'An agent typically has implied authority to do that which usually accompanies, is incidental to, or is reasonably necessary to complete the transaction for which the agent has actual authority.'") (quoting McDonald v. Gough, 326 Mass. 93, 97 (1950)); see also Lopes v. Beland, Civil Action No. 11-cv-12063-DJC, 2015 U.S. Dist. LEXIS 112841, at *13 (D. Mass. May 14, 2015) (same).

62. Filiipov and Lipetsker were fiduciaries of the LLC.  Filippov is also the managing member of the LLC, and thus owes a further fiduciary duty to the LLC and its members. <u>Allison v. Eriksson</u>, 479 Mass. 626, 635 (2018).

63. Filippov, as a fiduciary, cannot "purposefully shut his eyes to means of information within his own possession and control" having only that knowledge which he cares to have. This is especially true of [a fiduciary], which functioned as the 'business center' [] and had a duty to keep itself informed of [] business." <u>Perkins v. Rich</u>, 11 Mass. App. Ct. 317, 322 (1981).  <u>See</u> <u>also</u> <u>Stoughton Lumber Co. v. Sveum</u>, 787 F.3d 1174, 1177 (7th Cir. 2015) (a party cannot "preserve a patina of innocence" by "playing ostrich" or having "conscious disregard" of risk, "willful blindness," or "gross recklessness" of facts). Filippov and Lipetsker therefore cannot base their claims against Kagan on information they possessed, or reasonably could have possessed, but chose not to pursue.

64. The failure to disavow contracts known to the fiduciary constitutes a ratification of those contracts. <u>See</u> <u>GE Credit Corp. v. Mutual Ford, Inc.</u>, 1985 U.S. Dist. LEXIS 23274, *19- 20 (D. Mass. January 21, 1985).   In <u>GE Credit</u>, the Court explained that under Massachusetts law that "it is clear that directors of a corporation have a duty to keep themselves informed about the conduct of their business [and] [a] director cannot purposefully shut his eyes to the means of information within his own possession and control." <u>Id</u>.  When he "has the knowledge of [a binding legal document] entered into on behalf of his corporation available to him at all times, knowledge of their existence will be imputed to him; absent prompt disavowal, the corporation is deemed to have ratified the agreement."  Filippov and Lipetsker therefore cannot maintain claims against Kagan

where they had sufficient knowledge of the existence of the KDC contract and are deemed to have ratified it.

65. Filippov and Lipetsker anticipated that Kagan would sign a contract with his company to act as general contractor. Filippov and Lipetsker were sent a copy of the contract. [SOF 174-175, 181-183] They did not complain about it until after a dispute among the parties arose. Because they were aware of the contract and did nothing, they cannot prevail on their claim for breach of fiduciary duty. ADA Sols., 98 F. Supp. 3d at 265. See also GE Credit Corp. V. Mutual Ford, Inc., 1985 U.S. Dist. LEXIS 23274, *19-20 (D. Mass. January 21, 1985) (company bound by unauthorized loans when principal knew of loans and did not disavow them). Judgement is entered for Kagan and against Plaintiffs on this claim.

66. Filippov and Lipetsker both knew that KDC and ProExcavation were providing services on the project and were provided with copies of checks and payments to them in real time. Lipetsker submitted an affidavit in state court attesting to the fact that the plan from the outset was to engage KDC to perform the contract. [SOF 174-175, 224-236] Maiden advised Filippov in November 2012 that the LLC would need to sign a contract with KDC. [Exh. 187] Plaintiffs affirmatively plead (Count VII) that there was a contract with KDC. Kagan e-mailed a copy of the KDC contract to plaintiffs. [Exh. 65, 215] [SOF 181-182] Filippov signed a loan agreement on behalf of the LLC wherein he covenanted that any contracts signed with an affiliate of any member of the LLC, such as KDC, will be on "fair and reasonable terms and conditions substantially as favorable to the Borrower as would be obtainable by Borrower in a comparable arm's length transaction with an unaffiliated third party." [Exh. 342, §5.17] [SOF 162] Under these circumstances,

it is clear that Plaintiffs knew about the contracts, yet did nothing to repudiate them, so Plaintiffs cannot prevail on their claim against Kagan.

67. Kagan was authorized to sign the KDC contract and the Court enters judgment for Kagan and against Plaintiffs on the claim that he breached a fiduciary duty by signing the KDC contract without authorization.

[Requests 68 to 74 should be used only if the Court finds that Kagan bears the burden to prove the fairness of the KDC contract]

68. Filippov was sent a copy of the KDC contract and it was discussed with him [SOF 182-83], so the process under which the LLC entered into the KDC contract was fair. [Exh. 65]

69. At the time the KDC contract was executed, the parties anticipated that the per home construction cost would be at least $1.760 million ($1.6 million plus an additional 10% to be funded privately). [Exh. 342, §3.4.11] They also knew that this was based upon preliminary plans as this was a "spec home". As such it would have been virtually impossible to come up with a fixed price for construction. Mr. Doddridge, plaintiffs' own expert, opined that the preliminary estimate should be within 7% of the final estimate. [SOF 528] Thus, the anticipated costs could have been as much as 7% higher, or $1,883,200, and still been reasonable. Kagan's per home hard construction costs were $1,886,571, only $3,771 higher than plaintiffs' own expert determined was reasonable.

70. Plaintiffs' expert also testified that his per home cost opinion could be off by as much as 5% due to the fact that he was relying upon average prices collected by RS Means. [SOF 515, 526] He also admitted that he did not include the 10% overhead cost, which was reasonable, and which is a direct cost which a contractor is entitled to recover. [SOF 503, 524] Mr. Doddridge's opinion of cost was $1,718,760. When one adds the missing

15%, that number is actually $1,975,884 which is actually higher than the $1,886,571 that KDC charged for hard construction costs. According, KDC's charges for the construction is reasonable.

71. Even without any adjustments to Mr. Doddridge's number, the difference between what he opined the hard costs should be and what KDC billed is only $167,811. [SOF 525] This is less than 10% higher than the number that Mr. Doddridge believed reasonable. On a multi-million, two year project, a final cost that is less than 10% higher than the original projection is objectively reasonable.

72. Mr. Salmi, defendants' expert, opined after collecting actual bids that the fair and reasonable value of KDC's contract was $5,869,828 (for the two houses). This is significantly more than the amount charged by KDC for both hard and soft costs. [SOF 500]

73. The evidence therefore shows that the price KDC charged for its services, even when soft costs are added in, was fair to the LLC.

74. Kagan therefore carried his burden of proving that the KDC contract was fair to the LLC at the time it was signed. Judgment is entered for Kagan and against Plaintiffs on this claim.

*v. The Claim for Making False Claims for Payment*

75. The only "claim" submitted by Kagan was for indemnity. The claims for additional construction costs and carrying costs were submitted by KDC. KDC is an independent corporate entity. It maintains its own books and records, submits its own tax returns and has its own employees. The mere fact that Kagan is the principal and shareholder of KDC and ProEx does not mean that KDC is an "alter ego" for Kagan. Abdallah v. Bain

28

Capital LLC, 752 F.3d 114, 121-22 (1st Cir. 2014) ("[D]ominant shareholders" such as Kagan "are almost always 'active participants' in the affairs of an owned corporation. And, in the usual case, the exercise of such control . . . does not result in the owner's personal liability.'"). There is also insufficient evidence to permit this Court to "pierce the corporate veil" and hold Kagan liable for the alleged transgressions of KDC [or ProExcavation].

76. Corporate officers (such as Kagan) are ordinarily not liable for a corporation's (KDC's) breach of contract." M. McDonough Corp. v. Connolly, 313 Mass. 62, 65-66 (1943); Lothian v. Mumford, No. 00-02565, 2006 Mass. Super. LEXIS 274, at *13 (June 9, 2006).   As such, even if KDC's claims were "false", which I do not find, Kagan cannot be found to have breached the Operating Agreement by virtue of KDC's seeking payment from the LLC.  Moreover, as the Operating Agreement did not establish a price for the construction, submitting a bill even if it was actionable under other theories, cannot be deemed to violate the Operating Agreement.

77. As Kagan submitted only a claim for indemnity, he has not breached any fiduciary duty and judgment is entered for Kagan and against Plaintiffs on this claim.

[Request 78 to be used only if the Court considers KDC's claims for payment as a potential breach of fiduciary duty by Kagan]

78. Because Kagan has proven that the price KDC charged was fair and based on the strength of the other evidence presented at trial, regardless of which party bears the burden of proof, Plaintiffs cannot recover on their claim that Kagan breached his fiduciary duty by presenting "false" claims for payment.  Judgment is entered for Kagan and against Plaintiffs on this claim.

*vi.  Plaintiffs' Alleged Damages for Breach of Fiduciary Duty*

29

79. Plaintiffs failed to present any evidence that they suffered any damages as a result of Kagan's alleged breaches of fiduciary duty.  White Spot Const. Corp. v. Jet Spray Cooler, Inc., 344 Mass. 632, 634 (1962) (in the event a breach of fiduciary duty is found and damages are sought, the party seeking such damages must prove a sum-certain pecuniary loss, and "must establish his claim upon a solid foundation in fact"; as such, the claimant "cannot recover when any essential element is left to conjecture, surmise, or hypothesis."). Judgment is entered for Kagan and against Plaintiffs because they failed to prove they suffered any damages, even if he breached his fiduciary duties.

80. Plaintiffs had the obligation to attempt to mitigate the harms alleged suffered.  Fleet Nat'l Bank v. Anchor Media Television, 45 F.3d 546, 561 (1st Cir. 1995); Burnham v. Mark IV Homes, Inc., 387 Mass. 575, 586 (1982) ("The general rule with respect to mitigation of damages is that a plaintiff may not recover for damages that were avoidable by the use of reasonable precautions on his part").   They had the opportunity to seek to bond off or seek to invalidate KDC's mechanic's lien in the pending state court litigation which Plaintiffs initiated. M.G.L. c. 254, §§ 11, 14, 15A.  In fact, Section 15A of M.G.L. c. 254 offers an expedited procedure to challenge a lien. They also had the opportunity to halt the project and demand additional information. Having failed to mitigate the alleged damages and their claim is denied.  Judgment is entered for Kagan and against Plaintiffs on this claim.

81. Even if Plaintiffs had proven some damages and transactions are deemed to be self-dealing ones in Kagan was on both sides, Kagan has carried his burden of proving a lack of a causal connection between the alleged self-dealing transactions and the damages allegedly suffered by the LLC.  Meehan v. Shaughnessy, 404 Mass. 419, 441 (1989) )

See also Demoulas, 424 Mass. at 529 (burden on fiduciary to show no harm to corporation for self-dealing transaction).

82. To the extent Plaintiffs seek to force Kagan to forfeit compensation owed to him or already received by him, that claim is denied.  The doctrine of equitable forfeiture "has been limited in Massachusetts cases only to that portion of compensation which exceeded the worth of the … services." Integrated Pharms., Inc. v. Chatterjee (In re Chatterjee), 594 B.R. 15, 26 (Bankr. D. Mass. 2018) (Bailey, J.) (citing Boston Children's Heart Foundation, Inc. v. Nadal-Ginard, 73 F.3d 429, 435 (1st Cir. 1996)).  See also Sagalyn v. Meekins, Packard & Wheat, Inc., 290 Mass. 434, 439 (1935) (corporation entitled to the return of proceeds in excess of "the fair value of [] services" for breach of a member's fiduciary duty); MAZ Partners LP, 894 F.3d at 436 ("Ordering a fiduciary to relinquish **the undue advantage** obtained through a breach of his fiduciary duty is an unremarkable exercise of th[e] court's authority.").  "This limitation stems from the premise that the forfeiture remedy is not a penalty but really reimbursement of payment for services not properly performed." Tomsic v. Lautieri (In re Tri-Star Techs. Co.), 257 B.R. 629, 637 (Bankr. D. Mass. 2001) (citing Lydia E. Pinkham Medicine Co. v. Gove, 303 Mass. 1, 4 (1939). "Therefore, compensation is often apportioned in relation to the services indeed properly performed." Id. (citing Lydia E. Pinkham Medicine Co., 303 Mass. at 4; Anderson Corp. v. Blanch, 340 Mass. 43, 50-51, (1959); Production Mach. Co. v. Howe, 327 Mass. 372, 379 (1951)).

83. In light of the evidence presented at trial, the Court rejects Plaintiffs' request that Kagan forfeit any compensation he has received or will receive when the proceeds of the sale of the properties and/or assets of the LLC are distributed.  The Court further finds no basis

to adjust Kagan's percentage interests in proceeds or profits as a result of any alleged breach of fiduciary duty.

### c. Plaintiffs' Claim that Tatiana Kagan, KDC and ProEx Aided and Abetted Kagan's Breaches of Fiduciary Duties

84. To prove Tatiana Kagan ("Tatiana"), KDC, and ProEx aided and abetted Kagan's breaches of fiduciary duty, Plaintiffs must prove: (1) a breach of fiduciary duty, (2) the defendant must know of the breach, and (3) the defendant must actively participate or substantially assist in or encourage the breach to the degree that he or she could not reasonably be held to have acted in good faith." Arcidi v. NAGE, Inc., 447 Mass. 616, 623-24 (2006); Spinner v. Nutt, 417 Mass. 549, 556 (1994) (reciting elements).

85. Because Kagan did not breach any fiduciary duty, it follows that Tatiana Kagan, KDC, and ProEx cannot be liable for aiding and abetting. Gatof v. Northland Inv. Corp., 32 Mass. L. Rep. 468, *8 (2014) (defendants were "entitled to judgment as a matter of law on the aiding and abetting breach of fiduciary duty claim … because [plaintiff] will be unable to prove a breach of fiduciary duty occurred."). See also City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. Comstock, No. 9980-CB, 2016 Del. Ch. LEXIS 133, at *67-70 (Ch. Aug. 24, 2016) ("A claim for aiding and abetting a breach of fiduciary duty cannot survive if the underlying fiduciary duty claims do not." (collecting cases)). Judgment is therefore entered for Defendants and against Plaintiffs on this claim.

[Requests 86-87 to be used only if the Court finds that Kagan breached a fiduciary duty]

86. The evidence shows that Tatiana Kagan had no actual knowledge of, or actively participated in, Kagan's alleged breaches of fiduciary duty.  [SOF 241-246]  As such, Plaintiffs have not carried their burden with respect to the claim against her. Spinner v. Nutt, 417 Mass. 549, 556 (1994) (claim for aiding and abetting breach of fiduciary duty

fails if the plaintiffs cannot "show that the defendant knew of the breach and actively participated in it such that he or she could not reasonably be held to have acted in good faith."). Judgment is therefore entered for Tatiana and against Plaintiffs on this claim.

87. There is no evidence that either ProEx or KDC had actual knowledge of or participated in Kagan's alleged breach of fiduciary duty.  Therefore, judgment is entered for ProEx and KDC and against Plaintiffs on this claim.

### d.  Plaintiffs' Claim that Kagan Committed Fraud

88. Plaintiffs allege in their adversary complaint that Kagan committed fraud by presenting a false/fixed budget; pressuring Plaintiffs at the end of the project to agree to extra costs; and presenting false charges and double-billing.

#### i.  The Elements Plaintiffs Must Prove

89. "Under Massachusetts law, claims of fraudulent …  misrepresentation require a false representation of material fact, knowledge of falsity or carelessness on the part of the defendant, and a reasonable reliance by the plaintiff." Brennan v. GTE Gov't Sys. Corp., 150 F.3d 21, 30 (1st Cir. 1998). See also Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 357–58 (1st Cir. 2013) ("Under Massachusetts law, fraud requires that the defendant made a  knowingly false statement concerning a material matter that was intended to, and did in fact,  induce the plaintiff's reliance and, through that reliance, created an injury."); Christian v. Mooney, 400 Mass. 753, 764 (1987) (fraud is "a misrepresentation of an existing fact made with knowledge of the falsity of the misrepresentation or with reckless disregard of the actual facts.").

90. "Innocent misrepresentations do not create such liability inasmuch as the plaintiff must show that the defendant made a false representation of a material fact with knowledge of

its falsity. In other words, the false statement of a present intent to do the future act must

misrepresent the actual intent of the speaker." <u>Davis v. Dawson, Inc.</u>, 15 F. Supp. 2d 64,

137 (D. Mass. 1998), *citing*, <u>Schinkel v. Maxi-Holding, Inc.</u>, 30 Mass. App. Ct. 41, 48

(1991) (a party induced to sign an agreement by an assurance that the other party will

refrain from invoking one of its terms is entitled to relief only if the plaintiff can prove

that other party's actual intent was to the contrary).

91.  Statements of present intention as to future conduct may not be the basis for a fraud

action unless the statements misrepresent the actual intention of the speaker and were

relied upon by the recipient to his damage. <u>McEvoy Travel Bureau, Inc. v. Norton Co.</u>,

408 Mass. 704, 709 (1990), *citing*, <u>Barrett Assocs., Inc. v. Aronson</u>, 346 Mass. 150, 152

(1963)).

92. Plaintiffs must show more than subsequent non-performance; they must show Kagan

never intended to fulfill the statements he made.  <u>Galotti v. United States Tr. Co.</u>, 335

Mass. 496, 501(1957) ("Intention not to perform a promise, existing when the promise is

made, cannot be shown merely by nonperformance of the promise."); <u>Forward Fin. LLC</u>

<u>v. Shuster</u>, No. 16-10981-MLW, 2018 U.S. Dist. LEXIS 152180, at *5-6 (D. Mass. Mar.

29, 2018) ("'The intention of the promisor not to perform an enforceable or

unenforceable agreement cannot be established solely by proof of its nonperformance,

nor does his failure to perform the agreement throw upon him the burden of showing that

his nonperformance was due to reasons which operated after the agreement was entered

into."), *quoting*, Restatement (Second) of Torts § 530, cmt. d (1977)).

93. "[T]he intention not to carry out the promise, existing when the promise was made" is an

"essential element" of fraud and cannot "be inferred merely from the nonperformance of

the promise." <u>McCartin v. Westlake</u>, 36 Mass. App. Ct. 221, 230 n.11, (1994). <u>See</u> <u>also</u>

<u>Rodowicz v. Mass. Mut. Life Ins. Co.</u>, 279 F.3d 36, 45 (1st Cir. 2002) ("Under

Massachusetts law, a jury cannot infer contrary intent at the time of the representation

from the mere fact that the company took contrary action at a later date. In order to show

that the representations about whether [statements were false when uttered], the plaintiffs

needed to offer evidence that, at the time of the representations, [defendant] had some

present intention [to not carry out promise] in the future."), *citing*, <u>Connolly v. Rochester</u>

<u>Shoe Tree Co.</u>, 3 Mass. L. Rep. 32 (1994) (Lauriat, J.) for the proposition that where

financial considerations changed, failure to follow through on agreed to payments did not

constitute fraud where there was no evidence that the defendant's initial promise was

"false at the time [it was] made,").

94. The rule of law [that forward-looking statements are not actionable is] hardly to be

regretted, when it is considered how easily and insensibly words of … expectation are

converted by an interested memory into statements of quality and value when the

expectation has been disappointed." <u>Deming v. Darling</u>, 148 Mass. 504, 506 (1889)

(Holmes, J.); <u>see also</u> <u>McCartin</u>, 36 Mass. App. Ct. at 230 n.11 (quoting <u>Deming</u>).

*ii.   The Evidence Does Not Support Plaintiffs' Allegations*

95. Plaintiffs have failed to prove that Kagan made a statement at a time when he never

intended to fulfill it.  Judgment is therefore entered for Kagan and against Plaintiffs on

this claim.

96. Plaintiffs have failed to prove that Kagan committed fraud by presenting a false/fixed

budget; pressuring Plaintiffs at the end of the project to agree to extra costs; and

presenting false charges and double-billing.  The evidence shows that there was no fixed

budget, Kagan himself did make a claim other than for indemnity (KDC, not Kagan pressed a claim for payment), and the charges KDC asserted were in fact reasonable and fair. Judgment is therefore entered for Kagan and against Plaintiffs on this claim.

### iii. *Plaintiffs are Required to Prove Detrimental Reliance*

97. "Proof of detrimental reliance is a necessary element of a fraud claim under Massachusetts law." Biggins v. Hazen Paper Co., 953 F.2d 1405, 1420 (1st Cir. 1992) (Plaintiffs admit they did not rely upon the alleged "fraudulent mechanic liens at page 9 of the pretrial memorandum). See also; Copley Place Assocs., LLC v. Téllez-Bortoni, 91 Mass. App. Ct. 186, 192 n.12 (2017) ("Both fraud and negligent misrepresentation claims require proof of detrimental reliance.").

98. Because Massachusetts common law fraud requires reliance, cases citing statutory fraud where reliance is not a required element are not relevant to the legal analysis. Fordyce v. Town of Hanover, 457 Mass. 248, 257 (2010) ("Under the common law, fraud is a knowing false representation of a material fact intended to induce a plaintiff to act ***in reliance***, where the plaintiff did, in fact, rely on the misrepresentation to his detriment" and rejecting proposition that public bidding statute's reference to "fraud" does not require reliance) (emphasis added). Indeed, the Plaintiffs' have repeatedly pointed to case law under the Bankruptcy Code's discharge provisions or for fraudulent conveyances where reliance is not an element. Those cases have no application to the common law fraud that has been asserted in this action.

99. Plaintiffs cannot have relied upon the allegedly false billings and pressure to pay them as all of this alleged conduct occurred after the project was complete. Plaintiffs refused to pay these charges or buckle to the supposed pressure, thereby making it clear that they

did not rely on those representations.  Had they paid in reliance on the allegedly false

charges, reliance may have been found.  They did not.  As to the claim of a fixed price

budget, the evidence is overwhelming that there was no guaranty of a fixed price and

plaintiffs relied upon their own due diligence, advice of counsel, and Lipetsker's

recommendation in deciding to invest.  [SOF 66-70]  They did not rely on any fixed price

representation, because there was none.

100.        Plaintiffs have failed to prove they reasonably relied to their detriment on any

statement made by Kagan.   Therefore, judgment is entered for Kagan and against

Plaintiffs on this claim.

### iv.   The Need for Plaintiffs to Prove Damages

101.        It is well-settled that a common-law action for fraud requires a pecuniary loss.

Shaulis v. Nordstrom Inc., 120 F. Supp. 3d 40, 54 (D. Mass. 2015) (citing Restatement

(Second) of Torts § 525). "Where a plaintiff suffers pecuniary injury by the fraud of a

defendant, the damages recoverable are those which naturally flow from, i.e. caused by

"the fraud." David v. Belmont, 291 Mass. 450, 453 (1935).

102.        Under First Circuit precedent, fraud-based pecuniary damages cannot be the total

price paid for an item where the fraud allegedly caused a purchase.  Instead, a pecuniary

loss occurs if the item that the plaintiff received "was worth less than [plaintiff] paid, or

… was defective in some way." Shaulis v. Nordstrom, Inc., 865 F.3d 1, 15 (1st Cir.

2017).

103.        Plaintiffs had the obligation to attempt to mitigate the harms alleged suffered.

Fleet Nat'l Bank v. Anchor Media Television, 45 F.3d 546, 561 (1st Cir. 1995); Burnham

v. Mark IV Homes, Inc., 387 Mass. 575, 586 (1982) ("The general rule with respect to

mitigation of damages is that a plaintiff may not recover for damages that were avoidable by the use of reasonable precautions on his part").  They had the opportunity to seek to bond off or seek to invalidate KDC's mechanic's lien in the pending litigation they had already initiated. M.G.L. c. 254, §§ 11, 14, 15A. In fact, M.G.L. c. 254, §15A provides for an expedited hearing on the validity of a lien, yet plaintiffs failed to avail themselves of this procedure. They also could have stopped the project or requested more information. Having failed to take any such steps, Plaintiffs failed to mitigate the alleged damages, and their claim is denied.  Judgment is entered for Kagan and against Plaintiffs on this claim.

104.    Plaintiffs have failed to prove they suffered any damages as a result of any allegedly fraudulent statement by Kagan.  They did not pay the claims for additional money, nor establish that any conduct of the defendants led to any losses which they claim to have sustained.  Judgment is therefore entered for Kagan and against Plaintiffs on this claim.

### e.  Plaintiffs' Claim that Tatiana Kagan Committed Fraud

105.    Plaintiffs allege in their adversary complaint that Tatiana committed fraud by signing listing agreements knowing that Kagan lacked authority to sign on behalf of the LLC; and that she is individually liable for the damages caused by KDC and ProEx.

### i.  The Claim that the Listing Agreements were not Authorized

106.    The claim regarding the signing of the listing agreements is governed by the Operating Agreement, which expressly provided that the LLC and Century21 could enter into listing agreements.   Because the Operating Agreement [Exh. 15] authorized the conduct, there was no fraud. Homeowner's Rehab, Inc., 479 Mass. at 741, 763 (2018).

There is no evidence that Tatiana, who is not a party to the Operating Agreement, was ever provided with a copy of the agreement or ever even saw it. Accordingly, there is no evidence that she knew or should have known her husband lacked authority to sign (assuming *arguendo* that such prohibition is contained in the Operating Agreement).

107.     Plaintiffs had actual knowledge of the listing agreements and the fact that Centutry21 had been retained to list the homes and yet they did not express any complaints until after May 7, 2015. [SOF 282-301] Plaintiffs thereby waived any claim they may have had for fraud against Tatiana. Eldridge v. Gordon Bros. Grp., LLC, No. 08-11254-DPW, 2011 U.S. Dist. LEXIS 85788, at *36 (D. Mass. Aug. 4, 2011) ("Specifically, waiver will apply if a party, after discovering the alleged fraud and with full knowledge of its materials aspects, engages in conduct which is inconsistent with an intention to sue.").

108.     Judgment is entered for Tatiana and against Plaintiffs on the claim that she committed fraud by signing the listing agreements.

     *ii. The Claim of Individual Liability for Damages Caused by KDC and ProEx*

109.     Plaintiffs presented no evidence Tatiana was an active participant in any of the alleged corporate torts [SOF 8, 243-47], so she cannot be individually liable for any judgment entered against KDC or ProEx. M. McDonough Corp. v. Connolly, 313 Mass. at 65-66; Cash Energy, Inc. v. Weiner, 768 F. Supp. 892, 895 (D. Mass. 1991) ("Traditional principles of corporate law preclude individual liability unless grounds are shown either for piercing the corporate veil or finding active personal involvement in a tortious act."). There is virtually no evidence that Tatiana had any role in the project other than acting as real estate agent for purposes of marketing and selling the properties.

39

She had no responsibilities during construction, had no role in selecting, supervision, or billing for subcontractors or construction costs.

110.    Plaintiffs have failed to carry their burden of proving Tatiana committed fraud and therefore judgment is entered for Tatiana and against Plaintiffs on this claim.

### f. Plaintiffs' Claim that KDC Committed Fraud

111.    Plaintiffs allege in their adversary complaint that KDC committed fraud by double-billing, charging for materials actually used on other projects, and falsifying its financial records.

112.    Plaintiffs have not identified any actual double-billing, diversion of materials to other projects, or falsified financial records.  [SOF  384-469]  Judgment is therefore entered for KDC and against Plaintiffs on this claim.

113.    Plaintiffs' own expert, Mr. Goldman, a forensic accountant who poured over KDC's books and records, was unable to identify any improper payments.  His ultimate opinion was that based on the number of irregularities he perceived, the records are unreliable.  [SOF 397-417]  Assuming, *arguendo*, that this is true, at best, Plaintiffs' proved the KDC did not have the best bookkeeping practices. This is not actionable, however, as poor bookkeeping is not fraud. See Leifker v. Leifker Grain, LLC, No. 15-cv-37-jdp, 2017 U.S. Dist. LEXIS 46993, at *16 (W.D. Wis. Mar. 28, 2017) ("sloppy bookkeeping does not equate to … fraud and deception"); Ladd v. Equicredit Corp. of Am., CIVIL ACTION NO. 00-2688 SECTION "N", 2001 U.S. Dist. LEXIS 14422, at *5 (E.D. La. Sep. 6, 2001) (denying summary judgment where the court refused to equate sloppy bookkeeping with fraud); B.T. Lazarus & Co. v. Alma Mktg., Inc., No. 89AP-1350, 1991 Ohio App. LEXIS 2911, at *32 (Ct. App. June 13, 1991) (affirming trial

court's ruling that "there was no evidence of fraud" where "at best [the evidence] shows poor bookkeeping"); <u>Scott v. Anderson Newspapers, Inc.</u>, 477 N.E.2d 553, 563 (Ind. Ct. App. 1985) (noting that in case the court "found no fraudulent acts, only sloppy bookkeeping.").

114.     Furthermore, the evidence presented at trial shows that the amount KDC charged for its work was fair and reasonable, meaning that Plaintiffs did not suffer any pecuniary harm.  <u>Shaulis</u>, 865 F.3d 1, 15 (D. Mass. 2017)

115.     Plaintiffs had the obligation to attempt to mitigate the harms alleged suffered. <u>Fleet Nat'l Bank v. Anchor Media Television</u>, 45 F.3d 546, 561 (1st Cir. 1995); <u>Burnham v. Mark IV Homes, Inc</u>., 387 Mass. 575, 586 (1982) ("The general rule with respect to mitigation of damages is that a plaintiff may not recover for damages that were avoidable by the use of reasonable precautions on his part").  They had the opportunity to seek to bond off or invalidate KDC's mechanic's lien in the pending state court litigation which they had initiated M.G.L. c. 254, §§ 11, 14, 15A.   In fact, Section 15A of M.G.L. c. 254 provides an expedited procedure for the challenging of liens. They had the opportunity to stop the project and request more information.  Having failed to take any steps when they had the chance, Plaintiffs failed to mitigate the alleged damages and their claim is denied. Judgment is entered for Kagan and against Plaintiffs on this claim.

116.     Plaintiffs have failed to carry their burden of proving KDC committed fraud and therefore judgment is entered for KDC and against Plaintiffs on this claim.

### g.  Plaintiffs' Claim that ProEx Committed Fraud

117.     Plaintiffs allege in their adversary complaint that ProEx committed fraud by submitting false charges for $900,000 when the actual value of the work was much less.

118.     Plaintiffs have failed to prove that ProEx submitted false charges [SOF 381-469], and therefore judgment is entered for ProEx and against Plaintiffs on this claim.  In fact, both plaintiffs' expert and defendants' expert agreed that ProEx's charges were fair and reasonable.  [SOF 505-508, 527-528]

119.     The evidence established that ProEx maintained its books on an accrual basis and, at the end of the year, would invoice against its lump sum proposals for the percentage of work completed in that tax period.  It did not track expenses by individual project, as it proposed on a lump sum basis.  At best, Plaintiffs' proved the ProEx did not have the best bookkeeping practices, but this is not actionable as poor bookkeeping is not fraud. See Leifker v. Leifker Grain, LLC, No. 15-cv-37-jdp, 2017 U.S. Dist. LEXIS 46993, at *16 (W.D. Wis. Mar. 28, 2017) ("sloppy bookkeeping does not equate to … fraud and deception"); Ladd v. Equicredit Corp. of Am., CIVIL ACTION NO. 00-2688 SECTION "N", 2001 U.S. Dist. LEXIS 14422, at *5 (E.D. La. Sep. 6, 2001) (denying summary judgment where the court refused to equate sloppy bookkeeping with fraud); B.T. Lazarus & Co. v. Alma Mktg., Inc., No. 89AP-1350, 1991 Ohio App. LEXIS 2911, at *32 (Ct. App. June 13, 1991) (affirming trial court's ruling that "there was no evidence of fraud" where "at best [the evidence] shows poor bookkeeping"); Scott v. Anderson Newspapers, Inc., 477 N.E.2d 553, 563 (Ind. Ct. App. 1985) (noting that in case the court "found no fraudulent acts, only sloppy bookkeeping.").

120.     The evidence presented at trial shows that the amount charged by ProEx is fair, meaning that Plaintiffs did not suffer any pecuniary harm.  Shaulis, 865 F.3d 1, 15 (D. Mass. 2017).   There is no question that ProEx did the work, and that the project benefitted from its performance.

121.      Plaintiffs had the obligation to attempt to mitigate the harms alleged suffered.

Fleet Nat'l Bank v. Anchor Media Television, 45 F.3d 546, 561 (1st Cir. 1995); Burnham

v. Mark IV Homes, Inc., 387 Mass. 575, 586 (1982) ("The general rule with respect to

mitigation of damages is that a plaintiff may not recover for damages that were avoidable

by the use of reasonable precautions on his part"). Plaintiffs were aware that ProEx was

working on the project and were provided copies of all payments to ProEx.  [SOF 235-

239]  They took no steps to stop ProEx from working or to inquire into the arrangement

with ProEx, instead sitting silent while ProEx completed its work.  Plaintiffs failed to

mitigate the alleged damages and their claim is denied.  Judgment is entered for Kagan

and against Plaintiffs on this claim.

122.      Plaintiffs have failed to carry their burden of proving ProEx committed fraud and

therefore judgment is entered for ProEx and against Plaintiffs on this claim.

   **h.  Plaintiffs' Claim for Conspiracy**

123.      Plaintiffs allege in their adversary complaint that Kagan, Tatiana Kagan, KDC

and ProEx engaged in a civil conspiracy.

124.      To prove a civil conspiracy, Plaintiffs must prove "a common design or an

agreement, although not necessarily express, between two or more persons to do a

wrongful act and, second, proof of some tortious act in furtherance of the agreement."

Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994); Thomas v.

Harrington, 909 F.3d 483, 490 (1st Cir. 2018) (same).

125.      Additionally, members in a conspiracy must participate in the conspiracy with

knowledge of the wrongful conduct. Thomas v. Harrington, 909 F.3d 483, 492 (1st Cir.

2018) ("Because a conspiracy requires an agreement to commit a wrongful act, none can

exist where an alleged participant lacks knowledge that a wrongful act is being perpetrated[]"); <u>Kyte v. Philip Morris, Inc.</u>, 408 Mass. 162, (1990) (a viable conspiracy claims requires "[e]vidence of the defendant's knowledge of its substantial, supporting role in an unlawful enterprise…").

126.    Finally, a member of a conspiracy must actively participate in the tortious acts. <u>Int'l Floor Crafts, Inc. v. Adams</u>, 578 F. Supp. 2d 231, 235 (D. Mass. 2008). <u>In re TelexFree Sec. Litig.</u>, 358 F. Supp. 3d 106, 111 (D. Mass. 2019) (civil conspiracy claim required "a showing that the bank had actual knowledge of the underlying scheme and actively "participated, or substantially assisted" in the offense."); <u>Kurker v. Hill</u>, 44 Mass. App. Ct. 184, 189, (1998) (conspiracy requires "defendant's substantial assistance" in the fraudulent conduct).

127.    Additionally, "'Under … the intracorporate-conspiracy doctrine - an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy.'" <u>Hagenah v. Berkshire Cty. Arc, Inc.</u>, Civil Action No. 3:16-cv-30141-KAR, 2018 U.S. Dist. LEXIS 24696, at *22-23 (D. Mass. Feb. 15, 2018) (<u>quoting</u> <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1867, 198 L. Ed. 2d 290 (2017). Put differently, a legal entity "cannot conspire with itself." <u>Platten v. HG Berm. Exempted Ltd.</u>, 437 F.3d 118, 131 (1st Cir. 2006)). <u>See</u> <u>also</u> <u>Zhang Jingrong v. Chinese Anti-Cult World All.</u>, 287 F. Supp. 3d 290, 303 (E.D.N.Y. 2018) ("Under the intracorporate conspiracy doctrine, officers, agents[,] and employees of a single corporate entity are legally incapable of conspiring together."); <u>Carney v. Town of Weare</u>, 2017 U.S. Dist. LEXIS 23790 (D.N.H. Feb. 21, 2017) (applying doctrine to civil conspiracy claim and noting that that the majority of jurisdictions have adopted it).

128.    If Plaintiffs prove the existence of a civil conspiracy, the effect is to make all co-conspirators jointly and severally liable for the damages caused by the others in the conspiracy; it does not result in any additional, affirmative award for the Plaintiffs. Aetna Cas. Sur. Co.,, 43 F.3d at 1564 ("Where two or more persons act in concert, each will be jointly and severally liable for the tort.").

129.    Plaintiffs have failed to prove that Kagan, Tatiana Kagan, KDC and ProEx engaged in a conspiracy. Therefore, judgment is entered for Kagan, Tatiana, KDC and ProEx and against Plaintiffs on this claim.

130.    Kagan, Tatiana, KDC and ProEx are not jointly and severally liable for any damages awarded against any one of them.

    **i. Plaintiffs' Claim against Tatiana Kagan, KDC and ProEx for Violation of M.G.L. c. 93A**

131.    Plaintiffs allege in their adversary complaint that Tatiana, KDC and ProEx violated M.G.L. c. 93A. As to Tatiana, Plaintiffs allege she entered into fraudulent listing agreements. As to ProEx, Plaintiffs allege fraudulent billing. As to KDC, Plaintiffs allege double-billing, billing for materials not used on this project, and asserting a fraudulent mechanic's lien.

132.    "To be actionable, [under c. 93A] challenged misconduct must rise to the level of an 'extreme or egregious' business wrong, 'commercial extortion,' or similar level of 'rascality' that raises 'an eyebrow of someone inured to the rough and tumble of the world of commerce.' Peabody Essex Museum, Inc. v. United States Fire Ins. Co., 802 F.3d 39, 54 (1st Cir. 2015) (quoting Baker v. Goldman Sachs & Co., 771 F.3d 37, 49-51 (1st Cir. 2014))

133.     While "conduct undertaken as leverage to destroy the rights of another party to

the agreement" can be a G.L. c. 93A violation, <u>Mass. Emp'rs Ins. Exch. v. Propac-Mass,</u>

<u>Inc.</u>, 420 Mass. 39, 43 (1995), a "good faith dispute as to whether money is owed, or

performance of some kind is due, is not the stuff of which a c. 93A claim is made."

<u>Duclersaint v. Fed. Nat'l Mortg. Ass'n</u>, 427 Mass. 809, 814 (1998).

134.     Likewise, "[a] plausible, reasoned legal position that . . . ultimately turn[ed] out to

be mistaken …" <u>Lumbermens Mut. Cas. Co. v. Y.C.N. Transp. Co</u>., 46 Mass. App. Ct.

209, 215 (1999), or "a genuine difference of opinion" regarding performance of an

agreement are not viable G.L. c. 93A claims. <u>Advanced Patient Care v. Partners</u>

<u>Healthcare Sys.</u>, 92 Mass. App. Ct. 1125, *9 (2018).   I find that the defendants did not

commit and unfair and deceptive trade practice and therefore rule in favor of defendants

on this claim.

135.     Furthermore, "[t]he Massachusetts Supreme Judicial Court has held that causation

is a required element of a successful [Chapter] 93A claim." <u>Walsh v. TelTech Sys.</u>, 821

F.3d 155, 160 (1st Cir. 2016). "To establish causation, a plaintiff must prove that the

defendant's unfair or deceptive act caused an adverse consequence or loss. A plaintiff's

failure to establish both factual causation and proximate causation is fatal to her Chapter

93A claim." <u>Id.</u>   Plaintiffs have failed to establish any damages caused by the alleged

unfair and deceptive trade practice, and therefore I find in favor of the defendants on this

claim.

<i>i.  The Claim of Fraudulent Listing Agreements</i>

136.     Plaintiffs have not identified any unfair or deceptive act undertaken by Tatiana

herself and prohibited by c. 93A, so that claim is denied.   <u>S. Shore Hellenic Church, Inc.</u>

v. Artech Church Interiors, Inc., 183 F. Supp. 3d 197, 222 (D. Mass. 2016) (An

individual's status as a corporate officer is not in itself enough to create personal liability

under c. 93A when the corporation may be liable.); see also Refrigeration Disc. Corp. v.

Catino, 330 Mass. 230, 235 (1953); Boyd v. Camardo, 65 F. App'x 326, 329 (1st Cir.

2003) ("The mere fact that [the defendant] held various positions at [the company]

(including director, chief executive officer and president) is not enough to render him

liable for [the company's] alleged misrepresentations in the advertisements.").

137.    Plaintiffs have failed to prove that the listing agreements were fraudulent (or

otherwise violative of c.93A). Judgment is entered for Tatiana and against Plaintiffs on

that claim.

### ii.  The Claim that ProEx Fraudulently Billed

138.    Plaintiffs have failed to prove that ProEx fraudulently billed for its work on the

project (or otherwise violated c.93A) [SOF 384-469]. Judgment is entered for ProEx and

against Plaintiffs on that claim.

139.    Plaintiffs had the obligation to attempt to mitigate the harms alleged suffered.

Fleet Nat'l Bank v. Anchor Media Television, 45 F.3d 546, 561 (1st Cir. 1995); Burnham

v. Mark IV Homes, Inc., 387 Mass. 575, 586 (1982) ("The general rule with respect to

mitigation of damages is that a plaintiff may not recover for damages that were avoidable

by the use of reasonable precautions on his part").  They knew that ProEx was providing

services and received copies of checks cut to plaintiffs, yet did nothing. Plaintiffs failed

to mitigate the alleged damages and their claim is denied.  Judgment is entered for Kagan

and against Plaintiffs on this claim.

### iii.  The Claim that KDC Fraudulently Billed

140.     At worst, KDC had a genuine, reasoned opinion that it was owed money to KDC

for its work on the project, so KDC has not violated c.93A.  Judgment is entered for KDC

and against Plaintiffs on this claim.

141.     Plaintiffs have failed to prove that KDC double-billed, billed for materials not

used on this project, or asserted a fraudulent mechanic's lien, or otherwise violated c.

93A [SOF 388-474], so judgment is entered for KDC and against Plaintiffs on this claim.

Merely disagreeing as to the amounts due does not mean that a lien or invoice is

fraudulent.

142.     Plaintiffs had the obligation to attempt to mitigate the harms alleged suffered.

Fleet Nat'l Bank v. Anchor Media Television, 45 F.3d 546, 561 (1st Cir. 1995); Burnham

v. Mark IV Homes, Inc., 387 Mass. 575, 586 (1982) ("The general rule with respect to

mitigation of damages is that a plaintiff may not recover for damages that were avoidable

by the use of reasonable precautions on his part").   They had the opportunity to seek to

bond off or invalidate KDC's mechanic's lien in the litigation Plaintiffs initiated, M.G.L.

c. 254, §§ 11, 14, 15A, if they thought the lien was overstated or improper.  They could

have halted the project and sought more information. Having failed to seek to invalidate

the lien when they had the chance or taken any steps whatsoever, Plaintiffs failed to

mitigate the alleged damages and their claim is denied.  Judgment is entered for KDC and

against Plaintiffs on this claim.

### iv.   The Requirement to Prove Damages

143.     To sustain a claim under c.93A, Plaintiffs must establish economic injury cause

by the alleged unfair and deceptive conduct.  Shaulis, 865 F.3d at 10.  This means, that

Plaintiffs must prove an identifiable harm caused by the unfair or deceptive act that is

separate from the violation itself." Id.  "Put another way, a plaintiff must show 'real'
economic damages, as opposed to some speculative harm. **…** It is thus not enough to
claim that the defendant's improper conduct created a risk of 'real economic damages."
Id. (emphasis in original). See also Tyler v. Michaels Stores, Inc., 464 Mass. 492, 501-02
(2013).

144.  Plaintiffs have not proven any actual economic injury, so judgment is entered for
Defendants and against Plaintiffs on this claim.

**j.  Tatiana and Kagan Cannot be Liable for KDC and ProEx's Alleged Conduct**

145.  Plaintiff allege generally that Tatiana and Kagan should be held individually
liable for any judgments entered against KDC and/or ProEx.

*i.  The Claims against Tatiana*

146.  Tatiana, as an officer and director, cannot be liable for ProEx's alleged conduct
solely by virtue of her status within KDC and ProEx. "An officer of a corporation does
not incur personal liability for a tort committed by a corporation or by one of its officers
merely by virtue of the office which he holds in the corporation."). Refrigeration Disc.
Corp. v. Catino, 330 Mass. 230, 235 (1953); O'Leary v. N.H. Boring, Inc., 176 F. Supp.
3d 4, 12 n.5 (D. Mass. 2016) ("As a general rule, a corporate officer does not incur
personal liability for activities of the corporation merely by virtue of the office which he
holds in the corporation."); Tomei v. Corix Utils. (U.S.), Inc., No. 07-cv-11928-DPW,
2009 U.S. Dist. LEXIS 83416, at *49 (D. Mass. Sep. 10, 2009) (same).

147.  To the extent Plaintiffs sought to make Tatiana personally liable for the corporate
debts, Plaintiffs have failed to carry their burden. Judgment is entered for Tatiana and
against Plaintiffs on this claim.

*ii.  The Effort to Pierce the Corporate Veils of KDC and ProEx*

148.     Though plaintiffs have not plead this theory, to the extent that they may now

suggest that the facts warrant a piercing of the corporate veil, I decline to make such a

ruling.   "In Massachusetts, 'the corporate veil will only be pierced in rare situations.'"

Zimmerman v. Puccio, 613 F.3d 60, 74 (1st Cir. 2010), (*quoting*, Birbara v. Locke, 99

F.3d 1233, 1239 (1st Cir. 1996)).

149.      In applying this veil-piercing analysis, Massachusetts courts have endorsed a

twelve-factor approach:

> The  relevant factors are (1) common ownership; (2) pervasive control; (3)
> confused intermingling of business assets; (4) thin capitalization; (5)
> nonobservance of corporate formalities; (6) absence of corporate records;
> (7) no payment of dividends; (8) insolvency at the time of the litigated
> transaction; (9) siphoning away of corporation's funds by dominant
> shareholder; (10) nonfunctioning of officers and directors; (11) use of the
> corporation for transactions of the dominant shareholders; and (12) use of
> the corporation in promoting fraud.

TechTarget, Inc. v. Spark Design, LLC, 746 F. Supp. 2d 353, 356 (D. Mass. 2010)

(quoting Attorney General v. M.C.K., Inc., 432 Mass. 546, 555 n.19 (2000)).

150.      "[D]ominant shareholders" such as Kagan "are almost always 'active

participants' in the affairs of an owned corporation. And, in the usual case, the exercise of

such control . . . does not result in the owner's personal liability.'" Abdallah v. Bain

Capital LLC, 752 F.3d 114, 121-22 (1st Cir. 2014) (quoting Esmark, Inc. v. NLRB, 887

F.2d 739, 759 (7th Cir. 1989)).

151.     Aside from control, Fillipov and Lipsetker have not presented evidence to meet

the requirements to disregard KDC's and ProEx's corporate form and hold Kagan and

Tatiana liable.  There is no evidence that Tatiana exercised any control over the corporate

entities.  The mere fact that Kagan, as the president of the entities exercised control over

them, is not enough.  Each of the entities maintained its own books and records, own bank accounts, and filed their own tax returns.  [SOF 5, 6] Judgment is entered for Kagan and Tatiana and against Plaintiffs on this claim.

### k.  LLC's Claim that KDC Breached the KDC Construction Contract

152.      Plaintiffs alleged in their adversary complaint that KDC breached its contract with the LLC by failing to construction the two homes in a good and workmanlike manner.

153.      During the summary judgment phase and in response to Defendants' Motion for Judgment on Partial Findings, Plaintiffs have indicated they consent to dismissal of this court in their adversary complaint.

154.      The Court therefore dismisses this court in Plaintiffs' adversary complaint and awards no relief for Plaintiffs on this count.  The Court notes, however, that pleading the existence of a contract and the terms thereof is inconsistent with plaintiffs claim that it knew nothing about the existence of the KDC contract.  Dopp v. HTP Corp., 947 F.2d 506, 515 (1st Cir. 1991) (noting that "there are instances where the remedies being sought are so fundamentally inconsistent that a court may find it necessary to exercise its discretion and order an election prior to the start of trial…").

## II.    DEFENDANTS' CLAIMS

### a.  Filippov and Lipetsker Breached their Fiduciary Duties to Kagan

155.      Under Massachusetts law, members of a limited liability company owe each other fiduciary duties. Allison v. Eriksson, 479 Mass. 626, 635 (2018).  As such, Filippov and Lipetsker owed fiduciary duties to Kagan.  Donahue v. Rodd Electrotype Co., 367 Mass. 578, 593 (1975) (The standard of duty owed by partners to one another as the "utmost good faith and loyalty." Stockholders in close corporations must discharge their

management and stockholder responsibilities in conformity with this strict good faith standard. They may not act out of avarice, expediency or self-interest in derogation of their duty of loyalty to the other stockholders and to the corporation), *citing,* Cardullo v. Landau*, 329 Mass. 5, 8 (1952). Filippov, as managing member, owes a further fiduciary duty to the LLC and its members. Freid v. Gordon, Civil Action No. 09-10928-DJC, 2011 U.S. Dist. LEXIS 31319, at *10 (D. Mass. Mar. 25, 2011) ("Like corporate directors, managers of a limited liability company owe a fiduciary duty of care and loyalty to the company and its members.").

### i. *Filippov's False Statements to the Bank*

156.     A fiduciary, such as Filippov has a duty of care to his other members "to "exercise the degree of care which a prudent person would ordinarily use, and exercise reasonable intelligence in conducting the affairs of the corporation." Lassman v. Fischer (In re Sunglasses & Then Some, Inc.), Nos. 06-11087-WCH, 07-1180-WC, 2009 Bankr. LEXIS 2049, at *11 (Bankr. D. Mass. July 6, 2009). See also Freid v. Gordon, Civil Action No. 09-10928-DJC, 2011 U.S. Dist. LEXIS 31319, at *10 (D. Mass. Mar. 25, 2011) ("Like corporate directors, managers of a limited liability company owe a fiduciary duty of care and loyalty to the company and its members."). A member breaches his duty to other members when he takes action in violation of his duty of care that may expose the LLC or its members to liability. See Triple H Family Ltd. P'ship v. Neal, No. 12294-VCMR, 2018 Del. Ch. LEXIS 262, at *49 (Ch. July 31, 2018) (false statement by manager that LLC had D&O insurance when it did not breached fiduciary duty).

157.     Filippov breached his fiduciary duty by knowingly submitting false and fraudulent documentation to the bank in support of the LLC's request for construction

loans. [SOF 150-58] In so doing, he knowingly exposed the LLC, and by extension its members, to potential civil and criminal liability. Filippov's fraud on the bank caused him to overreact and cause the LLC to file for bankruptcy when doing so was unnecessary and imprudent, and he did so to protect himself, *inter alia,* from having his guarantee called when Filippov decided not to honor his financial commitments under the Operating Agreement and loan documents.

158.    Under both Massachusetts and federal law, "the in pari delicto doctrine [applies] to those situations in which (i) the plaintiff, as compared to the defendant, bears at least substantially equal responsibility for the wrong he seeks to redress and (ii) preclusion of the suit would not interfere with the purposes of the underlying law or otherwise contravene the public interest." Nisselson v. Lernout, 469 F.3d 143, 152 (1st Cir. 2006); Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 324 (1st Cir. 2008) (same). Accordingly, even if Kagan falsified the construction budget, which I do not find, Filippov is equally culpable by committing bank fraud when he knowingly submitted those false documents to the bank, which also included the Classic Homes contract, while covenanting as to the accuracy of the submissions as well as attesting to the fairness of the KDC contract. [SOF 149-57, 173]

159.    As an equitable remedy, Filippov is ordered to pay for costs incurred as a result of the bankruptcy filing including any commission to be paid to the Trustee and any other costs incurred by the Trustee.

160.    Judgment is entered for Kagan and against Filippov on this claim.

ii. *Plaintiffs' Additional Breaches of Fiduciary Duty*

53

161.     Filippov also breached his fiduciary duty by failing to keep accurate records of
account and failing to properly monitor the finances of the LLC (if it is established that
there were any improper payments).  [SOF 228-236]

162.     Filippov breached his fiduciary duty by demanding that Kagan pay carrying costs
for the first 23 months of the project, despite knowing that the Operating Agreement
placed that obligation on the LLC, in an effort to increase his own profit and to gain a
windfall.  [SOF 197-211]

163.     Filippov breached his fiduciary duty by making a personal loan to the LLC that it
did not need and granting himself a mortgage to secure that loan, all without consulting
with Kagan.

164.     Filippov breached his fiduciary duty by refusing to dissolve the LLC in
accordance with the terms of the Operating Agreement and filing a perjured Certificate of
Organization stating that there was no set date for termination.  [SOF 113, 117, 351, 359]

165.     Filippov breached his fiduciary duty by initiating litigation in the state court,
without consulting Kagan, and using company funds to finance that litigation.  [SOF 325-
39].  Similarly, he filed a Chapter 11 petition for bankruptcy without consulting with
Kagan and at a time when the company was not insolvent and had no business to
reorganize, and used company funds to finance the filing and the Chapter 11 proceeding.
[SOF 350-360]  This too breached his fiduciary duty.

166.     As an equitable remedy for Filippov's breach of fiduciary duty, the Court orders
that Filippov reimburse the corporate monies that he wrongfully used to pay counsel,
$67,211.06 to the company [SOF 372], thereby increasing the amount available for
distribution to the members; and rule that Kagan's membership interests and capital

accounts are not reduced as contemplated in §8.1 of the Operating Agreement for the carrying costs Filippov allegedly paid after the 23rd month.   As such, Kagan's membership interests remain at 10% and his capital account remains unchanged.

167.   Judgment is entered for Kagan and against Filippov on this claim.

### iii.   Plaintiffs' Self-Dealing Transactions

168.   Filippov engaged in several self-dealing transactions.   One such transaction was granting himself a mortgage from the LLC (prepared at the LLC's expense) to provide himself with security for the money he alleged loaned to the company – a mortgage he recorded the same day that the company filed its petition for bankruptcy.   [SOF 363-382] There was no vote or discussion with Kagan prior to making of the loan or mortgage, and Filippov has failed to prove that this transaction was fair and reasonable.

169.   Filippov and Lipetsker breached their fiduciary duty by filing suit, both in the state court and in the bankruptcy court, to protect their own personal interests (as opposed to the interests of the LLC) without consulting with Kagan, and then using corporate monies to finance that litigation. [SOF 325-339]

170.   Filippov and Lipetsker also decided to cause the LLC to file a petition for bankruptcy in order to avoid having to dissolve the company as required under the Operating Agreement, protect Filippov from his contractual obligation to pay carrying costs after the 23rd month, and prevent or delay the bank from calling loan guarantee.   As Filippov put his own interests above the company's, he engaged in a self-dealing transaction.   [SOF 350-360]

### iv.   Plaintiffs' Duty to Prove Fundamental Fairness

171.    On the self-dealing transactions, Plaintiffs bear the burden of proving the entire
fairness of the transaction. Patel v. Emerald P'ship, Ltd., Nos. 106604, 00-1033-H, 2009
Mass. Super. LEXIS 94, at *60 (Apr. 9, 2009) (If a fiduciary does engage in self-dealing,
then the fiduciary bears to burden to show that "the consideration [paid] … was fair…");
(citing Demoulas, 424 Mass. at 531).

172.    Massachusetts "[e]ndors[es] Delaware's conception of fairness…" MAZ Partners
LP v. Shear (In re PHC, Inc. S'holder Litig.), 894 F.3d 419, 431 (1st Cir. 2018); Coggins
v. New Eng. Patriots Football Club, 397 Mass. 525, 531 (1986) ("We note that the
'fairness' test to which the Delaware court now has adhered is, as we later show, closely
related to the views expressed in our decisions.").

173.    The "fundamental fairness" test is composed of two components: "fair dealing
and fair price." Coggins, 397 Mass. at 531 (quoting Weinberger v. UOP, Inc., 457 A.2d
701, 715 (Del. 1983)).

174.    Fair dealing means that "the fiduciary … who engages in self-dealing [Filippov
and/or Lipetsker] must prove that his or her actions were intrinsically fair" to the
corporation. Demoulas, 424 Mass. at 529-30.

175.    Fair price "'relates to the economic and financial considerations of the
[transaction], including all relevant factors . . .'" Sanderson v. Verdasys, Inc., 31 Mass. L.
Rep. 22 (2012) (quoting Weinberger, 457 A.2d at 711) (applying Delaware law).

176.    Furthermore, where there is no formal presentation regarding "the self-dealing
nature of the transaction" to the "disinterested directors, the burden was on [the fiduciary,
Filippov] to demonstrate that the transaction was fair to [the LLC] at the time that it was

entered into." <u>Genesis Tech. & Fin., Inc. v. Cast Navigation, LLC</u>, 74 Mass. App. Ct. 203, 211 n.15 (2009).

177.    Whether a transaction is "fair and equitable" rests on the "particular sets of facts" regarding the transaction. <u>Demoulas</u>, 424 Mass. at 529. <u>See also</u> <u>Finnegan v. Baker</u>, Nos. 121567, SUCV2009-03772-BLS1, 2012 Mass. Super. LEXIS 306, at *82-83 (Oct. 18, 2012) (applying Delaware law) ("Entire fairness is a flexible standard, 'requiring an examination of all aspects of the transaction to gain a sense of whether the deal in its entirety is fair.'") (quoting <u>Kahn v. Lynch Commc'n Sys., Inc.</u>, 669 A.2d 79, 84 (Del. 1995).

178.    It is undisputed that plaintiffs did not disclose the loan and mortgage to Kagan at the time it was made.  It is undisputed that there was no need for a loan as the only financial obligation owned by the LLC at the time of the loan was to pay carrying costs and, under the Operating Agreement, Filippov had agreed to be responsible for those payments if Kagan failed to make those payments.  [Exh. 15, §8.1]  It is also undisputed that the mortgage was granted weeks or months after the loan was allegedly made, there was no additional consideration provided therefor, and the grant of a security interest to Filippov benefited him alone.  There was no benefit to the LLC in granting Filippov a security interest weeks, if not months, after the loan had been made

179.    Plaintiffs failed to introduce the underlying promissory note into evidence.  There was no evidence as to the repayment terms of the note or of any interest rate.  There is no evidence the note is in default or even due.

180.    Filippov and Lipetsker have failed to carry their burden of proving the entire fairness of the loan and mortgage Filippov obtained, the decision to have the company

file bankruptcy, and filing suit. Judgment is therefore entered for Kagan and against Filippov and Lipetsker on those claims. In fact, the evidence is unrefuted that neither Filippov nor Lipetsker ever discussed these transactions with Kagan.

181.     The appropriate remedy is to void the mortgage Filippov obtained and deny Claim No. 9. Filippov is also ordered to bear the costs associated with the bankruptcy filing, including the commission to be paid to the Trustee and other fees incurred by the Trustee. Filippov is also ordered to reimburse the monies he caused the LLC to pay to prepare the note and mortgage and to protect his interests, $ 699.14, or, at a minimum, not entitled to reimbursement of those sums if paid with personal monies. [SOF 373]

### b. Fillipov and Lipetsker Froze Out Kagan

182.     Kagan alleges that Filippov and Lipetsker froze him out, in violation of their fiduciary duties to him, by: excluding him (Kagan) from corporate decisions, keeping information from Kagan, and depriving Kagan of the benefits of ownership in the company.

183.     Filippov controlled 80% of the voting interests in the LLC LLC. [SOF 116]

184.     Lipetker controlled 10% of the voting interests in the LLC LLC. [SOF 116]

185.     Kagan controlled 10% of the voting interests in the LLC LLC. [SOF 116]

186.     On all substantial issues, Filippov and Lipetsker voted as block, regardless of the merits of Kagan's positions on issues. [SOF 347-349]

187.     With respect to freeze out in the LLC context, LLCs are treated in the same manner as closely held corporations. Butler v. Moore, No. 10-10207-FDS, 2015 U.S. Dist. LEXIS 39416, at *177-78 (D. Mass. Mar. 26, 2015) ("As a matter of logic and fairness, there is no reason why the fiduciary duties of members of a closely held LLC

should be materially different from those of shareholders of a closely held corporation. The policy considerations underlying the <u>Donahue</u> line of cases appear to be identical when considered in the context of LLCs. Moreover, an LLC is, practically speaking, something of a hybrid of a corporation and a partnership; it would be highly anomalous if members of a closely held LLC had lesser fiduciary duties than those of a closely held corporation or a partnership.").

188.      "Majority shareholders are forbidden from taking actions that oppress or disadvantage minority stockholders, often called 'freeze-outs.'" <u>Butler</u>, 2015 U.S. Dist. LEXIS 39416, at *174; <u>see also</u> <u>Pavlidis v. New England Patriots Football Club, Inc.</u>, 675 F. Supp. 688, 695 (D. Mass. 1986) (""The Supreme Judicial Court [in <u>Coggins</u>] held that where a corporate freeze-out is carried out for no legitimate corporate purpose and solely for the selfish interest of the directors and majority stockholders at the expense of the minority, there is an actionable breach of fiduciary duty.").

189.      It is Filippov's and Lipetsker's burden to demonstrate a legitimate business interest for the actions that froze out Kagan. <u>Pointer v. Castellani</u>, 455 Mass. 537, 549 (2009) ("Where there is an allegation of a breach of fiduciary duty, the court must allow the controlling group to demonstrate a legitimate business purpose for its action."); <u>Wilkes v. Springside Nursing Home, Inc.</u>, 370 Mass. 842, 851 (1976) ("[W]hen minority stockholders in a close corporation bring suit against the majority alleging a breach of the strict good faith duty owed to them by the majority, we must carefully analyze the action taken by the controlling stockholders in the individual case. It must be asked whether the controlling group can demonstrate a legitimate business purpose for its action.").

Filippov and Lipetsker failed to carry this burden, so judgment is entered against him and in favor of Kagan.

190.     Filippov and Lipetsker froze out and oppressed the minority shareholder, Kagan, by failing to communicate with Kagan about important decisions affecting the company's business and Kagan's interests.   Pointer v. Castellani, 455 Mass. 537, 552, (2009) (finding freeze-out where plaintiff "did not have full access to his electronic mail messages or interoffice memoranda");   Brighton v. Resourse Mgmt., 13 Mass. L. Rep. 600 (2001).

191.     Filippov and Lipetsker froze out Kagan by depriving him of the benefits of his ownership in the company.  See Sugarman v. Sugarman, 797 F.2d 3, 14 (1st Cir. 1986) (to establish "freeze-out" plaintiff must prove that majority shareholder "took various actions to deprive them of any corporate benefits and that he thereby breached his fiduciary duty to them as minority shareholders.").

192.     Filippov and Lipetsker froze out Kagan by depriving Kagan of his right to participate in the control of the company. Houle v. Low, 407 Mass. 810, 812 (1990); Pointer v. Castellani, 455 Mass. 537, 552-553 (2009).

193.     Kagan "is entitled to damages or other equitable relief … which will put him in the position he would have been in had the freeze-out not occurred, and compensates him for the denial of his reasonable expectations." Pointer v. Castellani, 455 Mass. 537, 560 (2009).

194.     Judgment is entered for Kagan and against Filippov and Lipetsker on this claim.

195.     To the extent that Filippov and Lipetsker unilaterally decided to spend corporate monies to initiate litigation and caused the LLC to incur significant fees and costs by

filing bankruptcy, over the objection of Kagan, this Court should order that those sums be reimbursed to the LLC, and distributed to the members in accordance with the terms of the Operating Agreement.

196.    Kagan is awarded 50% of the net proceeds of the sale of the properties as well as his percentage interest in the remaining assets of the LLC.  [Exh. 15, §8.1]

### c. Filippov and Lipetsker Breached the Operating Agreement

197.    Kagan alleges that Filippov and/or Lipetsker breached the Operating Agreement by: refusing to pay carrying costs, refusing to pay distributions, failing to obtain a loan that would have paid the carrying costs, and failing to indemnify Kagan.

198.    The Operating Agreement [Exh. 15] is an enforceable contract.

199.    To prove breach of a contract, Kagan must prove "(1) an agreement; (2) due performance by plaintiff; (3) breach thereof by defendant; and (4) resulting damage to the plaintiff." Roche v. Morgan Collection, Inc., 882 F. Supp. 2d 247, 258 (D. Mass. 2012).

200.    A party is bound by the terms of the agreements that he signed whether or not he read or understood their terms.  ITT Corp. v. LTX Corp., 926 F.2d 1258, 1261 (1st Cir. 1991) (valid "contract was binding on both signatories according to its written terms."); Henning v. Wachovia Mortg., FSB, 969 F. Supp. 2d 135, 147 (D. Mass. 2013) ("In the absence of fraud, a signatory to a contract is bound by its terms whether he has read and understood it or not.").

201.    Filippov promised in paragraph 8.1 of the Operating Agreement to pay carrying costs after the 23rd month, if Kagan himself did not pay them.  [Exh. 15]  Filippov breached this material promise by failing to pay the carrying costs and placing the LLC into bankruptcy to avoid his obligation.

202.     As managing member, Filippov was responsible for and in fact took the lead in obtaining construction loans from Rockland Trust Bank to fund the construction of the two homes. [SOF 119]

203.     In the Operating Agreement, Filippov, as managing member, promised to obtain construction loans that would cover the carrying costs.  Filippov breached this promise when he knowingly obtained construction loans that did not, in fact, allow the use of the loan proceeds for payment of carrying costs.  He also committed bank fraud by knowingly signing and submitting false documents to the bank to support the loans. [SOF 149-57, 173]

204.     In the Operating Agreement, Filippov, as managing member, agreed to dissolve the company no later than November 30, 2015.  He failed to do so, and fraudulently filed a Certificate of Organization stating that there was no set date for termination.  [SOF 117]

205.     In the Operating Agreement, Filippov, as managing member, also agreed to distribute 50% of the net proceeds of the sale of the properties to Kagan to compensate him for his efforts.  He filed for bankruptcy to avoid this obligation.

206.     Judgment is entered for Kagan and against Filippov on this claim.

207.     Kagan is awarded 50% of the net proceeds of the sale of the properties as well as his percentage interest in the remaining assets of the LLC.

### d. Filippov and Lipetsker Breached the Covenant of Good Faith and Fair Dealing Implied in the Operating Agreement

208.     Kagan alleges that Filippov and Lipetsker breached the covenant of good faith and fair dealing implied in the Operating Agreement by exercising discretion afforded in the Operating Agreement to deprive Kagan of the benefits of the contract.

209.     Implied in the Operating Agreement is the covenant of good faith and fair dealing that binds Filippov and Lipetsker.   T.W. Nickerson, Inc. v. Fleet Nat. Bank, 456 Mass. 562, 569-70 (2010); Anthony's Pier Four, Inc. v. HBC Assoc., 411 Mass. 451, 471 (1991).

210.     This doctrine "prohibits any party to the contract from "injur[ing] the rights of another [party] to reap the benefits prescribed by the terms of the contract." Nickerson, Inc., 456 Mass. at 570.

211.      Filippov and Lipetsker unlawfully exercised their discretion to avoid fulfilling their obligations to Kagan under the Operating Agreement.  Filippov and Lipetsker did so by manufacturing a dispute to avoid having to pay Kagan 50% of the net proceeds of the sale of the properties and paying Kagan his share of the remaining assets of the LLC upon its dissolution.

212.     Filippov and Lipetsker are therefore liable to Kagan for breaching the implied covenant of good faith and fair dealing.  Judgment is entered for Kagan and against Filippov and Lipetsker on this claim.

213.     The measure of damages for breaching the implied covenant of good faith and fair dealing is actual damages suffered by not receiving the benefits of the contract.  Latson v. Plaza Home Mortg., Inc., 708 F.3d 324, 326 (1st Cir. 2013) (breach of implied covenant of good faith and fair dealing requires a showing that the plaintiff "*destroy[ed] or injur[ed]* the right of the other party to receive the fruits of the contract"); Neuro-Rehab Assocs. v. AMRESCO Commer. Fin., LLC, No. 05-12338-GAO, 2009 U.S. Dist. LEXIS 20323, at *87 (D. Mass. Mar. 12, 2009) (dismissing claim where there was no "actual damages caused by the breach.").

214.     Kagan is awarded 50% of the net proceeds of the sale of the properties as well as his percentage interest in the remaining assets of the LLC.

**e.   The LLC Breached the KDC Construction Contract**

215.     KDC alleges that the LLC failed to fulfill promise made in the KDC contract to pay KDC to construct the homes.

216.     KDC and the LLC entered into a valid and binding contract, the KDC construction contract. [Exh. 37][SOF 174-183]

217.     To prove a breach of contract, KDC must prove "(1) an agreement; (2) due performance by plaintiff; (3) breach thereof by defendant; and (4) resulting damage to the plaintiff." Roche, 882 F. Supp. 2d at 258.

218.     In the contract with KDC [Exh. 37], the LLC promised to pay for the costs KDC incurred during the project.  The LLC paid some, but not all of those costs and therefore breached the contract to the extent it has not paid KDC for the costs incurred.

219.     KDC is awarded and the LLC is ordered to pay KDC **$578,528.49,** the amount of unreimbursed hard construction costs.

220.     KDC is awarded and the LLC is ordered to pay KDC **$665,545.49,** the amount of unreimbursed carrying costs KDC paid on behalf of the LLC.

221.     In the contract with KDC, the LLC also promised to pay KDC a design fee, its overhead, a fee for KDC's having advanced money to pay carrying costs, interest of 12% accruing since June 2015, and administrative fees and expenses.  [Exh. 37, §§ 7.1.1, 7.1.2, 7.3.2.5, and 7.1.3]

222.     The LLC has not paid these charges due under the contract and the LLC therefore breached the contract.

223.     KDC is therefore awarded and the LLC is ordered to pay KDC the following:

    a.    Design fee of **$25,000**
    b.    General Contractor Fee of **$565,971.52**
    c.    KDC overhead of **$59,250.00**
    d.    Carrying costs of **$127,562.89**
    e.    Interest since June 2015 as calculated by the clerk; and
    f.    Administrative fees and expenses of **$141,191.25.**

    **f.    The LLC Breached the Covenant of Good Faith and Fair Dealing Implied in the KDC Construction Contract**

224.     KDC alleges that the LLC breached the covenant of good faith and fair dealing implied in the KDC construction contract by exercising the discretion in that contract to deprive KDC of the benefits of it.

225.     Implied in the contract between KDC and the LLC [Exh. 37] is the covenant that the LLC would act in good faith toward and deal fairly with KDC. T.W. Nickerson, Inc., 456 Mass. at 569-70.

226.     This doctrine "prohibits any party to the contract from "injur[ing] the rights of another [party] to reap the benefits prescribed by the terms of the contract." Id. at 570.

227.     The LLC unlawfully exercised its discretion to deprive KDC of the benefits of the parties' contract, such as the compensation owed to KDC for its work on the project.

228.     The LLC's conduct was undertaken in bad faith. See Sonoran Scanners, Inc., 585 F.3d at 541 (torts, such as misrepresentation, constitutes bad faith in implied covenant of good faith and fair dealing context).

229.     Judgement is entered for KDC and against the LLC on this claim.

230.     The remedy for a party's breach of the implied covenant of good faith and fair dealing is the actual damages suffered from not receiving the benefits of the contract. Latson, 708 F.3d at 326.

231.    KDC is awarded and the LLC is ordered to pay KDC **$578,528.49,** the amount of unreimbursed hard construction costs.

232.    KDC is awarded and the LLC is ordered to pay KDC **$665,545.49,** the amount of unreimbursed carrying costs KDC paid.

233.    KDC is therefore awarded and the LLC is ordered to pay KDC the following additional charges set forth in the KDC contract:

   a.   Design fee of **$25,000**
   b.   General Contractor Fee of **$565,971.52**
   c.   KDC overhead of **$59,250.00**
   d.   Carrying costs of **$127,562.89**
   e.   Interest since June 2015 as calculated by the clerk; and
   f.   Administrative fees and expenses of **$141,191.25.**

   **g.   The LLC is Liable to KDC for Unjust Enrichment and Quantum Meruit**

234.    In the event the Court finds that the KDC contract is not enforceable, KDC asserts equitable claims of unjust enrichment and quantum merit against the LLC.

235.    To prove unjust enrichment, KDC must prove "(1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and the impoverishment; (4) an absence of justification and (5) the absence of a remedy provided by law." <u>Massachusetts v. Mylan Labs.</u>, 357 F. Supp. 2d 314, 323-24 (D. Mass. 2005). "Liability in unjust enrichment involves a showing that wealth is in one persons's hands when it should be in another's." <u>Id.</u> (quotation marks and citation omitted).

236.    To prove quantum merit, KDC must prove "(1) the plaintiff conferred a reasonable benefit upon the defendants; (2) defendants accepted the services with the reasonable expectation of compensating the plaintiff; and (3) the plaintiff provided the services with the reasonable expectation of receiving compensation." <u>Backman v.</u>

Smirnov, 751 F. Supp. 2d 304, 314 (D. Mass. 2010) (citing Bolen v. Paragon Plastics, Inc., 747 F. Supp. 103, 106-107 (D. Mass. 1990)).

237.     KDC has proven that the LLC accepted KDC's services, benefitted from them, reasonably should have expected to pay for them, but has refused to pay.

238.     KDC has proven that it substantially performed and conferred a measurable benefit upon the LLC for which the LLC reasonably should have expected to pay.

239.     KDC has proven that its invoices [Exh. 174, 175] represent the fair value of the benefits it conferred upon the LLC.

240.     Indeed, Defendants' expert, Mr. Salmi, opined that the amount reflected in KDC's invoices is below market value for the same services.  Mr. Doddridge, plaintiffs' expert, too has opined that KDC's charges are fair and reasonable.

241.     As such, the LLC is ordered to pay KDC the sum of **$578,528.49** representing the unpaid portion of construction costs incurred, which constitutes a reasonable measure of the benefit conferred on the LLC.

242.     The LLC is ordered to pay KDC the sum of **$665,528.49** representing the fair value of the carrying costs KDC paid on the LLC's behalf and for which KDC has not been reimbursed.

243.     The LLC is ordered to pay KDC the sum of **$565,971.52** as the reasonable value of the general contractor services provided on the project.

244.     The LLC is ordered to pay KDC the sum of **$25,000** as a Design fee.

245.     The LLC is ordered to pay KDC the sum of **$59,250** as the reasonable value of the office overhead incurred by KDC on the project.

246.     The LLC is ordered to pay KDC the sum of **$127,562.89** as the reasonable value of the cost of KDC's having advanced carrying costs to the LLC for the first 23 months of the project.

247.     The LLC is ordered to pay KDC the sum of **$141,191.25** as the reasonable value of the administrative costs incurred by KDC on the project.

248.     The LLC is ordered to pay interest since June 2015 in an amount determined by this Court.

### h.  The LLC is Liable to KDC Under Promissory Estoppel

249.     In the event the KDC contract is deemed unenforceable, KDC pursues a claim for recovery under the doctrine of promissory estoppel.

250.     To recover under promissory estoppel, KDC must prove: (1) that LLC made "'a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission.'" Wilson v. HSBC Mortg. Servs., 744 F.3d 1, 14 (1st Cir. 2014) (quoting Sullivan v. Chief Justice for Admin. & Mgmt. of Trial Court, 448 Mass. 15, 27-28 (2006)).

251.     KDC has carried its burden of proving that the LLC promised it would pay for services, KDC reasonably relied upon those promises, the LLC reasonably should have expected KDC to rely upon those promises, and KDC relied to its detriment.

252.     KDC fully performed its duties and built the homes in reliance on the assurance that it would be paid as provided for in the KDC contract.  KDC has proven that its invoices [Exh. 174, 175] represent the fair value of the benefits it conferred upon the LLC.

68

253.        Indeed, Defendants' expert, Mr. Salmi, opined that the amount reflected in KDC's

invoices is below market value for the same services.  Mr. Doddridge, plaintiffs' expert,

too has opined that KDC's charges are fair and reasonable.

254.        As such, the LLC is ordered to pay KDC the sum of **$578,528.49,** the amount of

unreimbursed hard construction costs and **$665,545.49,** the amount of unreimbursed

carrying costs KDC paid.

255.        Under KDC's construction contract [Exh. 37] it is also entitled to recover "soft

costs".  These are a percentage of the total cost of work.  The total of these "soft costs"

properly claimed is **$918,975.66**.  [Design Fee, 25,000 per § 7.1.1 of the KDC contract,

General  Contractor  Construction  Fee,  15%  per  §7.1.2  of  the  KDC  Contract

($565,971.52),  KDC  Office  Overhead  per  §7.3.2.5  of  the  KDC  Contract  ($59,250),

Carrying Cost Advance Fee per §7.1.3 of the KDC Contract ($127,562.89 for the first 23

months only), Administrative Fees through May 1, 2016 ($141,191.25)]  KDC is entitled

to an award of **$918,975.66** for the "soft costs" permissible under the KDC Contract.

### i.    The LLC Should be Judicially Dissolved

256.        The Operating Agreement contained an explicit provision that the LLC would

dissolve and wind up its affairs no later than November 30, 2015. [SOF 95]

257.        Under Massachusetts law, "[a] limited liability company is dissolved and its

affairs shall be wound up upon the first to occur of the following:(1) the time specified in

the  operating  agreement;  the  happening  of  an  event  as  specified  in  the  operating

agreement; (3) the written consent of all members."  G.L. c. 156C, § 43(1-3).

258.        Despite the passage of the LLC's wind up date, it has not dissolved or wound up

its affairs.

259.     Accordingly, the Court issues an order of dissolution to dissolve and wind-up the affairs of the LLC pursuant to G.L. c. 156C, § 43(5).

260.     The Court therefore orders that after the distribution of the net proceeds from the sale of the properties, the remaining assets of the LLC constituting the profits of the enterprise are distributed according to the terms of Sections 8.1 and 9.2 of the Operating Agreement.

### j.  Filippov and Lipetsker Engaged in a Civil Conspiracy

261.     Kagan alleges that Filippov and Lipetsker engaged in a civil conspiracy and therefore should be jointly and severally liable for any claims against them.

262.     To prove a Filoppov and Lipetsker engaged in a civil conspiracy, Kagan must prove "a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." Aetna Cas. Sur. Co., 43 F.3d at 1564; Cruickshank v. Dixon (In re Blast Fitness Grp., LLC), 602 B.R. 208, 228 (Bankr. D. Mass. 2019) ("'[i]n order to state a claim of [this type of] civil conspiracy, plaintiff must allege that defendants, acting in unison, had some peculiar power of coercion over plaintiff that they would not have had if they had been acting independently.'").

263.     If a civil conspiracy is proved, the result is to make Filippov and Lipetsker jointly and severally liable for the damages caused by the other participants in the conspiracy. Cruickshank, 602 B.R. at 228.

264.     Kagan has carried his burden of proving that Filippov and Lipetsker engaged in a civil conspiracy and therefore the Court finds that Filippov and Lipetsker are each jointly and severally liable for the damages awarded.

### k.  **KDC Properly Perfected Its Mechanics Lien**

265.     KDC timely recorded its Notice of Contract and Statement of Claims on June 22, 2015.  M.G.L. c. 254, §§2, 8.

266.     KDC timely filed suit to enforce its mechanics lien.  M.G.L. c. 254, §5

267.     One wishing to challenging the validity of a mechanics lien can move to have it dissolved, with only seven days' notice, under the expedited procedure set forth in the statute.  M.G.L. c. 254, §15A.  One can also bond off a lien.  M.G.L. c. 254, §14.

268.     If a lien is willfully and knowingly inflated, the remedy is to invalidate the lien.  It does not extinguish the underlying debt.  M.G.L. c. 254, §11.  I do not make that finding.

## III.   **DEFENDANTS' PROOFS OF CLAIM**

### a.  **KDC Prevails on its Proof of Claim [Claim No. 1]**

269.     KDC has filed a proof of claim seeking payment for the construction costs that have not been reimbursed, the carrying costs that have not been reimbursed, and the additional costs due under the KDC contract.

270.     A proof of claim properly filed pursuant to the Federal Rules of Bankruptcy Procedure represents *prima facie* evidence of the validity of the claim. Fed. R. Bankr. P. 3001(f); Thinking Machs. Corp. v. N.M. Taxation & Revenue Dep't, 211 B.R. 426, 429 n.2 (D. Mass. 1997) ("A properly filed proof of claim is *prima facie* evidence of the validity and amount of the claim.") (citing 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f)).

271.     "In order for a proof of claim to be executed and filed in accordance with the Federal Rules of Bankruptcy Procedure, it must satisfy (among other things) two requirements set forth in Rule 3001 itself. First, when a claim...is based on a writing, the original or a duplicate shall be filed with the proof of claim." Fed. R. Bankr. P. 3001(c).

Second, "[i]f a security interest in property of the LLC is claimed, the proof of claim shall

be accompanied by evidence that the security interest has been perfected." Fed. R.

Bankr.P. 3001(d)." In re Jackson, No. 10-11716-MSH, 2013 Bankr. LEXIS 5431, at *15-

16 (Bankr. D. Mass. Dec. 31, 2013).

272.     Here, KDC proof of claim is presumptively valid because KDC submitted a copy

of the "writing" upon which the claim is based, and has provided proof that its security

interest related to its claim were perfected.   See Claim 1-1 pts. 3-8.

273.     "The interposition of an objection [by the LLC] does not deprive the proof of

claim of presumptive validity…"  Thinking Machs. Corp., 211 B.R. at 429 n.2 (citing In

Re Hemingway Transp., Inc., 993 F.2d at 925)).

274.     Instead, "[i]n order to rebut this prima facie evidence, the objecting party must

produce 'substantial evidence.'" Aquino v. EcoSource, LLC (In re LP&D, Inc.), Nos. 12-

14894-FJB, 14-1107, 2018 Bankr. LEXIS 2889, at *20 (Bankr. D. Mass. Sep. 24, 2018)

(citing United States v. Clifford (In re Clifford), 255 B.R. 258, 262 (D. Mass. 2000);

Juniper Dev. Group v. Kahn (In re Hemingway Transp., Inc.), 993 F.2d 915, 925 (1st Cir.

1993)).

275.     "Substantial evidence' is 'evidence which, if believed, would refute at least one of

the allegations that is essential to the claim's legal sufficiency.'' In re Everett, No. 10-

19457-FJB, 2013 Bankr. LEXIS 2824, at *14-15 (Bankr. D. Mass. July 15, 2013); In re

Alleghany International, Inc., 954 F.2d 167, 173-174 (3d Cir. 1991). This means that an

"'objector must produce evidence equal in force to the prima facie case.'" Tracey v.

United States (In re Tracey), 394 B.R. 635, 639 (B.A.P. 1st Cir. 2008) (quoting In re

Allegheny Int'l, Inc., 954 F.2d at 173).

72

276.     Only if the objector meets this burden, the burden shifts to the creditor to establish the validity of its proof of claim by a preponderance of the evidence.  Hemingway Transport, 993 F.2d at 925 ("Once the trustee manages the initial burden of producing substantial evidence . . . the ultimate risk of nonpersuasion as to the allowability of the claim resides with the party asserting the claim.").

277.     This burden-shifting framework applies equally at the trial stage. See In re Mahoney Hawkes, LLP, 334 B.R. 41, 49 (Bankr. D. Mass. 2005) (finding proffer at trial was insufficient to shift burden, but reversing decision upon submission of evidence); Ezenia! Inc. v. Nguyen (In re Ezenia! Inc.), 536 B.R. 485, 496 (D.N.H. Bankr. 2015);

278.     With respect to a challenge to a proof of claim based upon self-dealing, this means that the objector must establish introduce some basis that the challenged claim was a product of self-dealing, thereby requiring the claimant to demonstrate that the transaction was "fair" to the LLC.  Vard v. Am. DG Energy, Inc., No. 17-10247-LTS, 2018 U.S. Dist. LEXIS 195866, at *14 (D. Mass. Nov. 16, 2018). (citing Weinberger v. UOP, Inc., 457 A.2d 701, 703 (Del. 1983)).

279.     In this case, Plaintiffs failed to present sufficient evidence to overcome the presumption of validity that attaches to KDC's proof of claim.

280.     KDC is awarded and the LLC is ordered to pay KDC **$578,528.49,** the amount of unreimbursed hard construction costs.

281.     KDC is awarded and the LLC is ordered to pay KDC **$665,545.49,** the amount of unreimbursed carrying costs KDC paid.

282.     KDC is therefore awarded and the LLC is ordered to pay KDC the following additional charges set forth in the KDC contract:

73

    a.  Design fee of **$25,000**
    b.  General Contractor Fee of **$565,971.52**
    c.  KDC overhead of **$59,250.00**
    d.  Carrying cost advance fee of **$127,562.89**
    e.  Interest since June 2015 as calculated by the clerk; and
    f.  Administrative fees and expenses of **$141,191.25.**

**b.  Kagan is Entitled to Indemnity [Claim No. 4]**

283.      Pursuant to the Operating Agreement, Kagan seeks indemnification from the LLC for the claims asserted against him.

284.      The Operating Agreement [Exh. 15, § 10.2] provides:

> The Company shall indemnity…the Members and their respective employees and authorized agents from and against any loss, damage or claim by incurred by reason of any act or omission performed or omitted…in good faith on behalf of the Company and reasonably believed to be within the scope of authority conferred by this Agreement.

285.      As written, the indemnity provision covers losses suffered by members and their agents even if the indemnitees are themselves negligent.  Shea v. Bay State Gas Co., 383 Mass. 218, 222 (1981) (contracts of indemnity are not strictly construed but are to be fairly and reasonably construed in order to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished.) (quotation omitted); See also Fall River Hous. Auth. v. H. V. Collins Co., 414 Mass. 10, 13 (1992) (same).

286.      Unless the indemnity agreement expressly states otherwise, an indemnity claim will lie even when the claim asserted is brought by the indemnitor.  Caldwell Tanks, Inc. v. Haley & Ward, Inc., 471 F. 3d 210, 218 (1st Cir. 2006); Hill v. Cabot, 3 Mass.L. Rptr. 46, 1994 Mass. Super. LEXIS 419 at *28 (Mass. Super. Ct. Oct. 27, (1994).

287.     Kagan is entitled to indemnity because he is a member of the LLC who acted in good faith on behalf of the company and reasonably believed he was within the scope of the authority conferred upon him in the Operating Agreement.  [SOF 585-88]

288.     The indemnity has a carve-out for acts committed as a result of "gross negligence or willful misconduct."  [Exh. 15, §10.2]  "Gross negligence" is "very great negligence, or the absence of slight diligence, or the want of even scant care." Zavras v. Capeway Rovers Motorcycle Club, 44 Mass. App. Ct. 17, 20 (1997).  "Willful misconduct" is defined as 'the intentional performance of an act with knowledge that the performance of that act will probably result in injury or damage, or it may be the intentional performance of an act in such a manner as to imply reckless disregard of the probable consequences . . . . [or] the intentional omission of some act, with knowledge that such omission will probably result in damage or injury, or the intentional omission of some act in a manner from which could be implied reckless disregard to the probable consequences of the omission …'"Video Educ. Career Inst. v. Am. Tel. & Tel. Co., Civil Action No. 88-1721-N, 1990 U.S. Dist. LEXIS 12570, at *19 (D. Mass. Jan. 5, 1990), quoting, Berner v. British Commonwealth Pacific Airlines Ltd., 346 F.2d 532, 536-537 (2nd Cir., 1965)).  I do not find that Kagan [or any of the Defendants] acted with gross negligence or willful misconduct.  At worst, they acted negligently (though I do not make that finding as there has been no negligence claim asserted).

289.     Kagan is therefore awarded the costs and attorneys' fees he has incurred and is directed to submit an appropriate motion with the Court.

   **c.  KDC, ProEx and Tatiana Kagan are Entitled to Indemnity as Agents of the LLC (Claims 5, 6 and 7)**

Case 16-01120 Doc 392 Filed 09/20/19 Entered 09/20/19 15:07:00 Desc Main
Document Page 76 of 81

290.     Pursuant to the Operating Agreement, KDC, ProEx and Tatiana seek indemnification from the LLC for the claims asserted against them.

291.     The Operating Agreement [Exh. 15, § 10.2] provides:

> The Company shall indemnity…the Members and their respective employees and authorized agents from and against any loss, damage or claim by incurred by reason of any act or omission performed or omitted…in good faith on behalf of the Company and reasonably believed to be within the scope of authority conferred by this Agreement.

292.     As written, the indemnity provision covers losses suffered by members and their agents even if the indemnitees are themselves negligent. Shea v. Bay State Gas Co., 383 Mass. 218, 222 (1981) (contracts of indemnity are not strictly construed but are to be fairly and reasonably construed in order to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished.) (quotation omitted); see also Fall River Hous. Auth. v. H. V. Collins Co., 414 Mass. 10, 13 (1992) (same).

293.     KDC is entitled to indemnity from the LLC because it was an authorized agent of the members of the LLC that acted in good faith on behalf of the LLC and reasonably believed it was acting within the scope of the authority conferred upon it. [SOF 585, 589-90]

294.     KDC is therefore awarded the costs and attorneys' fees it has incurred and is directed to submit an appropriate motion with the Court.

295.     Tatiana is entitled to indemnity from the LLC because she was an authorized agent of the members of the LLC and acted in good faith on behalf of the LLC and reasonably believed she was acting within the scope of authority conferred upon her. [SOF 585, 591]

296.       Tatiana is therefore awarded the costs and attorneys' fees she has incurred and is directed to submit an appropriate motion with the Court.

297.        ProEx is entitled to indemnity from the LLC because it was an authorized agent of the members of the LLC that acted in good faith on behalf of the LLC and reasonably believed it was acting within the scope of the authority conferred upon it.  [SOF 585, 589-90]

298.       ProEx is therefore awarded the costs and attorneys' fees it has incurred and is directed to submit an appropriate motion with the Court.

## IV.      **PLAINTIFFS' PROOFS OF CLAIM**

299.       The same law that applies to defendants' proofs of claim, governs plaintiffs' proof of claim.

300.       Claim No. 9 is Filippov's claim that he is entitled to recover for the loan that he alleged made to the LLC.

301.       Filippov has failed to meet his burden of proving that he actually made a loan, and that the loan was necessary, fair and reasonable.  He did not introduce the underlying promissory note into evidence, and there was no testimony regarding its repayment terms or interest rate, if any. There is no evidence that the note is in default or otherwise due and payable.

302.       Claim No. 9 is denied and Defendants' objection is sustained.

303.       Claim No. 2 is filed by plaintiffs' counsel, O'Conner, Carnathan & Mack to recover legal fees allegedly outstanding as of the date of the bankruptcy petition. Plaintiffs failed to offer any evidence regarding the fees charged, failed to establish that the fees were to benefit the LLC (Debtor) as opposed to Lipetsker and Filippov,

individually, or how those fees should be allocated as between the LLC, Lipetsker and Filippov.

304.     Plaintiffs failed to disclose in the LLC's petition that it already paid counsel $67,211.06 in legal fees in the 90 day period preceding the filing of the petition.  [SOF 372] There is no showing why these payments should not be credited against the amounts counsel is now claiming.

305.     Claim No. 2 is denied and Defendants' objection is sustained.

## V.     <u>EQUITABLE SUBORDINATION</u>

306.     Equitable subordination is not a cause of action, but rather deals with the order in which assets are disbursed once a party has established an entitlement to an award.

307.     "Section 510(c) of the Bankruptcy Code provides in pertinent part that a bankruptcy court may, "under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim." <u>Merrimac Paper Co. v. Harrison (In re Merrimac Paper Co.)</u>, 420 F.3d 53, 59 (1st Cir. 2005) (quoting 11 U.S.C. § 510(c)(1)).

308.     If the creditor has a claim against the estate, then the court applies three factors to consider whether another claim should be equitably subordinated. "First, equitable subordination demands that the claimant be found to have engaged in inequitable conduct. Second, the misconduct must have either resulted in injury to creditors or given the claimant an unfair advantage. Third, equitable subordination of the claim must not be in conflict with the provisions of federal bankruptcy law." <u>Merrimac Paper Co.</u>, 420 F.3d at 59.

309.    Plaintiffs have failed to meet their burden to show that the defendants acted inequitably or that the conduct by the defendants somehow gave them an unfair advantage.    Therefore, I decline to order the equitable subordination of defendants' claims.

### VI.    MISCELLANEOUS LEGAL PROVISIONS

310.    Massachusetts law allows the Department of Environmental Protection to "restrict or prohibit the disposal, or transfer for disposal, of certain components of the solid waste."  310 CMR 19.017(a).  These goods include, lead batteries, leaves, tires, white goods, other yard waste, aluminum containers, metal or glass containers, single polymer plastics, recyclable paper, cathode ray tubes, asphalt pavement, brick, and concrete, metal, wood, clean gypsum wallboard, and commercial organic materials.  310 CMR 19.017(a)(3)(Table).  These materials may not be "dispose[d], transfer[ed] for disposal, or contract[ed] for disposal or transport[ed] of the restricted material." Id.

311.    Here, Plaintiffs' expert, Mr. Doddridge, failed to consider this regulation and it prohibitions when calculating the cost to demolition the existing housings prior to the construction.

### VII.    AWARD/JUDGMENT

312.    Judgment in favor of defendants and against plaintiffs on Counts I through VIII of the Amended Adversary Complaint. Plaintiffs are responsible for paying the trustee's commission and other related costs to the bankruptcy.

313.    Filippov's Claim No. 9 is denied, and defendants' objection thereto is sustained.

314.    O'Connor Carnathan & Mack, LLP's Claim No. 2 is denied, and defendants' objection thereto is sustained.

315.      Judgment in favor of KDC against plaintiffs.

KDC is awarded the sum of $2,163,049.27, plus interest and costs, calculated as follows:

|       |                                     |             |
| ----- | ----------------------------------- | ----------- |
| i.    | Design Fee                          | $ 25,000.00 |
| ii.   | Outstanding Construction Cost       | $578,528.49 |
| iii.  | General Contractor Construction Fee | $565,971.52 |
| iv.   | KDC office overhead                 | $ 59,250.00 |
| v.    | Carrying Costs                      | $665,545.49 |
| vi.   | Carrying Cost advance fee           | $127,562.89 |
| vii.  | Administrative Fees/Expenses        | $141,191.25 |
| viii. | Interest – to be added to judgment  |             |

316.      On Claim No. 4, the LLC is obligated to indemnify KDC pursuant to § 10.2 of the Operating Agreement. KDC is to file a motion for attorney's fees and costs in accordance with this Court's schedule.

317.      On Claim No. 5, the LLC is obligated to indemnify Tatiana pursuant to § 10.2 of the Operating Agreement. Tatiana is to file a motion for attorney's fees and costs in accordance with this Court's schedule.

318.      On Claim No. 6, the LLC is obligated to indemnify Kagan pursuant to § 10.2 of the Operating Agreement. Kagan is to file a motion for attorney's fees and costs in accordance with this Court's schedule.

319.      On Claim No. 7, the LLC is obligated to indemnify ProEx pursuant to § 10.2 of the Operating Agreement. ProEx is to file a motion for attorney's fees and costs in accordance with this Court's schedule.

320.      Kagan is awarded 50% of the net proceeds for the sale of the properties in accordance with § 8.1 of the Operating Agreement.

321.      Kagan's interest remains at 10% and his capital account remains at $250,000.

322.      Any remaining assets are to be distributed in accordance with §§ 8.1 and 9.2 of the Operating Agreement.

323.    Plaintiffs are ordered to reimburse the Debtor's estate $67,211.06 for legal fees

paid to O'Conner, Carnathan & Mack in the 90 days prior to filing of the Petition and

$699.14 for the cost of preparing the promissory note and mortgage.

324.    Plaintiffs are responsible for all administrative costs in connection with the

bankruptcy, i.e. the Trustee's commission.

The Clerk is instructed to add interest and cost as permitted by law.


                                        Respectfully submitted,

Dated:  September 20, 2019              VADIM KAGAN, ET AL.

                                        By their attorneys,

                                        /s/ John H. Perten, Esq.
                                        John H. Perten (BBO# 548728)
                                        James P. Harris (BBO # 678283)
                                        SHEEHAN PHINNEY BASS & GREEN, P.A.
                                        28 State Street, 22nd Floor
                                        Boston, MA 02109
                                        (617) 897-5600
                                        jperten@sheehan.com
                                        jharris@sheehan.com


## CERTIFICATE OF SERVICE

I, John H. Perten, hereby certify that on September 20, 2019, a copy of the foregoing was

served via the Court's ECF system.



Dated:  September 20, 2019              /s/ John H. Perten
                                        John H. Perten